Adam J. Goldberg
Brett M. Neve (*pro hac vice* pending)
Nacif Taousse
Brian S. Rosen (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  adam.goldberg@lw.com
      brett.neve@lw.com
      nacif.taousse@lw.com
      brian.rosen@lw.com

Daniel Scott Schecter (*pro hac vice* pending)
Nima H. Mohebbi (*pro hac vice* pending)
Caitlin J. Campbell (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  daniel.schecter@lw.com
      nima.mohebbi@lw.com
      caitlin.campbell@lw.com

*Counsel to the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Three Arrows Capital, Ltd,[1] | Case No. 22-10920 (    ) |
| Debtor in a Foreign Proceeding. | |

## VERIFIED PETITION UNDER CHAPTER 15 FOR
## <u>RECOGNITION OF A FOREIGN MAIN PROCEEDING AND RELATED RELIEF</u>

Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized foreign representatives (the "<u>Foreign Representatives</u>") of Three Arrows Capital, Ltd (the "<u>Debtor</u>"), which is the subject of an insolvency proceeding (the "<u>BVI Proceeding</u>") currently pending in the British Virgin Islands ("BVI") before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "<u>BVI Court</u>") and captioned as *In re Three Arrows Capital Limited*, Case No. BVIHCOM2022/0119 (June 27, 2022), respectfully

---

[1] The last four digits of the Debtor's British Virgin Islands company registration number are 0531. The location of the Debtor's registered office is ABM Chambers, P.O. Box 2283, Road Town, Tortola, VG1110, British Virgin Islands.

submits this verified petition (the "Verified Petition" and together with the *Chapter 15 Petition for Recognition of a Foreign Proceeding* [Docket No. 1], the "Petition").

In support of the Petition, the Foreign Representatives respectfully submit the (a) *Declaration of Russell Crumpler in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* (the "Crumpler Declaration"); and (b) the *Declaration of Grant Carroll in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* (the "Carroll Declaration" together with the Crumpler Declaration, the "Declarations"), each of which has been filed contemporaneously with the Verified Petition and is incorporated herein by reference.  In further support of the relief requested herein, the Foreign Representatives respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Debtor is an investment firm incorporated in the BVI with a focus on trading cryptocurrency and other digital assets that was reported to have over $3 billion of assets under management as of April 2022.  The Debtor's business has collapsed in the wake of extreme fluctuations in cryptocurrency markets.  On June 27, 2022, the Debtor commenced a liquidation proceeding before the BVI Court, and that court has appointed the Foreign Representatives as joint liquidators of the Debtor.  By filing the Petition to commence this chapter 15 case (the "Chapter 15 Case"), the Foreign Representatives seek to stay active efforts by individual creditors to seize assets and to preserve the status quo and afford the Foreign Representatives an opportunity stabilize the Debtor's estate, preserve the Debtor's assets, and conduct a complete investigation of the Debtor, claims against its estate, and its assets, including causes of action.

2.      The Debtor's financial distress and the BVI Proceeding have been widely reported and the result of the proceeding has implications on the global digital asset markets.  *See* Crumpler

Declaration ¶¶ 14, 15. Without the relief requested herein, creditors may pursue a value-destructive race to the courthouse to exercise rights in a manner that would enhance their own position vis-à-vis other similarly situated creditors. Such a turn of events, would undermine the very purpose of the BVI Proceeding: to establish an orderly, value-maximizing liquidation of the Debtor's assets for the benefit of *all* creditors.

3. For the reasons set forth herein, the Foreign Representatives respectfully request that this Court grant the relief requested herein.

## JURISDICTION AND VENUE

4. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and *the Amended Standing Order of Reference M-431*, dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this District pursuant to 28 U.S.C. § 1410. The statutory bases for relief are sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## RELIEF REQUESTED

5. The Foreign Representatives respectfully request the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"):

    a.    finding that (i) the Debtor is eligible to be a "debtor" under chapter 15 of the Bankruptcy Code, (ii) the BVI Proceeding is a "foreign main proceeding" within the meaning of section 1502 of the Bankruptcy Code, or, alternatively a "foreign nonmain proceeding" within the meaning of section 1502 of the Bankruptcy Code, (iii) the Foreign Representatives satisfy the requirements of a "foreign representative" under section 101(24) of the Bankruptcy Code, and (iv) the Petition was properly filed and meets the requirements of section 1515 of the Bankruptcy Code;

    b.    granting recognition of the BVI Proceeding as a "foreign main proceeding" under sections 1517 and 1520 of the Bankruptcy Code;

c.      granting all relief afforded to foreign main proceedings under section 1520 of the Bankruptcy Code;

d.      pursuant to section 1521(a), (i) staying the commencement or continuation of proceedings concerning the Debtor's assets, rights, obligations or liabilities, to the extent not stayed automatically under section 1520(a); (ii) staying all parties from executing against, interfering with or otherwise disposing of the Debtor's assets, to the extent not stayed automatically under section 1520; (iii) providing that the Liquidation Order issued by the BVI Court is recognized, granted comity, and entitled to full force and effect in accordance with its terms, and that such terms shall be binding and fully enforceable in the United States; and (iv) entrusting the Foreign Representatives with the administration or realization of all of the Debtor's assets that are located within the territorial jurisdiction of the United States, including prosecution of any causes of action belonging to the Debtor;

e.      waiving the 14-day stay of effectiveness of the Proposed Order;

f.      and granting related relief.

## **BACKGROUND**

6.      The Debtor, which holds its self out as being in the business of investments and short-term opportunities trading, is a Business Company incorporated under the laws of the BVI in May 2012 with its registered office also located therein. *See* Crumpler Declaration ¶¶ 8-9; *see also* Carroll Declaration ¶ 11. The Debtor has represented that it invested heavily in cryptocurrency and digital assets funded by borrowings. *See* Crumpler Declaration ¶ 8. The Debtor has operated several "funds" in this respect and as of April 2022, was reported to have over $3 billion of assets under its management. *See* Crumpler Declaration ¶ 8. The extent of the Debtor's trading activities and the circumstances that led the Debtor to commence the BVI Proceeding will be the subject of investigation in connection with the BVI Proceeding.

7.      The Debtor was co-founded by Kyle Davies and Su Zhu. It had three directors: Davies, Zhu, and Mark James Dubois, a BVI resident. *See* Crumpler Declaration ¶ 9; Carroll Declaration ¶ 11. The Foreign Representatives understand and believe that while the Debtor has

had certain operations in Singapore, Mr. Davies and Mr. Zhu's current location remains unknown.
They are rumored to have left Singapore. *See* Crumpler Declaration ¶ 12.

8.      As has been reported widely in the financial press, the recent decline in the value
of many cryptocurrencies and other digital assets has put a strain on the Debtor's financial position
and resulted in several of the Debtor's lenders issuing notices of default in respect of the Debtor
defaulting on many of its loan obligations. *See* Crumpler Declaration ¶¶ 17-18.  In response to
these financial pressures, demands from certain of its creditors, and the filing of petitions by
creditors for liquidation in the BVI Court, the Debtor filed the BVI Proceeding on June 27, 2022
seeking to appoint joint liquidators to effectuate the orderly wind down of its operations and to
begin the liquidation of its assets.  *See* Crumpler Declaration ¶ 24.  On June 29, 2022, an order
was entered by the BVI Court, among other things, appointing the Foreign Representatives as joint
liquidators in the BVI Proceeding (the "Liquidation Order").  *See* Crumpler Declaration ¶ 26.  As
joint liquidators, the Foreign Representatives are authorized to marshal the Debtor's assets and,
ultimately, dissolve the Debtor and distribute its assets in a fair and orderly fashion.  In addition,
the Foreign Representatives are specifically authorized to commence proceedings pursuant to
chapter 15 of the Bankruptcy Code and seek recognition of the BVI Proceeding in the United
States. *See* Crumpler Declaration Ex. 6.  The Foreign Representatives are undertaking to effectuate
the liquidation of the Debtor's assets for the benefit of the Debtor's creditors, which will include,
among other things, investigations into the circumstances that led to the commencement of
insolvency proceedings by the Debtor and possible causes of action that may be available to the
Debtor.  Without the filing of this Chapter 15 Case, it is possible that creditors will be permitted
to enhance their own positions to the detriment of similarly situated creditors, which would directly

undermine the BVI Proceeding and the Foreign Representatives' efforts in connection with that

proceeding. *See* Crumpler Declaration ¶ 33.

9.      As noted above, the Debtor faces litigation and other demands on payment that it

cannot meet, and the Debtor is at significant risk of the diminution in value of its assets without

immediate relief imposing a stay of actions by creditors.  In particular, one of the Debtor's largest

known creditors has initiated an arbitration in New York, New York against the Debtor, which is

being administered by the American Arbitration Association under its Commercial Arbitration

Rules (the "Arbitration").  *See* Crumpler Declaration ¶ 30.  The counterparty to the Arbitration had

applied for emergency relief to seek to conserve the Debtor's assets, or, alternatively, freeze the

Debtor's assets pending an arbitration of its claims.  *See* Crumpler Declaration ¶ 30.  In addition,

some of the Debtor's creditors publicly acknowledged that the Debtor had failed to repay hundreds

of millions of loaned assets, including that certain creditors have stated their intent to pursue

recovery against the Debtor.  *See* Crumpler Declaration ¶ 19.  The Foreign Representatives are in

active discussions with creditors that are known to be pursuing remedies against the Debtor or its

assets, and the creditor who had initiated the Arbitration agreed to a temporary stay of the

proceedings.[2]  *See* Crumpler Declaration ¶ 31.  While the Foreign Representatives are not seeking

provisional relief in this Chapter 15 Case as of the time of the filing of this Petition, they reserve

all rights to seek such relief to the fullest extent permissible under the Bankruptcy Code.

## **BASIS FOR RELIEF**

## I.      **The Debtor Is Eligible to Be a "Debtor" Under Chapter 15 of the Bankruptcy Code**

10.     The Debtor qualifies as a "debtor" as that term is defined in section 1502(a)(1) of

title 11 of the United States Code (the "Bankruptcy Code") because it is an "entity," which includes

---

[2]   A hearing on the creditor's application for emergency relief was previously set for July 5, 2022.

corporations.  *See* 11 U.S.C. §§ 101(15) (definition of "entity," which includes a "person") and
101(41) (definition of "person," which includes a "corporation").  The Debtor is incorporated in
the BVI as a Business Company, which is a limited liability company equivalent to a corporation
under U.S. law.  *See* Crumpler Declaration ¶ 9; Carroll Declaration ¶ 11.

11.    The Debtor has property in and connections to the United States and New York,
including assets in the United States in the form of interests in a $150,000 retainer with the New
York office of Dan Tan Law, counsel to the Debtor in the Arbitration, which was transferred to
Dan Tan Law by Solitaire LLP, the Debtor's Singapore-based counsel, and is being held in a client
trust account located in New York (the "<u>Retainer Account</u>").  *See* Crumpler Declaration ¶ 14.  The
Debtor is also a borrower under certain loan agreements that are governed by the laws of the State
of New York, provide for loans to be made in U.S. Dollars or Bitcoin and include forum selection
clauses designating arbitration in New York as the forum for resolution of disputes arising in
connection with the loan agreement, one of which is the subject of the pending (but temporarily
stayed) Arbitration.  *See* Crumpler Declaration ¶ 14.  It is possible that the Debtor also has other
property in New York that will be discovered following the Foreign Representatives
investigations.

12.    As such, the Debtor has property in the United States for purposes of eligibility
under section 109(a) of the Bankruptcy Code, which requires that a debtor must either reside or
have a domicile, a place of business, or property in the United States. 11 U.S.C. § 109(a); *see*
*Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238 (2d Cir. 2013)
(holding that section 109(a) applies to chapter 15 debtors).  Section 109(a) of the Bankruptcy Code
does not require a specific quantum of property in the United States, nor does it state when or for
how long that property must be located within the United States.  *See In re Berau Capital Res. Pte.*

*Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015). Accordingly, courts in this District have required

that the debtor have only nominal property in the United States to be eligible to file a chapter 15

case. *See, e.g., In re B.C.I. Finances Pty Ltd.*, 583 B.R. 288, 293 (Bankr. S.D.N.Y. 2018)

("[C]ourts that have construed the 'property' requirement in Section 109 with respect to foreign

corporations and individuals have found the eligibility requirement satisfied by even a minimal

amount of property located in the United States.") (citation and internal quotation omitted); *In re*

*Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 249 (S.D.N.Y. 2004) ("For a foreign

corporation to qualify as a debtor under Section 109, courts have required only nominal amounts

of property to be located in the United States, and have noted that there is 'virtually no formal

barrier' to having federal courts adjudicate debtors' bankruptcy proceedings."); *In re Paper I*

*Partners, L.P.*, 283 B.R. 661, 674 (Bankr. S.D.N.Y. 2002) ("There is no statutory requirement as

to the property's minimum value.").

        13.    Here, the Debtor meets the flexible threshold for having property in the United

States as required under section 109(a) because it owns the funds in the Retainer Account that are

held in New York. *See, e.g., In re Poymanov*, 571 B.R. 24, 30 (Bankr. S.D.N.Y. 2017) ("A debtor's

funds held in a retainer account in the possession of counsel to a foreign representative constitute

property of the debtor in the United States and satisfy the eligibility requirements of

section 109(a)."); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372-374 (Bankr. S.D.N.Y. 2014)

(noting the "line of authority that support the fact that prepetition deposits or retainers can supply

'property' sufficient to make a foreign debtor eligible to file in the United States" and holding that

cash in a client trust account maintained by U.S. counsel satisfied section 109(a)). Moreover, the

Debtor's rights under New York law loan agreements, one of which is the subject of the

(temporarily stayed) Arbitration pending in New York, also constitute property within the United

8

States sufficient to establish eligibility under section 109(a).  *See, e.g., In re Avanti Communs. Grp. plc*, 582 B.R. at 613 (holding that debt documents governed by New York law and containing New York forum selection clauses satisfied the eligibility requirements under section 109(a)); *In re Ocean Rig UDW Inc*., 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017) (same); *In re Berau*, 540 B.R. at 82-84 (same).  Accordingly, the Debtor is eligible to be a chapter 15 debtor.

## II.     The BVI Proceeding Is a Foreign Main Proceeding

14.     The BVI Proceeding is entitled to recognition as a foreign main proceeding under chapter 15 of the Bankruptcy Code.  Section 1517(a) of the Bankruptcy Code provides that, subject to section 1506 of the Bankruptcy Code, a court "shall" enter an order granting recognition of a foreign proceeding if:

(1)     such foreign proceeding is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502 of the Bankruptcy Code;

(2)     the foreign representative applying for recognition is a person or body; and

(3)     the petition meets the requirements of section 1515 of the Bankruptcy Code.

11 U.S.C. § 1517(a); *see* H.R. Rep.  No. 109-31, pt. 1, at 113 (2005) ("The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings . . . [t]he requirements of this section... are all that must be fulfilled to attain recognition.").  Section 1517(b) of the Bankruptcy Code provides that a foreign proceeding "shall be recognized . . . (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1).  Here, all of the requirements for recognition of the BVI Proceeding as a foreign main proceeding are satisfied.

### A.       The BVI Proceeding Constitutes a "Foreign Proceeding"

15.      The BVI Proceeding is a "foreign proceeding" under chapter 15 of the Bankruptcy

Code.  Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> [A] collective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the assets and
> affairs of the debtor are subject to control or supervision by a foreign
> court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).  Based on this definition, courts have held that a "foreign proceeding" is one:

> a.      in which acts and formalities are set down in law so that courts, merchants
> and creditors can know them in advance, and apply them evenly in practice;
>
> b.      that has either a judicial or an administrative character;
>
> c.      that is collective in nature, in the sense that the proceeding considers the
> rights and obligations of all creditors;
>
> d.      that is located in a foreign country;
>
> e.      that is authorized or conducted under a law related to insolvency or the
> adjustment of debt, even if the debtor that has commenced such proceedings
> is not actually insolvent;
>
> f.      in which the debtor's assets and affairs are subject to the control or
> supervision of a foreign court or other authority competent to control or
> supervise a foreign proceeding; and
>
> g.      that is for the purpose of reorganization or liquidation.

See *Armada (Singapore) Pte Ltd. v. Shah* (*In re Ashapura Minechem Ltd.*), 480 B.R. 129, 136

(S.D.N.Y. 2012) (*citing In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); *see also In*

*re Overnight & Control Comm'n of Avánzit, S.A.*, 385 B.R. 525 (Bankr. S.D.N.Y. 2008)

(discussing factors).

16.      The BVI Proceeding is a collective judicial proceeding pending in the BVI under

the supervision of the BVI Court, in which the rights of creditors vis-à-vis the company are

administered together. *See* Carroll Declaration ¶¶ 23, 26-29.  It was commenced pursuant to

sections 159(1)(a), 162(1)(a) and 162(1)(b) of the Insolvency Act, 2003 (as amended), which provides the legislative framework in the BVI for insolvency and the adjustment of debt of companies. *See* Carroll Declaration ¶¶ 19-27. The assets and affairs of the Debtor are overseen by the Foreign Representatives, who have ultimate corporate authority with respect to actions outside the ordinary course of business. *See* Carroll Declaration ¶¶ 29, 46. The Foreign Representatives are officers of the BVI Court, and are subject to the BVI Court's supervision. *See* Carroll Declaration ¶¶ 28, 48. Under Section 184 of the Bankruptcy Code, the Foreign Representatives have a fiduciary duty to consider the interests of creditors as a whole in administering the affairs of the Debtor and treat creditors in a fair and even handed manner. The Foreign Representatives are administering the BVI Proceeding for the purpose of liquidating the Debtor's assets to pay creditors, which is a collective, BVI Court-supervised arrangement. *See* Carroll Declaration ¶¶ 28, 40, 45.

17.    This Court has consistently recognized provisional liquidation proceedings in the BVI as "foreign proceedings." *See, e.g., In re British American Isle of Venice (BVI), Ltd.*, 441 B.R. 713, 716 (Bankr. S.D.N.Y. 2010) (granting such relief to a BVI provisional liquidation); *In re Olinda Star Ltd.*, 614 B.R. 28 (Bankr. S.D.N.Y. 2020) (same); *In re Kingate Global Fund, Ltd*, Case No. 19-12853 (SMB) [Docket No. 28] (Bankr. S.D.N.Y. Oct. 17 2019) (same); *In re Fairfield Sentry Limited*, Case No. 10-13164 (BRL) [Docket No. 47] (Bankr. S.D.N.Y. Jul. 22, 2010) (same); *In re Worldwide Education Services, Inc.*, Case No. 13-25233 (BR) [Docket. No. 23] (Bankr. C.D. Cal. Jul. 29, 2013) (same).

18.    Accordingly, the Foreign Representatives respectfully request that the Court find that the BVI Proceeding constitutes a "foreign proceeding."

### B.    The BVI Proceeding Is a "Foreign Main Proceeding"

19.    The BVI Proceeding also qualifies as a "foreign main proceeding," which is defined in the Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). The relevant time period to determine the location of a debtor's "center of main interests" ("COMI") is the date on which the chapter 15 petition is filed. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013).

20.    While the Bankruptcy Code does not expressly define COMI, it provides that, in the absence of evidence to the contrary, a debtor's registered office is presumed to be its COMI. *See* 11 U.S.C. § 1516(c); *see also In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 91 (Bankr. S.D.N.Y. 2012); *In re Tri-Continental Exch.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006) ("In effect, the registered office . . . is evidence that is probative of, and that may in the absence of other evidence be accepted as proxy for, 'center of main interest.'"). Here, the Debtor's registered office is located in the BVI. *See* Crumpler Declaration ¶ 13. Accordingly, the Debtor is entitled to the statutory presumption that its COMI is located in the BVI.

21.    In addition, courts consider the following factors relevant to the determination of a debtor's COMI:

> the location of the debtor's headquarters; the location of those who actually manage the debtor...; the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

*In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 654 (Bankr. S.D.N.Y. 2016) (internal citations omitted); *see In re Fairfield Sentry Ltd.*, 714 F.3d at 130 ("Among other factors that may be considered [in determining COMI] are the location of headquarters, decision-makers, assets, creditors, and the law applicable to most disputes."); *In re Avanti Communs. Grp. plc*, 582 B.R. at

614 (concluding that the UK constituted the debtor's "center of main interests" where "the Debtor is incorporated in the UK and its registered offices and headquarters are in London."). Courts should consider the activities of liquidators and provisional liquidators in their analyses of the location of those who actually manage the debtor. *In re Olinda Star Ltd.*, 614 B.R. 28, 41 (Bankr. S.D.N.Y. 2020); *see also In re Ocean Rig UDW Inc.*, 570 B.R. at 706 (finding debtors' COMI in the Cayman Islands to be "the site where their business [had been] run" by JPLs pursuant to a protocol with the directors); *In re Fairfield Sentry Ltd.*, 2011 U.S. Dist. LEXIS 105770, at *20 (Sept. 16, 2011) (Fairfield Sentry I) (finding COMI in the BVI where BVI liquidators had been "directing and coordinating" the debtor's affairs since their appointment); *In re Betcorp Ltd.*, 400 B.R. 266, 292 (Bankr. D. Nev. 2009) (finding COMI in Australia where "[t]he location of those that manage Betcorp—the liquidators" were located); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 418 (Bankr. S.D.N.Y. 2014) (finding COMI in the Cayman Islands where joint provisional liquidators had "centralized the administration of the Debtor's affairs and its restructuring in the Cayman Islands").

22.    Under the relevant criteria, the Debtor's COMI is located in the BVI. The Debtor's registered office is located in the BVI, one of its three directors is based in the BVI, as are the BVI Proceeding and the Foreign Representatives, who now act with full power and authority to carry on the Debtor's business, sell or otherwise dispose of the Debtor's assets, commence, continue or defend claims on behalf of the Debtor, and exercise any other powers and authorities necessary to effectuate the liquidation pursuant to the Liquidation Order. *See* Crumpler Declaration ¶¶ 1, 9, 26-27; Carroll Declaration ¶ 45. Thus, all of the Debtor's key corporate activities moving forward will occur in the BVI, including that the Foreign Representatives take virtually all of their actions from the office of Teneo in the BVI. *See* Crumpler Declaration ¶ 1; Carroll Declaration ¶¶ 45-46.

13

And to that end, the Foreign Representatives have centralized the Debtor's activities in the BVI, including directing all creditors to correspond with them in the BVI (which will occur pursuant to court-sanctioned protocols) and establishing a bank account in the BVI in the Debtor's name. Many creditors have also retained BVI counsel.

23.   Moreover, as an investment firm registered in the BVI, the Debtor is also regulated by the BVI Financial Services Commission and consequently, required to, *inter alia*, provide annual reporting to the Commission and comply with BVI rules and regulations, as well as subject itself to potential audit and enforcement actions. *See* Crumpler Declaration ¶ 10.

24.   The *situs* of the Debtor's membership interests in the BVI is further evidence that the COMI of the Debtor is BVI.  Pursuant to Section 245 of the BVI Business Companies Act 2044, "[f]or the purposes of determining matters relating to title and jurisdiction but not for the purposes of taxation, the situs of ownership of shares, debt obligations or other securities of a company is the [British] Virgin Islands."

25.   Accordingly, the Debtor's COMI in the BVI is well known and readily ascertainable by third parties.  *See In re Fairfield Sentry Ltd.*, 714 F.3d at 130 ("The relevant principle [to determine a debtor's COMI] is that COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties...."); *In re OAS S.A.*, 533 B.R. 83, 103 (Bankr. S.D.N.Y. 2015) (the chapter 15 debtor's COMI was readily ascertainable as Brazil, among other reasons, because note purchasers understood that their investment was in a Brazil-based business and expected to receive payment from cash generated by a Brazilian entity).  As the BVI Proceeding is pending in the jurisdiction of the Debtor's COMI, the BVI Proceeding should be recognized as a foreign main proceeding.

III.   **In the Alternative, the BVI Proceeding is a Foreign Nonmain Proceeding**

26.   Courts will recognize a foreign proceeding as a "foreign nonmain proceeding" if
"the debtor has an establishment within the meaning of section 1502 in the foreign country where
the proceeding is pending." 11 U.S.C. § 1517(b)(2).  Section 1502(2) defines "[e]stablishment" as
"any place of operations where the debtor carries out a nontransitory economic activity[,]" *In re
Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 70 (Bankr. S.D.N.Y. 2011),
aff'd 474 B.R. 88 (S.D.N.Y. 2012) ("Millennium Glob. I"), and courts have required proof of more
than a "mail-drop presence." *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 277
(Bankr. S.D.N.Y. 2019) ("Constellation Recognition Decision"); 11 U.S.C. § 1502(2).  At least
one court has—noting the "paucity of U.S. authority" on the subject—favorably cited a
"persuasive" English law holding that the presence of an asset and minimal management or
organization can suffice to create an establishment. *See Millennium Glob. I*, 458 B.R. at 84-85.

27.   As with COMI, whether the debtor has an "establishment" in a country must be
determined at the time of filing the chapter 15 petition.  *See Beveridge v. Vidunas (In re O'Reilly)*,
598 B.R. 784, 803 (Bankr. W.D. Pa. 2019) (adopting *Fairfield Sentry* and *Ran* findings that "the
presumptive date from which [a c]ourt is to ascertain [a] debtor's center of main interests and/or
establishment is the date the [c]hapter 15 petition was filed"). Several factors "contribute to
identifying an establishment: the economic impact of the debtor's operations on the market, the
maintenance of a 'minimum level of organization' for a period of time, and the objective
appearance to creditors whether the debtor has a local presence." *Millennium Glob. I*, 458 B.R. at
85.  A showing of impact of the debtor's activities on the foreign jurisdiction involves a "showing
of a local effect on the marketplace," *In re Creative Fin., Ltd. (In Liquidation)*, 543 B.R. 498, 520
(Bankr. S.D.N.Y. 2016), evidenced by, among other things, engagement of "local counsel and
commitment of capital to local banks." *Millennium Glob. I*, 458 B.R. at 86-67.  At least one court

has also found that the presence of liquidators is relevant to the determination of whether a debtor

has an establishment in that location. *See, e.g.*, *Millennium Glob. I*, 458 B.R. at 86 (finding that

Bermuda proceedings should be recognized as foreign main proceedings or, in the alternative,

foreign nonmain proceedings, after considering, among other factors, the fact that the liquidators

are subject to the control of the court in Bermuda); *Millennium Glob. II*, 474 B.R. at 94 (affirming

*Millennium Glob. I* and noting, inter alia, that "Bermuda is where the liquidation proceedings are

taking place, under the supervision of the Bermuda court").

28.    In this case, the BVI is not merely a letterbox jurisdiction for the Debtor.  The

Foreign Representatives have centralized the Debtor's activities in the BVI.  They have already

begun directing creditors and other interested parties to correspond with them using their BVI

contact details, entered into a court-sanctioned protocols in respect of the Debtor, and have had an

effect on the local marketplace through their retention of BVI counsel.  These actions are sufficient

to, at a minimum, support the finding of an "establishment" in the BVI.

29.    Denying recognition of the Debtor's BVI Proceeding as either a foreign main or

nonmain proceeding would leave the Debtor without access to U.S. courts. The Foreign

Representatives, which were only recently appointed, will significantly benefit from recognition

to, among other things, obtain documentary and testimonial evidence from witnesses in

furtherance of their investigative and asset recovery efforts.  *See* Crumpler Declaration ¶ 34.

Recognition will also allow the Foreign Representatives to identify all the Debtor's liquid and

illiquid assets, are believed to be located in different jurisdictions, including the U.S.  *See* Crumpler

Declaration ¶ 34.  Without the relief requested herein, the Debtor will not have an effective means

of protecting its assets in the U.S. or many of its creditors with significant contacts to the U.S.

Such a result would be at odds with the purpose of chapter 15 of the Bankruptcy Code—to

engender cooperation among foreign courts with respect to restructuring and insolvency proceedings. *See Millennium Glob. I*, 458 B.R. at 69, 81-82.

**IV.   The Foreign Representatives Satisfy the Requirements of "Foreign Representatives" Under Section 101(24) of the Bankruptcy Code**

30.    For recognition under chapter 15, a foreign proceeding must also have a foreign representative. *See* 11 U.S.C. § 1517(a)(2).  The Foreign Representatives submit that this Chapter 15 Case was commenced by duly appointed and authorized "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code.  Section 101(24) of the Bankruptcy Code provides as follows:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

31.    Moreover, the Debtor has commenced the BVI Proceeding, and the BVI Court has approved the appointment of the Foreign Representatives as provisional liquidators pursuant to the Liquidation Order.  *See* Crumpler Declaration ¶¶ 24, 26. U.S. courts, including this Court, have previously found that offshore provisional liquidators qualify as "foreign representatives." *See, See, e.g., In re British American Isle of Venice (BVI), Ltd.*, 441 B.R. 713, 716 (Bankr. S.D.N.Y. 2010) (granting such relief to a BVI provisional liquidation); *In re Olinda Star Ltd.*, 614 B.R. 28 (Bankr. S.D.N.Y. 2020) (same); *In re Kingate Global Fund, Ltd*, Case No. 19-12853 (SMB) [Docket No. 28] (Bankr. S.D.N.Y. Oct. 17 2019) (same); *In re Fairfield Sentry Limited*, Case No. 10-13164 (BRL) [Docket. No. 47] (Bankr. S.D.N.Y. Jul. 22, 2010) ("Fairfield Sentry I") (same); *In re Worldwide Education Services, Inc.*, Case No. 13-25233 (BR) [Docket. No. 23] (Bankr. C.D. Cal. Jul. 29, 2013) (same); *In re Ocean Rig*, 570 B.R. at 701 (recognizing Cayman Islands joint

provisional liquidators as foreign representatives).  Thus, the Foreign Representatives have met

the requirements of section 101(24) of the Bankruptcy Code and is the Debtor's "foreign

representative" as defined thereunder.  *See In re SPhinX, Ltd.*, 351 B.R. 103, 116-17 (Bankr.

S.D.N.Y. 2006) *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) (noting that the foreign representatives had

submitted a "copy of the Cayman Court's order appointing them to administer the Debtors'

winding up under the Companies Law and authorizing their commencement of these chapter 15

cases, thereby satisfying Bankruptcy Code sections 101(24) and 1515(c).").  Additionally, the

Liquidation Order itself specifically authorizes the Foreign Representatives to commence Chapter

15 proceedings, further evidence that they meet the standard to qualify as a "foreign

representative." *See* Crumpler Declaration Ex. 6.

## V.      **The Petition Was Properly Filed and Satisfied the Requirements of Section 1515 of the Bankruptcy Code**

32.     The Foreign Representatives duly and properly commenced this Chapter 15 Case

in accordance with sections 1504 and 1509 of the Bankruptcy Code, which require the filing of a

petition for recognition under section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. §§ 1504,

1509(a).   In accordance with section 1515(b)(1) of the Bankruptcy Code, the Foreign

Representatives attached to the *Chapter 15 Petition for Recognition of a Foreign Proceeding* (the

"Voluntary Petition") [Docket No. 1] a certified copy of the Liquidation Order, which is the order

commencing the BVI Proceeding and appointing the Foreign Representatives as provisional

liquidators with respect thereto.  In accordance with section 1515(c) of the Bankruptcy Code, the

Foreign Representatives also submitted a declaration attached to the Petition containing a

statement identifying the BVI Proceeding as the only known pending "foreign proceeding" with

respect to the Debtor.  Accordingly, the requirements of section 1515 have been satisfied.

## VI.    The Debtor Is Entitled to Automatic Relief Under Section 1520 of the Bankruptcy Code

33.    Section 1520(a) of the Bankruptcy Code sets forth a series of statutory protections that automatically result from the recognition of a foreign main proceeding, including the application of the protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the Debtor and its property located within the territorial jurisdiction of the United States. *See* 11 U.S.C. 1520(a).

34.    Given that the protections set forth in section 1520(a) flow automatically from the recognition of a foreign main proceeding under section 1517, the Foreign Representatives respectfully submit that no further showing is required to the extent the Court recognizes the BVI Proceeding as a foreign main proceeding.

## VII.    Certain Additional Relief Upon Recognition Is Both Necessary and Appropriate and Should be Granted

35.    Upon recognition of the BVI Proceeding, whether as foreign main or foreign nonmain proceeding, this Court is empowered to grant "any appropriate relief" pursuant to Bankruptcy Code section 1521(a), where such relief is necessary to effectuate the purpose of chapter 15 and to protect the Debtors' assets or the interests of the Debtors' creditors. 11 U.S.C. § 1521(a).   Relief under section 1521(a) is available only if the interests of the creditors and other interested entities, including the debtor and interested parties located outside of the United States, are sufficiently protected. *See* 11 U.S.C. § 1522(a); *In re Rede Energia S.A.*, 515 B.R. 69, 94 (Bankr. S.D.N.Y. 2014*); In re CGG S.A.*, 579 B.R. 716, 720 (Bankr. S.D.N.Y. 2017); *see also In re Sphinx Ltd.*, 351 B.R. at 113 (noting that in enacting section 1522(a), "Congress directed the court to focus on the interests of all creditors and other interested parties, not just those of U.S. parties.") (emphasis in original).   Moreover, if the Court recognizes the BVI Proceeding as a foreign nonmain proceeding, relief under Bankruptcy Code section 1521 is available where the

Court is satisfied that the relief relates to assets that, under the law of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding. 11 U.S.C. § 1521(c).

36.    Pursuant to section 1521(a), the Foreign Representatives request that this Court enter an order granting additional necessary relief including, without limitation: (i) staying the commencement or continuation of proceedings concerning the Debtor's assets, rights, obligations or liabilities, to the extent not stayed automatically under section 1520(a); (ii) staying all parties from executing against, interfering with or otherwise disposing of the Debtor's assets, to the extent not stayed automatically under section 1520; (iii) providing that the Liquidation Order issued by the BVI Court is recognized, granted comity, and entitled to full force and effect in accordance with its terms, and that such terms shall be binding and fully enforceable in the United States; and (iv) entrusting the Foreign Representatives with the administration or realization of all of the Debtor's assets that are located within the territorial jurisdiction of the United States, including prosecution of any causes of action belonging to the Debtor. 11 U.S.C. § 1521(a).

37.    The relief requested by the Foreign Representatives under Bankruptcy Code section 1521(a) is necessary and appropriate to assist the BVI Court and the Foreign Representatives in carrying out the effective administration of the BVI Proceeding, particularly if the Court recognizes the BVI Proceeding as a foreign nonmain proceeding.  In such case, without the relief provided for in section 1521(a), the BVI Court would not be able to ensure the fair and efficient administration of the BVI Proceeding in a manner that protects the interests of all of the Debtor's stakeholders, nor would the Foreign Representatives be able to protect and maximize, without interference, the value of the Debtor's assets in the United States for the benefit of the Debtor's creditors and other stakeholders.  This relief is necessary to effectuate the purpose of chapter 15.

38.    Moreover, the Court should recognize and enforce the Liquidation Order.   In
determining whether to recognize and enforce a foreign judgment, courts consider general
principles of comity.  *See In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. at 698 (*citing
Hilton v. Guyot*, 159 U.S. 113, 166 (1895); *Pariente v. Scott Meredith Literary Agency, Inc.*, 771
F. Supp. 609, 615 (S.D.N.Y. 1991)).  In *Hilton v. Guyot*, the Supreme Court held that if the foreign
court provides "a full and fair trial abroad before a court of competent jurisdiction, conducting the
trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and
under a system of jurisprudence likely to secure an impartial administration of justice between the
citizens of its own country and those of other countries, and there is nothing to show either
prejudice in the court, or in the system of laws under which it is sitting," the foreign judgment
should be enforced and not "tried afresh."  *Hilton*, 159 U.S. at 202-03.

39.    "Federal courts generally extend comity whenever the foreign court had proper
jurisdiction and enforcement does not prejudice the rights of United States citizens or violate
domestic public policy."  *In re Atlas Shipping A/S*, 404 B.R. 726, 733 (Bankr. S.D.N.Y. 2009)
(citations omitted); *see also JP Morgan Chase Bank v. Altos Hornos de Mexico S.A.*, 412 F.3d
418, 424 (2d Cir. 2005) ("[D]eference to the foreign court is appropriate so long as the foreign
proceedings are procedurally fair and... do not contravene the laws or public policy of the United
States."); *Universal Cas. & Sur.  Co. v. Gee (In re Gee)*, 53 B.R. 891, 902, 904 (Bankr. S.D.N.Y.
1985) (noting that if the bankruptcy court is satisfied with the procedural fairness of the foreign
proceeding, it "should not sit as an appellate court over the foreign proceedings.").

40.    "[P]rinciples of enforcement of foreign judgments and comity in chapter 15 cases
strongly counsel approval of enforcement in the United States of [provisions in foreign court
orders], even if those provisions could not be entered in a plenary chapter 11 case."  *In re Metcalfe*

*& Mansfield Alternative Invs.*, 421 B.R. at 696. The "relief granted in [a] foreign proceeding and

the relief available in a U.S. proceeding need not be identical[,]" and U.S. bankruptcy courts are

"not required to make an independent determination about the propriety of individual acts of a

foreign court." *Id.* at 697 (*citing In re Bd. of Dirs. of Multicanal S.A.*, 307 B.R. 384, 391 (Bankr.

S.D.N.Y. 2004)). Rather, "[a]s long as the manner in which the scheme acquired statutory effect

comports with our notions of procedural fairness, comity should be extended to it." *In re Bd. of*

*Dirs. of Hopewell Int'l Ins., Ltd.*, 238 B.R. 25, 56–61 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699

(S.D.N.Y. 2002) (citations omitted).

41.     Granting comity to the Liquidation Order will help ensure that no party interferes

with the Foreign Representatives as they work to marshal the Debtor's assets and distribute

available funds to the Debtor's stakeholders. All creditors will have a full and fair opportunity to

be heard in the BVI Proceeding under a sophisticated insolvency regime before an impartial court

in accordance with fundamental standards of due process. Accordingly, the Court should

recognize and enforce the Liquidation Order, consistent with the principles of comity.

42.     Lastly, the Court should grant entrustment pursuant to section 1521(a).

Entrustment will ensure that the Foreign Representatives have full authority to realize and

administer the Debtor's assets within the United States, which will also facilitate an expeditious

and efficient completion of the BVI Proceeding.

## VIII.    Waiver of the Stay Is Appropriate in Light of the Circumstances

43.     The Foreign Representatives respectfully request that, to the extent applicable, the

Court cause the Proposed Order to become effective immediately upon entry, notwithstanding the

14-day stay of effectiveness of the order imposed by operation of the Bankruptcy Code or the

Bankruptcy Rules, including Bankruptcy Rules 1018, 3020(e), 6004(h), 7062 and 9014. Such a

waiver is appropriate in these circumstances to allow the Debtor to immediately gain the benefit

of the stay and other relief requested herein, which will act to shield the Debtor's assets from aggressive creditors and provide a breathing spell for the Foreign Representatives to fulfill their judicial duties. *See* Crumpler Declaration ¶ 36; Carroll Declaration ¶ 14. For this reason, granting a waiver of the 14-day stay of effectiveness period is appropriate so that the Foreign Representatives can begin the liquidation and orderly wind down process without fear of diminution in value of the Debtor's assets.

44.     Courts in this District routinely provide full or partial waivers of the 14-day stay of effectiveness period in chapter 15 cases. *In re New Look Secured Issuer plc*, No. 19-11005 (SMB) [Docket No. 14] (Bankr. S.D.N.Y. May 3, 2019); *In re Lehman Brothers Int'l (Europe)*, No. 18-11470 (SCC) [Docket No. 15] (Bankr. S.D.N.Y. June 19, 2018); *In re Avanti Communs. Grp. plc*, No. 18-10458 (MG) [Docket No. 15] (Bankr. S.D.N.Y. Apr. 6, 2018); *In re Bibby Offshore Servs. Plc*, No. 17–13588 (MG) [Docket No. 16] (Bankr. S.D.N.Y. Jan. 18, 2018); *In re CGG S.A.*, No. 17-11636 (MG) [Docket No. 25] (Bankr. S.D.N.Y. Dec. 21, 2017); *In re Boart Longyear Ltd.*, No. 17-11156 (MEW) [Docket No. 45] (Bankr. S.D.N.Y. Aug. 30, 2017); *In re Pac. Expl. & Prod. Corp.*, No. 16-11189 (JLG) [Docket No. 31] (Bankr. S.D.N.Y. Oct. 3, 2016); *In re Landsbanki Islands HF.*, No. 08-14921 (RDD) [Docket No. 65] (Bankr. S.D.N.Y. Mar. 17, 2016); *In re Metcalfe & Mansfield Alternative Invs.*, No. 09-16709 (MG) [Docket No. 28] (Bankr. S.D.N.Y. Jan. 5, 2010); *In re Quebecor World Inc.*, No. 08-13814 (JMP) [Docket No. 12] (Bankr. S.D.N.Y. July 1, 2009).

## **NOTICE**

45.     Notice of this Petition will be provided to: (a) the United States Trustee for the Southern District of New York; (b) the Securities and Exchange Commission; (c) all known creditors of the Debtor; (d) all parties that have filed a notice of appearance in this Chapter 15 Case; and (e) all parties required to be given notice under Bankruptcy Rule 2002(q)(1) of which

the Foreign Representatives are aware.  The Foreign Representatives submit that no other or further

notice of this Petition is necessary or required.  Information concerning the BVI Proceeding and a

copy of the *Notice of Filing and Hearing on Petition Seeking Recognition of Foreign Proceeding

and Related Relief Pursuant to Chapter 15 of the United States Bankruptcy Code* is available for

review, free-of-charge, on the website maintained by the Foreign Representatives:

https://3acliquidation.com/.

## <u>NO PRIOR REQUEST</u>

46.     No prior request for the relief sought in this Petition has been made to this or any

other court.


*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Foreign Representatives respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.

Dated: July 1, 2022
      New York, New York

Respectfully submitted,

*/s/ Adam J. Goldberg*
Adam J. Goldberg
Brett M. Neve (*pro hac vice* pending)
Nacif Taousse
Brian S. Rosen (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: adam.goldberg@lw.com
      brett.neve@lw.com
      nacif.taousse@lw.com
      brian.rosen@lw.com

– and –

Daniel Scott Schecter (*pro hac vice pending*)
Nima H. Mohebbi (*pro hac vice* pending)
Caitlin J. Campbell (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: daniel.schecter@lw.com
      nima.mohebbi@lw.com
      caitlin.campbell@lw.com

*Counsel to the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Three Arrows Capital, Ltd,[1] | Case No. 22-10920 (    ) |
| Debtor in a Foreign Proceeding. | |

<u>**STATEMENT OF VERIFICATION**</u>

Pursuant to 28 U.S.C. § 1746, I, Russell Crumpler hereby declare as follows under penalty of perjury:

1.      I am the Debtor's duly authorized foreign representative.  I am duly authorized to file this Petition and to commence and act in this Chapter 15 Case.

2.      I have read the foregoing Petition and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

3.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  July 1, 2022                     */s/ Russell Crumpler*
British Virgin Islands                   Russell Crumpler of Teneo (BVI) Limited as joint
                                         liquidator of the Three Arrows Capital Ltd.

---

[1]  The last four digits of the Debtor's British Virgin Islands company registration number are 0531. The location of the Debtor's registered office is ABM Chambers, P.O. Box 2283, Road Town, Tortola, VG1110, British Virgin Islands.