Hearing Date: 7/12/22 at 9:00 a.m. (ET)
Objection Deadline: Up to or during the Hearing

Adam J. Goldberg                     Daniel Scott Schecter (admitted *pro hac vice*)
Brett M. Neve (admitted *pro hac vice*)   Nima H. Mohebbi (admitted *pro hac vice*)
Nacif Taousse                        Caitlin Campbell (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)  **LATHAM & WATKINS LLP**
**LATHAM & WATKINS LLP**              355 South Grand Avenue, Suite 100
1271 Avenue of the Americas          Los Angeles, CA 90071
New York, NY 10020                   Telephone: (213) 485-1234
Telephone: (212) 906-1200            Facsimile: (213) 891-8763
Facsimile: (212) 751-4864            Email:  daniel.schecter@lw.com
Email:  adam.goldberg@lw.com                 nima.mohebbi@lw.com
        brett.neve@lw.com                    caitlin.campbell@lw.com
        nacif.taousse@lw.com
        brian.rosen@lw.com

*Counsel to the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Three Arrows Capital, Ltd, [1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 22-10920 (MG) |

## EMERGENCY MOTION FOR PROVISIONAL RELIEF

Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized foreign representatives (the "Foreign Representatives") of Three Arrows Capital, Ltd (the "Debtor"), which is the subject of an insolvency proceeding (the "BVI Proceeding") currently pending in the British Virgin Islands ("BVI") before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "BVI Court") and captioned as *In re Three Arrows Capital Limited*, Case No. BVIHCOM2022/0119 (June 27, 2022), respectfully

---

[1]    The last four digits of the Debtor's British Virgin Islands company registration number are 0531.  The location of the Debtor's registered office is ABM Chambers, P.O. Box 2283, Road Town, Tortola, VG1110, British Virgin Islands.

submit this motion (the "<u>Motion</u>") seeking entry of an order, substantially in the form attached

hereto as <u>Exhibit A</u> (the "<u>Provisional Relief Order</u>"), granting provisional relief, pursuant to

section 1519(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), as set forth herein.

In support of the Motion, the Foreign Representatives rely upon (a) the *Declaration of*

*Russell Crumpler in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign*

*Main Proceeding and Related Relief* (cited as "Crumpler Decl. __") [Docket No. 3]; (b) the

*Declaration of Russell Crumpler in Support of Emergency Motion for Provisional Relief* (cited as

"Supp. Crumpler Decl. __"), filed contemporaneously herewith; (c) the *Declaration of Grant*

*Carroll in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main*

*Proceeding and Related Relief* (cited as "Carroll Decl. __") [Docket No. 4]; (d) the *Declaration of*

*Grant Carroll in Support of Emergency Motion for Provisional Relief* (cited as "Supp. Carroll

Decl. __"), filed contemporaneously herewith; and (e) the *Declaration of Christopher Farmer in*

*Support of Emergency Motion for Provisional Relief* (cited as "Farmer Decl. __"), filed

contemporaneously herewith (collectively, the "<u>Declarations</u>").  In further support of the relief

requested herein, the Foreign Representatives represent as follows:

## <u>PRELIMINARY STATEMENT</u>

1.      The Debtor is an investment firm incorporated in the BVI with a focus on trading

cryptocurrency and other digital assets that was reported to have over $3 billion of assets under

management as of April 2022.  The Debtor's business has collapsed in the wake of extreme

fluctuations in cryptocurrency markets.  On June 27, 2022, the Debtor commenced a liquidation

proceeding before the BVI Court, and that court, pursuant to the order appointing the Foreign

Representatives as joint liquidators in the BVI Proceeding (the "<u>BVI Order</u>"), has appointed the

Foreign Representatives as joint liquidators of the Debtor.

2.      The Foreign Representatives are fiduciaries of the Debtor's estate created in the BVI Proceeding, with an obligation under BVI law to conduct an orderly, fair liquidation of the Debtor and maximize the value of the Debtor's assets for the benefit of all creditors.  In furtherance of those duties, the BVI Order and BVI law empower the Foreign Representatives, *inter alia*, with the sole authority to take possession and control of the Debtor's assets, carry on the Debtor's business and manage its affairs, and investigate the causes of the Debtor's insolvency and any potential causes of action the Debtor's estate may have.  BVI law vests the Foreign Representatives with broad authority under BVI law to pursue discovery from persons or entities that may have information regarding the Debtor's affairs or assets.

3.      The Foreign Representatives' immediate focus is on controlling and preserving the Debtor's assets.  The physical whereabouts of the Debtor's founders, Zhu Su and Kyle Livingstone Davies (the "Founders"), are currently unknown, and while a lawyer in Singapore purporting to represent the Founders recently approached the Foreign Representatives, the Founders have not yet begun to cooperate with the Foreign Representatives in any meaningful manner.  The Foreign Representatives' efforts are continuing in earnest but have been frustrated by this lack of cooperation to date.  Absent provisional relief, there is an actual and imminent risk that the Debtor's assets may be transferred or otherwise disposed of by parties other than the court-appointed Foreign Representatives to the detriment of the Debtor, its creditors, and all other interested parties.  Here, that risk is heightened because a substantial portion of the Debtor's assets are comprised of cash and digital assets, such as cryptocurrencies and non-fungible tokens, that are readily transferrable.

4.      The Foreign Representatives now file this Motion seeking provisional relief to mitigate the risk of transfers or disposals of the Debtor's assets by parties other than the Foreign

Representatives and authorize discovery narrowly targeted at obtaining fundamental information about the assets of the Debtor. The provisional relief is intended to preserve the *status quo* and afford the Foreign Representatives an opportunity to stabilize the Debtor's estate, preserve the Debtor's assets, and conduct a complete investigation of the Debtor, claims against its estate, and its assets, including potential causes of action.

5.    For the reasons set forth herein, the Foreign Representatives respectfully request that this Court grant the relief requested herein.

## JURISDICTION AND VENUE

6.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431 from the U.S. District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this District pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested herein are sections 105(a), 1519 and 1521(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

7.    The Debtor, which holds itself out as being in the business of investments and short-term opportunities trading, is a "Business Company" incorporated under the laws of the BVI in May 2012 with its registered office also located therein. *See* Crumpler Decl. ¶¶ 8-9; *see also* Carroll Decl. ¶ 11.

8.    On July 1, 2022 (the "Petition Date"), the Foreign Representatives commenced this Chapter 15 Case by filing the *Chapter 15 Petition for Recognition of a Foreign Proceeding* and the *Verified Petition Under Chapter 15 for Recognition of a Foreign Proceeding Main Proceeding*

US-DOCS\133255683.8

*and Related Relief* (together, the "Petition"),[2] seeking recognition of the BVI Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code, and related relief. The Debtor has operated several "funds" in this respect and as of April 2022, was reported to have over $3 billion of assets under its management. *See* Crumpler Decl. ¶ 8. The extent of the Debtor's trading activities and the circumstances that led the Debtor to commence the BVI Proceeding will be the subject of investigation in connection with the BVI Proceeding.

9.      The Debtor was co-founded by Kyle Livingstone Davies and Su Zhu. It had three directors: Davies, Zhu, and Mark James Dubois, a BVI resident. *See* Crumpler Decl. ¶ 9; Carroll Decl. ¶ 11. As has been reported widely in the financial press, the recent decline in the value of many cryptocurrencies and other digital assets has put a strain on the Debtor's financial position and resulted in several of the Debtor's lenders issuing notices of default in respect of the Debtor defaulting on many of its loan obligations. *See* Crumpler Decl. ¶¶ 17-18.

10.     In response to these financial pressures, demands from certain of its creditors, and the filing of petitions by creditors for liquidation in the BVI Court, the Debtor filed the BVI Proceeding on June 27, 2022 seeking to appoint joint liquidators to effectuate the orderly wind down of its operations and to begin the liquidation of its assets. *See* Crumpler Decl. ¶ 24. On June 27, 2022, an order was entered by the BVI Court, among other things, appointing the Foreign Representatives as joint liquidators in the BVI Proceeding (the "Liquidation Order"). *See* Crumpler Decl. ¶ 26. As joint liquidators, the Foreign Representatives are fiduciaries and officers of the BVI Court authorized to take custody and control of the Debtor's assets and, ultimately, effectuate the orderly liquidation of the Debtor's assets for the benefit of the Debtor's creditors.

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Petition.

Carroll Decl. ¶¶ 28-29, 34-35; Supp. Carroll Decl. ¶¶ 26-31.  In performance of their duties under BVI law, the Foreign Representatives are empowered to investigate the Debtor and its assets, the causes of the Debtor's insolvency, and possible causes of action that may be available to the Debtor.  Carroll Decl. ¶¶ 38, 45, 48; Supp. Carroll Decl. ¶¶ 17, 21.  And in furtherance of those investigative powers, the Foreign Representatives are granted broad informational rights under the BVI Order and BVI statute.  Supp. Carroll Decl. ¶¶ 18-23.

11.    Although the Debtor voluntarily commenced the BVI Proceedings, the Foreign Representatives have not yet received any meaningful cooperation from the Founders.  As part of their investigation into the Debtor and efforts to obtain control over the Debtor's assets in accordance with their statutory and fiduciary duties under BVI law, the Foreign Representatives have attempted since the inception of their appointment to contact the Founders directly and through counsel in the BVI and Singapore. Supp. Crumpler Decl. ¶ 7.  Finally, on July 6, 2022, the Foreign Representatives received email correspondence from Advocatus Law LLP ("Advocatus"), Singapore counsel purporting to represent the Founders.  *Id.*  The Foreign Representatives reiterated to Advocatus the urgent need to meet with the Founders in order to take basic steps to preserve the Debtor's assets.  *Id.*  The Foreign Representatives request for an urgent meeting was not accepted, and all that was offered was an introductory Zoom call with Advocatus approximately two days after the firm contacted the Foreign Representatives.  *Id.*

12.    On the introductory Zoom call, counsel from Advocatus stated that the Founders intended to cooperate with the Foreign Representatives.  Supp. Crumpler Decl. ¶ 7.  While persons identifying themselves as "Su Zhu" and "Kyle" were present on the Zoom call, their video was turned off and they were on mute at all times with neither of them speaking despite questions being posed to them directly.  *Id.*  All dialogue was instead conducted through Advocatus and Solitaire

LLC, who the Foreign Representatives understand has been Singapore counsel to the Debtor. *Id.* The Foreign Representatives requested immediate access to the Debtor's offices and certain basic information regarding the Debtor's bank accounts and digital wallets, and were told that Advocatus would discuss with the Founders and hope to provide certain information in response at a subsequent meeting. *Id.* As of the time of this Motion, a subsequent meeting has been scheduled for Monday, July 11, 2022. Despite these preliminary discussions, as of the date hereof, the Founders have not been made available to the Foreign Representatives or otherwise offered any meaningful cooperation. *Id.* ¶¶ 7-8.

13.    The Foreign Representatives understand and believe that the Debtor has had certain significant operations in Singapore. Crumpler Decl. ¶ 12. Three Arrows Capital Pte. Ltd., the Debtor's parent and principal shareholder, has a registered office located at 7 Temasek Boulevard, #21-04 Suntec Tower One, Singapore 038987. Farmer Decl. ¶ 7. That address is also associated with the Debtor and is listed on the Debtor's website. *Id.* Swiftly upon appointment of the Liquidators, on June 28, 2022, Mr. Farmer travelled to Singapore to visit the Debtor's offices, attempt to meet with the Founders and other officers, and continue the Foreign Representatives' investigation into the Debtor and assert control over the Debtor's assets. *Id.* ¶ 6. When Mr. Farmer arrived at the Temasek Boulevard address, the offices appeared vacant except for a number of inactive computer screens. *Id.* ¶ 8. While the office door was locked, Mr. Farmer observed signage for "Three Arrows Capital" and could view unopened items of mail addressed to the Debtor (care of its parent entity Three Arrows Capital Pte. Ltd.), which appeared to have been pushed under the door or propped against the door. *Id..* On the Foreign Representatives' Zoom call with Advocatus, the Foreign Representatives were told that the office did not have any documents belonging to the Debtor and was only a registered office for Three Arrows Capital Pte. Ltd., the Debtor's parent.

US-DOCS\133255683.8

Supp. Crumpler Decl. ¶ 8.  These representations are inconsistent with the presence of computer monitors in the office, mail addressed to the Debtor on location, "Three Arrows Capital" signage at the entrance to the office, and the observations of people in surrounding offices that people had occupied the office as recently as late May or early June 2022.  Farmer Decl. ¶ 8.

14.    While the Founder's current physical location remains unknown, Founder Zhu is rumored to be attempting to sell a property in Singapore with a potential value in the tens of millions of dollars.  Supp. Crumpler Decl. ¶ 13.

15.    Notwithstanding the lack of engagement by the Founders, the Foreign Representatives have been pursuing their investigation with urgency and by all lawful means available to them.  Under the circumstances, the Foreign Representatives have been able to make significant progress, including obtaining access to certain key documents, advancing their investigation through analysis of those documents and publicly available information (including through use of Open Source Intelligence Tools such as blockchain explorers and other analytics tools that allow the user to access details on transaction history, blocks, digital wallet addresses on a number of different blockchains), identifying and proceeding to control certain accounts and underlying investments, and commencing discussions with creditors regarding their claims, general investigations and liquidation.  *Id.* ¶ 10.

16.    However, the Foreign Representatives require the provisional authority sought herein in order to further advance their investigation, assert control over, and where possible collect in, the Debtor's assets, and avoid the disposition of the Debtor's assets.  In particular, the Foreign Representatives seek authority to serve discovery on the Founders and other persons or entities that the Foreign Representatives reasonably determine may have information regarding the Debtor's assets or affairs, including affiliates, banking and trading counterparties of the Debtor,

US-DOCS\133255683.8

and other custodians of cryptocurrencies and other digital assets related to the Debtor.

## RELIEF REQUESTED

17.    The Foreign Representatives request the entry of the Provisional Relief Order, substantially in the form attached hereto as Exhibit A:

(a) entrusting the administration and realization of the Debtor's assets located in the United States to the Foreign Representatives;

(b) suspending the right to transfer, encumber or otherwise dispose of any assets of the Debtor subject to further order of the Court;

(c) authorizing the issuance of, and directing compliance with, subpoenas on (i) the Founders for the production of documents and depositions substantially in the form attached hereto as Exhibit C, (ii) any other persons or entities that the Foreign Representatives reasonably determine during the course of their investigation may have information relevant to the Debtor, its affairs, or its assets, in form and substance substantially similar to the form attached hereto as Exhibit C or Exhibit D, as applicable (together with paragraph (a) and (b), the "Provisional Relief");

(d) waiving the 14-day stay of effectiveness of the Provisional Relief Order; and

(e) granting related relief.

## BASIS FOR RELIEF

18.    On July 1, 2022, the Foreign Representatives filed the Petition seeking recognition and a ruling that the BVI Proceeding is a foreign main proceeding, or in the alternative, a foreign non-main proceeding, under sections 1517 and 1520 of the Bankruptcy Code. Although a "petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time,"[3] there is necessarily a gap between the time the petition for recognition is filed and the time the court makes a decision on whether a proceeding should be recognized. Accordingly, the Foreign Representatives seek emergency provisional relief under sections 105(a) and 1519 of the

---

[3]    11 U.S.C. § 1517(c).

US-DOCS\133255683.8

Bankruptcy Code.

## A.    THE REQUESTED PROVISIONAL RELIEF SATISFIES SECTION 1519 OF THE BANKRUPTCY CODE.

19.    Section 1519 of the Bankruptcy Code permits the Court "from the time of filing a petition for recognition until [it] rules on the petition" to grant provisional relief pending recognition of the foreign proceeding where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a). Section 1519 provides three non-exclusive examples of provisional relief that can be granted by the Bankruptcy Court. *See* 11 U.S.C. § 1519(a)(3); *see also, In re Vitro, S.A.B. de C.V.*, 455 B.R. 571, 579 (Bankr. N.D. Tex. 2011) ("the relief enumerated in section 1519 is not all-inclusive"). As pertinent here, those examples include:

- "entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative . . . in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy," 11 U.S.C. § 1519(a)(2); and

- "any relief referred to in paragraph (3), (4), or (7) of section 1521(a)," 11 U.S.C. § 1519(a)(2).

20.    Paragraphs (3), (4), and (7) of Section 1521(a), in turn, provide that upon recognition of a foreign proceeding, the Court may grant any appropriate relief, including as pertinent here: (a) "suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a)," 11 U.S.C. § 1521(a)(3); (b) "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities," 11 U.S.C. § 1521(a)(4); and (c) "granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)." 11 U.S.C. § 1521(a)(7).

US-DOCS\133255683.8

21.     In particular, provisional relief under section 1519 is available where the foreign representative can satisfy the applicable standard for injunctive relief.  11 U.S.C. § 1519(e).  To obtain injunctive relief, the movant must show that:  (1) there is a likelihood of success on the merits (*i.e.,* obtaining Chapter 15 recognition); (2) there is risk of irreparable harm in the absence of relief; (3) the balance of the harms tips the movant's favor; and (4) the public interest weighs in favor of an injunction. *Secured Worldwide LLC v. Kinney*, No. 15 CIV. 1761 CM, 2015 WL 1514738, at *10 (S.D.N.Y. Apr. 1, 2015) (citing *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20 (2008)).  In considering whether to grant relief, courts take a "flexible approach and no one factor is determinative."  *Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*, 365 B.R. 401, 409 (S.D.N.Y. 2007) (internal citations omitted).

22.     Here, all four factors weigh in favor of relief and accordingly, the Court may grant the provisional relief requested in this Motion.

### *i.*     *The Foreign Representatives are Likely to Succeed on the Merits*

23.     The Foreign Representatives are likely to succeed on the merits and to obtain recognition of the BVI Proceeding as a foreign main proceeding.  For the reasons set forth in the Petition, the Foreign Representatives have demonstrated that (a) the BVI Proceeding is a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code or, in the alternative, a foreign nonmain proceeding, as defined in section 1502(5) of the Bankruptcy Code; and (b) the Foreign Representatives satisfy the requirements of section 101(24) of the Bankruptcy Code.

24.     Indeed, this Court and other bankruptcy courts routinely recognize insolvency proceedings in the BVI as foreign main proceedings under Chapter 15.  *See, e.g., In re Olinda Star Ltd*, Case No. 20-10712 (MG) [Docket No. 23] (Bankr. S.D.N.Y. Apr. 3 2020) (granting recognition of a BVI insolvency proceedings as a foreign main proceeding); *In re Kingate Global*

*Fund, Ltd,* Case No. 19-12853 (SMB) [Docket No. 28] (Bankr. S.D.N.Y. Oct. 17 2019) (same);
*In re Fairfield Sentry Limited,* Case No. 10-13164 (BRL) [Docket No. 47] (Bankr. S.D.N.Y. Jul.
22, 2010) (same); *In re Worldwide Education Services, Inc.,* Case No. 13-25233 (BR) [Docket.
No. 23] (Bankr. C.D. Cal. Jul. 29, 2013) (same).

25.     As such, there is a substantial likelihood that mandatory relief under section 1520
will be ordered, thereby resulting in (a) the Foreign Representatives being authorized to "operate
the debtor's business" and "exercise the rights and powers of a trustee," 11 U.S.C. § 1520(a)(3),
and (b) application of the automatic stay under section 362 of the Bankruptcy Code to prevent any
act to obtain possession of or to exercise control over the Debtor's property, 11 U.S.C. §
1520(a)(1).  In addition, upon recognition, whether as a foreign main or non-main proceeding, the
Court may order protective relief during the pendency of the Chapter 15 Case, including
authorizing the Foreign Representatives to serve discovery concerning "the debtor's assets, affairs,
rights, obligations or liabilities" as "necessary to effectuate the purposes of [chapter 15] and to
protect the assets of the debtor or the interests of the creditors."  11 U.S.C. § 1521(a).

26.     Under BVI law, the Foreign Representatives have the exclusive authority to control
and dispose of the Debtor's assets. Carroll Decl. ¶¶ 28-29 34-35.  In furtherance of that authority,
the Foreign Representatives are granted broad rights as part of the liquidation and investigation
into the Debtor's assets and affairs to assert possession and control of the Debtor's assets and
obtain information necessary to discharge their duties under BVI law.  These rights include the
power to (a) compel representatives of the Debtor to prepare a statement of affairs, which includes,
among other information, detail concerning assets and liabilities, (b) apply to the BVI Court for an
order directing any person to surrender or transfer to the Foreign Representatives any assets or
documents to which the Debtor would be entitled, (c) require present and former founders, officers,

directors, employees and certain related persons to sit for an examination by the Foreign Representatives concerning the Debtor, its affairs, and its assets, and (d) apply to the BVI Court for an order directing any person or entity capable of providing information about the Debtor or its assets or is suspected of having possession or control of any asset to sit for an examination by the Foreign Representative. Supp. Carroll Decl. ¶¶ 15-23, 32-34. The discovery sought here falls squarely within the Foreign Representative's investigative powers under BVI law. *Id.* ¶¶ 32-34. Thus, the principals of comity will support granting the Provisional Relief on a final basis upon recognition to the extent such relief is not mandatory under section 1520. *See In re Bear Stearns High-Grade Structured Credit*, 389 B.R. 325, 333 (S.D.N.Y. 2008) (stating that relief under section 1521 is "discretionary and turns on subjective factors that embody principles of comity"); *In re BOS Solutions Ltd.*, Case No. 20-32465, Dkt. No. 17 (Bankr. S.D. Tex. May 5, 2020) (granting provisional injunctive relief "supported by notions of comity [that] will allow the Receiver to craft a productive solution for the Debtors and their estates").

27.     Accordingly, the Foreign Representatives are likely to succeed on the merits in all respects pertinent to the relief sought herein.

### ii.    *The Foreign Representatives, the Debtor, and the Debtor's Stakeholders Will Suffer Irreparable Harm If the Provisional Relief is Not Granted*

28.     The Provisional Relief Order is needed to avoid irreparable harm and enable the Foreign Representatives to protect the Debtor's assets. Indeed, there is an actual and imminent risk that during the provisional period the Debtor's assets will be transferred or otherwise disposed of by parties other than the court-appointed Foreign Representatives—including, most notably, the Founders or individuals acting at their direction—and the Foreign Representatives may not be able to recover the assets without expending significant time and resources, if they are able to recover them at all. *See In re Netia Holdings, S.A.*, 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) ("It

US-DOCS\133255683.8

is well established, at least in this district, that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury."); *In re Caldas*, 274 B.R. 583, 598 (Bankr. S.D.N.Y. 2002) (same); *In re Rubin*, 160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) (stating that there is "little dispute regarding the notion that the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury.") (citation omitted). Here, that risk is particularly acute because a substantial portion of the Debtor's assets are comprised of cash and digital assets, such as cryptocurrencies and non-fungible tokens, that are readily transferrable and the Founders, whose physical whereabouts remain unknown and who the Foreign Representatives believe maintain control over many of the accounts where the assets are held, have not been made available to the Foreign Representatives or offered any meaningful cooperation. The Foreign Representatives, the Debtor, and its creditors as a whole would be irreparably harmed if any disposition of the Debtor's assets were to occur during the provisional period.

29.     Accordingly, the Debtor, its creditors, and all parties in interest will suffer irreparable harm if the Provisional Relief is not granted.

### iii.     The Balance of Harms Weighs Strongly in Favor of the Foreign Representatives

30.     The balance of harms also weighs in favor of granting the Provisional Relief. As described above, without the Provisional Relief, the Debtor and its stakeholders would risk significant harm from the dissipation of assets. The Provisional Relief will preserve the assets of the Debtor and allow it to move forward with the BVI Proceeding pending a determination by this Court regarding the recognition of the BVI Proceeding. *See In re Innua Canada Ltd.*, No. 09-16362, 2009 WL 1025088, at *4 (Bankr. D.N.J. Mar. 25, 2009) (finding that maintaining the *status quo* pending recognition of the foreign proceedings actually served to benefit creditors "by allowing for an orderly administration of the foreign debtors' financial affairs under the foreign

proceeding," tipping the balance of harms in favor of the foreign representative).  Further, the Provisional Relief will minimize the risk of harm by granting the Foreign Representatives authority necessary to control and protect the Debtor's assets, enjoining dispositions of the Debtor's assets by parties other than the Foreign Representatives, and granting the Foreign Representatives the authority and mechanisms to conduct its investigation into the Debtor's assets, affairs, rights, obligations and liabilities.

31.     By contrast, the Provisional Relief would cause little, if any, harm to the discovery recipients or other affected creditors.  The Provisional Relief entrusting the administration and realization of the Debtor's assets to the Foreign Representatives and enjoining dispositions of the Debtor's assets would be temporary, pending the hearing on recognition.  The Provisional Relief will preserve the *status quo* and protect the Debtor's assets—it will ***not*** affect the ability of creditors to assert their claims in the BVI Proceeding or seek relief from this Court.[4]

32.     Moreover, the proposed discovery recipients will not be significantly harmed by the discovery requests.  The Foreign Representatives seek targeted discovery from individuals and entities that they reasonably believe to have control of or information relating to the Debtor's assets and affairs.  Specifically, the Foreign Representatives seek to obtain (a) documentary and testimonial discovery from the Founders, who the Foreign Representatives believe may possess and control assets of the Debtor and/or have information relating to the identity and location of such assets, and (b) other persons or entities that the Foreign Representatives reasonably determine may have information regarding the Debtor's assets or affairs, including the Debtor's affiliates and certain banks, cryptocurrency exchanges, and other custodians of cryptocurrencies and

---

[4]    That certain parties "may be denied an advantage over" others "is not a valid reason to deny relief to the foreign representative."  *In re Atlas Shipping A/S*, 404 B.R. 726, 742 (Bankr. S.D.N.Y. 2009).

counterparties that the Foreign Representatives believe may have information regarding the Debtor's assets and/or maintained accounts and digital wallets in the name of the Debtor.  The Foreign Representatives' proposed requests are narrowly targeted to ascertain fundamental information about the assets of the Debtor, and include requests for (a) with respect to the Founders, (i) documents sufficient to identify the existence of, location of, and method of accessing and controlling the assets of the Debtor and (ii) all books, papers and records in their possession or under their control relating to the Debtor, and (b) with respect to other persons or entities, including banks, cryptocurrency exchanges, and other custodians of cryptocurrencies or counterparties, documents sufficient to show (i) current assets held in any Debtor account, digital wallet, or other investment vehicle (in whatever form), (ii) the transactional history of any Debtor account, digital wallet, or other investment vehicle, and (iii) ownership, control, and/or access of any Debtor account, digital wallet, or other investment vehicle.  Importantly, much of the discovery that the Foreign Representatives seek would be limited to a narrow period from January 1, 2022 to the present—a period intended to capture the period immediately preceding the spring 2022 crash in cryptocurrency markets through the present.

33.    The immediate relief sought is narrowly focused on the urgent need to identify, obtain control of, and protect the Debtor's assets.  However, the Foreign Representatives expect and reserve the right to seek further discovery related to the Debtor's affairs, rights, obligations and liabilities, including the causes of the Debtor's insolvency and possible causes of action that may be available to the Debtor.

34.    Further, the proposed discovery targeting the assets of the Debtor falls squarely within the scope of section 1521(a)(4) and Bankruptcy Rule 2004 and thus, would be appropriate

upon recognition.[5]

35.     Any inconvenience to the discovery recipients is significantly outweighed by the Foreign Representatives' urgent need for authority to serve the proposed discovery in order to preserve and protect the Debtor's assets during the interim period.  Absent immediate authority to pursue discovery, there is a real risk that the Debtor's assets will be subject to dissipation between now and consideration of recognition.  Moreover, any potential harm to the discovery recipients is mitigated because the rights of such recipients to object in accordance with applicable law and procedural rules will of course be preserved.

36.     In short, the significant harm to the Debtor and its assets, and ultimately the Debtor's creditors, that would occur absent the Provisional Relief far outweighs any potential prejudice to the Founders, the other recipients of discovery requests, and any interested party that might with to assert control over or dispose of the Debtor's assets in the United States in disregard of the BVI Proceeding and the Foreign Representative's exclusive authority.

### iv.    *The Public Interest Favors Granting the Requested Injunctive Relief*

37.     Finally, the Provisional Relief Order will advance the public interest as it will facilitate a cross-border insolvency proceeding that will provide a benefit to the estate of the Debtor and, in turn, a benefit to its stakeholders.  The Provisional Relief is supported by the principles of comity and will allow the Foreign Representatives to preserve the Debtor's assets and implement

---

[5]     Section 1521(a)(4) "enables a Foreign Representative to take broad discovery concerning the property and affairs of a debtor." *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012).  Section 1521(a)(4), thus, authorizes discovery in Chapter 15 cases that mirrors discovery available under Bankruptcy Rule 2004.  Under Bankruptcy Rule 2004, the Court may order documentary and testimonial discovery from "any entity" into "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004.  "The scope of [] Rule 2004 [discovery] is very broad and can be in the nature of a fishing expedition." *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing *Chereton v. United States*, 286 F.2d 409, 413 (6th Cir. 1961), cert. denied, 366 U.S. 924 (1961).

the insolvency proceeding in a fair and orderly fashion. *See, e.g., In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("Comity in bankruptcy proceedings is 'especially important' for two reasons. 'First, deference to foreign insolvency proceedings will, in many cases, facilitate 'equitable, orderly, and systematic' distribution of the debtor's assets.' 'Second, Congress explicitly recognized the importance of the principles of international comity in transnational insolvency situations when it revised the bankruptcy laws.'") (citations omitted); *Cunard S.S. Co. Ltd. v. Salen Reefer Svcs. A.B.*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion."); *In re BOS Solutions Ltd.*, Case No. 20-32465, Dkt. No. 17 (Bankr. S.D. Tex. May 5, 2020) (granting provisional injunctive relief "supported by notions of comity [that] will allow the Receiver to craft a productive solution for the Debtors and their estates"). These goals are consistent with the express objectives of Chapter 15, which include, inter alia, encouraging cooperation between the courts of the United States and courts of foreign countries, "fair and efficient administration of cross-border insolvencies," and "protection and maximization of the value of the debtor's assets." 11 U.S.C. § 1501(a).

38.    The Provisional Relief Order will also send a message to the Debtor's creditors, other interested parties, and the cryptocurrency markets generally that Foreign Representatives have the necessary authority to stabilize the Debtor's estates and preserve assets. Sending a positive message of certainty and stability to the markets from the outset of these cases is in the public interest as it will redound to the benefit of all stakeholders.

39.    In sum, the Provisional Relief is necessary and appropriate, in the interest of the public and international comity, consistent with United States public policy, and will not cause

US-DOCS\133255683.8

any hardship to any party in interest that is not outweighed by the benefits of granting the Provisional Relief.

**B.      THE REQUESTED RELIEF IS COMMONLY GRANTED BY THIS COURT**

40.    This Court commonly grants the Provisional Relief in chapter 15 cases. *See, e.g., In re Ascentra Holdings, Inc.*, No. 21-11854 (DSJ) [Docket No. 17] (Bankr. S.D.N.Y. Nov. 2, 2021) (granting provisional relief and entrusting the administration of the debtor's assets in the United States to the foreign representative and authorizing discovery on a provisional basis); *In re SIFCO S.A.*, No. 14-11179 (REG) [Docket No. 21] (Bankr. S.D.N.Y. May 7, 2014) (granting provisional relief and, *inter alia*, entrusting "the administration or realization of [the Debtor's] assets in the United States" to the foreign representative and enjoining "all persons and entities from "transferring, encumbering or otherwise disposing of or interfering with" the debtor's assets in the United States); *In re Compañía Mexicana de Aviación, S.A. de C.V.*, No. 10-14182 (MG) [Docket No. 140] (Bankr. S.D.N.Y. Aug. 18, 2010) (granting provisional relief and establishing the foreign representative "as the representative of [the Debtor] with full authority to administer [the Debtor's] assets and affairs in the United States" and enjoining "all persons and entities" from "transferring, encumbering or otherwise disposing of or interfering with [the debtor's] assets" in the United States); *In re Japan Airlines Corp.*, No. 10-10198 (JMP) [Docket No. 38] (Bankr. S.D.N.Y. Jan. 28, 2010) (same).

## AN EMERGENCY HEARING IS WARRANTED UNDER THE CIRCUMSTANCES

41.    As set forth above, the Foreign Representatives have satisfied the standard for an award of injunctive relief by way of application of the Provisional Relief pursuant to sections 105(a) and 1519(a) of the Bankruptcy Code.  However, meaningful relief can only be provided to the Debtor if the Motion is heard on an emergency basis at the Court's earliest convenience. Consequently, the Foreign Representatives request that the Court enter an order setting the Motion

19

for hearing no later than July 12, 2022, with objections to the Motion being permitted any time before or during the hearing.

## NO SECURITY REQUIRED

42.    No security is required for the Provisional Relief requested here.   Under the Bankruptcy Rules, security is not a prerequisite for the Debtor to obtain injunctive relief.  Fed. R. Bankr. P. 7065.  In any event, security would be unwarranted under the circumstances here, where the Debtor's assets are under the jurisdiction of the BVI Court and where provisional relief would last only until this Court rules on the Petition.

## NOTICE

43.    The Foreign Representatives have provided notice of the Petition, pursuant to Bankruptcy Rules 1011(b) and 2002(q), to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the Securities and Exchange Commission; (c) the Founders; (d) all known creditors of the Debtor; and (e) all parties required to be given notice under Bankruptcy Rule 2002(q)(1) of which the Foreign Representatives are aware.  In light of the relief requested, the Foreign Representatives submit that no further notice is necessary.

## NO PRIOR REQUEST

44.    No prior request for the relief sought in this Motion has been made to this or any other court.

20

WHEREFORE, the Foreign Representatives respectfully request entry of an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as is just and proper.

Dated: July 8, 2022                 Respectfully submitted,
      New York, New York

                                */s/ Adam J. Goldberg*
                                Adam J. Goldberg
                                Brett M. Neve (admitted *pro hac vice*)
                                Nacif Taousse
                                Brian S. Rosen (admitted *pro hac vice*)
                                **LATHAM & WATKINS LLP**
                                1271 Avenue of the Americas
                                New York, NY 10020
                                Telephone: (212) 906-1200
                                Facsimile: (212) 751-4864
                                Email:  adam.goldberg@lw.com
                                            brett.neve@lw.com
                                          nacif.taousse@lw.com
                                          brian.rosen@lw.com

                                – and –

                                Daniel Scott Schecter (admitted *pro hac vice*)
                                Nima H. Mohebbi (admitted *pro hac vice*)
                                Caitlin Campbell (admitted *pro hac vice*)
                                **LATHAM & WATKINS LLP**
                                355 South Grand Avenue, Suite 100
                                Los Angeles, CA 90071
                                Telephone: (213) 485-1234
                                Facsimile: (213) 891-8763
                                Email:  daniel.schecter@lw.com
                                            nima.mohebbi@lw.com
                                          caitlin.campbell@lw.com

US-DOCS\133255683.8