1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

THREE ARROWS CAPITAL, LTD,                Main Case No.

AND RUSSELL CRUMPLER,                     22-10920 (MG)


        Debtor.

- - - - - - - - - - - - - - - - - - - - -x


               United States Bankruptcy Court

               One Bowling Green

               New York, New York


               July 12, 2022

               8:53 AM






B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE


ECRO:  Maria

1

2    Emergency Motion for Provisional Relief. (Doc. 22 to 26)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:   Sharona Shapiro

21    eScribers, LLC

22    7227 North 16th Street, Suite #207

23    Phoenix, AZ 85020

24    (302)263-0885

25    operations@escribers.net

1

2  A P P E A R A N C E S (All present by video or telephone):

3  LATHAM & WATKINS LLP

4         Attorneys for Debtor/Foreign Representative

5         1271 Avenue of the Americas

6         New York, NY 10020

7

8  BY:   ADAM J. GOLDBERG, ESQ.

9

10

11  LATHAM & WATKINS LLP

12         Attorneys for Debtor/Foreign Representative

13         355 South Grand Avenue

14         Suite 100

15         Los Angeles, CA 90071

16

17  BY:   NIMA H. MOHEBBI, ESQ.

18

19

20  MORRISON COHEN LLP

21         Attorneys for ??

22         909 Third Avenue

23         New York, NY 10022

24

25  BY:   DAVID J. KOZLOWSKI, ESQ.

1

2 KIRKLAND & ELLIS LLP

3         Attorneys for Voyager Digital Holdings, Inc.

4         601 Lexington Avenue

5         New York, NY 10022

6

7 BY:   CHRISTOPHER MARCUS, P.C.

8         CHRISTINE A. OKIKE, ESQ.

9         JOSHUA A. SUSSBERG, ESQ.

10

11

12 RITTER HOUSE WICKHAMS CAY II

13         Attorneys for Foreign Representatives

14         PO Box 3170

15         Tortola, Road Town

16         VG1110, VG

17

18 BY:   GRANT CARROLL, ESQ.

19

20

21

22

23

24

25

1

2

3   DEPARTMENT OF JUSTICE

4          Attorneys for Office of the United States Trustee

5          201 Varick Street

6          Suite 1006

7          New York, NY 10014

8

9   BY:   ANDY VELEZ-RIVERA, ESQ.

10         TARA TIANTIAN, ESQ.

11         ANNIE WELLS, ESQ.

12

13

14   ALSO PRESENT:

15         RUSSELL CRUMPLER, Foreign Representative, Teneo

16         CHRISTOPHER FARMER, Teneo

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2          THE COURT:  All right.  Good morning, everyone.  This

3    is Judge Glenn.  We're here on the emergency motion for

4    provisional relief in the Three Arrows case.  That motion was

5    filed at ECF docket number 22.

6          I'm out of town today, but was able to schedule the

7    hearing for this morning.  Mr. White took the appearances for

8    anyone who was intending to speak.  There have been some

9    additional people who have joined since then.

10         What I noted in my notes was Mr. Goldberg, perhaps Mr.

11   Mohebbi.  Is there anybody else who is on the screen now who

12   may be speaking today?  If so, please make your appearance now.

13         All right.  Mr. Goldberg, if you would, by starting

14   with a discussion of the background, and particularly an update

15   on anything that's occurred since this motion was filed.

16         MR. GOLDBERG:  Yes, Your Honor.  Thank you.  Good

17   morning.  And thank you again for hearing us while you're out

18   of town.  In the interest of that, I will move this along as

19   quickly as possible and will start with the overview of the

20   background and an update on the latest.

21         Just to set the stage, Three Arrows Capital Ltd. is an

22   investment firm that was originally founded by Kyle Livingstone

23   Davies and Zhu Su.  It was incorporated in the BVI and their

24   office was run out of Singapore.  Three Arrows was a well-known

25   cryptocurrency trading firm and hedge fund.  As of December

1  2021, the assets under management were reportedly exceeding six

2  billion dollars, U.S.  Three Arrows received substantial loans

3  that were denominated in digital currency, as well as fiat

4  currency, from multiple lenders, to fund its investments.

5         It's been widely reported that a substantial portion

6  of the debtor's assets and investment portfolio was comprised

7  of a cryptocurrency called luna.  That was tied to what was

8  known as a stablecoin, called UST, and that was intended to

9  remain pegged to the dollar with a stable value.  The value of

10 luna was essentially wiped out between, roughly, May 9th and

11 May 15th, and within a month thereafter, the debtor was

12 reportedly in default of multiple loan obligations, and its

13 business had effectively collapsed.

14        On June 24th, a creditor initiated proceedings, in the

15 British Virgin Islands, seeking the appointment of joint

16 liquidators.  Shortly thereafter, on June 27th, the debtor

17 initiated voluntary proceedings in the BVI, seeking appointment

18 of joint liquidators.  And that same day, the BVI court entered

19 an order appointing Russell Crumpler and Christopher Farmer as

20 the joint liquidators in the BVI.

21        Under BVI law, the joint liquidators are fiduciaries

22 and officers of the court.  They're authorized to take custody

23 and control of the debtor's assets and effectuate an orderly

24 liquidation for the benefit of creditors wherever they are

25 located in the world.  They're empowered to investigate the

1  debtor's assets, the causes of its insolvency, and any possible

2  causes of action that may exist to benefit the estate.  They're

3  granted broad informational rights in furtherance of these

4  powers.

5          And the order appointing them as liquidators expressly

6  authorizes them to file this Chapter 15 case in the United

7  States.  And so on July 1st, shortly after their appointment,

8  the liquidators, as foreign representatives, filed the Chapter

9  15 petition, seeking foreign main recognition of the BVI

10  proceedings.

11          The purpose of this Chapter 15 case, Your Honor, is to

12  stay individual collection efforts and preserve the status quo

13  for the benefit of all stakeholders, and also to preserve the

14  liquidator's ability to stabilize the debtor's assets, to

15  identify those that are located in the United States, and

16  investigate the firm's assets, liabilities, and potential

17  claims.  As Your Honor knows, a hearing on our petition for

18  recognition is scheduled for July 28th.

19          As another update, Your Honor, in addition to this

20  Chapter 15 case, over the weekend, on July 9th, the liquidators

21  commenced a proceeding for recognition of the BVI proceeding in

22  Singapore.  And the liquidators are also seeking provisional

23  relief in connection with that proceeding in Singapore.  More

24  is expected to become public on the Singapore proceeding in the

25  coming days, according to the procedures of the Singapore

1  court.

2          THE COURT:  Has a judge been assigned in Singapore?

3          MR. GOLDBERG:  Not to my knowledge, Your Honor.

4          THE COURT:  Okay.  Go ahead.

5          MR. GOLDBERG:  Since their appointment, the foreign

6  representatives have been pursuing their investigation in

7  earnest through all available means.  They have obtained access

8  to documents and certain third-party stakeholder information.

9  They have been using investigative tools through what are known

10 as open source intelligence tools, such as blockchain explorers

11 and other analytical tools, that allow the foreign

12 representatives and liquidators to access transactional history

13 and digital wallet addresses of different types of

14 cryptocurrencies and using different blockchain methodologies.

15          They've identified and proceeded to control certain

16 accounts and underlying investments around the world.  They

17 have commenced discussions with creditors regarding their

18 claims and the general investigation of the debtor.  They have

19 traveled to Singapore to investigate the debtor's office and

20 attempt to locate assets and information on the ground there,

21 and made every effort to commence discussions with Singapore

22 counsel that purports to represent the founders of the debtor,

23 Kyle Davies and Zhu Su.

24          On that front, I should note, Your Honor, that the

25 founders' location continues to be unknown to the liquidators,

1  and they have not offered any meaningful cooperation as of the

2  time of this hearing.  There have been communications between

3  counsel, purporting to represent the founders, and the

4  liquidators.  And in the last twenty-four hours, we have

5  received a fairly pro forma listing of certain assets of the

6  debtors from the founders.

7      This list is not complete.  It does not contain bank

8  account information.  In the view of the liquidators, this is

9  by no means a sufficient form of cooperation.  And I should

10 note it came only after we filed this emergency motion before

11 the Court.

12     While the founders have not been available for

13 cooperation with the liquidators, there are public reports in

14 the media that the founders are proceeding to sell assets.  In

15 particular, founder Zhu Su is rumored, in the press, to be

16 attempting to sell a Singapore property that may be worth in

17 the tens of millions of dollars.

18     I would like to be clear, Your Honor, that the

19 liquidators' strong preference here is to work cooperatively

20 with the founders to obtain information from them on a

21 voluntary basis.  The liquidators are, however, subject to

22 fiduciary duties that require them to investigate the debtor's

23 assets as quickly as possible, especially in a case such as

24 this one, where so much of the assets are digital currency that

25 can be quickly and easily transferred.

1        After multiple attempts to reach the founders
2   personally, the liquidators had no choice but to file the
3   motion that's before the Court and engage in other efforts to
4   seek legal process to obtain discovery, although we continue to
5   seek to engage consensually with the founders and would very
6   much like to engage cooperatively with them.

7        So as a result of the status of information from the
8   founders, on July 7th -- that is, Friday last week -- we filed
9   the emergency motion today before the Court.  And we're seeking
10  an order entrusting assets in the United States to the foreign
11  representatives, suspending the right to transfer, encumber, or
12  otherwise dispose of the debtor's assets in the United States,
13  and authorize the issuance of subpoenas to the founders and
14  certain other entities that may have information related to the
15  debtor.

16       And I should note, particularly, on that last point,
17  in recent days, since the filing of the motion, and as this
18  case has gained more attention, we've actually received
19  inquiries from certain institutions that are looking for a
20  subpoena here, that have confidentiality or other regulations
21  that require them to be subject to legal process before they're
22  able to turn over information.

23       And so the relief we're requesting today is primarily
24  designed, in the first instance, to be the basis for a
25  cooperative investigation of the debtor's assets and legal

1  process if necessary.

2          So Your Honor, that that is the general update I have

3  for the Court this morning.  I'm happy to address any other

4  questions you may have before getting into a short presentation

5  of evidence and the presentation of the motion.

6          THE COURT:  Sure.  Let me ask some questions about the

7  foreign debtor's organizational structure.  Your papers are

8  pretty scant about explaining what the organizational structure

9  is, parents, affiliates, other subsidiaries, et cetera, where

10 their offices are located.  I think in what I saw, I saw the

11 reference to going to the office in Singapore and seeing it

12 vacant, nothing about any offices or facilities at any time in

13 BVI or elsewhere.

14         Can you tell me where does this foreign debtor sit, in

15 terms of the organizational structure?  I gather there is at

16 least one entity above it in the organizational chart.  It

17 would actually be quite helpful if you could provide the Court

18 with an organization chart.  I don't need that today, but I'd

19 like to hear something about that organization.

20         MR. GOLDBERG:  Yes, Your Honor.  We will be happy to

21 file an organizational chart.  I think the situation we're

22 faced with is that we are rapidly gaining access to more and

23 more information concerning the debtor.  And so we have taken a

24 bit of a "less is more" approach to the initial disclosures

25 here, so as to ensure that whatever we are filing publicly is

1    accurate, to the best of our knowledge, and that we're not

2    getting ahead of the ongoing discovery of information

3    concerning the debtor.

4          We will file an organizational chart and continue to

5    update our disclosures to the Court as we approach the

6    recognition hearing upcoming towards the end of the month.

7          In terms of the organizational structure of the

8    debtor, this case, the BVI liquidation, as well as this Chapter

9    15 case, concerns one legal entity, and that is Three Arrows

10   Capital Ltd.  That is a BVI organized entity.  One hundred

11   percent of its management shares are owned by a Singapore

12   entity.

13         There are a variety of affiliates that provide

14   investment management services, as well as feeder funds, that

15   are related to the debtor.  And we will file a disclosure with

16   the Court to provide evidence of that organization, as well as

17   information to the Court and all parties, as we are able to do

18   so.

19         The debtor, as we understand it, was historically

20   operated out of Singapore and the Singapore office.  It was,

21   however, regulated in the BVI by the BVI Financial Services

22   Commission.  And as of the time of this hearing, our position,

23   Your Honor, is that the debtor is being run and all of its

24   affairs are being managed out of the BVI, by virtue of the

25   liquidators' appointment and their activities in the BVI.  And

1    our declarations, provided by Mr. Crumpler, in particular, as

2    liquidator, provide evidence of that, and I'm happy to get into

3    more detail on that as part of our evidentiary presentation.

4              THE COURT:  Well, I think today is not the day for

5    recognition.  Certainly the Second Circuit's Fairfield Sentry

6    decision, and the earlier decision of Judge Lifland, that it

7    affirmed in Fairfield Sentry, would certainly -- would seem to

8    support finding BVI as the COMI since the activity seems to be

9    limited to -- the activity of the business at this point seems

10   to be limited to liquidation controlled in BVI.  I don't want

11   to deal with that today, but at least from the papers that I

12   read, I really couldn't tell whether there ever was an office

13   in BVI.

14             But certainly from your showing -- and I guess what

15   I'd ask you to do is, if you want to offer any evidence in

16   support of the relief you're seeking today, now would be a good

17   time to do it.  What I'd ask you to do is identify the

18   declarations and the ECF docket numbers of them.

19             MR. GOLDBERG:  Yes.  Thank you, Your Honor.  First of

20   all, we agree with your view of the case law and the COMI of

21   the debtor in BVI.

22             The evidence in support of our motion today is found

23   in the declarations of Mr. Russell Crumpler, as liquidator,

24   which are dockets number 3 and 23; the declaration of Mr.

25   Christopher Farmer, at docket number 24; and the declaration of

1    Mr. Grant Carroll, who is BVI counsel to the liquidators, at

2    docket numbers 4 and 25.  Each of these declarants is present

3    in the virtual courtroom on the Zoom and available for cross-

4    examination.  We would ask, Your Honor, that those declarations

5    be admitted into evidence.

6              THE COURT:  All right.  Are there any objections to

7    the Court admitting into evidence, the Crumpler declarations,

8    ECF 3 and 23?  Let's deal with that first.

9              Hearing no objection, they're admitted.

10         (Declarations of Russell Crumpler were hereby received

11   into evidence as of this date.)

12             THE COURT:  And then the Farmer Declaration, which is

13   ECF 24, any objections?

14             Hearing none, that's admitted.

15         (Declaration of Christopher Farmer was hereby received

16   into evidence as of this date.)

17             THE COURT:  And then finally, the Carroll

18   declarations, ECF 4 and 25, are there any objections?

19             All right.  Those are admitted in evidence as well.

20         (Declarations of Grant Carroll were hereby received into

21   evidence as of this date.)

22             THE COURT:  Have you identified any assets in the

23   United States at this stage, Mr. Goldberg?

24             MR. GOLDBERG:  Yes, we have, Your Honor.  As evidenced

25   in the Crumpler declaration, the first one, at docket number 3,

1    we have thus far identified interest in a retainer that is held

2    in a New York law firm at their New York account.  The law firm

3    is by the name of Dan Tan Law.  That firm has represented the

4    debtor in connection with an arbitration that is based in New

5    York City.  In addition, the debtor has rights under a variety

6    of New York law loan agreements, including the one that is

7    subject to that arbitration proceeding.

8           And as our investigation continues, we will provide

9    evidence to the Court of any additional assets that we can

10   locate and document for the Court in the United States.

11          THE COURT:  So let me ask you, with respect to the

12   discovery that you want to undertake, how many subpoenas do you

13   anticipate serving, and where are the parties on which you're

14   going to serve them?

15          MR. GOLDBERG:  So I think there are a couple of

16   categories of the subpoenas that we would anticipate issuing.

17   And first of all, let me be clear, Your Honor, to the Court and

18   to all parties, that we will make every effort to engage

19   consensually and voluntarily with each of these counterparties

20   before issuing a subpoena and seeking to subject them to legal

21   process.  This motion is designed to establish a framework to

22   access information through legal process, if necessary.  But

23   our preference would be to obtain that consensually.

24          And Your Honor, I would also highlight for the Court

25   that the proposed order does include a reservation of rights

1    for each recipient of a subpoena to bring issues before the

2    Court, if necessary.

3              THE COURT:  And I saw that you submitted a revised

4    order to chambers, and I did get a chance to look at that this

5    morning.  So go ahead.

6              MR. GOLDBERG:  Yes.  And I absolutely will address the

7    couple of discrete changes that we made there at the request of

8    one creditor who reached out.

9              But to answer your question about the subpoenas, at

10   this stage, I think there's two categories.  First would be the

11   founders.  There's two founders that we would be looking to

12   subpoena there.

13             Second, would be banks, cryptocurrency exchanges, and

14   other institutions and firms that the debtor has done business

15   with, that may have information concerning the debtor, such as

16   account statements for bank accounts, digital wallet

17   information concerning the cryptocurrency that the debtor

18   holds.  And those may be U.S. institutions or may be organized

19   elsewhere and doing business in the United States.

20             I think at this stage we've identified at least one to

21   two dozen of those institutions that we'll be reaching out to

22   request information from.  Again, we don't necessarily

23   anticipate issuing that many subpoenas, but that is the number

24   that we'll be seeking information from, at least as a starting

25   point.  And there very well may be more.

1           THE COURT:  So you've already addressed this point,
2   and that is whether you found the founders.  And I take it you
3   haven't.

4           MR. GOLDBERG:  We don't know where they're located
5   today.

6           THE COURT:  All right.  And has --

7           MR. GOLDBERG:  And we appreciate, Your Honor, that
8   there would be questions of service and jurisdiction regarding
9   them personally, and we're not seeking to adjudicate those
10  today.

11          THE COURT:  I understand that.  Has the BVI court
12  issued any specific discovery orders to date?

13          MR. GOLDBERG:  The BVI -- the order appointing the
14  liquidators, Your Honor, does empower the liquidators to have
15  control of the debtor's records and information, and to seek
16  out and obtain information from others.  We have not yet
17  obtained a specific order from the BVI court regarding
18  discovery against the founders or other parties.  Our rights
19  are reserved on that, and that may very well become necessary
20  and be issued in the near term.

21          THE COURT:  Does BVI law -- is there anything in BVI
22  law which would constitute a submission to jurisdiction of the
23  BVI court by each of the two founders?

24          MR. GOLDBERG:  I don't know the answer to that
25  question, standing before you today, Your Honor.  We would

1  certainly reserve the right to take that position if necessary.

2         I would highlight, Your Honor, that the debtor here

3  voluntarily commenced the liquidation, and in a voluntary case,

4  we would expect, typically, the principles of a business would

5  be cooperative with the process, especially in giving

6  information regarding the debtor's assets.  We remain hopeful

7  that they will engage with us, but given the lack of engagement

8  to date, we do feel it necessary to engage in a legal process.

9         THE COURT:  And the debtor's -- the foreign debtor's

10  petition initiating the BVI proceeding, was it signed by the

11  founders?

12         MR. GOLDBERG:  I don't know that, Your Honor.  We can

13  check on that and answer it during the hearing.

14         THE COURT:  All right.  Let me just go through my

15  notes here.

16         MR. GOLDBERG:  Sure.

17         THE COURT:  I do want to raise an issue that I'm not

18  going to resolve today.  And I guess there's no one from the

19  U.S. Trustee's office who made an appearance today.  Have you

20  had communications with the U.S. Trustee's office, Mr.

21  Goldberg?

22         MR. GOLDBERG:  We have conveyed all of the filing

23  papers to the U.S. Trustee's office and have served them with

24  the papers.  We have not received any feedback from their

25  office.

1          THE COURT:  Okay.  So --

2          MR. VELEZ-RIVERA:  Your Honor, this is Andy Velez-

3    Rivera.

4          THE COURT:  Good morning.

5          MR. VELEZ-RIVERA:  I'm on the line for the U.S.

6    Trustee.

7          THE COURT:  Hi, Mr. Velez --

8          MR. VELEZ-RIVERA:  Good morning.  I was on mute.

9          THE COURT:  Okay.  Thank you.  Let me just make a note

10   of your appearance here.

11         All right.  You have two motions that you filed that

12   I'm not going to deal with today specifically.  ECF number 6

13   was a motion to file an unredacted petition under seal, and ECF

14   29 is a motion to file an unredacted certificate of service for

15   today's motion under seal.

16         What I would request, Mr. Goldberg, is that you speak

17   with Mr. Velez-Rivera, or his colleagues, with respect to the

18   sealing motions.  I'll call to your attention one specific

19   decision -- opinion of mine, Motors Liquidation Co. Avoidance

20   Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors

21   Liquidation Co.), 561 B.R. 36 (Bankr. S.D.N.Y. 2016).

22         I've actually written, in addition to that, other

23   opinions as well, but written extensively on the scope of

24   Bankruptcy Code Section 107(b), and when, if ever, it's --

25   under what circumstances it's appropriate to file anything on

1  the docket under seal.  I've certainly never had anyone seek to

2  file a certificate of service as redacted and under seal.

3          And with respect to the petition that you filed,

4  attachment 3 to the petition includes disclosures under

5  Bankruptcy Rule 1007(a)(4), and there you've redacted from the

6  public copy the identity of the party.  And I assume it's to

7  the arbitration that you've referenced.

8          MR. GOLDBERG:  That's right, Your Honor.

9          THE COURT:  Okay.  I would like for you to discuss the

10 sealing motions with Mr. Velez-Rivera or his colleagues.

11         And Mr. Velez-Rivera, I would certainly want to know

12 what the U.S. Trustee's position is with respect to those two

13 specific sealing motions and any further that come along.

14         Let me ask you, Mr. Goldberg, in support of the motion

15 to seal the petition, the unredacted copy of the petition, you

16 had indicated that you were doing it at the request of the

17 party that initiated the arbitration.  Does it remain the case

18 that that party wants that arbitration to remain confidential?

19         MR. GOLDBERG:  It does for the time being, Your Honor.

20 We have been in communication with their counsel, and they have

21 asked us to not mention their names at this hearing today.

22         Other creditors, Your Honor -- and first of all, Your

23 Honor, I also like to acknowledge that this is the first time I

24 have ever filed a certificate of service under seal, and that

25 it is not the typical approach, to be sure.

1          We have received, Your Honor, a number of requests

2     from creditors and parties-in-interest that we not disclose

3     their identities in this case.  I'm sure Your Honor is seeing

4     the news around the disruptions in the cryptocurrency market,

5     which is itself very much of an active financial industry.  And

6     exposure to Three Arrows has become the subject of a wide array

7     of reporting and speculation about the firms that have done

8     business with Three Arrows.

9          And so, in order to honor BVI law, which maintains the

10    confidentiality of the names of creditors from public view, and

11    also to honor the requests of those creditors, in an effort to

12    preserve their value, the value of the debtor's assets, which

13    could be further harmed by additional destabilization in the

14    cryptocurrency markets, we have requested the motion to seal,

15    and absolutely will follow Your Honor's instructions of

16    reviewing your prior opinions and engaging with the Office of

17    the United States Trustee, as well as any other party that

18    wishes to be heard on the sealing issues.

19          THE COURT:  So again, I'm not going to resolve those

20    issues now.  So I have -- and I don't remember whether this is

21    in an opinion, or whether this was just worked out in the form

22    of order.  I didn't see anything, in what I read in your

23    sealing motions, indicating that BVI law provided for

24    confidentiality of the identity of the creditors.  Certainly

25    that's potentially a factor where foreign law requires certain

1    information to be kept under seal as to whether the Court, in

2    the exercise of comity, will respect and enforce the foreign

3    law with respect to it.

4         Again, what I would ask you to do is you need to have

5    a full conversation with the Office of the U.S. Trustee about

6    it.  I'm going to table this issue for now and, at least at one

7    point in the past, Mr. Goldberg -- well, I've certainly

8    required that unredacted copies of any pleadings be provided to

9    the Office of the U.S. Trustee, with the understanding that

10   they will not further publicly disclose it without permission

11   from the Court, but that they have a full understanding of what

12   information the foreign representatives are seeking to maintain

13   as confidential.  That's really necessary in order for the U.S.

14   Trustee to make an informed decision whether or not to oppose

15   the motion or consent.

16        In one prior case, some years ago, and I can't

17   remember which one or when, there was an applicable foreign law

18   that required certain information to be maintained as

19   confidential.  And essentially, what -- I believe this was

20   worked out with the U.S. Trustee -- it was essentially a number

21   code, so that your redacted papers would include a number for

22   each of those parties that have not been identified, and the

23   U.S. Trustee would be given the code, the unredacted

24   information and the code, specifically to identify what

25   information was withheld.

1            I won't go further with that today, but I do think

2     it's important.  There's a very strong -- as you know, a very

3     strong public policy of public access to all bankruptcy court

4     records.  And that's reflected in 107.  So just the fact that a

5     counterparty, because of the volatility of the market, may not

6     want itself identified, in my view, is not sufficient to

7     support sealing.  But I'll leave that issue for another day.

8     All right.

9            MR. GOLDBERG:  Thank you, Your Honor.

10           THE COURT:  Is there any --

11           MR. VELEZ-RIVERA:  Your Honor, this is Andy Velez-

12    Rivera.  May I speak on a couple of those issues?

13           THE COURT:  Absolutely, Mr. Velez-Rivera.  Go ahead.

14           MR. VELEZ-RIVERA:  Thank you, Your Honor.  I can give

15    the Court an update as to one of those sealing motions.  The

16    first sealing motion, which seals a portion of the initial

17    petition in the case, is one that we plan to object to.  I will

18    certainly call Mr. Goldberg.

19           I heard him say a few minutes ago that counsel to the

20    creditor, who has commenced the arbitration in New York against

21    the debtor, has asked that the arbitration remain confidential.

22    But in recent days, that creditor itself, in a series of

23    Twitter feeds, has disclosed its own exposure to the debtor.

24    So the motions may be moot, for all intents and purposes, at

25    this point.  We'll talk to Mr. Goldberg about that.

1    And we will speak to Mr. Goldberg as well about the
2    second motion.  I haven't been given instructions on that,
3    since it was filed just late yesterday.  But knowing my boss,
4    the U.S. Trustee looks askance at motions like that.  The
5    service list goes to the heart of the case, Your Honor.  Even
6    though BVI law may be different on the matter, our law, as it
7    appears in Section 107, is very different.  So I'll speak with
8    Mr. Goldberg about all of that, Your Honor.  Thank you.

9    THE COURT:  Thanks very much, Mr. Velez-Rivera.

10   Go ahead, Mr. Goldberg.

11   MR. MOHEBBI:  Your Honor, this is Nima Mohebbi.  I
12   just wanted to make one point that we were able to suss out, in
13   response to one of your questions, as to whether or not the
14   founders signed anything in the BVI.

15   Our understanding is that one of the founders, Kyle
16   Davies, submitted a unsworn affidavit in support of the
17   petition appointing the liquidators.  But that was all.  The
18   other founder, Mr. Zhu Su, did not.

19   THE COURT:  Thank you very much, Mr. Mohebbi.

20   All right.  Mr. Goldberg?

21   MR. GOLDBERG:  Thank you, Your Honor.  We will, of
22   course, engage with the Office of the United States Trustee on
23   those sealing motions and continue the discussions with the
24   relevant parties-in-interest on that front.

25   Your Honor, I'm happy to address the merits of the

1  motion, if you would like.  I'm sure you've read the papers and

2  are familiar with the details, of course.  I'm happy to explain

3  the changes that we've made to the proposed order this morning,

4  if that's more helpful.  What would Your Honor prefer?

5         THE COURT:  Well, let me see.  Does anybody else wish

6  to be heard with respect to the emergency motion, which is ECF

7  22?

8         All right.  Mr. Goldberg, why don't you go through the

9  changes that were made in the proposed order?  And I did review

10 the proposed order this morning.

11        MR. GOLDBERG:  Thank you.

12        THE COURT:  And I looked at the original proposed

13 order.  Go ahead.

14        MR. GOLDBERG:  So at docket number 30, ECF 30, we have

15 filed a revised proposed order that essentially makes two

16 changes, at the request of a creditor that reached out.  First,

17 in paragraph 3, which is the provision that suspends the

18 ability of any person to transfer, encumber, or otherwise

19 dispose of the debtor's assets, we have clarified that that

20 applies to assets of the debtor located within the territorial

21 jurisdiction of the United States.

22        THE COURT:  Okay.

23        MR. GOLDBERG:  Second, we have added a clarification

24 that this provision is not intended to restrict any party from

25 the valid exercise of rights or remedies with respect to any

 1  enforceable and perfected security interests, subject to a

 2  general reservation of rights for all parties as to what

 3  constitutes a enforceable and perfected security interest and

 4  what is a proper exercise of those rights.

 5          On this point, Your Honor, I would note that BVI law

 6  does not restrict the exercise of rights by secured creditors,

 7  and so we do not seek that relief here.

 8          THE COURT:  All right.  Is the foreign debtor a party

 9  to any derivative contracts or other contracts that would be

10  subject to any of the provisions of the Code that would not

11  apply the automatic stay to terminating such contracts?

12          MR. GOLDBERG:  I'm not aware, standing here today,

13  whether there are any derivatives contracts that would satisfy

14  the requirements of the safe harbor provisions of the Code,

15  Your Honor.  There may be.

16          THE COURT:  All right.  So elaborate for me a little

17  bit.  You've changed the provision that doesn't limit the

18  rights of secured parties to exercise their rights.  Put that

19  in words what you what you contemplate that permits a secured

20  creditor to do here.

21          MR. GOLDBERG:  Well, essentially, Your Honor, if a

22  secured creditor today, or prior to the petition date, has a

23  valid and perfected security interest on any asset located in

24  the United States, we would not seek to stay their foreclosure,

25  their exercise of remedies on that collateral of theirs in the

1    United States.

2         THE COURT:  And do you understand that any secured

3    parties in the United States have a possessory interest in

4    anything that you contend is an asset of the foreign debtor?

5         MR. GOLDBERG:  I don't have an answer on that

6    question, as we stand here today, Your Honor.  The debtor, as

7    we understand it, has had assets that have already been subject

8    to some degree of foreclosure.  I think it is going to be a

9    question put before this Court, as well as other courts that

10   are hearing insolvency and bankruptcy related matters in

11   cryptocurrency cases, where are digital assets located?  I'm

12   not sure that there has been a definitive answer on that

13   question.  And what constitutes a possessory and control

14   interest in digital assets is also a question that this Court

15   or other courts in these types of cases may have to address.

16        THE COURT:  Yeah, I'm somewhat -- I've heard some

17   discussion about what is the asset, where is it located,

18   because often it's just an entry somewhere in cyberspace of a

19   record.  We'll have to deal with it.  I guess Judge Wiles will

20   also be dealing with those issues in the Voyager case as well.

21   And --

22        MR. GOLDBERG:  Exactly.

23        THE COURT:   -- I know this issue has come up in Japan

24   and I think elsewhere as well.  So we'll leave that for another

25   day.

1          All right.  So with respect to your request for an

2    order permitting entrustment for administration, in realization

3    of assets in the United States, are there any that you know of

4    now?

5          MR. GOLDBERG:  Well, we believe that there will be

6    bank accounts and digital currency wallets that we may take the

7    position are located in the United States.  I don't have any

8    that I can specifically identify for you, standing here today.

9          THE COURT:  All right.

10         MR. GOLDBERG:  I think, Your Honor, on this point, if

11   I may, as well, a key part of this order is to put the world on

12   notice that it is the liquidators that are controlling the

13   debtor's assets at this stage.  No one else, other than the

14   liquidators, is authorized to control the debtor's assets, for

15   this Court's purposes, in the United States, but our position

16   is anywhere in the world, Your Honor.

17         THE COURT:  Well, when you say -- I mean, the limit of

18   my authority is the territorial jurisdiction of the United

19   States.

20         MR. GOLDBERG:  Absolutely.  And we agree with that,

21   Your Honor.

22         THE COURT:  Whether you can get relief in Singapore or

23   BVI with potentially broader coverage, I can't speak to that.

24         MR. GOLDBERG:  We understand, Your Honor.

25         THE COURT:  All right.  I'm just looking through my

1    notes here.  So as I understand it, with respect to the

2    discovery that you're seeking, it's a relatively narrow time

3    period, January 1, 2022 to the present, is that correct?

4          MR. GOLDBERG:  Yes, that's right, Your Honor.  There

5    may be occasion to come back to this Court or other courts to

6    seek additional broader discovery.  At this point, we have

7    essentially limited our request to what we need.  What we're

8    looking for is information about where the debtor's assets are

9    today, and any transfers that may have occurred, any

10   fluctuations in those assets over the course of this calendar

11   year, which we've taken a reasonable judgment is the time

12   period that would allow us to assess any transfers of those

13   assets that the debtor may have the ability to recover.

14         Now, there may be other causes of action, there may be

15   other investigations that are underway that go farther back.

16   But for this immediate time period of taking control of the

17   debtor's assets and stabilizing the estate, we're trying to

18   minimize the burden on other parties and ask for a limited time

19   period.

20         THE COURT:  All right.  Does anybody else wish to be

21   heard before I rule?

22         All right.  So Section 1519 of the Bankruptcy Code

23   permits the Court, from the time of filing a petition for

24   recognition, until the Court rules on the petition, to grant

25   provisional relief, pending recognition of the foreign

1  proceeding, where such relief is urgently needed to protect the

2  assets of the debtor or the interests of the creditors.

3        And Section 1519 provides three nonexclusive examples

4  of provisional relief that can be granted by the Court.  The

5  examples include "entrusting the administration or realization

6  of all or part of the debtor's assets located in the United

7  States to the foreign representative in order to protect and

8  preserve the value of assets that, by their nature or, because

9  of other circumstances, are perishable, susceptible to

10  devaluation or otherwise in jeopardy".

11        And 1519 also permits the Court to order any relief

12  that would be available under 1521(a)(3), (4), and (7).  And

13  (3), (4), and (7) in 1521(a) provide that upon recognition of a

14  foreign proceeding, whether main or nonmain, the court may

15  grant any appropriate relief, including, in subsection (3),

16  "suspending the right to transfer, encumber, or otherwise

17  dispose of any assets of the debtor to the extent this right

18  has not been suspended under Section 1520(a)".

19        Subsection (4) is "providing for the examination of

20  witnesses, the taking of evidence, or the delivery of

21  information concerning the debtor's assets, affairs, rights,

22  obligations or liabilities".

23        And subsection (7) of 1521(a) provides for "granting

24  any additional relief that may be available to a trustee,

25  except for relief available under Sections 522, 544, 545, 547,

 1  548, 550, and 724(a)".

 2          In deciding whether to grant provisional relief in a

 3  Chapter 15 case, under Section 1519(a), the court applies the

 4  standards for issuance of a preliminary injunction.  See In re

 5  Beechwood Re 2019 WL 3025283, *2 -- it's one of my opinions --

 6  (Bankr. S.D.N.Y. July 10, 2019).

 7          Therefore, to obtain an injunction, the movant must

 8  show that there is a likelihood of success on the merits, which

 9  I consider to be obtaining Chapter 15 recognition; and that,

10  two, there is a risk of irreparable harm in the absence of

11  relief;  and three, the balance of hardship tips in favor in

12  the movant's favor; and four, the public interest weighs in

13  favor of the injunction.  See Secured Worldwide LLC v. Kinney,

14  2015 WL 1514738, *10 (S.D.N.Y. April 1, 2015).

15          And in considering whether to grant injunctive relief,

16  courts take a flexible approach, and no one factor is

17  determinative.  See Calpine Corp. v. Nevada Power Corp. (In Re

18  Calpine Corp.) 365 B.R. 401, 409 (S.D.N.Y. 2007).

19          Section 1522 of the Code provides that the court may

20  grant relief under 1519 "only if the interests of the creditors

21  and other interested entities, including the debtor, are

22  sufficiently protected".

23          Additionally, if the court grants provisional relief

24  under Section 1519, it may thereafter modify or terminate such

25  provisional relief at the request of the foreign

1    representative, any entity affected by such relief, or at its

2    own motion.  See 1522(c).

3          For discovery under 1521(a)(4), discovery under that

4    subsection enables a foreign representative to take broad

5    discovery concerning the property and affairs of a foreign

6    debtor.  See In re Markus, 607 B.R. 379, 388, 389 (Bankr.

7    S.D.N.Y. 2019), affirmed in part, vacated in part, on other

8    grounds, remanded sub nom. Markus v. Rozhkov, 615 B.R. 679

9    (S.D.N.Y. 2020).  That is an opinion of mine.  It's actually a

10   contempt opinion, but it looks broadly at the rights to

11   discovery in a Chapter 15 proceeding.

12         One of the main purposes of Chapter 15 is to assist a

13   foreign representative in the administration of the foreign

14   estate.  And Rule 2004 proceedings are one of the mechanisms by

15   which bankruptcy courts provide such assistance.  See In re

16   Platinum Partners Value Arbitrage Fund L.P., 583 B.R. 803, 810

17   (Bankr. S.D.N.Y. 2018).  And it's one of Judge Chapman's

18   decisions.

19         Interestingly, assuming you can serve a subpoena, the

20   court may order production of documents from outside the United

21   States, because Rule 45 subpoena power is not limited to the

22   production of documents located in the United States.  See In

23   re Markus 607 B.R. 389.

24         With respect to the relief being sought, with respect

25   to entrustment, the provisional relief that a court may grant

1  under 1519(a)(2) is very similar to the discretionary relief

2  that a court may grant under 1521(a)(5).  See Collier on

3  Bankruptcy, paragraph 1519.01, "Under Section 1519, delivery of

4  assets is limited to those that are perishable, susceptible to

5  devaluation, or otherwise in jeopardy.  No such limitation

6  appears in Section 1521 on relief available upon recognition."

7          Section 1521(a)(5) of the Code permits the court to

8  order entrusting the administration or realization of all or

9  part of the debtor's assets in the United States to the foreign

10  representative.  See In re Atlas Shipping A/S, 404 B.R. 726,

11  740 (Bankr. S.D.N.Y. 2009).   This relief includes the

12  authority to obtain turnover of assets in the hands of third

13  parties, again, citing Atlas, the same page, 740.

14          There are two forms of entrustment that are permitted.

15  The only one at this stage of the case is entrustment of all

16  assets to remain under the control of the foreign

17  representatives but remain in the United States.

18          So I've read all of the declarations which have been

19  admitted into evidence.  The foreign representative submits

20  that they're likely to succeed on the merits and obtain

21  recognition of the BVI proceeding as a foreign main proceeding

22  or, in the alternative, as foreign nonmain proceeding.

23          As I say, because of the Second Circuit's Fairfield

24  Sentry case, I think they're likely to succeed on the merits of

25  obtaining recognition of the BVI proceeding as a foreign main

1 proceeding.

2       With respect to recognition, as I said, the motion did

3 not set forth the elements regarding what is comity to

4 establish a BVI proceeding as a foreign main proceeding.  But I

5 think my questions, and the showing with respect to the

6 liquidation proceeding, and the appointment of the JPLs in the

7 in the BVI, certainly would support and I believe does show a

8 likelihood of success in having the case recognized as a

9 foreign main proceeding.

10       Additionally, it's likely that the foreign

11 representatives are foreign representatives within the meaning

12 of Section 101(24) of the Bankruptcy Code because they were

13 appointed under the liquidation order by the BVI court.

14       The foreign representatives are also likely to succeed

15 in obtaining discretionary relief under 1521(a)(4) and (a)(5)

16 to protect the foreign debtor's assets from interference and to

17 ensure fair and efficient administration of the BVI proceeding.

18       Since no objections have been filed, I'll cut short

19 some of the things I would say in support, but I'm certainly

20 familiar with these issues, having dealt with them in many

21 other cases.  And I'm satisfied that all of the requirements

22 for the relief that's being sought here have been satisfied.

23       I believe that the foreign representatives have shown

24 the risk of irreparable harm if the provisional relief is not

25 granted.  The Crumpler declaration sets forth the actual and

1   imminent risk that, during the provisional period, the foreign

2   debtor's assets will be transferred or otherwise disposed of by

3   parties other than the foreign representative, including by the

4   founders or individuals acting at their direction.  That's

5   paragraph 12 of the Crumpler declaration.

6           The foreign representatives also state that they've

7   not been able to recover the assets without expending

8   significant time and resources, if they're able to recover them

9   at all.  Additionally, the risk is higher here because the

10  foreign debtor's assets consist of cryptocurrencies and

11  nonfungible tokens that are readily transferable, and the

12  founders' physical whereabouts are unknown, and the foreign

13  representatives believe the founders may maintain many of the

14  accounts where the foreign debtor's assets are held.

15          The foreign representatives clearly have shown that

16  the balance of hardships favors the granting of the provisional

17  relief that's been sought here.

18          The provisional relief will protect the foreign

19  debtor's assets and maintain the status quo.  It will not

20  affect the ability of creditors to assert their claims in the

21  BVI proceeding or seek relief from this court.  Therefore, in

22  accordance with Section 1522 of the Bankruptcy Code, the

23  interests of other creditors are "sufficiently protected".

24          See also 1522(c), "The Court may, at the request of

25  the foreign representative, or an entity affected by the relief

1  granted under Section 1519" -- I'll leave some words out -- "or

2  its own motion, modify or terminate such relief."  So parties

3  can seek relief if they believe there's a basis for modifying

4  the order.

5          I also conclude the provisional relief will cause

6  little, if any, harm to the founders or other recipients of

7  document discovery requests because the requests are narrowly

8  targeted, the rights of the subpoena recipients are preserved.

9  They can certainly come in and object.  Obviously, they'll

10  first negotiate in good faith with the foreign representative's

11  counsel.  And hopefully none of those issues will have to come

12  back here.

13          I would just say, Mr. Goldberg, my practice is, if

14  there are discovery disputes as to which one side or the other

15  to the dispute needs the assistance of the Court, rather than

16  filing motions, you contact my courtroom deputy, and we arrange

17  a telephone or Zoom hearing, usually the same day, or within a

18  day or two at the most.  And I find myself able to resolve

19  those disputes, typically without the necessity for any filings

20  if -- and I see in your order, you have provisions for letter

21  briefs.  That's certainly satisfactory to me.  I try to avoid

22  the necessity for voluminous writings, and in fact, what I do

23  on discovery disputes is take letter briefs and require them to

24  be done very quickly.  And I'm usually able -- if the parties

25  can't resolve those issues, I'm able to do so very quickly.

1        So for purposes of today's hearing, the debtor's

2    motion, ECF docket number 22, is granted, both the discovery is

3    expressly permitted and also entrustment of any assets within

4    the United States.

5        There are obviously, I think, tricky issues as to what

6    type of assets they are, where are they located.  And certainly

7    the Court stands ready to, if the parties can't resolve those

8    issues, to try and reach a resolution on them.  If you

9    submit -- as I say, I did review the revised order this

10   morning.

11       Does anybody have any comments about the revised

12   order?

13       All right.  It's, in form, satisfactory to me, and

14   that will be entered.  Certainly, let me make clear that with

15   respect to the issues regarding recognition, the order includes

16   provisions about it.  But any final order with respect to

17   recognition will take place at the recognition hearing -- after

18   the recognition hearing.

19       And earlier in this hearing, Mr. Goldberg, I asked for

20   organizational charts, things of that nature, and I hope you'll

21   submit that sufficiently in advance of the recognition hearing.

22       Anything else for today?

23       MR. GOLDBERG:  That's all we have, Your Honor.  Thank

24   you.

25       THE COURT:  All right.  Does anybody else have

1    anything they want to raise with the Court today?

2            All right.  If you submit a Word version of the order

3    to chambers, it will be entered promptly.

4            MR. GOLDBERG:  Thank you, Your Honor.  We will do so.

5            THE COURT:  All right.  Thank you very much.  We are

6    adjourned.

7            MR. GOLDBERG:  Thank you.

8        (Whereupon these proceedings were concluded at 9:52 AM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2                          I N D E X

 3                       E X H I B I T S

 4   DEBTOR'S        DESCRIPTION            MARKED  ADMITTED

 5                   Declarations of Russell        15

 6                   Crumpler

 7                   Declaration of                 15

 8                   Christopher Farmer

 9                   Declarations of Grant          15

10                   Carroll

11

12   RULINGS:                              PAGE  LINE

13   Debtor's motion, ECF docket number 22,        38      19

14   is granted.  The discovery is

15   expressly permitted and also

16   entrustment of any assets within the

17   United States.

18

19

20

21

22

23

24

25
```

1

2                     C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    Sharona Shapiro

8

9    _____

10   Sharona Shapiro (CET-492)

11   AAERT Certified Electronic Transcriber

12

13   eScribers

14   352 Seventh Ave., Suite #604

15   New York, NY 10001

16

17   Date:  July 13, 2022

18

19

20

21

22

23

24

25

\*

**\*10 (1)**
32:14
**\*2 (1)**
32:5

**A**

**A/S (1)**
34:10
**a5 (1)**
35:15
**ability (4)**
8:14;26:18;30:13;
36:20
**able (9)**
6:6;11:22;13:17;
25:12;36:7,8;37:18,
24,25
**above (1)**
12:16
**absence (1)**
32:10
**absolutely (4)**
17:6;22:15;24:13;
29:20
**access (5)**
9:7,12;12:22;
16:22;24:3
**accordance (1)**
36:22
**according (1)**
8:25
**account (3)**
10:8;16:2;17:16
**accounts (4)**
9:16;17:16;29:6;
36:14
**accurate (1)**
13:1
**acknowledge (1)**
21:23
**acting (1)**
36:4
**action (3)**
8:2;20:20;30:14
**active (1)**
22:5
**activities (1)**
13:25
**activity (2)**
14:8,9
**actual (1)**
35:25
**actually (4)**
11:18;12:17;
20:22;33:9
**added (1)**
26:23
**addition (3)**
8:19;16:5;20:22

**additional (5)**
6:9;16:9;22:13;
30:6;31:24
**Additionally (3)**
32:23;35:10;36:9
**address (4)**
12:3;17:6;25:25;
28:15
**addressed (1)**
18:1
**addresses (1)**
9:13
**adjourned (1)**
39:6
**adjudicate (1)**
18:9
**administration (5)**
29:2;31:5;33:13;
34:8;35:17
**admitted (5)**
15:5,9,14,19;34:19
**admitting (1)**
15:7
**advance (1)**
38:21
**affairs (3)**
13:24;31:21;33:5
**affect (1)**
36:20
**affected (2)**
33:1;36:25
**affidavit (1)**
25:16
**affiliates (2)**
12:9;13:13
**affirmed (2)**
14:7;33:7
**again (5)**
6:17;17:22;22:19;
23:4;34:13
**against (1)**
18:18;24:20
**ago (2)**
23:16;24:19
**agree (2)**
14:20;29:20
**agreements (1)**
16:6
**ahead (6)**
9:4;13:2;17:5;
24:13;25:10;26:13
**allow (2)**
9:11;30:12
**along (2)**
6:18;21:13
**alternative (1)**
34:22
**although (1)**
11:4
**analytical (1)**
9:11
**ANDY (3)**
5:9;20:2;24:11

**ANNIE (1)**
5:11
**anticipate (3)**
16:13,16;17:23
**appearance (3)**
6:12;19:19;20:10
**appearances (1)**
6:7
**appears (2)**
25:7;34:6
**applicable (1)**
23:17
**applies (2)**
26:20;32:3
**apply (1)**
27:11
**appointed (1)**
35:13
**appointing (4)**
7:19;8:5;18:13;
25:17
**appointment (6)**
7:15,17;8:7;9:5;
13:25;35:6
**appreciate (1)**
18:7
**approach (4)**
12:24;13:5;21:25;
32:16
**appropriate (2)**
20:25;31:15
**April (1)**
32:14
**Arbitrage (1)**
33:16
**arbitration (7)**
16:4,7;21:7,17,18;
24:20,21
**around (2)**
9:16;22:4
**arrange (1)**
37:16
**array (1)**
22:6
**Arrows (7)**
6:4,21,24;7:2;
13:9;22:6,8
**askance (1)**
25:4
**assert (1)**
36:20
**assess (1)**
30:12
**asset (3)**
27:23;28:4,17
**assets (47)**
7:1,6,23;8:1,14,16;
9:20;10:5,14,23,24;
11:10,12,25;15:22;
16:9;19:6;22:12;
26:19,20;28:7,11,14;
29:3,13,14;30:8,10,
13,17;31:2,6,8,17,

21;34:4,9,12,16;
35:16;36:2,7,10,14,
19;38:3,6
**assigned (1)**
9:2
**assist (1)**
33:12
**assistance (2)**
33:15;37:15
**assume (1)**
21:6
**assuming (1)**
33:19
**Atlas (2)**
34:10,13
**attachment (1)**
21:4
**attempt (1)**
9:20
**attempting (1)**
10:16
**attempts (1)**
11:1
**attention (2)**
11:18;20:18
**Attorneys (3)**
4:3,13;5:4
**authority (2)**
29:18;34:12
**authorize (1)**
11:13
**authorized (2)**
7:22;29:14
**authorizes (1)**
8:6
**automatic (1)**
27:11
**available (7)**
9:7;10:12;15:3;
31:12,24,25;34:6
**Avenue (1)**
4:4
**avoid (1)**
37:21
**Avoidance (1)**
20:19
**aware (1)**
27:12

**B**

**back (3)**
30:5,15;37:12
**background (2)**
6:14,20
**balance (2)**
32:11;36:16
**bank (4)**
10:7;17:16;20:20;
29:6
**Bankr (5)**
20:21;32:6;33:6,
17;34:11

**21;34:4,9,12,16;
35:16;36:2,7,10,14,
19;38:3,6**
**Bankruptcy (9)**
20:24;21:5;24:3;
28:10;30:22;33:15;
34:3;35:12;36:22
**banks (1)**
17:13
**based (1)**
16:4
**basis (3)**
10:21;11:24;37:3
**become (2)**
8:24;18:19;22:6
**Beechwood (1)**
32:5
**benefit (3)**
7:24;8:2,13
**best (1)**
13:1
**billion (1)**
7:2
**bit (2)**
12:24;27:17
**blockchain (2)**
9:10,14
**boss (1)**
25:3
**both (1)**
38:2
**Box (1)**
4:14
**BR (7)**
20:21;32:18;33:6,
8,16,23;34:10
**briefs (1)**
37:21,23
**bring (1)**
17:1
**British (1)**
7:13
**broad (2)**
8:3;33:4
**broader (2)**
29:23;30:6
**broadly (1)**
33:10
**burden (1)**
30:18
**business (6)**
7:13;14:9;17:14,
19;19:4;22:8
**BVI (39)**
6:23;7:17,18,20,
21;8:9,21;12:13;
13:8,10,21,21,24,25;
14:8,10,13,21;15:1;
18:11,13,17,21,21,
23;19:10;22:9,23;
25:6,14;27:5;29:23;
34:21,25;35:4,7,13,
17;36:21

**C**

**calendar (1)**
30:10
**call (2)**
20:18;24:18
**called (2)**
7:7,8
**Calpine (2)**
32:17,18
**came (1)**
10:10
**can (11)**
10:25;12:14;16:9;
19:12;24:14;29:8,
22;31:4;33:19;37:3,
9
**Capital (2)**
6:21;13:10
**CARROLL (4)**
4:18;15:1,17,20
**case (20)**
6:4;8:6,11,20;
10:23;11:18;13:8,9;
14:20;19:3;21:17;
22:3;23:16;24:17;
25:5;28:20;32:3;
34:15,24;35:8
**cases (3)**
28:11,15;35:21
**categories (2)**
16:16;17:10
**cause (1)**
37:5
**causes (3)**
8:1,2;30:14
**CAY (1)**
4:12
**certain (7)**
9:8,15;10:5;11:14,
19;22:5;23:18
**Certainly (15)**
14:5,7,14;19:1;
21:1,11;22:24;23:7;
24:18;35:7,19;37:9,
21;38:6,14
**certificate (3)**
20:14;21:2,24
**cetera (1)**
12:9
**chambers (2)**
17:4;39:3
**chance (1)**
17:4
**changed (1)**
27:17
**changes (4)**
17:7;26:3,9,16
**Chapman's (1)**
33:17
**Chapter (9)**
8:6,8,11,20;13:8;
32:3,9;33:11,12
**chart (4)**
12:16,18,21;13:4

**charts (1)**
38:20
**Chase (1)**
20:20
**check (1)**
19:13
**choice (1)**
11:2
**CHRISTINE (1)**
4:8
**CHRISTOPHER (5)**
4:7;5:16;7:19;
14:25;15:15
**Circuit's (2)**
14:5;34:23
**circumstances (2)**
20:25;31:9
**citing (1)**
34:13
**City (1)**
16:5
**claims (3)**
8:17;9:18;36:20
**clarification (1)**
26:23
**clarified (1)**
26:19
**clear (3)**
10:18;16:17;38:14
**clearly (1)**
36:15
**Co (2)**
20:19,21
**Code (11)**
20:24;23:21,23,
24;27:10,14;30:22;
32:19;34:7;35:12;
36:22
**collapsed (1)**
7:13
**collateral (1)**
27:25
**colleagues (2)**
20:17;21:10
**collection (1)**
8:12
**Collier (1)**
34:2
**COMI (2)**
14:8,20
**coming (1)**
8:25
**comity (2)**
23:2;35:3
**commence (1)**
9:21
**commenced (4)**
8:21;9:17;19:3;
24:20
**comments (1)**
38:11
**Commission (1)**
13:22

**communication (1)**
21:20
**communications (2)**
10:2;19:20
**complete (1)**
10:7
**comprised (1)**
7:6
**concerning (6)**
12:23;13:3;17:15,
17;31:21;33:5
**concerns (1)**
13:9
**conclude (1)**
37:5
**concluded (1)**
39:8
**confidential (4)**
21:18;23:13,19;
24:21
**confidentiality (3)**
11:20;22:10,24
**connection (2)**
8:23;16:4
**consensually (3)**
11:5;16:19,23
**consent (1)**
23:15
**consider (1)**
32:9
**considering (1)**
32:15
**consist (1)**
36:10
**constitute (1)**
18:22
**constitutes (2)**
27:3;28:13
**contact (1)**
37:16
**contain (1)**
10:7
**contemplate (1)**
27:19
**contempt (1)**
33:10
**contend (1)**
28:4
**continue (3)**
11:4;13:4;25:23
**continues (2)**
9:25;16:8
**contracts (4)**
27:9,9,11,13
**control (7)**
7:23;9:15;18:15;
28:13;29:14;30:16;
34:16
**controlled (1)**
14:10
**controlling (1)**
29:12
**conversation (1)**

23:5
**conveyed (1)**
19:22
**cooperation (3)**
10:1,9,13
**cooperative (2)**
11:25;19:5
**cooperatively (2)**
10:19;11:6
**copies (1)**
23:8
**copy (2)**
21:6,15
**Corp (3)**
32:17,17,18
**counsel (6)**
9:22;10:3;15:1;
21:20;24:19;37:11
**counterparties (1)**
16:19
**counterparty (1)**
24:5
**couple (3)**
16:15;17:7;24:12
**course (3)**
25:22;26:2;30:10
**COURT (88)**
6:2;7:18,22;9:1,2,
4;10:11;11:3,9;12:3,
6,17;13:5,16,17;
14:4;15:6,7,12,17,
22;16:9,10,11,17,24;
17:2,3;18:1,6,11,11,
17,21,23;19:9,14,17;
20:1,4,7,9;21:9;
22:19;23:1,11;24:3,
10,13,15;25:9,19;
26:5,12,22;27:8,16;
28:2,9,14,16,23;
29:9;17,22,25;30:5,
20,23,24;31:4,11,14;
32:3,19,23;33:20,25;
34:2,7;35:13;36:21,
24;37:15;38:7,25;
39:1,5
**courtroom (2)**
15:3;37:16
**courts (5)**
28:9,15;30:5;
32:16;33:15
**Court's (1)**
29:15
**coverage (1)**
29:23
**creditor (7)**
7:14;17:8;24:20,
22;26:16;27:20,22
**creditors (12)**
7:24;9:17;21:22;
22:2,10,11,24;27:6;
31:2;32:20;36:20,23
**cross- (1)**
15:3

**CRUMPLER (9)**
5:15;7:19;14:1,23;
15:7,10,25;35:25;
36:5
**cryptocurrencies (2)**
9:14;36:10
**cryptocurrency (7)**
6:25;7:7;17:13,17;
22:4,14;28:11
**currency (4)**
7:3,4;10:24;29:6
**custody (1)**
7:22
**cut (1)**
35:18
**cyberspace (1)**
28:18

**D**

**Dan (1)**
16:3
**date (6)**
15:11,16,21;
18:12;19:8;27:22
**Davies (3)**
6:23;9:23;25:16
**day (6)**
7:18;14:4;24:7;
28:25;37:17,18
**days (3)**
8:25;11:17;24:22
**deal (4)**
14:11;15:8;20:12;
28:19
**dealing (1)**
28:20
**dealt (1)**
35:20
**debtor (30)**
7:11,16;9:18,22;
11:15;12:14,23;13:3,
8,15,19,23;14:21;
16:4,5;17:14,15,17;
19:2;24:21,23;
26:20;27:8;28:4,6;
30:13;31:2,17;
32:21;33:6
**debtors (1)**
10:6
**debtor's (28)**
7:6,23;8:1,14;
9:19;10:22;11:12,
25;12:7;18:15;19:6,
9,9;22:12;26:19;
29:13,14;30:8,17;
31:6,21;34:9;35:16;
36:2,10,14,19;38:1
**December (1)**
6:25
**deciding (1)**
32:2
**decision (4)**

22-10920-mg    Doc 35    Filed 07/13/22    Entered 07/13/22 16:05:13    Main Document
Three Arrows Capital, LTD, and Russell Crumpler    Pg 44 of 51

Main Case No. 22-10920 (MG)    July 12, 2022

14:6,6;20:19;
23:14
**decisions (1)**
33:18
**declarants (1)**
15:2
**declaration (7)**
14:24,25;15:12,15,
25;35:25;36:5
**declarations (9)**
14:1,18,23;15:4,7,
10,18,20;34:18
**default (1)**
7:12
**definitive (1)**
28:12
**degree (1)**
28:8
**delivery (2)**
31:20;34:3
**denominated (1)**
7:3
**DEPARTMENT (1)**
5:3
**deputy (1)**
37:16
**derivative (1)**
27:9
**derivatives (1)**
27:13
**designed (2)**
11:24;16:21
**destabilization (1)**
22:13
**detail (1)**
14:3
**details (1)**
26:2
**determinative (1)**
32:17
**devaluation (2)**
31:10;34:5
**different (4)**
9:13,14;25:6,7
**Digital (8)**
4:3;7:3;9:13;
10:24;17:16;28:11,
14;29:6
**direction (1)**
36:4
**disclose (2)**
22:2;23:10
**disclosed (1)**
24:23
**disclosure (1)**
13:15
**disclosures (3)**
12:24;13:5;21:4
**discovery (15)**
11:4;13:2;16:12;
18:12,18;30:2,6;
33:3,3,5,11;37:7,14,
23;38:2

**discrete (1)**
17:7
**discretionary (2)**
34:1;35:15
**discuss (1)**
21:9
**discussion (2)**
6:14;28:17
**discussions (3)**
9:17,21;25:23
**dispose (3)**
11:12;26:19;31:17
**disposed (1)**
36:2
**dispute (1)**
37:15
**disputes (3)**
37:14,19,23
**disruptions (1)**
22:4
**docket (8)**
6:5;14:18,25;15:2,
25;21:1;26:14;38:2
**dockets (1)**
14:24
**document (2)**
16:10;37:7
**documents (3)**
9:8;33:20,22
**dollar (1)**
7:9
**dollars (2)**
7:2;10:17
**done (3)**
17:14;22:7;37:24
**dozen (1)**
17:21
**during (2)**
19:13;36:1
**duties (1)**
10:22

**E**

**earlier (2)**
14:6;38:19
**earnest (1)**
9:7
**easily (1)**
10:25
**ECF (10)**
6:5;14:18;15:8,13,
18;20:12,13;26:6,14;
38:2
**effectively (1)**
7:13
**effectuate (1)**
7:23
**efficient (1)**
35:17
**effort (3)**
9:21;16:18;22:11
**efforts (2)**

8:12;11:3
**elaborate (1)**
27:16
**elements (1)**
35:3
**ELLIS (1)**
4:2
**else (6)**
6:11;26:5;29:13;
30:20;38:22,25
**elsewhere (3)**
12:13;17:19;28:24
**emergency (4)**
6:3;10:10;11:9;
26:6
**empower (1)**
18:14
**empowered (1)**
7:25
**enables (1)**
33:4
**encumber (3)**
11:11;26:18;31:16
**end (1)**
13:6
**enforce (1)**
23:2
**enforceable (2)**
27:1,3
**engage (7)**
11:3,5,6;16:18;
19:7,8;25:22
**engagement (1)**
19:7
**engaging (1)**
22:16
**ensure (2)**
12:25;35:17
**entered (3)**
7:18;38:14;39:3
**entities (2)**
11:14;32:21
**entity (6)**
12:16;13:9,10,12;
33:1;36:25
**entrusting (3)**
11:10;31:5;34:8
**entrustment (5)**
29:2;33:25;34:14,
15;38:3
**entry (1)**
28:18
**especially (2)**
10:23;19:5
**ESQ (6)**
4:8,9,18;5:9,10,11
**essentially (6)**
7:10;23:19,20;
26:15;27:21;30:7
**establish (2)**
16:21;35:4
**estate (3)**
8:2;30:17;33:14

**et (1)**
12:9
**Even (1)**
25:5
**everyone (1)**
6:2
**evidence (14)**
12:5;13:16;14:2,
15,22;15:5,7,11,16,
19,21;16:9;31:20;
34:19
**evidenced (1)**
15:24
**evidentiary (1)**
14:3
**Exactly (1)**
28:22
**examination (2)**
15:4;31:19
**examples (2)**
31:3,5
**exceeding (1)**
7:1
**except (1)**
31:25
**exchanges (1)**
17:13
**exercise (6)**
23:2;26:25;27:4,6,
18,25
**exist (1)**
8:2
**expect (1)**
19:4
**expected (1)**
8:24
**expending (1)**
36:7
**explain (1)**
26:2
**explaining (1)**
12:8
**explorers (1)**
9:10
**exposure (2)**
22:6;24:23
**expressly (2)**
8:5;38:3
**extensively (1)**
20:23
**extent (1)**
31:17

**F**

**faced (1)**
12:22
**facilities (1)**
12:12
**fact (2)**
24:4;37:22
**factor (2)**
22:25;32:16

**fair (1)**
35:17
**Fairfield (3)**
14:5,7;34:23
**fairly (1)**
10:5
**faith (1)**
37:10
**familiar (2)**
26:2;35:20
**far (1)**
16:1
**FARMER (5)**
5:16;7:19;14:25;
15:12,15
**farther (1)**
30:15
**favor (3)**
32:11,12,13
**favors (1)**
36:16
**feedback (1)**
19:24
**feeder (1)**
13:14
**feeds (1)**
24:23
**feel (1)**
19:8
**few (1)**
24:19
**fiat (1)**
7:3
**fiduciaries (1)**
7:21
**fiduciary (1)**
10:22
**file (9)**
8:6;11:2;12:21;
13:4,15;20:13,14,25;
21:2
**filed (11)**
6:5,15;8:8;10:10;
11:8;20:11;21:3,24;
25:3;26:15;35:18
**filing (5)**
11:17;12:25;
19:22;30:23;37:16
**filings (1)**
37:19
**final (1)**
38:16
**finally (1)**
15:17
**Financial (2)**
13:21;22:5
**find (1)**
37:18
**finding (1)**
14:8
**firm (1)**
6:22,25;16:2,2,3
**firms (2)**

17:14;22:7

**firm's (1)**
8:16

**first (11)**
11:24;14:19;15:8,
25;16:17;17:10;
21:22,23;24:16;
26:16;37:10

**flexible (1)**
32:16

**fluctuations (1)**
30:10

**follow (1)**
22:15

**foreclosure (2)**
27:24;28:8

**Foreign (47)**
4:13;5:15;8:8,9;
9:5,11;11:10;12:7,
14;19:9;22:25;23:2,
12,17;27:8;28:4;
30:25;31:7,14;
32:25;33:4,5,13,13;
34:9,16,19,21,22,25;
35:4,9,10,11,14,16,
23;36:1,3,6,10,12,14,
15,18,25;37:10

**form (3)**
10:9;22:21;38:13

**forma (1)**
10:5

**forms (1)**
34:14

**forth (2)**
35:3,25

**found (2)**
14:22;18:2

**founded (1)**
6:22

**founder (2)**
10:15;25:18

**founders (21)**
9:22;10:3,6,12,14,
20;11:1,5,8,13;
17:11,11;18:2,18,23;
19:11;25:14,15;36:4,
13;37:6

**founders' (2)**
9:25;36:12

**four (1)**
32:12

**framework (1)**
16:21

**Friday (1)**
11:8

**front (2)**
9:24;25:24

**full (2)**
23:5,11

**fund (3)**
6:25;7:4;33:16

**funds (1)**
13:14

**further (4)**
21:13;22:13;
23:10;24:1

**furtherance (1)**
8:3

# G

**gained (1)**
11:18

**gaining (1)**
12:22

**gather (1)**
12:15

**general (3)**
9:18;12:2;27:2

**given (3)**
19:7;23:23;25:2

**giving (1)**
19:5

**Glenn (1)**
6:3

**goes (1)**
25:5

**Goldberg (50)**
6:10,13,16;9:3,5;
12:20;14:19;15:23,
24;16:15;17:6;18:4,
7,13,24;19:12,16,21,
22;20:16;21:8,14,19;
23:7;24:9,18,25;
25:1,8,10,20,21;
26:8,11,14,23;27:12,
21;28:5,22;29:5,10,
20,24;30:4;37:13;
38:19,23;39:4,7

**Good (6)**
6:2,16;14:16;20:4,
8;37:10

**GRANT (10)**
4:18;15:1,20;
30:24;31:15;32:2,15,
20;33:25;34:2

**granted (5)**
8:3;31:4;35:25;
37:1;38:2

**granting (2)**
31:23;36:16

**grants (1)**
32:23

**ground (1)**
9:20

**grounds (1)**
33:8

**guess (3)**
14:14;19:18;28:19

# H

**hands (1)**
34:12

**happy (5)**
12:3,20;14:2;

25:25;26:2

**harbor (1)**
27:14

**hardship (1)**
32:11

**hardships (1)**
36:16

**harm (3)**
32:10;35:24;37:6

**harmed (1)**
22:13

**hear (1)**
12:19

**heard (5)**
22:18;24:19;26:6;
28:16;30:21

**hearing (17)**
6:7,17;8:17;10:2;
13:6,22;15:9,14;
19:13;21:21;28:10;
37:17;38:1,17,18,19,
21

**heart (1)**
25:5

**hedge (1)**
6:25

**held (2)**
16:1;36:14

**helpful (2)**
12:17;26:4

**hereby (3)**
15:10,15,20

**Hi (1)**
20:7

**higher (1)**
36:9

**highlight (2)**
16:24;19:2

**historically (1)**
13:19

**history (1)**
9:12

**Holdings (1)**
4:3

**holds (1)**
17:18

**Honor (49)**
6:16;8:11,17,19;
9:3,24;10:18;12:2,
20;13:23;14:19;
15:4,24;16:17,24;
18:7,14,25;19:2,12;
20:2;21:8,19,22,23;
22:1,3,9,11;24:9,11,
14;25:5,8,11,21,25;
26:4,27:5,15,21;
28:6;29:10,16,21,24;
30:4;38:23;39:4

**Honor's (1)**
22:15

**hope (1)**
38:20

**hopeful (1)**

19:6

**hopefully (1)**
37:11

**hours (1)**
10:4

**HOUSE (1)**
4:12

**hundred (1)**
13:10

# I

**identified (6)**
9:15;15:22;16:1;
17:20;23:22;24:6

**identify (4)**
8:15;14:17;23:24;
29:8

**identities (1)**
22:3

**identity (2)**
21:6;22:24

**II (1)**
4:12

**immediate (1)**
30:16

**imminent (1)**
36:1

**important (1)**
24:2

**Inc (1)**
4:3

**include (1)**
16:25;23:21;31:5

**includes (3)**
21:4;34:11;38:15

**including (4)**
16:6;31:15;32:21;
36:3

**incorporated (1)**
6:23

**indicated (1)**
21:16

**indicating (1)**
22:23

**individual (1)**
8:12

**individuals (1)**
36:4

**industry (1)**
22:5

**information (25)**
9:8,20;10:8,20;
11:7,14,22;12:23;
13:2,17;16:22;17:15,
17,22,24;18:15,16;
19:6;23:1,12,18,24,
25;30:8;31:21

**informational (1)**
8:3

**informed (1)**
23:14

**initial (2)**

12:24;24:16

**initiated (3)**
7:14,17;21:17

**initiating (1)**
19:10

**injunction (3)**
32:4,7,13

**injunctive (1)**
32:15

**inquiries (1)**
11:19

**insolvency (2)**
8:1;28:10

**instance (1)**
11:24

**institutions (4)**
11:19;17:14,18,21

**instructions (1)**
22:15;25:2

**intelligence (1)**
9:10

**intended (2)**
7:8;26:24

**intending (1)**
6:8

**intents (1)**
24:24

**interest (7)**
6:18;16:1;27:3,23;
28:3,14;32:12

**interested (1)**
32:21

**Interestingly (1)**
33:19

**interests (4)**
27:1;31:2;32:20;
36:23

**interference (1)**
35:16

**into (8)**
12:4;14:2;15:5,7,
11,16,20;34:19

**investigate (4)**
7:25;8:16;9:19;
10:22

**investigation (4)**
9:6,18;11:25;16:8

**investigations (1)**
30:15

**investigative (1)**
9:9

**investment (3)**
6:22;7:6;13:14

**investments (2)**
7:4;9:16

**irreparable (2)**
32:10;35:24

**Islands (1)**
7:15

**issuance (2)**
11:13;32:4

**issue (4)**
19:17;23:6;24:7;

28:23
**issued (2)**
18:12,20
**issues (11)**
17:1;22:18,20;
24:12;28:20;35:20;
37:11,25;38:5,8,15
**issuing (3)**
16:16,20;17:23

**J**

**January (1)**
30:3
**Japan (1)**
28:23
**jeopardy (2)**
31:10;34:5
**joined (1)**
6:9
**joint (4)**
7:15,18,20,21
**JOSHUA (1)**
4:9
**JPLs (1)**
35:6
**JPMorgan (1)**
20:20
**Judge (5)**
6:3;9:2;14:6;
28:19;33:17
**judgment (1)**
30:11
**July (5)**
8:7,18,20;11:8;
32:6
**June (2)**
7:14,16
**jurisdiction (4)**
18:8,22;26:21;
29:18
**JUSTICE (1)**
5:3

**K**

**kept (1)**
23:1
**key (1)**
29:11
**Kinney (1)**
32:13
**KIRKLAND (1)**
4:2
**knowing (1)**
25:3
**knowledge (2)**
9:3;13:1
**known (2)**
7:8;9:9
**knows (1)**
8:17
**Kyle (3)**

6:22;9:23;25:15

**L**

**lack (1)**
19:7
**last (3)**
10:4;11:8,16
**late (1)**
25:3
**latest (1)**
6:20
**law (16)**
7:21;14:20;16:2,2,
3,6;18:21,22;22:9,
23,25;23:3,17;25:6,
6;27:5
**least (5)**
12:16;14:11;
17:20,24;23:6
**leave (3)**
24:7;28:24;37:1
**legal (7)**
11:4,21,25;13:9;
16:20,22;19:8
**lenders (1)**
7:4
**less (1)**
12:24
**letter (2)**
37:20,23
**Lexington (1)**
4:4
**liabilities (2)**
8:16;31:22
**Lifland (1)**
14:6
**likelihood (2)**
32:8;35:8
**likely (4)**
34:20,24;35:10,14
**limit (2)**
27:17;29:17
**limitation (1)**
34:5
**limited (6)**
14:9,10;30:7,18;
33:21;34:4
**line (1)**
20:5
**liquidation (8)**
7:24;13:8;14:10;
19:3;20:19,21;35:6,
13
**liquidator (2)**
14:2,23
**liquidators (21)**
7:16,18,20,21;8:5,
8,20,22;9:12,25;
10:4,8,13,21;11:2;
15:1;18:14,16;
25:17;29:12,14
**liquidators' (2)**

10:19;13:25
**liquidator's (1)**
8:14
**list (2)**
10:7;25:5
**listing (1)**
10:5
**little (2)**
27:16;37:6
**Livingstone (1)**
6:22
**LLC (1)**
32:13
**LLP (1)**
4:2
**loan (2)**
7:12;16:6
**loans (1)**
7:2
**locate (2)**
9:20;16:10
**located (12)**
7:25;8:15;12:10;
18:4;26:20;27:23;
28:11,17;29:7;31:6;
33:22;38:6
**location (1)**
9:25
**look (1)**
17:4
**looked (1)**
26:12
**looking (4)**
11:19;17:11;
29:25;30:8
**looks (2)**
25:4;33:10
**LP (1)**
33:16
**Ltd (2)**
6:21;13:10
**luna (2)**
7:7,10

**M**

**main (7)**
8:9;31:14;33:12;
34:21,25;35:4,9
**maintain (3)**
23:12;36:13,19
**maintained (1)**
23:18
**maintains (1)**
22:9
**makes (1)**
26:15
**managed (1)**
13:24
**management (3)**
7:1;13:11,14
**many (4)**
16:12;17:23;

35:20;36:13
**MARCUS (1)**
4:7
**market (2)**
22:4;24:5
**markets (1)**
22:14
**Markus (3)**
33:6,8,23
**matter (1)**
25:6
**matters (1)**
28:10
**may (34)**
6:12;7:10,11;8:2;
10:16;11:14;12:4;
17:15,18,18,25;
18:19;24:5,12,24;
25:6;27:15;28:15;
29:6,11;30:5,9,13,
14,14;31:14,24;
32:19,24;33:20,25;
34:2;36:13,24
**mean (1)**
29:17
**meaning (1)**
35:11
**meaningful (1)**
10:1
**means (2)**
9:7;10:9
**mechanisms (1)**
33:14
**media (1)**
10:14
**mention (1)**
21:21
**merits (4)**
25:25;32:8;34:20,
24
**methodologies (1)**
9:14
**millions (1)**
10:17
**mine (2)**
20:19;33:9
**minimize (1)**
30:18
**minutes (1)**
24:19
**modify (2)**
32:24;37:2
**modifying (1)**
37:3
**Mohebbi (4)**
6:11;25:11,11,19
**month (2)**
7:11;13:6
**moot (1)**
24:24
**More (8)**
8:23;11:18;12:22,
23,24;14:3;17:25;

26:4
**morning (10)**
6:2,7,17;12:3;
17:5;20:4,8;26:3,10;
38:10
**most (1)**
37:18
**motion (24)**
6:3,4,15;10:10;
11:3,9,17;12:5;
14:22;16:21;20:13,
14,15;21:14;22:14;
23:15;24:16;25:2;
26:1,6,23;32:2;35:2;
37:2;38:2
**motions (10)**
20:11,18;21:10,
13;22:23;24:15,24;
25:4,23;37:16
**Motors (2)**
20:19,20
**movant (1)**
32:7
**movant's (1)**
32:12
**move (1)**
6:18
**much (6)**
10:24;11:6;22:5;
25:9,19;39:5
**multiple (3)**
7:4,12;11:1
**must (1)**
32:7
**mute (1)**
20:8
**myself (1)**
37:18

**N**

**NA (1)**
20:20
**name (1)**
16:3
**names (2)**
21:21;22:10
**narrow (1)**
30:2
**narrowly (1)**
37:7
**nature (2)**
31:8;38:20
**near (1)**
18:20
**necessarily (1)**
17:22
**necessary (7)**
12:1;16:22;17:2;
18:19;19:1,8;23:13
**necessity (1)**
37:19,22
**need (3)**

12:18;23:4;30:7

**needed (1)**
31:1

**needs (1)**
37:15

**negotiate (1)**
37:10

**Nevada (1)**
32:17

**New (7)**
4:5;5:7;16:2,2,4,6;
24:20

**news (1)**
22:4

**Nima (1)**
25:11

**nom (1)**
33:8

**none (2)**
15:14;37:11

**nonexclusive (1)**
31:3

**nonfungible (1)**
36:11

**nonmain (2)**
31:14;34:22

**note (5)**
9:24;10:10;11:16;
20:9;27:5

**noted (1)**
6:10

**notes (3)**
6:10;19:15;30:1

**notice (1)**
29:12

**number (11)**
6:5;14:24,25;
15:25;17:23;20:12;
22:1;23:20,21;
26:14;38:2

**numbers (2)**
14:18;15:2

**NY (2)**
4:5;5:7

## O

**object (2)**
24:17;37:9

**objection (1)**
15:9

**objections (4)**
15:6,13,18;35:18

**obligations (2)**
7:12;31:22

**obtain (7)**
10:20;11:4;16:23;
18:16;32:7;34:12,20

**obtained (2)**
9:7;18:17

**obtaining (3)**
32:9;34:25;35:15

**Obviously (2)**

37:9;38:5

**occasion (1)**
30:5

**occurred (2)**
6:15;30:9

**offer (1)**
14:15

**offered (1)**
10:1

**Office (14)**
5:4;6:24;9:19;
12:11;13:20;14:12;
19:19,20,23,25;
22:16;23:5,9;25:22

**officers (1)**
7:22

**offices (2)**
12:10,12

**often (1)**
28:18

**OKIKE (1)**
4:8

**one (26)**
10:24;12:16;13:9,
10;15:25;16:6;17:8,
20;19:18;20:18;
23:6,16,17;24:15,17;
25:12,13,15;29:13;
32:5,16;33:12,14,17;
34:15;37:14

**ongoing (1)**
13:2

**only (3)**
10:10;32:20;34:15

**open (1)**
9:10

**operated (1)**
13:20

**opinion (4)**
20:19;22:21;33:9,
10

**opinions (3)**
20:23;22:16;32:5

**oppose (1)**
23:14

**order (29)**
7:19;8:5;11:10;
16:25;17:4;18:13,
17;22:9,22;23:13;
26:3,9,10,13,15;
29:2,11;31:7,11;
33:20;34:8;35:13;
37:4,20;38:9,12,15,
16;39:2

**orderly (1)**
7:23

**orders (1)**
18:12

**organization (3)**
12:18,19;13:16

**organizational (8)**
12:7,8,15,16,21;
13:4,7;38:20

**organized (2)**
13:10;17:18

**original (1)**
26:12

**originally (1)**
6:22

**others (1)**
18:16

**otherwise (6)**
11:12;26:18;
31:10,16;34:5;36:2

**out (14)**
6:6,17,24;7:10;
13:20,24;17:8,21;
18:16;22:21;23:20;
25:12;26:16;37:1

**outside (1)**
33:20

**over (3)**
8:20;11:22;30:10

**overview (1)**
6:19

**own (3)**
24:23;33:2;37:2

**owned (1)**
13:11

## P

**page (1)**
34:13

**papers (6)**
12:7;14:11;19:23,
24;23:21;26:1

**paragraph (3)**
26:17;34:3;36:5

**parents (1)**
12:9

**part (6)**
14:3;29:11;31:6;
33:7,7;34:9

**particular (2)**
10:15;14:1

**particularly (2)**
6:14;11:16

**parties (14)**
13:17;16:13,18;
18:18;23:22;27:2,
18;28:3;30:18;
34:13;36:3;37:2,24;
38:7

**parties-in-interest (2)**
22:2;25:24

**Partners (1)**
33:16

**party (6)**
21:6,17,18;22:17;
26:24;27:8

**past (1)**
23:7

**PC (1)**
4:7

**pegged (1)**

7:9

**pending (1)**
30:25

**people (1)**
6:9

**percent (1)**
13:11

**perfected (3)**
27:1,3,23

**perhaps (1)**
6:10

**period (5)**
30:3,12,16,19;36:1

**perishable (2)**
31:9;34:4

**permission (1)**
23:10

**permits (4)**
27:19;30:23;
31:11;34:7

**permitted (2)**
34:14;38:3

**permitting (1)**
29:2

**person (1)**
26:18

**personally (2)**
11:2;18:9

**petition (13)**
8:9,17;19:10;
20:13;21:3,4,15,15;
24:17;25:17;27:22;
30:23,24

**physical (1)**
36:12

**place (1)**
38:17

**plan (1)**
24:17

**Platinum (1)**
33:16

**pleadings (1)**
23:8

**please (1)**
6:12

**PO (1)**
4:14

**point (10)**
11:16;14:9;17:25;
18:1;23:7;24:25;
25:12;27:5;29:10;
30:6

**policy (1)**
24:3

**portfolio (1)**
7:6

**portion (2)**
7:5;24:16

**position (5)**
13:22;19:1;21:12;
29:7,15

**possessory (2)**
28:3,13

**possible (3)**
6:19;8:1;10:23

**potential (1)**
8:16

**potentially (2)**
22:25;29:23

**Power (2)**
32:17;33:21

**powers (1)**
8:4

**practice (1)**
37:13

**prefer (1)**
26:4

**preference (2)**
10:19;16:23

**preliminary (1)**
32:4

**PRESENT (3)**
5:14;15:2;30:3

**presentation (3)**
12:4,5;14:3

**preserve (4)**
8:12,13;22:12;
31:8

**preserved (1)**
37:8

**press (1)**
10:15

**pretty (1)**
12:8

**primarily (1)**
11:23

**principles (1)**
19:4

**prior (3)**
22:16;23:16;27:22

**pro (1)**
10:5

**procedures (1)**
8:25

**proceeded (1)**
9:15

**proceeding (21)**
8:21,21,23,24;
10:14;16:7;19:10;
31:1,14;33:11;34:21,
21,22,25;35:1,4,4,6,
9,17;36:21

**proceedings (5)**
7:14,17;8:10;
33:14;39:8

**process (7)**
11:4,21;12:1;
16:21,22;19:5,8

**production (2)**
33:20,22

**promptly (1)**
39:3

**proper (1)**
27:4

**property (2)**
10:16;33:5

**proposed (6)**
16:25;26:3,9,10,
12,15
**protect (4)**
31:1,7;35:16;
36:18
**protected (2)**
32:22;36:23
**provide (7)**
12:17;13:13,16;
14:2;16:8;31:13;
33:15
**provided (3)**
14:1;22:23;23:8
**provides (3)**
31:3,23;32:19
**providing (1)**
31:19
**provision (3)**
26:17,24;27:17
**provisional (13)**
6:4;8:22;30:25;
31:4;32:2,23,25;
33:25;35:24;36:1,16,
18;37:5
**provisions (4)**
27:10,14;37:20;
38:16
**public (7)**
8:24;10:13;21:6;
22:10;24:3,3;32:12
**publicly (2)**
12:25;23:10
**purporting (1)**
10:3
**purports (1)**
9:22
**purpose (1)**
8:11
**purposes (4)**
24:24;29:15;
33:12;38:1
**pursuing (1)**
9:6
**Put (2)**
27:18;28:9;29:11

**Q**

**quickly (5)**
6:19;10:23,25;
37:24,25
**quite (1)**
12:17
**quo (2)**
8:12;36:19

**R**

**raise (2)**
19:17;39:1
**rapidly (1)**
12:22

**rather (1)**
37:15
**re (8)**
20:20;32:4,5,17;
33:6,15,23;34:10
**reach (2)**
11:1;38:8
**reached (2)**
17:8;26:16
**reaching (1)**
17:21
**read (4)**
14:12;22:22;26:1;
34:18
**readily (1)**
36:11
**ready (1)**
38:7
**realization (3)**
29:2;31:5;34:8
**really (2)**
14:12;23:13
**reasonable (1)**
30:11
**received (8)**
7:2;10:5;11:18;
15:10,15,20;19:24;
22:1
**recent (2)**
11:17;24:22
**recipient (1)**
17:1
**recipients (2)**
37:6,8
**recognition (18)**
8:9,18,21;13:6;
14:5;30:24,25;
31:13;32:9;34:6,21,
25;35:2;38:15,17,17,
18,21
**recognized (1)**
35:8
**record (1)**
28:19
**records (2)**
18:15;24:4
**recover (3)**
30:13;36:7,8
**redacted (3)**
21:2,5;23:21
**reference (1)**
12:11
**referenced (1)**
21:7
**reflected (1)**
24:4
**regarding (6)**
9:17;18:8,17;19:6;
35:3;38:15
**regulated (1)**
13:21
**regulations (1)**
11:20

**related (3)**
11:14;13:15;28:10
**relatively (1)**
30:2
**relevant (1)**
25:24
**relief (35)**
6:4;8:23;11:23;
14:16;27:7;29:22;
30:25;31:1,4,11,15,
24,25;32:2,11,15,20,
23,25;33:1,24,25;
34:1,6,11;35:15,22,
24;36:17,18,21,25;
37:2,3,5
**remain (7)**
7:9;19:6;21:17,18;
24:21;34:16,17
**remanded (1)**
33:8
**remedies (2)**
26:25;27:25
**remember (2)**
22:20;23:17
**reported (1)**
7:5
**reportedly (2)**
7:1,12
**reporting (1)**
22:7
**reports (1)**
10:13
**represent (2)**
9:22;10:3
**Representative (9)**
5:15;31:7;33:1,4,
13;34:10,19;36:3,25
**Representatives (14)**
4:13;8:8;9:6,12;
11:11;23:12;34:17;
35:11,11,14,23;36:6,
13,15
**representative's (1)**
37:10
**represented (1)**
16:3
**request (9)**
17:7,22;20:16;
21:16;26:16;29:1;
30:7;32:25;36:24
**requested (1)**
22:14
**requesting (1)**
11:23
**requests (4)**
22:1,11;37:7,7
**require (3)**
10:22;11:21;37:23
**required (2)**
23:8,18
**requirements (2)**
27:14;35:21
**requires (1)**

22:25
**reservation (2)**
16:25;27:2
**reserve (1)**
19:1
**reserved (1)**
18:19
**resolution (1)**
38:8
**resolve (5)**
19:18;22:19;
37:18,25;38:7
**resources (1)**
36:8
**respect (16)**
16:11;20:17;21:3,
12;23:2,3;26:6,25;
29:1;30:1;33:24,24;
35:2,5;38:15,16
**response (1)**
25:13
**restrict (2)**
26:24;27:6
**result (1)**
11:7
**retainer (1)**
16:1
**review (2)**
26:9;38:9
**reviewing (1)**
22:16
**revised (4)**
17:3;26:15;38:9,
11
**right (27)**
6:2,13;11:11;15:6,
19;18:6;19:1,14;
20:11;21:8;24:8;
25:20;26:8;27:8,16;
29:1,9,25;30:4,20,
22;31:16,17;38:13,
25;39:2,5
**rights (13)**
8:3;16:5,25;18:18;
26:25;27:2,4,6,18,
18;31:21;33:10;37:8
**risk (4)**
32:10;35:24;36:1,
9
**RITTER (1)**
4:12
**Rivera (2)**
20:3;24:12
**Road (1)**
4:15
**roughly (1)**
7:10
**Rozhkov (1)**
33:8
**Rule (4)**
21:5;30:21;33:14,
21
**rules (1)**

30:24
**rumored (1)**
10:15
**run (2)**
6:24;13:23
**RUSSELL (4)**
5:15;7:19;14:23;
15:10

**S**

**safe (1)**
27:14
**same (3)**
7:18;34:13;37:17
**satisfactory (2)**
37:21;38:13
**satisfied (2)**
35:21,22
**satisfy (1)**
27:13
**saw (3)**
12:10,10;17:3
**scant (1)**
12:8
**schedule (1)**
6:6
**scheduled (1)**
8:18
**scope (1)**
20:23
**screen (1)**
6:11
**SDNY (8)**
20:21;32:6,14,18;
33:7,9,17;34:11
**seal (8)**
20:13,15;21:1,2,
15,24;22:14;23:1
**sealing (9)**
20:18;21:10,13;
22:18,23;24:7,15,16;
25:23
**seals (1)**
24:16
**Second (5)**
14:5;17:13;25:2;
26:23;34:23
**Section (14)**
20:24;25:7;30:22;
31:3,18;32:3,19,24;
34:3,6,7;35:12;
36:22;37:1
**Sections (1)**
31:25
**secured (6)**
27:6,18,19,22;
28:2;32:13
**security (3)**
27:1,3,23
**seeing (2)**
12:11;22:3
**seek (9)**

11:4,5;18:15;21:1;
27:7,24;30:6;36:21;
37:3
**seeking (11)**
7:15,17;8:9,22;
11:9;14:16;16:20;
17:24;18:9;23:12;
30:2
**seem (1)**
14:7
**seems (2)**
14:8,9
**sell (2)**
10:14,16
**Sentry (3)**
14:5,7;34:24
**series (1)**
24:22
**serve (2)**
16:14;33:19
**served (1)**
19:23
**service (5)**
18:8;20:14;21:2,
24;25:5
**services (2)**
13:14,21
**serving (1)**
16:13
**set (2)**
6:21;35:3
**sets (1)**
35:25
**shares (1)**
13:11
**Shipping (1)**
34:10
**short (2)**
12:4;35:18
**Shortly (2)**
7:16;8:7
**show (2)**
32:8;35:7
**showing (2)**
14:14;35:5
**shown (2)**
35:23;36:15
**side (1)**
37:14
**signed (2)**
19:10;25:14
**significant (1)**
36:8
**similar (1)**
34:1
**Singapore (14)**
6:24;8:22,23,24,
25;9:2,19,21;10:16;
12:11;13:11,20,20;
29:22
**sit (1)**
12:14
**situation (1)**

12:21
**six (1)**
7:1
**somewhat (1)**
28:16
**somewhere (1)**
28:18
**sought (3)**
33:24;35:22;36:17
**source (1)**
9:10
**speak (6)**
6:8;20:16;24:12;
25:1,7;29:23
**speaking (1)**
6:12
**specific (4)**
18:12,17;20:18;
21:13
**specifically (3)**
20:12;23:24;29:8
**speculation (1)**
22:7
**stabilize (1)**
8:14
**stabilizing (1)**
30:17
**stable (1)**
7:9
**stablecoin (1)**
7:8
**stage (6)**
6:21;15:23;17:10,
20;29:13;34:15
**stakeholder (1)**
9:8
**stakeholders (1)**
8:13
**stand (1)**
28:6
**standards (1)**
32:4
**standing (3)**
18:25;27:12;29:8
**stands (1)**
38:7
**start (1)**
6:19
**starting (2)**
6:13;17:24
**state (1)**
36:6
**statements (1)**
17:16
**States (24)**
5:4;8:7,15;11:10,
12;15:23;16:10;
17:19;22:17;25:22;
26:21;27:24;28:1,3;
29:3,7,15,19;31:7;
33:21,22;34:9,17;
38:4
**status (3)**

8:12;11:7;36:19
**stay (3)**
8:12;27:11,24
**Street (1)**
5:5
**strong (3)**
10:19;24:2,3
**structure (4)**
12:7,8,15;13:7
**Su (4)**
6:23;9:23;10:15;
25:18
**sub (1)**
33:8
**subject (8)**
10:21;11:21;16:7,
20;22:6;27:1,10;
28:7
**submission (1)**
18:22
**submit (3)**
38:9,21;39:2
**submits (1)**
34:19
**submitted (2)**
17:3;25:16
**subpoena (7)**
11:20;16:20;17:1,
12;33:19,21;37:8
**subpoenas (5)**
11:13;16:12,16;
17:9,23
**subsection (4)**
31:15,19,23;33:4
**subsidiaries (1)**
12:9
**substantial (2)**
7:2,5
**succeed (3)**
34:20,24;35:14
**success (2)**
32:8;35:8
**sufficient (2)**
10:9;24:6
**sufficiently (3)**
32:22;36:23;38:21
**Suite (1)**
5:6
**support (8)**
14:8,16,22;21:14;
24:7;25:16;35:7,19
**Sure (6)**
12:6;19:16;21:25;
22:3;26:1;28:12
**susceptible (2)**
31:9;34:4
**suspended (1)**
31:18
**suspending (2)**
11:11;31:16
**suspends (1)**
26:17
**suss (1)**

25:12
**SUSSBERG (1)**
4:9

---

**T**

**table (1)**
23:6
**talk (1)**
24:25
**Tan (1)**
16:3
**TARA (1)**
5:10
**targeted (1)**
37:8
**telephone (1)**
37:17
**Teneo (2)**
5:15,16
**tens (1)**
10:17
**term (1)**
18:20
**terminate (2)**
32:24;37:2
**terminating (1)**
27:11
**terms (2)**
12:15;13:7
**territorial (2)**
26:20;29:18
**Thanks (1)**
25:9
**theirs (1)**
27:25
**thereafter (3)**
7:11,16;32:24
**Therefore (2)**
32:7;36:21
**third (1)**
34:12
**third-party (1)**
9:8
**though (1)**
25:6
**Three (9)**
6:4,21,24;7:2;
13:9;22:6,8;31:3;
32:11
**thus (1)**
16:1
**TIANTIAN (1)**
5:10
**tied (1)**
7:7
**tips (1)**
32:11
**today (24)**
6:6,12;11:9,23;
12:18;14:4,11,16,22;
18:5,10,25;19:18,19;
20:12;21:21;24:1;

27:12,22;28:6;29:8;
30:9;38:22;39:1
**today's (2)**
20:15;38:1
**tokens (1)**
36:11
**took (1)**
6:7
**tools (3)**
9:9,10,11
**Tortola (1)**
4:15
**towards (1)**
13:6
**Town (3)**
4:15;6:6,18
**trading (1)**
6:25
**transactional (1)**
9:12
**transfer (3)**
11:11;26:18;31:16
**transferable (1)**
36:11
**transferred (2)**
10:25;36:2
**transfers (2)**
30:9,12
**traveled (1)**
9:19
**tricky (1)**
38:5
**Trust (1)**
20:20
**Trustee (11)**
5:4;20:6;22:17;
23:5,9,14,20,23;
25:4,22;31:24
**Trustee's (4)**
19:19,20,23;21:12
**try (2)**
37:21;38:8
**trying (1)**
30:17
**turn (1)**
11:22
**turnover (1)**
34:12
**twenty-four (1)**
10:4
**Twitter (1)**
24:23
**two (10)**
17:10,11,21;
18:23;20:11;21:12;
26:15;32:10;34:14;
37:18
**type (1)**
38:6
**types (2)**
9:13;28:15
**typical (1)**
21:25

**typically (2)**
  19:4;37:19

## U

**under (26)**
  7:1,21;16:5;20:13,
  15,25;21:1,2,4,24;
  23:1;31:12,18,25;
  32:3,20,24;33:3,3;
  34:1,2,3,16;35:13,
  15;37:1
**underlying (1)**
  9:16
**undertake (1)**
  16:12
**underway (1)**
  30:15
**United (24)**
  5:4;8:6,15;11:10,
  12;15:23;16:10;
  17:19;22:17;25:22;
  26:21;27:24;28:1,3;
  29:3,7,15,18;31:6;
  33:20,22;34:9,17;
  38:4
**unknown (2)**
  9:25;36:12
**unredacted (5)**
  20:13,14;21:15;
  23:8,23
**unsworn (1)**
  25:16
**up (1)**
  28:23
**upcoming (1)**
  13:6
**update (6)**
  6:14,20;8:19;12:2;
  13:5;24:15
**upon (2)**
  31:13;34:6
**urgently (1)**
  31:1
**using (2)**
  9:9,14
**UST (1)**
  7:8
**usually (2)**
  37:17,24

## V

**vacant (1)**
  12:12
**vacated (1)**
  33:7
**valid (2)**
  26:25;27:23
**value (6)**
  7:9,9;22:12,12;
  31:8;33:16
**Varick (1)**

  5:5
**variety (2)**
  13:13;16:5
**Velez (1)**
  20:7
**Velez- (2)**
  20:2;24:11
**VELEZ-RIVERA (11)**
  5:9;20:2,5,8,17;
  21:10,11;24:11,13,
  14;25:9
**version (1)**
  39:2
**VG (1)**
  4:16
**VG1110 (1)**
  4:16
**view (4)**
  10:8;14:20;22:10;
  24:6
**Virgin (1)**
  7:15
**virtual (1)**
  15:3
**virtue (1)**
  13:24
**volatility (1)**
  24:5
**voluminous (1)**
  37:22
**voluntarily (2)**
  16:19;19:3
**voluntary (3)**
  7:17;10:21;19:3
**Voyager (2)**
  4:3;28:20

## W

**wallet (2)**
  9:13;17:16
**wallets (1)**
  29:6
**wants (1)**
  21:18
**week (1)**
  11:8
**weekend (1)**
  8:20
**weighs (1)**
  32:12
**well-known (1)**
  6:24
**WELLS (1)**
  5:11
**whereabouts (1)**
  36:12
**Whereupon (1)**
  39:8
**wherever (1)**
  7:24
**White (1)**
  6:7

**WICKHAMS (1)**
  4:12
**wide (1)**
  22:6
**widely (1)**
  7:5
**Wiles (1)**
  28:19
**wiped (1)**
  7:10
**wish (2)**
  26:5;30:20
**wishes (1)**
  22:18
**withheld (1)**
  23:25
**within (5)**
  7:11;26:20;35:11;
  37:17;38:3
**without (3)**
  23:10;36:7;37:19
**witnesses (1)**
  31:20
**WL (2)**
  32:5,14
**Word (1)**
  39:2
**words (2)**
  27:19;37:1
**work (1)**
  10:19
**worked (2)**
  22:21;23:20
**world (4)**
  7:25;9:16;29:11,
  16
**Worldwide (1)**
  32:13
**worth (1)**
  10:16
**writings (1)**
  37:22
**written (2)**
  20:22,23

## Y

**year (1)**
  30:11
**years (1)**
  23:16
**yesterday (1)**
  25:3
**York (7)**
  4:5;5:7;16:2,2,5,6;
  24:20

## Z

**Zhu (4)**
  6:23;9:23;10:15;
  25:18
**Zoom (2)**

  15:3;37:17

## 1

**1 (2)**
  30:3;32:14
**10 (1)**
  32:6
**10014 (1)**
  5:7
**10022 (1)**
  4:5
**1006 (1)**
  5:6
**1007a4 (1)**
  21:5
**10124 (1)**
  35:12
**107 (2)**
  24:4;25:7
**107b (1)**
  20:24
**12 (1)**
  36:5
**15 (9)**
  8:6,9,11,20;13:9;
  32:3,9,9;33:11,12
**1514738 (1)**
  32:14
**1519 (7)**
  30:22;31:3,11;
  32:20,24;34:3;37:1
**1519.01 (1)**
  34:3
**1519a (1)**
  32:3
**1519a2 (1)**
  34:1
**1520a (1)**
  31:18
**1521 (1)**
  34:6
**1521a (2)**
  31:13,23
**1521a3 (1)**
  31:12
**1521a4 (2)**
  33:3;35:15
**1521a5 (2)**
  34:2,7
**1522 (2)**
  32:19;36:22
**1522c (2)**
  33:2;36:24
**15th (1)**
  7:11
**1st (1)**
  8:7

## 2

**2004 (1)**
  33:14

**15:3;37:17**

## 1

**1 (2)**

**2007 (1)**
  32:18
**2009 (1)**
  34:11
**201 (1)**
  5:5
**2015 (2)**
  32:14,14
**2016 (1)**
  20:21
**2018 (1)**
  33:17
**2019 (3)**
  32:5,6;33:7
**2020 (1)**
  33:9
**2021 (1)**
  7:1
**2022 (1)**
  30:3
**22 (3)**
  6:5;26:7;38:2
**23 (2)**
  14:24;15:8
**24 (2)**
  14:25;15:13
**24th (1)**
  7:14
**25 (2)**
  15:2,18
**27th (1)**
  7:16
**28th (1)**
  8:18
**29 (1)**
  20:14

## 3

**3 (7)**
  14:24;15:8,25;
  21:4;26:17;31:13,15
**30 (2)**
  26:14,14
**3025283 (1)**
  32:5
**3170 (1)**
  4:14
**36 (1)**
  20:21
**365 (1)**
  32:18
**379 (1)**
  33:6
**388 (1)**
  33:6
**389 (2)**
  33:6,23

## 4

**4 (5)**
  15:2,18;31:12,13,

Three Arrows Capital, LTD, and Russell Crumpler
Main Case No. 22-10920 (MG)                                                    July 12, 2022

19
**401 (1)**
  32:18
**404 (1)**
  34:10
**409 (1)**
  32:18
**45 (1)**
  33:21

### 5

**522 (1)**
  31:25
**544 (1)**
  31:25
**545 (1)**
  31:25
**547 (1)**
  31:25
**548 (1)**
  32:1
**550 (1)**
  32:1
**561 (1)**
  20:21
**583 (1)**
  33:16

### 6

**6 (1)**
  20:12
**601 (1)**
  4:4
**607 (2)**
  33:6,23
**615 (1)**
  33:8
**679 (1)**
  33:8

### 7

**7 (3)**
  31:12,13,23
**724a (1)**
  32:1
**726 (1)**
  34:10
**740 (2)**
  34:11,13
**7th (1)**
  11:8

### 8

**803 (1)**
  33:16
**810 (1)**
  33:16

### 9

**9:52 (1)**
  39:8
**9th (2)**
  7:10;8:20