# EXHIBIT A

## Proposed Protocol Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 15 |
| Three Arrows Capital, Ltd,[1] | Case No. 22-10920 (MG) |
| Debtor in a Foreign Proceeding. | |

## ORDER APPROVING CROSS-BORDER
## COURT-TO-COURT COMMUNICATIONS PROTOCOL

Upon the motion (the "Motion") of Russell Crumpler and Christopher Farmer, in their joint

capacities as the duly authorized foreign representatives (the "Foreign Representatives") of Three

Arrows Capital, Ltd (the "Debtor"), which is the subject of an insolvency proceeding (the "BVI

Proceeding") currently pending in the British Virgin Islands ("BVI") before the Eastern Caribbean

Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "BVI

Court") and captioned as *In re Three Arrows Capital Limited*, Case No. BVIHCOM2022/0119

(June 27, 2022), in support of entry of an order, as more fully described in the Motion, pursuant to

sections 105(a), 105(d), 1525 and 1527  of title 11 of the United State Code (the "Bankruptcy

Code"), and consistent with General Order M-511 (Procedural Guidelines for Coordination and

Cooperation Between Courts in Cross-order Insolvency Matters) and General Order M-532

(Adoption of Judicial Insolvency Network Modalities of Court-to-Court Communication),

approving that certain cross-border court-to-court communications protocol attached hereto as

Exhibit 1 (the "Protocol"); and adequate notice of the Motion having been given as set forth in the

Motion; and it appearing that no other or further notice is necessary; and the Court having

---

[1]    The last four digits of the Debtor's British Virgin Islands company registration number are 0531.  The location
of the Debtor's registered office is ABM Chambers, P.O. Box 2283, Road Town, Tortola, VG1110, British Virgin
Islands.

1

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334; and the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief requested in the Motion, and that such relief is in the best interests

of the Debtor, its creditors and the parties in interest; and upon the record in these proceedings;

and after due deliberation;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Protocol is approved in all respects, as it may be amended or supplemented by

further order of this Court, obtained after a notice and a hearing.

3.      Nothing herein shall prejudice the rights of any party in interest to apply for

modifications to the Protocol as warranted to facilitate the administration of the Insolvency

Proceedings.

4.      Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the

contrary, (a) the terms of this Order shall be immediately effective and enforceable upon its entry,

(b) the Foreign Representatives are not subject to any stay in the implementation, enforcement or

realization of the relief granted in this Order, and (c) the Foreign Representatives may, in their

discretion and without further delay, take any action and perform any act authorized under this

Order.

5.      For the avoidance of doubt, the Protocol is procedural in nature and shall not

constitute a limitation on or waiver by the Court of any powers, responsibilities, or authority, or a

substantive determination of any matter in controversy before the Court, or a waiver by any of the

parties in interest in the Insolvency Proceedings of any of their substantive rights and claims,

except to the extent specifically provided for in the Protocol, as permitted by applicable law.

6.      For the avoidance of doubt, to the extent that there are any inconsistencies relating to the Protocol and other matters set forth herein as between this Order and any orders entered by the Singapore Court or the BVI Court approving this Protocol, the terms and provisions of this Order shall control over matters arising in or relating to the Chapter 15 Case and proceedings before this Court.

7.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: [_____], 2022
           New York, New York

                                        _____
                                        HONORABLE MARTIN GLENN
                                        UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 1**

### **Proposed Protocol**

## CROSS-BORDER INSOLVENCY PROTOCOL

1.      This cross-border insolvency protocol (the "**Protocol**") shall govern the conduct of all parties in interest in the Insolvency Proceedings (as defined herein below). The Guidelines For Communication and Cooperation Between Courts in Cross-Border Insolvency Matters ("**Guidelines**"), annexed hereto as **Schedule 1**, and the Modalities of Court-to-Court Communication ("**Modalities**"), annexed hereto as **Schedule 2**, shall be incorporated by reference and form part of this Protocol.  To the extent there is any conflict between the Protocol and the Guidelines and / or the Modalities, this Protocol shall prevail.

## I.      DEFINITIONS AND INTERPRETATIONS

2.      For the purposes of this Protocol, unless the context otherwise requires, the word "person" shall **include** a corporation, words importing any gender shall include the other gender, the singular shall include the plural and vice versa and the following words and expressions shall have the following meanings:

- **"BVI"** means the Territory of the Virgin Islands in the Eastern Caribbean.

- **"BVI Court"** means the Eastern Caribbean Supreme Court in the Territory of the Virgin Islands.

- **"BVI Insolvency Act"** means the Insolvency Act, 2003.

- **"BVI Liquidators"** means Mr Christopher Farmer and Mr Russell Crumpler, the joint liquidators duly appointed over 3AC BVI in the BVI Proceedings.

- **"BVI Proceedings"** means the BVIHC (COM) 2022/0119 and BVIHC (COM) 2022/0117 before the BVI Court, which are consolidated under BVIHC (COM) 2022/0119 and all other ancillary proceedings in the BVI Court in connection with the foregoing.

1

- **"BVI Counsel"** means Ogier, and such other legal practitioners appointed by the BVI Liquidators or 3AC BVI from time to time in respect of the BVI Proceedings.

- **"Court"** means any of the BVI Court, the US Court or the Singapore Court.

- **"Insolvency Proceedings"** means the BVI Proceedings, the Singapore Proceedings and the US Proceedings.

- **"Singapore"** means the Republic of Singapore.

- **"Singapore Court"** means the High Court of the Republic of Singapore.

- **"Singapore IRDA"** means the Insolvency, Restructuring and Dissolution Act 2018.

- **"Singapore Proceedings"** means Originating Application 317 of 2022 and all other ancillary proceedings taken out in the Singapore Court in connection with the foregoing.

- **"Singapore Counsel"** means WongPartnership LLP, and such other counsel appointed by the BVI Liquidators or 3AC BVI from time to time in respect of the Singapore Proceedings.

- **"US"** means the United States of America.

- **"US Bankruptcy Code"** means title 11 of the United States Code.

- **"US Counsel"** means Latham & Watkins LLP, and such other counsel appointed by the BVI Liquidators or 3AC BVI from time to time in respect of the US Proceedings.

- **"US Court"** means the United States Bankruptcy Court for the Southern District of New York.

- **"US Proceedings"** means the case commenced on July 1, 2022 by the BVI Liquidators in the US pursuant to chapter 15 of the US Bankruptcy Code

(Case No. 22-10920 (MG)) and all other ancillary proceedings in the US Court in connection with the foregoing.

- "**3AC BVI**" means Three Arrows Capital, Ltd.

## II.    BACKGROUND

3.    3AC BVI is a company incorporated in the BVI. Prior to the commencement of the BVI Proceedings, 3AC BVI was a prominent cryptocurrency hedge fund which was a Professional Master Fund within the meaning of the Securities and Investment Business Act, 2010, of British Virgin Islands, and whose investors were two feeder funds. Its business model involved borrowing cryptocurrency and/or US dollars to trade on the cryptocurrency market, with its lenders mainly being institutional lenders and high net-worth individuals who are accredited investors.

4.    On 29 June 2022, in a hearing where two applications, one commenced by a creditor of 3AC BVI, BVIHC (COM) 2022/0117 and another commenced by 3AC BVI itself, BVIHC (COM) 2022/0119, were consolidated under BVIHC (COM) 2022/0119 (i.e., the BVI Proceedings), the BVI Court, pursuant to the BVI Insolvency Act, issued an order (the "**BVI Liquidation Order**") which placed 3AC BVI into liquidation and appointed the BVI Liquidators over 3AC BVI.

5.    On 1 July 2022, the BVI Liquidators sought recognition of the BVI Proceedings in the US under Chapter 15 of the US Bankruptcy Code. By an order of the US Court by the Honourable Judge Martin Glenn on 28 July 2022 in Case No. 22-10920 (MG) [Docket No. 47], it was ordered that, amongst other things:

(a)    The BVI Proceedings are recognised as a "foreign main proceeding" under sections 1517(a) and 1517(b)(1) of the Bankruptcy Code;

(b)    All relief and protection afforded to a foreign main proceeding under section 1520 of the Bankruptcy Code is granted to the BVI Proceedings,

3AC BVI, and the 3AC BVI's assets located in the US, as applicable, including, without limitation, the application of the automatic stay under section 362 of the Bankruptcy Code to 3AC BVI and its property located in the territorial jurisdiction of the US;

(c)    The BVI Liquidators are entrusted with the administration or realization of all of the 3AC BVI's assets within the territorial jurisdiction of the US, as set forth in section 1521(a)(5) of the Bankruptcy Code;

(d)    All creditors and other persons are enjoined from (i) disposing or otherwise taking any action against 3AC BVI or any property of 3AC BVI located within the territorial jurisdiction of the US; and (ii) taking or continuing any act to obtain possession of or exercise control over, such property;

(e)    All persons are enjoined from commencing any suit, action or proceeding in the territorial jurisdiction of the US to resolve any dispute arising out of the BVI Proceeding or the BVI law; and

(f)    The BVI Liquidation Order is recognised, granted comity, and entitled to full force and effect in accordance with its terms, and that such terms shall be binding and fully enforceable in the US.

6.    On 9 July 2022, the BVI Liquidators sought recognition of the BVI Proceedings in Singapore under the UNCITRAL Model Law on Cross-Border Insolvency of the United Nations (the "**Model Law**") as adopted in Singapore by way of Section 252 and the Third Schedule of the Singapore IRDA *vide* HC/OA 317/2022. By an order of court of the Singapore Court in HC/ORC 4318/2022 made by the Honourable Justice Vinodh Coomaraswamy on 22 August 2022 in HC/OA 317/2022, it was ordered that, amongst other things:

(a)    The BVI Proceedings are recognised as a "foreign main proceeding" within the meaning of Article 2(f) of the Model Law;

(b)    The BVI Liquidators are recognised by the Singapore Courts and in Singapore as "foreign representatives" within the meaning of Article 2(i) of the Model Law;

(c)    So long as the BVI Proceedings, including any extensions thereto are in force, except with the prior written consent of the BVI Liquidators or with prior leave of the Singapore Court, (i) the commencement and continuation of individual actions or individual proceedings concerning the property, rights, obligations or liability of 3AC BVI are stayed, (ii) execution against 3AC BVI's property in Singapore is stayed, and (iii) the right to transfer, encumber or otherwise dispose of any property of 3AC BVI in Singapore is suspended; and

(d)    The administration or realization of 3AC BVI's property in Singapore is entrusted to the BVI Liquidators.

## III.    <u>PURPOSE AND GOALS</u>

7.    Although each of the BVI Proceedings, US Proceedings and Singapore Proceedings are separate proceedings pending before each of the BVI Court, US Court and the Singapore Court respectively, the implementation of this Protocol is both necessary and desirable to coordinate the efficient administration of the Insolvency Proceedings, protect the rights of parties thereto and ensure the maintenance of the Courts' respective independent jurisdiction. Accordingly, this Protocol has been developed to promote the following mutually desirable goals and objectives in the Insolvency Proceedings:

(a)    harmonise and coordinate activities between the Courts involved in the Insolvency Proceedings;

5

(b)    promote and facilitate the fair, open, orderly and efficient administration of the Insolvency Proceedings to, among other things, maximise the efficiency of the same, reduce the costs associated therewith, and avoid the duplication of work and effort;

(c)    honour the independence and integrity of the Courts and the other courts and tribunals of the BVI, the US and Singapore;

(d)    promote international cooperation and respect for comity among the Courts; and

(e)    implement a framework of general principles to address certain issues arising out of the cross-border nature of the Insolvency Proceedings.

8.    As the Insolvency Proceedings progress, the Courts may also jointly determine that other cross-border matters that may arise in the Insolvency Proceedings should be dealt with under and in accordance with the principles of this Protocol. Where an issue is to be addressed only to one court, in rendering a determination of any cross-border matter, such Court may:

(a)    to the extent practical or advisable, consult with such other Court or both of the other Courts; and

(b)    in its sole discretion and bearing in mind the principles of comity, either:

(i)    render a binding decision after such consultation;

(ii)    defer to the determination of any one or both of the other Court(s) by transferring the matter, in whole or in part to any of the other Courts; or

(iii)    seek a joint hearing of any number of the Courts.

## IV.    **COMITY AND INDEPENDENCE OF THE COURTS**

9.    The approval and implementation of this Protocol shall not divest nor diminish any of the BVI Court's, the US Court's and/or the Singapore Court's respective independent jurisdiction over the subject matter of the BVI Proceedings, the US Proceedings and the Singapore Proceedings, respectively.

10.    The BVI Court shall have sole and exclusive jurisdiction and power over the conduct of the BVI Proceedings and the hearing and determination of matters arising in the BVI Proceedings.  The US Court shall have sole and exclusive jurisdiction and power over the conduct of the US Proceedings and the hearing and determination of matters arising in the US Proceedings. The Singapore Court shall have sole and exclusive jurisdiction and power over the conduct of the Singapore Proceedings and the hearing and determination of matters arising in the Singapore Proceedings.

11.    In accordance with the principles of comity and judicial independence, the approval, endorsement and / or implementation of this Protocol shall not be construed to:

(a)    increase, decrease or otherwise modify the independence, sovereignty, or jurisdiction of the BVI Court, the US Court, the Singapore Court, or any other court or tribunal in the BVI, the US and Singapore, including but not limited to the ability of any such court or tribunal to provide appropriate relief under applicable law on an *ex parte* or "limited notice" or "without notice" basis;

(b)    require the BVI Court to take any action that is inconsistent with its obligations under the laws of the BVI;

(c)    require the US Court to take any action that is inconsistent with its obligations under the laws of the US;

(d)      require the Singapore Court to take any action that is inconsistent with its obligations under the laws of Singapore;

(e)      interfere with or derogate from the rules or ethical principles by which the BVI Liquidators and the professionals engaged by 3AC BVI and the BVI Liquidators are bound according to any applicable law or professional rules;

(f)      require 3AC BVI and the BVI Liquidators (including their legal and financial advisors) to take any action or refrain from taking any action that would result in a breach of any duty imposed on them by any applicable law;

(g)      authorise any action that requires the specific approval of the BVI Court or US Court or the Singapore Court after the appropriate notice is served and a hearing is conducted (except to the extent that such action is specifically described in this Protocol);

(h)      preclude 3AC BVI, the BVI Liquidators, or any of their representatives, any creditor, or any other interested party from asserting such party's substantive rights under the applicable laws of the BVI, the US, Singapore, or any other jurisdiction including, without limitation, the rights of interested parties or affected persons to appeal from the decisions taken by one or any combination of the Courts; or

(i)      prevent the BVI Court or US Court or Singapore Court from refusing to take an action that would be manifestly contrary to the law of the BVI, US or Singapore respectively.

## V.    COOPERATION

12.    To harmonise and coordinate the administration of the Insolvency Proceedings, the BVI Court, the US Court and Singapore Court may coordinate activities with the other Court. In furtherance of the foregoing:

(a)    The Courts may communicate with one another, using any means as may be appropriate, including post, facsimile or other forms of electronic communication, with or without the parties present, with respect to any procedural or substantive matter in connection with the Insolvency Proceedings. For the avoidance of doubt, such communication may include sending or transmitting copies of formal orders, judgments, opinions, reasons for decisions, endorsements, transcripts of proceedings or other documents directly to the other court and providing advance notice to counsel for affected parties in such manner as the Court considers appropriate and two-way communications by telephone or other electronic means.

(b)    Any communication between the Courts, with or without the parties present, may be recorded, and any such recorded communications may be transcribed and a written transcript may be prepared from a recording of the communication that, with the approval of each Court involved in the communications, may be treated as the official transcript of the communications.

(c)    Copies of any recording of the communications between the Courts or any transcript of the communications prepared pursuant to any direction of any Court involved in the communications, and of any official transcript prepared from a recording may be filed as part of the record

9

in the proceedings and made available to the parties and subject to such
directions as to confidentiality as the Courts may consider appropriate.

(d)     The time and place for communications between the Courts shall be
directed by the Courts.

(e)     Where the parties are entitled to be present for any communications
between the Courts, advance notice of the communications shall be
given by the Courts to all parties in accordance with the rules of
procedure applicable to the law of the jurisdiction of the relevant Court.

(f)     Personnel other than judges in each Court may communicate with each
other to establish appropriate arrangements for the communications
without the presence of the parties.

(g)     Any of the Courts may direct the parties within its jurisdiction to make
available copies of documents or papers which have been filed in its
jurisdiction to any one or both of the other Court(s) in such manner as
may be appropriate; provided, for the avoidance of doubt, that any such
directive is without prejudice to the parties' rights to seek a protective
order or other appropriate relief to protect the confidentiality of such
documents or papers.

(h)     Where the issue or the proper jurisdiction or Court to determine an issue
is raised by any stakeholder interested in the Insolvency Proceedings (if
invited by the Court(s) in question), with respect to any proceeding
commenced in any of the Courts, the Court before which such
proceeding was initiated may contact any one or both of the other
Court(s) to determine an appropriate process by which to determine the
issue of jurisdiction. Such process may be subject to submissions by

3AC BVI or the BVI Liquidators, through the BVI Counsel, the US Counsel and/or the Singapore Counsel, and any other stakeholder interested in the Insolvency Proceedings prior to any determination on the issue of jurisdiction being made by any of the Courts.

(i)    The Courts may, but are not obliged to, coordinate activities in the Insolvency Proceedings such that the subject matter of any particular action, suit, request, application, contested matter or other proceeding is determined in a single Court.

(j)    The Courts or any combination thereof may conduct joint hearings (each, a "**Joint Hearing**") with respect to any cross-border matter or the interpretation or implementation of this Protocol where the Courts or any combination thereof consider such a joint hearing to be necessary or advisable. With respect to any such Joint Hearing, unless otherwise ordered, the following procedures be followed:

(i)    A telephone or video link shall be established so that each of the relevant Courts shall be able to simultaneously hear the proceedings in the other Court.

(ii)    The judges of each of the relevant Courts who will preside over the Joint Hearing (or such other personnel appointed by the relevant judge) may communicate with each other in advance of such Joint Hearing, with or without counsel being present, to establish the procedures for the orderly making of submissions and rendering of decisions by the Courts, and to address any other procedural, administrative or preliminary matters.

(iii)   Where relevant Courts have fixed a time, place and manner in which the Joint Hearing is to be held, advance notice of the Joint Hearing shall be given by relevant Courts to all parties in accordance with the rules of procedure applicable to the law of the jurisdiction of the relevant Court.

(iv)   Documents or papers filed by any party that are or become the subject of a Joint Hearing shall be made or filed initially only to the Court in which such party is appearing or seeking relief.

(v)   Promptly after the scheduling of a Joint Hearing, the party submitting such documents or papers to one Court shall file courtesy copies with the other Courts. With respect to the courtesy copies to be submitted to the BVI Court, such copies shall be submitted by the BVI Counsel by way of electronically filing a copy with the BVI Court and delivery of a hard copy to chambers. With respect to the courtesy copies to be submitted to the US Court, such copies shall be submitted by the US Counsel by way of electronically filing a copy with the US Court and delivery of a hard copy to chambers. With respect to the courtesy copies to be submitted to the Singapore Court, such copies shall be submitted by the Singapore Counsel via e-Litigation in the relevant docket for the Singapore Proceedings.

(vi)   Any party intending to rely on any written evidentiary materials in support of a submission to the relevant Courts in connection with a Joint Hearing shall file or otherwise submit such materials each of the relevant Courts in advance of the Joint Hearing. To

the fullest extent possible, the evidentiary materials filed in each Court shall be identical and consistent with the procedural and evidentiary rules and requirements of each Court.

(vii)    In any Joint Hearing where one Court has jurisdiction over a matter the determination of which requires the application of the law of the jurisdiction of any of the other relevant Courts, such Court may, without limitation, hear expert evidence on such law or seek the written advice of the other relevant Court, which written advice will be made available to all parties interested in the matter, subject to paragraph 14 herein.

(viii)    The judges of the Courts shall be entitled to communicate with each other during or after a Joint Hearing, with or without counsel present, for the purposes of determining whether consistent rulings can be made by each of the relevant Courts, coordinating the terms upon of the Courts' respective rulings, and addressing any other procedural or administrative matters. All such communications may be recorded and transcribed at the discretion of the Courts.

13.    Notwithstanding the terms of paragraph 12 above, this Protocol recognises that the BVI Court, the US Court and Singapore Court are independent courts. Accordingly, although the Courts will seek to cooperate and coordinate with each other in good faith, each of the Courts shall be entitled at all times, in its sole and absolute discretion, to exercise its independent jurisdiction and authority with respect to the matter(s) presented to such Court and the conduct of the parties appearing in such matter(s).

14.    In implementing the terms of this Protocol, each of the Courts may, in its sole, respective discretion, provide advice or guidance to each other with respect to legal issues in accordance with the following procedures:

(a)    The BVI Court, the US Court or the Singapore Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances.

(b)    The Court issuing such advice guidance shall provide it to the non-issuing Court in writing.

(c)    Copies of such written advice shall be served by the applicable Court in accordance with paragraph 19 hereof.

(d)    The Courts may jointly decide to invite 3AC BVI, the BVI Liquidators and any other affected or interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from any of the other Courts.

(e)    The provisions of this paragraph 14 shall not be construed to restrict the ability of any of the Courts to confer with another Court as provided in paragraph 12 above whenever it deems appropriate to do so.

## VI.    THE RIGHT TO APPEAR AND BE HEARD

15.    Any of the Courts may authorise a party, or an authorised representative of a party, to appear before and be heard by any of the other Courts, subject to the approval of the other Court(s) to such appearance.

16.    The BVI Court may authorise persons authorised to appear before and be heard by the US Court or the Singapore Court to appear before and be heard by the BVI Court without thereby becoming subject to its jurisdiction for any purpose other than the specific matter on which the party is appearing. For the avoidance of doubt, such authorised persons shall not be

14

deemed to be admitted to the bar of the Eastern Caribbean Supreme Court in the Territory of
the Virgin Islands as a result of such appearance.

17.    The US Court may authorise persons authorised to appear before and be heard
by the BVI Court or the Singapore Court to appear before and be heard by the US Court without
thereby becoming subject to its jurisdiction for any purpose other than the specific matter on
which the party is appearing. For the avoidance of doubt, such authorised persons shall not be
deemed to be admitted to the bar of the State of New York as a result of such appearance.

18.    The Singapore Court may authorise persons authorised to appear before and be
heard by the BVI Court or the US Court to appear before and be heard by the Singapore Court
without thereby being subject to its jurisdiction for any purpose other than the specific matter
on which the party is appearing. For the avoidance of doubt, such authorised persons shall not
be deemed as a Qualified Person or an Advocate and Solicitor of the Singapore Court within
the meaning ascribed to it under the Legal Profession Act 1966.

## VII.    <u>NOTICE</u>

19.    Notice of any motion, application or other pleading or paper filed in any one or
more of the Insolvency Proceedings involving or relation to matters addressed by this Protocol
and notice of any related hearings or other proceedings shall be given by appropriate means
(including, where circumstances warrant, by courier, facsimile or other electronic forms of
communication) to the following:

    (a)    the BVI Counsel, the US Counsel and/or the Singapore Counsel (as the
        case may be); and

    (b)    to the extent not otherwise entitled to receive notice under paragraph
        19(a) above, all parties otherwise entitled to notice, in accordance with
        the rules and practice of the jurisdiction where the papers are filed or the
        proceedings are to occur.

20.     Notice in accordance with paragraph 19 shall be given by the party otherwise responsible for effecting notice in the jurisdiction where the underlying papers are filed or the proceedings are to occur. In addition to the foregoing, upon request, 3AC BVI and the BVI Liquidators shall provide the BVI Court, the US Court and/or the Singapore Court, as the case may be, with copies of any orders, decisions, opinions or similar papers issued by the other relevant Court(s) in the Insolvency Proceedings.

21.     When any cross-border issues or matters addressed by this Protocol are to be addressed before a Court, notice shall be provided in the manner and to the parties referred to in paragraphs 19 and 20 above.

## VIII.     <u>EFFECTIVENESS AND MODIFICATIONS</u>

22.     This Protocol shall take effect from the date this Protocol is approved by all of the Courts.

23.     This Protocol may be amended, modified, terminated or replaced in any matter with the prior approval of all of the Courts.

24.     The BVI Liquidators have liberty to apply to one or all of the Courts for a change under paragraph 23 above, including on an urgent basis.

## IX.     <u>PROCEDURE FOR RESOLVING DISPUTES UNDER THIS PROTOCOL</u>

25.     Any dispute arising out of, in connection with and/or as a result of this Protocol, including any dispute as to its existence or interpretation, may be referred by any stakeholder in the Insolvency Proceedings to any of the BVI Court, the US Court, the Singapore Court, or to any combination thereof (whether concurrently or otherwise).

26.     In rendering a decision to any such dispute, the Court to which the issue is addressed shall consult with the other Courts and may, in its sole and absolute discretion:

(a)     render a binding decision after such consultation;

(b)     defer to the determination of any one or both of the other Court(s) by transferring the dispute, in whole or in part, to the either of the other Courts; or

(c)     seek a Joint Hearing of any one or more of the Courts in accordance with paragraph 12(j) above.

27.    Notwithstanding the foregoing, in rendering a decision under Section IX of this Protocol, each Court shall give due consideration to the independence, comity and jurisdiction of the other Court established under existing laws.

## X.    **PRESERVATION OF RIGHTS**

28.    Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under the terms of this Protocol shall:

(a)     prejudice or affect the powers, rights, claims and defences of 3AC BVI or the BVI Liquidators or any or their representatives appointed from time to time (including their legal and financial advisers who may be appointed in the US Proceedings or Singapore Proceedings), or any of 3AC BVI's creditors under applicable law, including the BVI Insolvency Act, US Bankruptcy Code and Singapore IRDA and the orders of the BVI Court, the US Court and Singapore Court; or

(b)     preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of the BVI, the US or Singapore.

## __SCHEDULE 1__

**Guidelines**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

Procedural Guidelines for                                    General Order M-511
Coordination and Cooperation Between Courts
In Cross-Border Insolvency Matters


--------------------------------------------------------x

By resolution of the Board of Judges of the United States Bankruptcy Court for the
Southern District of New York, in order to improve the efficiency and effectiveness of cross-
border insolvency proceedings and to enhance coordination and  cooperation among courts
under whose supervision such proceedings are being conducted; it is hereby

ORDERED that the Procedural Guidelines for Communication and Cooperation
Between Courts in Cross-Border Insolvency Matters in the United States Bankruptcy Court
for the Southern District of New York (the "Guidelines"), annexed hereto, are adopted,
effective February 17, 2017, and shall be available in the Clerk's Office and on the Court's
website; and it is further

ORDERED, that the Court may modify the Guidelines from time to time by duly
adopted General Order, making the revised Guidelines available in the Clerk's Office and on
the Court's website no less than fourteen (14) days before the effective date.


Dated: Poughkeepsie, New York
        February 17, 2017


                                              /s/Cecelia G. Morris
                                              Chief United States Bankruptcy Judge

## GUIDELINES FOR COMMUNICATION AND COOPERATION BETWEEN COURTS IN CROSS-BORDER INSOLVENCY MATTERS[1]

### INTRODUCTION

A.  The overarching objective of these Guidelines is to improve in the interests of all stakeholders the efficiency and effectiveness of cross-border proceedings relating to insolvency or adjustment of debt opened in more than one jurisdiction ("Parallel Proceedings") by enhancing coordination and cooperation among courts under whose supervision such proceedings are being conducted. These Guidelines represent best practice for dealing with Parallel Proceedings.

B.  In all Parallel Proceedings, these Guidelines should be considered at the earliest practicable opportunity.

C.  In particular, these Guidelines aim to promote:

   (i)      the efficient and timely coordination and administration of Parallel Proceedings;

   (ii)     the administration of Parallel Proceedings with a view to ensuring relevant stakeholders' interests are respected;

   (iii)    the identification, preservation, and maximization of the value of the debtor's assets, including the debtor's business;

   (iv)     the management of the debtor's estate in ways that are proportionate to the amount of money involved, the nature of the case, the complexity of the issues, the number of creditors, and the number of jurisdictions involved in Parallel Proceedings;

   (v)      the sharing of information in order to reduce costs; and

   (vi)     the avoidance or minimization of litigation, costs, and inconvenience to the parties[2] in Parallel Proceedings.

D.  These Guidelines should be implemented in each jurisdiction in such manner as the jurisdiction deems fit.[3]

E.  These Guidelines are not intended to be exhaustive and in each case consideration ought to be given to the special requirements in that case.

F.  Courts should consider in all cases involving Parallel Proceedings whether and how to implement these Guidelines. Courts should encourage and where necessary direct, if they have the power to do so, the parties to make the necessary applications to the court to facilitate such implementation by a protocol or order derived from these Guidelines, and encourage them to act so as to promote the objectives and aims of these Guidelines wherever possible.

---

[1] These Guidelines are distilled in large part from the ALI/ABA/III Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases.
[2] The term "parties" when used in these Guidelines shall be interpreted broadly.
[3] Possible means for the implementation of these Guidelines include practice directions and commercial guides.

1

## ADOPTION AND INTERPRETATION

Guideline 1: In furtherance of paragraph F above, the courts should encourage administrators in Parallel Proceedings to cooperate in all aspects of the case, including the necessity of notifying the courts at the earliest practicable opportunity of issues present and potential that may (a) affect those proceedings; and (b) benefit from communication and coordination between the courts. For the purpose of these Guidelines, "administrator" includes a liquidator, trustee, judicial manager, administrator in administration proceedings, debtor-in-possession in a reorganization or scheme of arrangement, or any fiduciary of the estate or person appointed by the court.

Guideline 2: Where a court intends to apply these Guidelines (whether in whole or in part and with or without modification) in particular Parallel Proceedings, it will need to do so by a protocol or an order[4], following an application by the parties or pursuant to a direction of the court if the court has the power to do so.

Guideline 3: Such protocol or order should promote the efficient and timely administration of Parallel Proceedings. It should address the coordination of requests for court approvals of related decisions and actions when required and communication with creditors and other parties. To the extent possible, it should also provide for timesaving procedures to avoid unnecessary and costly court hearings and other proceedings.

Guideline 4:     These Guidelines when implemented are not intended to:

      (i)     interfere with or derogate from the jurisdiction or the exercise of jurisdiction by a court in any proceedings including its authority or supervision over an administrator in those proceedings;

      (ii)     interfere with or derogate from the rules or ethical principles by which an administrator is bound according to any applicable law and professional rules;

      (iii)     prevent a court from refusing to take an action that would be manifestly contrary to the public policy of the jurisdiction or which would not sufficiently protect the interests of the creditors and other interested entities, including the debtor; or

      (iv)     confer or change jurisdiction, alter substantive rights, interfere with any function or duty arising out of any applicable law, or encroach upon any applicable law.

Guideline 5: For the avoidance of doubt, a protocol or order under these Guidelines is procedural in nature. It should not constitute a limitation on or waiver by the court of any powers, responsibilities, or authority or a substantive determination of any matter in controversy before the court or before the other court or a waiver by any of the parties of any of their substantive rights and claims, except to the extent specifically provided in such protocol or order as permitted by applicable law.

Guideline 6: In the interpretation of these Guidelines or any protocol or order approved under these Guidelines, due regard shall be given to their international origin and to the need to promote good faith and uniformity in their application.

---

[4] In the normal case, the parties will agree on a protocol derived from these Guidelines and obtain the approval of each court in which the protocol is to apply. Pending such approval, or in Parallel Proceedings where there is no protocol, administrators and other parties are expected to comply with these Guidelines.

## COMMUNICATION BETWEEN COURTS[5]

<u>Guideline 7</u>: A court may receive communications from a foreign court and may respond directly to them. Such communications may occur for the purpose of the orderly making of submissions and rendering of decisions by the courts, and to coordinate and resolve any procedural, administrative or preliminary matters relating to any joint hearing where Annex A is applicable. Such communications may take place through the following methods or such other method as may be agreed by the two courts in a specific case:

> (i)    Sending or transmitting copies of formal orders, judgments, opinions, reasons for decision, endorsements, transcripts of proceedings or other documents directly to the other court and providing advance notice to counsel for affected parties in such manner as the court considers appropriate.

> (ii)    Directing counsel to transmit or deliver copies of documents, pleadings, affidavits, briefs or other documents that are filed or to be filed with the court to the other court, or other appropriate person, in such fashion as may be appropriate and providing advance notice to counsel for affected parties in such manner as the court considers appropriate.

> (iii)    Participating in two-way communications with the other court, including by telephone, video conference call, or other electronic means, in which case Guideline 8 should be considered.

<u>Guideline 8</u>: In the event of communications between courts, other than on procedural matters, unless otherwise directed by any court involved in the communications whether on an *ex parte* basis or otherwise, or permitted by a protocol or order, the following shall apply:

> (i)    In the normal case, parties may be present.

> (ii)    If the parties are entitled to be present, advance notice of the communications shall be given to all parties in accordance with the rules of procedure applicable in each of the courts to be involved in the communications, and the communications between the courts shall be recorded and may be transcribed. A written transcript may be prepared from a recording of the communications that, with the approval of each court involved in the communications, may be treated as the official transcript of the communications.

> (iii)    Copies of any recording of the communications, of any transcript of the communications prepared pursuant to any direction of any court involved in the communications, and of any official transcript prepared from a recording may be filed as part of the record in the proceedings and made available to the parties and subject to such directions as to confidentiality as any court may consider appropriate.

> (iv)    The time and place for communications between the courts shall be as directed by the courts.  Personnel other than judges in each court may communicate with each other to establish appropriate arrangements for the communications without the presence of the parties.

---

[5] Communications between administrators are also expected under and to be consistent with these Guidelines.

3

Guideline 9: A court may direct that notice of its proceedings be given to parties in proceedings in another jurisdiction. All notices, applications, motions, and other materials served for purposes of the proceedings before the court may be ordered to be provided to such other parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the court in accordance with the procedures applicable in the court.

## APPEARANCE IN COURT

Guideline 10: A court may authorize a party, or an appropriate person, to appear before and be heard by a foreign court, subject to approval of the foreign court to such appearance.

Guideline 11: If permitted by its law and otherwise appropriate, a court may authorize a party to a foreign proceeding, or an appropriate person, to appear and be heard on a specific matter by it without thereby becoming subject to its jurisdiction for any purpose other than the specific matter on which the party is appearing.

## CONSEQUENTIAL PROVISIONS

Guideline 12: A court shall, except on proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in other jurisdictions without further proof.  For the avoidance of doubt, such recognition and acceptance does not constitute recognition or acceptance of their legal effect or implications.

Guideline 13: A court shall, except upon proper objection on valid grounds and then only to the extent of such objection, accept that orders made in the proceedings in other jurisdictions were duly and properly made or entered on their respective dates and accept that such orders require no further proof for purposes of the proceedings before it, subject to its law and all such proper reservations as in the opinion of the court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such orders. Notice of any amendments, modifications, extensions, or appellate decisions with respect to such orders shall be made to the other court(s) involved in Parallel Proceedings, as soon as it is practicable to do so.

Guideline 14: A protocol or order made by a court under these Guidelines is subject to such amendments, modifications, and extensions as may be considered appropriate by the court consistent with these Guidelines, and to reflect the changes and developments from time to time in any Parallel Proceedings. Notice of such amendments, modifications, or extensions shall be made to the other court(s) involved in Parallel Proceedings, as soon as it is practicable to do so.

## ANNEX A (JOINT HEARINGS)

Annex A to these Guidelines relates to guidelines on the conduct of joint hearings.  Annex A shall be applicable to, and shall form a part of these Guidelines, with respect to courts that may signify their assent to Annex A from time to time. Parties are encouraged to address the matters set out in Annex A in a protocol or order.

## ANNEX A: JOINT HEARINGS

A court may conduct a joint hearing with another court. In connection with any such joint hearing, the following shall apply, or where relevant, be considered for inclusion in a protocol or order:

(i)    The implementation of this Annex shall not divest nor diminish any court's respective independent jurisdiction over the subject matter of proceedings. By implementing this Annex, neither a court nor any party shall be deemed to have approved or engaged in any infringement on the sovereignty of the other jurisdiction.

(ii)    Each court shall have sole and exclusive jurisdiction and power over the conduct of its own proceedings and the hearing and determination of matters arising in its proceedings.

(iii)    Each court should be able simultaneously to hear the proceedings in the other court. Consideration should be given as to how to provide the best audio-visual access possible.

(iv)    Consideration should be given to coordination of the process and format for submissions and evidence filed or to be filed in each court.

(v)    A court may make an order permitting foreign counsel or any party in another jurisdiction to appear and be heard by it. If such an order is made, consideration needs to be given as to whether foreign counsel or any party would be submitting to the jurisdiction of the relevant court and/or its professional regulations.

(vi)    A court should be entitled to communicate with the other court in advance of a joint hearing, with or without counsel being present, to establish the procedures for the orderly making of submissions and rendering of decisions by the courts, and to coordinate and resolve any procedural, administrative or preliminary matters relating to the joint hearing.

(vii)    A court, subsequent to the joint hearing, should be entitled to communicate with the other court, with or without counsel present, for the purpose of determining outstanding issues. Consideration should be given as to whether the issues include procedural and/or substantive matters. Consideration should also be given as to whether some or all of such communications should be recorded and preserved.

## SCHEDULE 2

**Modalities**

# UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

In re:

ADOPTION OF JUDICIAL INSOLVENCY

NETWORK MODALITIES OF                                    General Order M-532

COURT-TO-COURT COMMUNICATION

-------------------------------------------------------------------X


WHEREAS, on February 1, 2017, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered General Order M-511: Procedural Guidelines for Communication and Corporation Between Courts in Cross-Border Insolvency Matters, which adopted; the Guidelines proposed by the Judicial Insolvency Network ("JIN").

WHEREAS, on July 25, 2019, the JIN announced its proposal of the Modalities of Court-to-Court Communication (the "Modalities"); it is hereby

Ordered that:

1. Effective immediately, the Court adopts the Modalities attached hereto.

2.  Pursuant to section 4 (c) of the Modalities, the Court appoints the Clerk of Court, and, in the Clerk of Court's absence, the Chief Deputy Clerk, as the Facilitator.

3. Pursuant to section 7 of the Modalities, the Court identifies English as the language in which initial communication may be made.


*/s/ Cecelia G. Morris*

Cecelia G. Morris

Chief United States Bankruptcy Judge

Dated:   September 4, 2019

## MODALITIES OF COURT-TO-COURT COMMUNICATION

### Scope and definitions

1. These Modalities apply to direct communications (written or oral) between courts in specific cases of cross border proceedings relating to insolvency or adjustment of debt opened in more than one jurisdiction ("Parallel Proceedings"). Nothing in this document precludes indirect means of communication between courts, (e.g., through the parties or by exchange of transcripts, etc.) This document is subject to any applicable law.

2. These Modalities govern only the mechanics of communication between courts in Parallel Proceedings. For the principles of communications (e.g., that court-to-court communications should not interfere with or take away from the jurisdiction or the exercise of jurisdiction by a court in any proceedings, etc.), reference may be made to General Order M-511: *Guidelines for Communication and Cooperation between Courts in Cross-Border Insolvency Matters* (the "Guidelines").

3. These Modalities contemplate contact being initiated by an "Initiating Judge" (defined below). The parties before such judge may request him or her to initiate such contact, or the Initiating Judge may seek it on his or her own initiative.

4. In this document:
    a. "Initiating Judge" refer to the judge initiating communication in the first instance;
    b. "Receiving Judge" refers to the judge receiving communication in the first instance;
    c. "Facilitator" refers to the person(s) designated by the court where the Initiating Judge sits or the court where the Receiving Judge sits (as the case may be) to initiate or receive communications on behalf of the Initiating Judge or the Receiving Judge in relation to the Parallel Proceedings. The Facilitator shall be the Clerk of the Court, and in the Clerk of Court's absence, the Chief Deputy Clerk.

1

**Designation of Facilitator**

5. The Receiving Judge will supervise the initial steps in the communication process after being informed of the request by the Facilitator.

6. The Court will prominently publish the contact details of the Facilitator on its website.

7. The language in which initial communications may be made is English.  The Court will prominently so state and decide the technology available to facilitate communication between or among courts (e.g. and disclose telephonic and/or video conference capabilities, any secure channel email capacity, etc.) on its website.

**Initiating communication**

8. To initiate communication in the first instance, the Initiating Judge may require the parties over whom he or she exercises jurisdiction to obtain the identity and contact details of the Facilitator of the other court in the Parallel Proceedings, unless the information is already known to the Initiating Judge.

9. The first contact with the Receiving Judge should be in writing, including by email, from the Facilitator of the Initiating Judge's court to the Facilitator of the Receiving Judge's court, and contain the following:
    a. the name and contact details of the Facilitator of the Initiating Judge's court;
    b. the name and title of the Initiating Judge as well as contact details of the Initiating Judge if the Receiving Judge wishes to contact the Initiating Judge directly and such contact is acceptable to the Initiating Judge;
    c. the reference number and title of the case filed before the Initiating Judge and the reference number and title (if known; otherwise, some other unique identifier) of the case filed before the Receiving Judge in the Parallel Proceedings;
    d. the nature of the case (with the due regard to confidentiality concerns);

2

e.   whether the parties before the Initiating Judge have consented to the
communication taking place (if there is any order of court, direction or protocol
for court -to-court communication for the case approved by the Initiating Judge,
this information should also be provided);

f.   if appropriate, the proposed date and time for the communication requested (with
due regard to time differences); and

g.   the specific issue(s) on which communication is sought by the Initiating Judge.

**Arrangements for communication**

10. The Facilitator of the Initiating Judge's court and the Facilitator of the Receiving Judge's
may communicate fully with each other to establish appropriate arrangements for the
communication without the necessity for participation of counsel or the parties unless
otherwise ordered by one of the courts.

11. The time, method and language of communication should be to the satisfaction of the
Initiating Judge and the Receiving Judge, with due regard given to the need for efficient
management of the Parallel Proceedings.

12. Where translation or interpretation services are required, appropriate arrangements shall
be made, as agreed by the courts.  Where written communication is provided through
translation, the communication in its original form should also be provided.

13. Where it is necessary for confidential information to be communicated, a secure means of
communication should be employed where possible.

**Communication between the Initiating Judge and the Receiving Judge**

14. After the arrangements for communication have been made, discussion of the specific
issue(s) on which communication was sought by the Initiating Judge and subsequent
communications in relation thereto should, as far as possible, be carried out between the

Initiating Judge and the Receiving Judge in accordance with any protocol or order for communication and cooperation in Parallel Proceedings[1].

15. If the Receiving Judge wishes to by-pass the use of a Facilitator, and the Initiating Judge has indicated that he or she is amenable, the judges may communicate with each other about the arrangements for the communication without the necessity for the participation of counsel or the parties.

16. Nothing in this document should limit the discretion of the Initiating Judge to contact the Receiving Judge directly in exceptional circumstances.

---

[1] See Guideline 2 of the *Guidelines for Communication and Cooperation Between Courts in Cross-Border Insolvency Matters.*