Warren E. Gluck, Esq.
Holland & Knight LLP
31 West 52nd Street, 12th Floor
New York, NY 10019
Tel: 212.513.3200
Email: warren.gluck@hklaw.com

*Counsel to the Foreign Representatives*
*of Three Arrows Capital, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Three Arrows Capital, Ltd.[1] | Case No. 22-10920 (MG) |
| Debtor in a Foreign Proceeding. | |

### FOREIGN REPRESENTATIVES' MOTION FOR ENTRY OF AN ORDER AUTHORIZING ALTERNATE SERVICE OF PROCESS

To the Honorable United States Bankruptcy Judge:

**NOW COMES** Russell Crumpler and Christopher Farmer, in their capacities as the duly authorized joint official liquidators (the "**Foreign Representatives**") of Three Arrows Capital, Ltd (the "**Debtor**"), which is the subject of insolvency proceedings (the "**BVI Proceeding**") currently pending in the British Virgin Islands ("**BVI**") before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "**BVI Court**") and captioned *In re Three Arrows Capital Limited*, Case No. BVIHCOM2022/0119 (June 27, 2022), respectfully submit this motion (the "**Motion**") seeking entry of an order granting authorization to serve subpoenas upon Su Zhu and Kyle Davies (collective, the "**Founders**") via alternate means.

---

[1] The last four digits of the Debtor's British Virgin Islands company registration number are 0531. The location of the Debtor's registered office is ABM Chambers, P.O. Box 2283, Road Town, Tortola, VG1110, British Virgin Islands.

In support of the Motion, the Foreign Representatives rely upon (a) the July 1, 2022 *Declaration of Russell Crumpler in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* ("**Crumpler Decl.**") [ECF No. 3]; (b) the July 8, 2022 *Declaration of Russell Crumpler in Support of Emergency Motion for Provisional Relief* ("**Supp. Crumpler Decl.**") [ECF No. 23]; (c) the July 1, 2022 *Declaration of Grant Carroll in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* ("**Carroll Decl.**") [ECF No. 4]; (d) the July 8, 2022 *Declaration of Grant Carroll in Support of Emergency Motion for Provisional Relief* ("**Supp. Carroll Decl.**") [ECF No. 25]; (e) the July 8, 2022 *Declaration of Christopher Farmer in Support of Emergency Motion for Provisional Relief* ("**Farmer Decl.**") [ECF No. 24]; and (f) the *Declaration of Russel Crumpler in Support of Debtor's Motion for Entry of an Order Authorizing Alternate Service of Subpoenas* ("**Crumpler Decl. Alt. Service**"), filed contemporaneously herewith (collectively, the "**Declarations**"). In further support of the relief requested herein, Foreign Representatives respectfully submit:

### Relief Requested

1.      By this Motion, the Foreign Representatives seek entry of an order, substantially in the form annexed hereto as **Exhibit A**:

   a.  authorizing service of subpoenas on the Founders, attached hereto as **Exhibit B** (the "**Subpoenas**") via (1) email and (2) the Founders' Twitter page, and (3) the Founders' Advocatus counsels' email;

   b.  authorizing the service of FRCP Rule 45 subpoenas to other third parties via alternative means including, but not limited to: (a) mail, (b) email, (c) delivery to the subpoena recipient's place of business or corporate office, or (d) delivery of a

copy of the subpoena to the subpoena recipient's counsel by mail and/or email, *provided* that the Foreign Representatives attempt no less than two of the aforementioned personal service methods;

c.  authorizing the issuance of subpoenas that command the electronic production of documents; and

d.  granting related relief.

2.      The Court may authorize such service pursuant to Rule 45 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable through Rule 9016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      Su Zhu and Kyle Davies are the co-founders and former managers (the "**Founders**") of the Debtor and thereby, possess valuable discoverable information related to this action. However, the Founders' location is unknown, and as discussed below and in the Declarations, the Foreign Representatives and their attorneys have been unable to locate the Founders despite their diligent, good-faith efforts to do so.

4.      Because any delay in serving the subpoenas on the Founders may deplete valuable Debtor resources, the Foreign Representatives seeks the Court's authorization to effect service on the Founders' (1) email addresses, (2) Twitter accounts, and (3) Advocatus counsels' email addresses.

## JURISDICTION

5.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431 from the U.S. District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). Venue is proper in this District pursuant to 28 U.S.C. § 1410.

## **RELEVANT BACKGROUND**

6.     The Debtor is an investment firm incorporated under the laws of the BVI with a focus on trading cryptocurrency and other digital assets that was reported to have over $3 billion of assets under management as of April 2022. *See* Crumpler Decl. ¶¶ 8–9; *see also* Carroll Decl. ¶ 11. The Debtor's business has collapsed in the wake of extreme fluctuations in cryptocurrency markets. *See* Crumpler Decl. ¶¶ 17–18.

7.     On June 27, 2022, the Debtor commenced a liquidation proceeding before the BVI Court, and that court, pursuant to the order appointing the Foreign Representatives as joint liquidators in the BVI Proceeding (the "**BVI Order**"), has appointed the Foreign Representatives as joint liquidators of the Debtor. *See* Crumpler Decl. ¶ 26. On July 1, 2022, the Foreign Representatives commenced this Chapter 15 action [ECF No. 1].

8.     The Debtor was co-founded by Kyle Livingstone Davies and Su Zhu. *Id.* ¶ 9. It had three directors: Davies, Zhu, and Mark James Dubois, a BVI resident. *See* Crumpler Decl. ¶ 9; Carroll Decl. ¶ 11. As has been reported widely in the financial press, the recent decline in the value of many cryptocurrencies and other digital assets has put a strain on the Debtor's financial position and resulted in several of the Debtor's lenders issuing notices of default in respect of the Debtor defaulting on many of its loan obligations. *See* Crumpler Decl. ¶¶ 17–18.

9.     As joint liquidators, the Foreign Representatives are fiduciaries and officers of the BVI Court authorized to take custody and control of the Debtor's assets and, ultimately, effectuate the orderly liquidation of the Debtor's assets for the benefit of the Debtor's creditors. Carroll Decl. ¶¶ 28–29, 34–35; Supp. Carroll Decl. ¶¶ 26–31. In performance of their duties under BVI law, the Foreign Representatives are empowered to investigate the Debtor and its assets, the causes of the Debtor's insolvency, and possible causes of action that may be available to the Debtor. Carroll

Decl. ¶¶ 38, 45, 48; Supp. Carroll Decl. ¶¶ 17, 21. And in furtherance of those investigative powers,

the Foreign Representatives are granted broad informational rights under the BVI Order and BVI

statute. Supp. Carroll Decl. ¶¶ 18–23.

10.     On July 8, 2022, the Foreign Representatives filed a Motion (the "**Provisional

Relief Motion**") [ECF No. 22] seeking provisional relief for, *inter alia*, authorization under

Section 1521(a)(4) of the United States Bankruptcy Code and Bankruptcy Rule 2004 for discovery

against the Founders and others in an effort to assist the Foreign Representatives' investigation.

11.     On July 12, 2022, the Court granted the requested relief ("**Order Granting

Provisional Relief**") [ECF No. 32]—authorizing the Foreign Representatives to issue subpoenas

seeking discovery from the Founders as well as "any other persons or entities that the [Foreign

Representatives] reasonably determine during the course of their investigation may have

information relevant to the Debtor, its affairs, or its assets in form and substance[.]" Order Granting

Provisional Relief ¶ 4.

12.     On July 28, 2022, the Court entered an Order Granting Recognition of Foreign

Main Proceedings and Related Relief ("**Recognition Order**") [ECF No. 47], affirming that the

provisional relief in the Order Granting Provisional Relief remains in "full force and effect."

Recognition Order ¶ 13.

<u>*Non-Compliance from the Founders*</u>:

13.     Although the Debtor voluntarily commenced the BVI Proceedings, the Foreign

Representatives have not yet received acceptable cooperation from the Founders. As part of their

investigation of the Debtor and efforts to obtain control over the Debtor's assets in accordance

with their statutory and fiduciary duties under BVI law, the Foreign Representatives have

attempted since the inception of their appointment to contact the Founders directly and through

counsel in the BVI and Singapore. Supp. Crumpler Decl. ¶ 7. Finally, on July 6, 2022, the Foreign

Representatives received email correspondence from Advocatus Law LLP ("**Advocatus**"),

Singapore counsel purporting to represent the Founders. *Id.* The Foreign Representatives reiterated

to Advocatus the urgent need to meet with the Founders in order to take basic steps to preserve the

Debtor's assets. *Id.* The Foreign Representatives' request for an urgent meeting was denied;

instead, all that was offered was an introductory Zoom call with Advocatus approximately two

days after the firm contacted the Foreign Representatives. *Id.*

14.    On the introductory Zoom call, counsel from Advocatus stated that the Founders

intended to cooperate with the Foreign Representatives. *See* Crumpler Decl. Alt. Service ¶ 18.

While persons identifying themselves as "Su Zhu" and "Kyle" were present on the Zoom call, their

video was turned off and they were on mute at all times with neither of them speaking despite

questions being posed to them directly. *Id.* All dialogue was instead conducted through Advocatus

and Solitaire LLC ("**Solitaire**"), the latter firm the Foreign Representatives understand had been

Singapore counsel to the Debtor. *Id.* The Foreign Representatives requested immediate access to

the Debtor's offices and certain basic information regarding the Debtor's bank accounts and digital

wallets, and were told that Advocatus would discuss with the Founders and hope to provide certain

information in response at a subsequent meeting, which was later cancelled by the Founders. *Id.*

15.    Throughout the month of July, the Foreign Representatives exchanged emails

between their counsel and Advocatus requesting specific information regarding the Debtor's assets

and for cooperation in obtaining access to them; Advocatus repeatedly represented the Founders'

willingness to cooperate. *See id.* ¶¶ 17–29. Specifically, the Founders agreed to cooperate in the

turning over of seed phrases[2] in Kyle Davies's safe deposit box, providing a complete list of

---

[2] "Seed phrase" refers to a group of random words generated by a cryptocurrency wallet,

assets, and the removal/transfer of two factor authentication critical accounts and documents. *See id.* ¶¶ 18–19, 22. Rather than making good faith efforts to cooperate, the Founders chose to offer excuses for their non-compliance and to repeatedly avoid meetings with the Foreign Representatives to discuss the same. *See id.* ¶ 23.

16.    By August of 2022, the Founders had only provided the Foreign Representatives with an incomplete list of assets and accounts, and the Founders continued to withhold information necessary to take control of the limited assets and accounts that had been disclosed. *See id.* ¶¶ 19, 23. In particular, many of the Debtor's accounts include bank accounts, virtual asset service provider accounts, email accounts, and social media account, which are secured by two-factor authentication and require near-real-time cooperation from the Founders. *See id.* ¶ 23. Consistent with their impropriety, the Founders denied repeated requests to transfer the two-factor authentication authority to the Foreign Representatives, or unlock the secured accounts by authenticating the Foreign Representatives' login attempts. *See id.*

17.    Despite the Founders repeated refusal to cooperate and their duties owned to the Debtor, in late July 2022, the Founders saw fit to speak "extensively" with Bloomberg regarding the Debtor's collapse and the ongoing liquidation proceeding. *See id.* ¶ 24. Soon after, on August 11, 2022, the Founders agreed to attend another Zoom meeting with the Foreign Representatives so long as Advocatus could be present. *See id.* ¶ 25. At this meeting, the Foreign Representatives provided a list of high-priority information requests, and Mr. Zhu indicated he would respond accordingly. *See id.*

18.    Remaining unresolved after several weeks, the Foreign Representatives scheduled a second meeting with the Founders and Advocatus on August 26, 2022. *See id.* ¶ 26. The Foreign

---

typically in connection with the setup of the wallet, that allows the holder of the phrase to access the wallet and the assets held therein.

Representatives requested the outstanding information; however, Advocatus limited the conversation to transferring electronic access for certain cryptocurrency exchanges and expressed the Founders reluctance for discussing the outstanding information requests at that time. *See id.*

19.     In sum, since the introductory Zoom call, the Foreign Representatives have communicated with the Founders' counsel via letters, email, and virtual conferences—albeit to no avail. The Founders continue to conceal their whereabouts and have failed to cooperate with the Foreign Representatives in a sufficient manner, including via the Founders' counsel. The Foreign Representatives' efforts are continuing in earnest but have been frustrated by this lack of cooperation to date. Absent alternate service relief of the Subpoenas, there is an actual and imminent risk that the Debtor's assets may be transferred (or further dissipated where such transfers have already taken place) or otherwise disposed of by parties other than the court-appointed Foreign Representatives to the detriment of the Debtor, its creditors, and all other interested parties. Here, that risk is heightened because a substantial portion of the Debtor's assets are, or were, comprised of cash and digital assets, such as cryptocurrencies and non-fungible tokens, that are readily transferrable.

*Non-Compliance from Third Parties*:

20.     Notwithstanding the inadequate engagement by the Founders, the Foreign Representatives have been pursuing their investigation with urgency and by all lawful means available to them. Under the circumstances, the Foreign Representatives have been able to make significant progress, including obtaining access to certain key documents, advancing their investigation through analysis of those documents and publicly available information (including through use of open source intelligence tools such as blockchain explorers, specialist proprietary tools (both directly and through the engagement of the firms that have created them), and other

analytics tools that allow the user to access details on transaction history, blocks, and addresses on a number of different blockchains), identifying and proceeding to control certain accounts and underlying investments, and commencing discussions with creditors regarding their claims, general investigations and liquidation. Supp. Crumpler Decl. ¶ 10. Nevertheless, such effort have been stifled by unreachable third parties to which the same relief is requested herein.

21.     Specifically, Three Arrows Capital Pte. Ltd. (a Singapore entity and the Debtor's immediate parent) and Three AC Ltd (a BVI entity) acted as the Debtor's former and current investment managers, respectively (and collectively referred to as "**Investment Managers**"). *See* Crumpler Decl. Alt. Service ¶¶ 5, 11.

22.     The Investment Managers possess critical information regarding the Debtor's assets and affairs. *See id.* ¶ 11. Namely, the Foreign Representatives believe that the Founders control the Investment Managers, which made investment decisions, managed the Debtor's feeder funds, and generally engaged in day-to-day management activities on behalf of the Debtor. *See id.* Consequently, the Investment Managers have access to, and the means to control, the Debtor's accounts with cryptocurrency exchanges and brokerages and possess valuable discoverable information regarding the Debtor's assets and affairs. *See id.* The fundamental documents and information that the Foreign Representatives believe are in the possession of the Investment Manager and the Founders bears directly on the location and viability of the Debtor's assets and the causes of the Debtor's insolvency. *See id.* Accordingly, obtaining access to such documents and information is critical to marshalling and preserving the Debtor's assets and furthering the Foreign Representatives investigation. *See id.*

23.     The Foreign Representatives have engaged with Solitaire, Singapore counsel purporting to represent at least one of the Investment Managers and which has in the past

represented itself as counsel to the Founders. *See id.* ¶ 12. The Foreign Representatives requested information and documents pertaining to the Debtor in the Investment Managers' possession and control. *See id.* While they partially complied, the Foreign Representatives believe the Investment Managers are withholding relevant and valuable information relating to the Debtor. *See id.*

24.     In the absence of meaningful cooperation from the Founders or the Investment Managers, the Foreign Representatives have been forced to piece together the Debtor's financial situation from publicly available information, information gleaned from blockchain analytics tools, and documents made available by creditors or other interested third parties. *See id.* ¶ 13.

25.     Other attempts to serve third parties have suffered a similar result. For example, on July 11, 2022, the Foreign Representatives requested certain financial and account information from Troy Trade, a prime broker of the Debtor that advertises itself as specializing in crypto trading and asset management. *See id.* ¶ 15. When Troy Trade did not respond, counsel for the Foreign Representatives conducted a thorough search for any other available contact information and made attempts to contact Troy Trade on three additional occasions using two different email addresses. *See id.* To date, Troy Trade has only partially complied with such requests—providing seed phrases through Advocatus for certain digital wallets. *See id.* The Foreign Representatives have also been unable to ascertain any specific information about where Troy Trade is based (other than ostensibly being located in Beijing, China), or if Troy Trade has offices or maintains a physical presence at all. *See id.*

26.     Accordingly, the Foreign Representatives respectfully request that the Court authorize alternate service of the Subpoenas because it is the most reasonably calculated method for providing the Founders and third parties with notice and safeguarding the Debtor's assets.

## BASIS FOR RELIEF REQUESTED

27.     Service of a subpoena in a bankruptcy case is the express and only subject of Rule 9016 of the Federal Rules of Bankruptcy Procedure, and Bankruptcy Rule 9016 incorporates by reference Rule 45. Fed. R. Civ. P. 45; Fed. R. Bankr. P. 9016.

28.     Federal Rule 45(b) explicitly authorizes service of subpoenas anywhere "within the United States" and to "United States national[s] or resident[s] who [are] in a foreign country". Fed. R. Civ. P. 45(b).

29.     When serving non-party subpoenas requesting production of documents from foreign individuals living abroad, Federal Rule 45 is silent. Nevertheless, pursuant to interpretive guidance of Federal Rule 45 and 4, courts across the nation have permitted substitute methods of serving subpoenas—like email and social media.

30.     Accordingly, this Motion will establish: (I) that the Court is empowered to Order service of the Subpoenas by email and Twitter; (II) that the requested means of serving the Subpoenas are reasonably calculated to provide the Founders notice; and (III) that the Court may grant the requested relief with respect to the Founders.

### I.     Rule 45 Permits Substitute Service.

31.     The Court has authorized the Foreign Representatives "to issue subpoenas (a) with respect to the Founders, for the production of document and depositions[.]" Order Granting Provisional Relief ¶ 4.

32.     Rule 45 requires that a subpoena be served by "delivering a copy to the named person . . ." Fed. R. Civ. P. 45(b)(1). Although there is a split of authority between circuits over whether substitute service is permissible, the district courts within the Second Circuit routinely authorize alternative service. The functional purpose of "requiring delivery 'to the named person'

is to 'ensure receipt, so that notice will be provided to the recipient, and enforcement of the subpoena will be consistent with the requirements of due process.'" *Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, No. 06 CIV. 13516, 2008 WL 3833238, at *2 (S.D.N.Y. Aug. 15, 2008) (quoting 9 Moore's Federal Practice § 45.21 (3rd ed. 2008)).

33.    The district court in *Cordius Trust* explained that a reading of Rule 45 as prohibiting alternate service is both unsupported by the rule's expressed language and inconsistent with other federal rules of civil procedure. *Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200, 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000). For example, Rule 45 does not demand personal service of a subpoena; it merely requires that a copy be "deliver[ed]" to the person whose attendance or production of documents is sought. *Id.* This language does not prohibit alternate means of service, and reading this language further "to require personal service would render superfluous that part of Rule 45 indicating that proof of service is accomplished 'by filing with the clerk of court . . . a statement of the date and *manner of service*.'" *Id.* (quoting Fed. R. Civ. P. 45(b)(4)) (emphasis in original). Furthermore, such a restrictive interpretation would be irreconcilable with Rule 4(e)'s language specifying that "delivery" to the individual be done "*personally*"—a word noticeably missing from Rule 45. *See* Fed. R. Civ. P. 4(e)(2).

34.    In summary, the Second Circuit district courts liberally interpret Rule 45 to allow for alternate means of serving the Subpoenas.

## II.    The Requested Alternative Methods of Service are Reasonably Calculated to Provide the Founders Notice.

35.    Where alternative service is "reasonably calculated" to provide timely actual notice to the subpoenaed non-party, courts in this circuit have found such service to meet the requirements of Rule 45. *See, e.g., First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 255 (S.D.N.Y. 2000) (finding that attaching a subpoena to the door and mailing another copy to counsel

of record was sufficient, "especially since, as noted, Rafidain does not deny that it received timely actual notice of the subpoena"); *Cordius Trust*, 2000 WL 10268, *2 (holding that because "alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness, the 'delivery' requirement of Rule 45 will be met"); *Cartier v. Geneve Collections, Inc.*, No. CV 2007-0201 (DLI) (MDG), 2008 WL 552855, *1, 2008 U.S. Dist. LEXIS 14714, *1 (E.D.N.Y. Feb. 27, 2008) ("'delivery' under Rule 45 means a manner of service reasonably designed to ensure actual receipt of a subpoena by a witness, rather than personal service").

36.    In conducting this fact-intensive inquiry into whether the alternate means of service are "reasonably calculated" to give the recipient notice, courts have looked to Rule 4 and its interpretation for guidance. *See In re Shur*, 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995) (conducting an extended analysis of policies supporting Rule 45 and concluding that "the only limitation upon service under Rule 45 is that the procedure employed be reasonably calculated to give the non-party actual notice of the proceedings and an opportunity to be heard." (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652  (1950) (holding that due process permits service of process by mail so long as such service provides "notice reasonably calculated ... to apprise interested parties of the pendency of the action"))); *In re Procom Am., LLC*, 638 B.R. 634, 644 (Bankr. M.D. Fla. 2022) (explaining that cases involving Rule 4(f) are "instructive because the standard for determining whether service is effective [under Rule 4] is essentially the same [as Rule 45]: the method of service must be reasonably calculated to give notice and an opportunity to respond.").

A.    <u>There are Numerous of Methods of Service that Courts have Interpreted to be "Reasonably Calculated" Under Rule 4.</u>

37.    Federal Rule 4(f) permits service on a foreign individual so long as they are not a "minor, incompetent person, or person whose waiver has been filed." Fed. R. Civ. P. 4(f). This

rule authorizes the Court to direct any form of service for the subpoenas that "is not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3); *see Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement."). As with all permissible methods of service, such alternative service must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props, Inc.*, 284 F.3d at 1016-17 (citing *Mullane*, 339 U.S. at 314).

38.    Federal courts have routinely interpreted Federal Rule 4(f)(3) to authorize service by email and social media. *See Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112, 2018 WL 4757939, at *13 (S.D.N.Y. Sept. 30, 2018) (allowing alternative service of process by email under Federal Rule 4(f)(3), despite defendant's argument that such service did not comport with Chinese law, because it was not prohibited by international agreement); *Broadfoot v. Diaz (In re Telemedia Assocs., Inc.)*, 245 B.R. 713, 718 (Bankr. N.D. Ga. 2000) (permitting service by email because defendant was purportedly traveling throughout Europe and the Far East, and thus was a "moving target"); *In re Barkats*, No. 14-00053, 2014 Bankr. LEXIS 3808, at *5 (Bankr. D.C. September 8, 2014) (electronic service on debtor who claimed to be a French resident was authorized because debtor was difficult to locate and there were legitimate doubts that debtor was in fact domiciled in France); *Hardin v. Tron Found.*, 20-CV-2804, 2020 WL 5236941, at *1 (S.D.N.Y. Sept. 1, 2020) (granting alternative service by email and social media messaging); *Rensel v. Centra Tech, Inc.*, No. 17-CV-24500, 2019 WL 3429149, at *1 (S.D. Fla. Mar. 8, 2019) (granting plaintiffs motion for alternative service via email, LinkedIn messenger, and the "contact us" form listed on the defendant's website through which he solicited

investments for initial coin offerings); *see also, St. Francis Assisi v. Kuwait Fin. House*, No. 16-cv-3240, 2016 U.S. Dist. LEXIS 136152, at *4 (N.D. Cal. Sep. 30, 2016) (discussing decision to grant "service by email, Facebook, and LinkedIn because notice through these accounts was reasonably calculated to notify the defendant of the pendency of the action and was not prohibited by international agreement"); *Nowak v. XAPO, Inc.*, No. 20-CV-03643, 2020 WL 5877576, at *4 (N.D. Cal. Oct. 2, 2020) (authorizing service on an Indonesian defendant by email and via social media to its Facebook and Twitter accounts); *In re Bibox Group Holdings Limited Securities Litigation*, 2020 WL 4586819, at *3 (S.D. N.Y. 2020) (authorizing service over certain Chinese defendants via, among other methods, "their social media accounts," including Twitter, and "corporate and personal email"); *St. Francis Assisi v. Kuwait Finance House*, 2016 WL 5725002, at *2 (N.D. Cal. 2016) (authorized service of process on a Kuwaiti national by Twitter, finding that "service by the social-media platform, Twitter, is reasonably calculated to give notice to and is the method of service most likely to reach [the defendant]" and that the defendant "has an active Twitter account and continues to use it to communicate with his audience").

39.    Federal courts have also found it permissible to order service on a party's attorney. *Micron Technology, Inc. v. United Microelectronics Corporation*, 2018 WL 6069646, at *2 (N.D. Cal. 2018) ("allowing Micron to serve the summons and complaint on [Chinese defendant] Jinhua by emailing said documents to Jinhua's counsel of record in the United States is appropriate, as such form of alternative service is not prohibited under the Hague Convention, . . . and has been approved by federal courts on numerous occasions"); *In re Mercedes-Benz Emissions Litigation*, 2019 WL 2913309, at *4 (D.N.J. 2019) (same).

40.    Such methods of service are not prohibited by international agreement, and the Hague Convention is inapplicable when the location of the person to be served is unknown. *See*

The Hague Service Convention, art. I, Nov. 15, 1965, 20 U.S.T. 361 ("This Convention shall not apply where the address of the person to be served with the document is not known"); *Prediction Co. LLC v. Rajgarhia*, No. 09-cv-07459 (SAS), 2010 U.S. Dist. Lexis 26536, *5 (S.D.N.Y. Mar. 22, 2010) ("[I]t is worth observing the inapplicability of the Hague Convention . . . because [the defendant's] address is not known to [plaintiff]").

41.    The Founders are concealing their location, and despite efforts to work through these issues through counsel and other means that would avoid burdening this Court with the issue, the Foreign Representatives cannot determine the Founders' whereabouts—making the Hague Convention inapplicable to the current analysis. Moreover, Counsel is unaware of any other international agreement which could potentially prohibit service via the means requested herein. *Shen*, 2018 WL 4757939, at *5 (granting email service on foreign defendant with unknown location and finding that no international agreement which would prohibit it).

**B.    There are Numerous of Methods of Service that Courts have Interpreted to be "Reasonably Calculated" Under Rule 45.**

42.    Courts within this district have authorized service via email and recipient's counsel. *See, e.g.*, *SEC v. Pence*, 322 F.R.D. 450, 455 (S.D.N.Y. 2017) (granting substitute service by certified mail, email, fax, and telephone); *QED, LLC v. Faber Daeufer & Itrato, P.C.*, No. 20CV2767, 2020 WL 5642256, at *1 (S.D.N.Y. Sept. 22, 2020) (allowing plaintiff to serve the subpoena by certified mail and email to subpoena target's counsel).

43.    Some courts have required a party seeking leave to serve by alternative means "to demonstrate a prior diligent attempt[s] to personally serve" before permitting a substituted service under Rule 45. *Kenyon v. Simon & Schuster, Inc.*, No. 16 MISC. 327 (P1), 2016 WL 5930265, at *3 (S.D.N.Y. Oct. 11, 2016). Other courts within the same district, however, have not even required a party to move for an order permitting alternative service in advance of such

16

service. *See Ultradent Prods., Inc. v. Hayman*, 2002 WL 31119425, at *4 (S.D.N.Y. Sept. 24, 2002) (service by certified mail was sufficient even when party did not move for an order authorizing substitute service in advance of service).[3]

### C.   The Facts and Circumstances of This Case Warrant Service via the Founders' Email and Twitter Accounts and Founders' Counsels' Email Accounts.

44.     Here, the requested relief is reasonably calculated to provide the Founders notice of the Subpoenas and an opportunity to respond. The Foreign Representatives and their agents have engaged sophisticated investigative firms to search for the Founders all over the globe, yet those efforts have yet to bear fruit. To date, the Foreign Representatives are unable to discover the location of the Founders—making traditional service of the Subpoenas futile. Nevertheless, the Foreign Representatives have successfully identified the Founders' twitter accounts, personal email addresses, and counsels' email addresses—methods reasonably calculated for providing notice to persons who have foreclosed all manner of communication but for electronic means. *See* Crumpler Decl. Alt. Service ¶¶ 15, 17, 19–21, 36–41.

45.     Namely, the Founders utilized their large Twitter following to discuss cryptocurrency related news with the online community and directly promote the Debtor's investments. *Id.* ¶¶ 39–41. Both Su Zhu and Kyle Davies posted on Twitter as recently as July 12,

---

[3] This discrepancy may also likely be explained by Rule 4. Namely, "[i]n deciding whether to exercise their discretion to permit alternative service under Rule 4(f)(3), some courts have looked to whether there has been (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary. However, those considerations guide the exercise of discretion, and are not akin to an exhaustion requirement." *In re BRF S.A. Sec. Litig.*, No. 18-CV-2213, 2019 WL 257971, at *2 (S.D.N.Y. Jan. 18, 2019) (emphasis added). Nevertheless, "[a]lthough a party need not exhaust all possible methods of service this [c]ourt will require parties seeking relief under Fed. R. Civ. P. 4(f)(3) to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile." *Klosin v. E.I. Du Pont de Nemours & Co.*, 19-CV-00109, 2020 WL 12949469, at *1 (W.D.N.Y. July 17, 2020) (internal citations omitted).

2022, posting a screenshot of email communications with their attorneys, Advocatus. *See id*. The Founders' recent use of their Twitter accounts and the Founders' use of those accounts for purposes related to the Debtor makes those Twitter accounts a reasonable means to provide the Founders notice of discovery in this action. The undersigned requests the Court to permit alternate service of the Subpoenas upon the Founders' Twitter accounts:

      a.  **Kyle Davies**: @KyleLDavies

      b.  **Su Zhu**: @zhusu

    46.    The Founders' personal email accounts too are recently active and connected to use relating to the Debtor; delivering the Subpoenas via these email accounts would thus be reasonably calculated to provide the Founders notice. Specifically, the undersigned requests permission to serve the Subpoenas to:

      a.  **Kyle Davies** at ███████████, the email address Mr. Davies used when registering an account with a cryptocurrency exchange. Mr. Davies also used ███████████ as his Debtor-related email address, which was cc'd in communications with the Foreign Representatives and Advocatus introductory zoom meetings, requests for information about the Debtor's assets, and other related cooperation. Advocatus counsel have also recommended the use of ███████████ for direct contact with their client. *See id*. ¶¶ 36–38.

      b.  **Su Zhu** at ███████████, the email address Mr. Zhu used as recently as July 18, 2022. Zhu also used ███████████ as his Debtor related email address, which was also cc'd in communications between the Foreign Representatives and Advocatus. Advocatus counsel have also recommended the use of ███████████ for direct contact with their client. *See id.*

47.     Counsel at Advocatus have communicated with the Foreign Representatives on behalf of the Founder's and have attended several meetings with them. *See id.* ¶¶ 15, 17, 19–21. Delivering the Subpoenas via Advocatus counsels' email accounts would also be reasonably calculated to provide the Founders notice.

48.     Consequently, each of the above means are independently reasonably calculated to provide the Founders with notice of the Subpoenas.

### III.     Time Is of the Essence to Serve the Subpoenas on the Founders.

49.     The Subpoenas addressed to the Founders address matters of urgency in the Debtor's case. As asserted in greater detail in the Foreign Representatives' Provisional Relief Motion, the Foreign Representatives continued collection and identification of valuable Debtor assets is critical to their protection and safekeeping. The risk of irreparable harm in any delay is great because a substantial portion of the Debtor's assets are comprised of cash and digital assets, such as cryptocurrencies and fungible tokens, that are readily transferrable and the Founders, whose whereabouts remain unknown, are believed to remain in control over many of the accounts where the assets are held.

50.     Federal Rule 4(f)(3) was designed to allow the court to order a "special method of service" in precisely such cases of "urgency." *See* Fed. R. Civ. P. 4(f), advisory committee's note to 1993 amendments (noting that the rule was intended to allow alternative methods of service "in cases of urgency if conventional methods will not permit service within the time required by the circumstances" allowed under the Hague Service Convention).

51.     The Founders' successes in concealing their locations prevents traditional service methods. Nevertheless, Rule 45, Rule 4, and the authorities interpreting those Rules empower the Court to authorize alternate service so long as it is reasonable calculated to notify the Founders.

As explained above, federal courts within this district, and around the country, grant the methods of alternate service requested herein when appropriate. Here, the Foreign Representatives have demonstrated how such means are reasonably calculated to notify the Founders of the Subpoenas. Accordingly, to prevent irreparable harm caused by further delay, the Foreign Representatives respectfully request that the Court permit alternate service of the Subpoenas to the Founders' (1) email addresses; and (2) Twitter accounts.

## IV.    **Alternate Service Requirements are Likewise Appropriate on Other Third Parties.**

52.    To the extent that the Foreign Representatives are unable to effectuate personal service on persons and entities with information relevant to the Debtor's assets, affairs, rights, obligations, or liabilities, the Foreign Representatives propose to effectuate service in a manner that is feasible and is reasonably calculated to provide timely, actual notice, including, but not limited to, service via: (a) mail, (b) email, (c) delivery to the subpoena recipient's place of business of business or corporate office, or (d) delivery of a copy of the subpoena to the subpoena recipient's counsel by mail and/or email.

53.    The Foreign Representatives propose to attempts no less than two of the aforementioned alternative service methods. The proposed means of alternative service are reasonably calculated to give notice and an opportunity to respond and is in line with service approved by other courts.

54.    It is within this Court's power to preemptively authorize alternative methods of service. While courts have required a party seeking leave to serve by alternative means "to demonstrate a prior diligent attempt to personally serve" before permitting a substituted service under FRCP Rule 45, *see Kenyon v. Simon & Schuster, Inc.*, No. 16 MISC. 327 (P1), 2016 WL 5930265, at *3 (S.D.N.Y. Oct. 11, 2016), it is by no means a prerequisite for alternative service as

other courts in this Circuit have authorized alternative service after the fact. *See Ultradent Prods., Inc.*, 2002 WL 31119425, at *4 (holding service by certified mail was sufficient even when party did not move for an order authorizing alternative service in advance of service).  Nonetheless, the relief the Foreign Representatives seek here would only authorize alternative service if the Foreign Representatives are not able to effectuate personal service.

55.    The Foreign Representatives have engaged in extraordinary diligence since their appointment to track down and secure the Debtor's assets. In light of events to date, they anticipate continued logistical issues with serving third-party subpoenas. Indeed, the Foreign Representatives anticipate that due to the nature of the entities and individuals it will seek to subpoena, personal service will be difficult and, at times, impossible. Initial diligence has revealed that several of these entities are located abroad or do not maintain a physical presence, have readily available contact information, and/or have a registered agent for service of process. For example, attempts by the Foreign Representatives to serve third parties has proved difficult, including failed attempts to serve several third parties, including the Founders, Investment Managers, Troy Trade, and the like. Indeed, the Foreign Representatives' difficulties to date have resulted in the inability to issue all the subpoenas necessary to uncover the Debtor's assets.

56.    As to non-Founder parties that the Foreign Representatives plan to serve, the attempted service on the Investment Managers and Troy Trade evidences what will likely become a repeated barrier for the Foreign Representatives' efforts to discover the Debtor's assets without the relief requested herein. As it stands today, the Foreign Representatives have already faced numerous difficulties in contacting various other financial institutions and exchanges.

57.    In light of the foregoing, authorization to serve third parties via alternative means is crucial to the Foreign Representatives' continued efforts, and the relief should be granted.

Without such relief, the Foreign Representatives will be hamstrung moving forward and may never be able to gather the information that is necessary to their continued investigations and the ultimate liquidation of the Debtor.

## V.    The Issuance of Subpoenas Authorizing Electronic Production Should Be Permitted.

58.    The Foreign Representatives also seek an order authorizing the subpoenas issued by the Foreign Representatives to command the electronic production of documents. FRCP Rule 45 states that a subpoena may command the "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). However, courts have consistently upheld electronic production of documents as consistent with the 100-mile requirement in FRCP Rule 45 because the subpoenaed entity "at all times act[s] within 100 miles of its office" when it uploads documents electronically. *Mackey v. IDT Energy, Inc.*, No. 19 MISC. 29 (PAE), 2019 WL 2004280, at *4 (S.D.N.Y. May 7, 2019) (collecting cases); Advisory Committee Notes to Fed. R. Civ. P. 45 ("parties often agree that production . . . be transmitted by electronic means" and Rule 45(c)(2)(A) does not prohibit such arrangements). Indeed, the purpose of Rule 45(c) "is to avoid imposition of unreasonable travel burdens." *See Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transp.*, 180 F. Supp. 3d 290, 293 (S.D.N.Y. 2016).

59.    In granting alternate means of serving the subpoena, a Southern District of New York court has explained that Rule 45 must be read in accordance with the interpretive principle that the rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action." *Cordius Trust*, 2000 WL 10268, *7 (quoting Fed. R. Civ. P. 1). Furthermore, "the Federal Rules of Civil Procedure should not be construed as a shield for a witness who is purposefully attempting to evade service." *Id.; see also Probulk Carriers*, 180 F.

22

Supp. 3d at 294 (compelling foreign national residing in Istanbul, Turkey to produce documents at any place agreed upon by the parties or in Istanbul).

60.     To date, in serving subpoenas previously authorized by the Provisional Relief Order, the Foreign Representatives have attempted to comply with FRCP Rule 45 by commanding the production of documents within 100 miles of where the person resides, is employed, or regularly transactions.  However, after service of the subpoena, the Foreign Representatives and the subpoenaed party have typically agreed to electronic production, as it is less burdensome on both parties.

61.     The Foreign Representatives would expressly accept, and in fact prefer, that the Founders send their production via email or equivalent electronic means that would not require any travel. Therefore, the Foreign Representatives' request relief does not implicate the inconvenience concerns targeted by Rule 45(c), and it should be granted. *See Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 63 (S.D.N.Y. 1998) ("Compelling the production of documents does not present the inconvenience targeted by Rule 45(c). It is one thing to require document production and another to force the presence of a nonparty witness in a foreign land. As discussed above, the Federal Rules of Civil Procedure provide territorial restrictions for deposition testimony of nonparties only. No such limitation is afforded to nonparties faced with a subpoena requiring document production.").

## Notice

62.     The Foreign Representatives have provided notice of the Motion, pursuant to Bankruptcy Rules 1011(b) and 2002(q), to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the Securities and Exchange Commission; (c) the Founders; (d) the members of the committee of unsecured creditors appointed in connection with the BVI

Proceeding; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 of which the Foreign Representatives are aware. In light of the relief requested, the Foreign Representatives submit that no further notice is necessary.

### No Prior Request

63.    No prior request for the relief sought in this Motion has been made by the Debtors or the Foreign Representatives to this or to any other court.

WHEREFORE, the Foreign Representatives respectfully request entry of an order substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.


Dated: October 14, 2022                                Respectfully submitted,
New York, New York

                                                       /s/ Warren E. Gluck
                                                       Warren E. Gluck, Esq.
                                                       Holland & Knight LLP
                                                       31 West 52nd Street, 12th Floor
                                                       New York, NY 10019
                                                       Tel: 212.513.3200
                                                       Email: warren.gluck@hklaw.com

                                                       *Counsel to the Foreign Representatives of*
                                                       *Three Arrows Capital, Ltd.*