Warren E. Gluck, Esq.
Shardul S. Desai, Esq. (*pro hac vice* pending)
Holland & Knight LLP
31 West 52nd Street, 12th Floor
New York, NY 10019
Tel: 212.513.3200
warren.gluck@hklaw.com
shardul.desai@hklaw.com

*Counsel to the Foreign Representatives*
*of Three Arrows Capital, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Three Arrows Capital, Ltd. | Case No. 22-10920-(mg) |
| Debtor in a Foreign Proceeding. | |

**DEBTOR'S SUPPLEMENTAL MEMORANDUM OF LAW ON**
**ALTERNATE SERVICE OF PROCESS**

To the Honorable United States Bankruptcy Judge:

**NOW COMES** Russell Crumpler and Christopher Farmer in their capacities as the duly authorized joint liquidators (the "**Foreign Representatives**") of Three Arrows Capital, Ltd (the "**Debtor**"), which is the subject of insolvency proceedings (the "**BVI Proceeding**") currently pending in the British Virgin Islands ("**BVI**") before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "**BVI Court**") and captioned *In re Three Arrows Capital Limited*, Case No. BVIHCOM2022/0119 (June 27, 2022), who respectfully submit this Supplemental Memorandum of Law in support of their Motion for Entry of an Order Authorizing Alternative Service of Process ("Alternative Service Motion"). ECF No. 55.

The Alternative Service Motion seeks entry of an Order: (a) authorizing service of subpoenas on Su Zhu ("**Zhu**") and Kyle Davies ("**Davies**") (collective, the "**Founders**") via (1) email, (2) the Founders' Twitter page, and (3) the Founders' Advocatus counsels' email; (b) authorizing the service of subpoenas on Three Arrows Capital Pte. Ltd. and Three AC Ltd. ("**Investment Managers**") via alternative means including, but not limited to: (1) mail, (2) email, (3) delivery to the subpoena recipient's place of business or corporate office, or (4) delivery of a copy of the subpoena to the subpoena recipient's counsel by mail and/or email, *provided* that the Foreign Representatives attempt no less than two of the aforementioned personal service methods; (c) authorizing the issuance of subpoenas that command the electronic production of documents; and (d) granting related relief. *See* ECF No. 55.

The Court held a hearing on December 2, 2022 and requested additional information concerning its personal jurisdiction over the related entities to compel compliance with alternative service of subpoenas issued under Federal Rule of Civil Procedure 45.[1] Therefore, the Foreign Representatives submit this supplemental briefing.[2]

---

[1] The Court also requested case law that supported alternative service by Twitter. The following cases permitted such alternative service by Twitter: *In re Bibox Group Holdings Limited Securities Litigation*, 2020 WL 4586819, at *3 (S.D.N.Y. Aug. 10, 2020) (authorizing service over certain Chinese defendants via, among other methods, "their social media accounts," including Twitter, and "corporate and personal email"); *Oscilloscope Pictures, Inc. v Monbo*, 2019 WL 2436296, at *2 (E.D. N.Y. Feb. 22, 2019) (granting the plaintiff's motion for alternate service via email, Twitter, and first class mail because the defendants "demonstrated actual notice and an attempt to evade proper service by disparaging remarks made on social media regarding Plaintiff's lawsuit and the Complaint"); *Nowak v. XAPO, Inc.*, No. 20-CV-03643, 2020 WL 5877576, at *4 (N.D. Cal. Oct. 2, 2020) (authorizing service on an Indonesian defendant by email and via social media to its Facebook and Twitter accounts); *St. Francis Assisi v. Kuwait Finance House*, 2016 WL 5725002, at *2 (N.D. Cal. Sept. 30, 2016) (authorizing service of process on a Kuwaiti national by Twitter, finding that "service by the social-media platform, Twitter, is reasonably calculated to give notice to and is the method of service most likely to reach [the defendant]" and that the defendant "has an active Twitter account and continues to use it to communicate with his audience").

[2] The presentation and arguments provided herein are intended to address the Court's specific

In support of this Memorandum, the Foreign Representatives rely upon (a) the July 1, 2022 *Declaration of Russell Crumpler in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* ("**Crumpler Decl.**") [ECF No. 3]; (b) the July 8, 2022 *Declaration of Russell Crumpler in Support of Emergency Motion for Provisional Relief* ("**Supp. Crumpler Decl.**") [ECF No. 23]; (c) the July 1, 2022 *Declaration of Grant Carroll in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* ("**Carroll Decl.**") [ECF No. 4]; (d) the July 8, 2022 *Declaration of Grant Carroll in Support of Emergency Motion for Provisional Relief* ("**Supp. Carroll Decl.**") [ECF No. 25]; (e) the July 8, 2022 *Declaration of Christopher Farmer in Support of Emergency Motion for Provisional Relief* ("**Farmer Decl.**") [ECF No. 24]; (f) the *Declaration of Russell Crumpler in Support of Debtor's Motion for Entry of an Order Authorizing Alternate Service of Subpoenas* ("**Crumpler Decl. Alt. Service**") [ECF No. 56], and (g) *Supplemental Declaration of Russell Crumpler in Support of Debtor's Motion for Entry of an Order Authorizing Alternate Service of Subpoenas* ("**Supp. Crumpler Decl. Alt. Service**") filed contemporaneously herewith (collectively, the "**Declarations**").

## I.    The Founders and Investment Managers have Substantial Contacts with the United States.

Davies was born in the United States and, therefore, is a United States citizen by birth. Supp. Crumpler Decl. Alt. Service ¶ 5. Additionally, the Debtor's Register of Directors filed with the BVI Financial Service Commission lists Davies as being born in the United States and his

---

questions related to personal jurisdiction solely with respect to the Rule 45 subpoenas. This Supplemental Memorandum is not intended to address personal jurisdiction over the Founders or the Investment Managers in regards to other claims or issues that may arise during the pendency of this Chapter 15 proceeding. The Foreign Representatives expressly reserve the right to raise such personal jurisdiction arguments concerning such claims or issues at the appropriate time.

nationality as American.  *Id.*  The Foreign Representatives have no actual knowledge whether Davies has formally renounced his U.S. citizenship under U.S. law, but note that a subsequent listing of Davies in the Register of Directors identifies him as Singaporean and that Davies holds Italian and Singaporean passports that were issued in 2017 and 2021 respectively.[3] *Id.*  Therefore, all available information indicates that Davies remains a U.S. citizen or was a U.S. citizen during the vast majority of the Debtors' operations.

Zhu was born in China.  *Id.* ¶ 6.  He moved to the United States, attended high school in Massachusetts and college in New York, and lived in San Francisco in 2012.  *Id.*  Therefore, in order to have legally resided in the United States, at a minimum, Zhu had a U.S. Visa.  Zhu holds a Singaporean passport, which was issued in 2020.  *Id.*  In addition, the Debtor's Register of Directors filed with the BVI Financial Service Commission lists Zhu as Singaporean.  *Id.*

In 2012, Davies and Zhu founded Three Arrows Capital entities.  *Id.* ¶ 7.  They formed Three Arrows Capital, LLC in the State of Delaware and registered it to operate in the State of California under the name Three Arrows Capital Management, LLC.  *Id.*  The company initially focused on arbitraging foreign exchange derivatives and operated through utilization of credit from legacy American financial institutions, such as JP Morgan, Citibank, and Bank of America.  *Id.* ¶ 8–9.  After transitioning its business structure to focusing on cryptocurrencies, the Founders executed hundreds of millions of dollars in funding deals in and/or with over 30 American cryptocurrency, blockchain, and fintech companies, including Aptos Labs, dYdx, and BlockFi.  *Id.* ¶¶ 9, 12.  These deals included a syndicate of investors, many of which were based in the United States, such as Andreesen Horowitz, Coinbase Ventures, Gemini Frontier Fund, Tiger Global

---

[3] Under Singaporean law, foreign nationals may become Singaporean citizens after, *inter alia*, renouncing all other citizenships.  In addition, foreign nationals must reside in Singapore for 10-years or receive a governmental waiver from this residency requirement.  Neither Founders appear to have satisfied this residency requirement.

4

Management, LLC, PayPal Ventures, Circle Ventures, Signature Bank, and Silvergate Bank. *Id.* ¶ 14.

Many of the Debtor's contracts concerning these funding deals are governed by U.S. laws. *Id.* ¶ 15. For instance, many of the Debtor's largest loan contracts contained New York venue and choice of law provisions, even in contracts that did not involve American entities. *Id.* The Founders, on behalf of the Debtors, also contracted with U.S.-based service providers, such as BitGo,[4] an auditing service provider located in California. *Id.* ¶ 17. In a recent interview, Davies stated that he and Zhu ran the firm together and built everything in-house themselves and personally performed every role at the firm, including trade executions, operations, human resources, and risk assessments. *Id.* ¶ 10. Thus, based on Davies' own admission, Davies and Zhu were responsible for all of the Debtors' contacts with the United States.

The Founders also conducted the Debtors' business via the Investment Managers. Davies and Su own 100% equity in Three Arrows Capital Pte. Ltd.; Zhu and Davies' wife own 100% equity in Three AC Ltd. *Id.* ¶ 11. The Founders controlled the Investment Managers, which made investment decisions, managed the Debtor's feeder funds, and generally engaged in day-to-day management activities on behalf of the Debtor. *Id.* Davies' recent statement that he and Zhu ran everything related to the Debtors further evidences their control over the Investment Managers.

**II.     The Founders and the Investment Managers are Subject to the Court's Jurisdiction Because they have Substantial Contacts with the United States, and the Discovery Sought is Related to these Contacts Discovery Sought.**

Rule 45(b) of the Federal Rules of Civil Procedure explicitly authorizes service of subpoenas anywhere "within the United States" and to "United States national[s] or resident[s]

---

[4] BitGo also obtained a New York Trust license to operate as an independent, regulated qualified custodian under New York State Banking law. BitGo Holdings, Inc. is the parent company, which is a Delaware corporation headquartered in Palo Alto, California.

who [are] in a foreign country." Fed. R. Civ. P. 45(b). The Rule has a specific subsection that governs service in a foreign country. Specifically, it states that "28 U.S.C. § 1783 governs issuing and serving a subpoena directed to a United States national or resident who is in a foreign country." Fed. R. Civ. P. 45(b)(3). In order to authorize such subpoenas, Section 1783 requires a showing that the "particular testimony . . . is necessary in the interest of justice, and [in civil cases] . . . that it is not possible to obtain the production of the document or other thing in any other manner." 28 U.S.C. § 1783.

When serving non-party subpoenas requesting production of documents from foreign individuals living abroad, Rule 45 is silent. Nevertheless, this Court has explained "a federal court's . . . power to issue a subpoena is determined by its jurisdiction," not the location of the recipient. *In re China Fishery Grp. Ltd.*, No. 16-11895, 2017 WL 3084397, at *5 (Bankr. S.D.N.Y. July 19, 2017) (quoting *Marc Rich & Co., A.G. v. United States*, 707 F.2d 663, 669 (2d Cir. 1983)); *see also Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 318, 320–21 (S.D.N.Y. 2018) (granting motion to compel nonparty Chinese banks to comply with subpoenas where the court had personal jurisdiction over the banks); *Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transp.*, 180 F. Supp. 3d 290, 294 (S.D.N.Y. 2016) (compelling foreign national residing in Istanbul, Turkey to produce documents at any place agreed upon by the parties or in Istanbul); *Dexia Credit Loc. v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) ("Once personal jurisdiction over the person and control over the documents by [this] person are present, a United States court has power to order production of the documents. The existence of a conflicting foreign law which prohibits the disclosure of the requested documents does not prevent the exercise of this power.").

Personal jurisdiction is not specifically addressed in Rule 45's text, but such jurisdiction is essential for a court to compel compliance with a subpoena. *See Gucci Am., Inc. v. Weixing Li*,

768 F.3d 122, 141 (2d Cir. 2014) (A district court "must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45."); *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) (finding personal jurisdiction upon remand).

Personal jurisdiction exists over a subpoenaed third party where: (i) the third party "'purposely availed' itself of the 'privilege of conducting activities within the [United States] . . . invoking the benefits and protections of its laws'" and (ii) there is some "articulable nexus" between the third party's contacts with the United States and the discovery sought. *See Nike, Inc.*, 349 F. Supp. 3d at 323, 328; *Bickerton v. Bozel S.A. (In re Bozel S.A.)*, 434 B.R. 86, 100 (Bankr. S.D.N.Y. 2010). When compelling a non-party to comply with a discovery request, the Court must also decide "whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice." *Gucci Am., Inc.*, 768 F.3d at 137. All factors of the test are satisfied here.

Because bankruptcy rules permit nationwide service of process, bankruptcy courts addressing the question of constitutional due process conclude that a minimum contacts inquiry with the state where the bankruptcy court is located is unnecessary; instead, the appropriate focus is whether there are <u>sufficient minimum contacts with the United States</u>. *In re Zawawi*, 644 B.R. 907, 914 (Bankr. M.D. Fla. 2022) (applying nationwide minimum contacts test in a chapter 15 proceeding to evaluate the defendant's jurisdictional contacts); *In re DBSI, Inc.,* 451 B.R. 373, 376 (Bankr. D. Del. 2011) ("Because Rule 7004(d) provides for nationwide service of process, the relevant forum is the United States.").

Appellate courts and courts within this district have found that foreign individuals may be subjected to a court's personal jurisdiction based upon the activities of their employers. *See*, *e.g.*,

7

*Application to Enforce Administrative Subpoenas Duces Tecum of SEC v. Knowles*, 87 F.3d 413 (10th Cir. 1996). In *Knowles*, a United States district court enforced administrative subpoenas *duces tecum* against Knowles, a Bahamian citizen and resident. *Id.* at 414–415. At the time the subpoenas were served upon him, he was president of two Bahamian companies under investigation by the Securities and Exchange Commission for violations of federal securities laws. *Id.* at 415. The SEC sought enforcement of the subpoenas by the district court, and Knowles moved to dismiss for lack of personal jurisdiction. *Id.* The district court ordered Knowles to comply, and Knowles subsequently appealed. *Id.*

The U.S. Court of Appeals for the Tenth Circuit affirmed the lower court's order, holding the district court had specific personal jurisdiction over Knowles by virtue of his activities as president of the companies. *Id.* at 419. The appellate court found the subpoena enforcement action arose out of Knowles' contacts with the United States, and thus it supported the exercise of specific jurisdiction. *Id.* at 418. The court expressly asserted that the contacts of the corporation could be imputed upon Knowles. *Id.* ("Employees of a corporation that is subject to the personal jurisdiction of the courts of a forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation.") (citing *Calder v. Jones* 465 U.S. 783, 790 (1984)). Knowles' contacts involving trading activities represented a deliberate affiliation that rendered foreseeable the possibility of being hauled into court. *Id.* at 419. Based on these contacts, the court concluded that the exercise of specific jurisdiction over Knowles was reasonable and just, and it satisfied traditional notions of fairness. *Id.*

Several Southern District of New York courts have cited the *Knowles* case as authority and have reached similar conclusions. *See, e.g., Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 318, 320–21

8

(S.D.N.Y. 2018) (finding personal jurisdiction and compelling compliance with a Rule 45 subpoena after evaluating foreign nonparty banks' business activities in New York); *Teachers' Ret. Sys. of LA v. A.C.L.N., Ltd.*, 01 CIV. 11814 (MP), 2003 WL 21058090, at *7 (S.D.N.Y. May 12, 2003) (finding personal jurisdiction of a foreign entity); *Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Group LLC*, 16-CV-6805 (JSR), 2018 WL 11389637, at *3 (S.D.N.Y. Aug. 20, 2018) (holding two non-party foreigners in civil contempt and finding personal jurisdiction to enforce its order because they were the controlling agents of the New York corporation subject of the litigation and were the only identified individuals who knew the location of the missing assets); *see also Gucci Am.*, 768 F.3d at 141–42 (citing *Knowles*).  Thus, Southern District of New York courts have repeatedly found personal jurisdiction over foreign individuals and entities based upon those individuals' or entities' business activities. *See also Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518, 2013 WL 1155576, at *16–17 (S.D.N.Y. May 13, 2013) (personal jurisdiction existed over Italian bank that engaged in a sale that took place in Luxembourg of bonds issued by an Iranian bank where bonds were held by custodians in New York); *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 569 (Bankr. S.D.N.Y. 2021) (finding personal jurisdiction stemming from a foreign party's business activities);  *Licci ex rel. Licci v. Lebanese Canadian Bank*, SAL, 732 F.3d 161, 168 (2d Cir. 2013) (finding personal jurisdiction over a Lebanese bank with no operations, branches, or employees in the US because it maintained a correspondence account in New York, the culpable conduct stemmed from the use of this account, and such use was frequent and deliberate); *In re Tether and Bitfinex Crypto Asset Litigation*, 576 F.Supp. 3d 55 (S.D.N.Y. 2021) (finding personal jurisdiction over the a resident of a foreign state where the party utilized New York bank accounts in furtherance of his business).

Davies and Zhu were responsible for all or virtually all of Debtor's extensive contacts with

the United States.  Davies has admitted that he and Zhu personally performed every role at the firm, including trade executions, operations, human resources, and risk assessments.  In fact, Davies stated that the two of them ran the firm together and built everything in-house themselves.  Thus, all actions taken by the Debtor may be imputed on both Davies and Zhu.

Because Davies either is a U.S. citizen or was a U.S. citizen during the vast majority of the Debtors' operations, Rule 45(b) may permit service of subpoena on Davies even though he resides in a foreign country.  As explained in the Alternative Service Motion, courts have permitted the service of such subpoenas through alternative means, including through email and social media communications.  Therefore, the Court has appropriate authority and jurisdiction to order the service of subpoenas on Davies via email, his Twitter account, and through his counsel's email.

In addition, the Court has specific personal jurisdiction over the Founders and the Investment Managers.  The Founders and Investment Managers have sufficient minimum contacts with the United States through their extensive business activities via the Debtor.  As the Founders wholly controlled the actions of the Investment Managers, which conducted much of the Debtors' business, the actions of the Founders and the Investment Managers are imputable upon each other.  Thus, the Founders and Investment Managers have purposefully availed themselves to the United States and invoked the benefits and protections of U.S. laws in the following ways:

   a. Davies and Zhu formed the Three Arrows Capital, LLC and Three Arrows Capital Management, LLC entities in the States of Delaware and California, respectively. *Id.* ¶ 7.

   b. The Founders invested Debtor assets in and executed funding deals with numerous U.S.-based companies operating primarily in the cryptocurrency, blockchain, or

fintech industries. *Id.* ¶ 12–13. In fact, some of their largest investments[5] were placed in U.S.-based companies as follows:

| Company | Location | Deal Stage | Deal Year |
|---|---|---|---|
| Aptos Labs | California | Seed Round | 2022 |
| O(1) Labs | California | Later Stage VC | 2022 |
| dYdx | California | Series C | 2021 |
| BlockFi | New Jersey | Series C | 2020 |
| WorldCoin | California | Early Stage VC | 2021 |

c. These deals included a syndicate of investors, many of which are based in the United States (*e.g.*, Andreesen Horowitz (California), Coinbase Ventures (California), Gemini Frontier Fund (New York), Tiger Global Management, LLC (New York), PayPal Ventures (California), Circle Ventures (New York), Signature Bank (New York) and Silvergate Bank[6] (California). *Id.* ¶ 14.

d. The Founders utilized credit, on behalf of Debtor, from legacy American financial institutions like JPMorgan Chase, Citibank, and Bank of America; they also obtained loans from United-States based centralized finance ("CeFi") lenders including but not limited to BlockFi (incorporated in Delaware; principal place of business in New Jersey), Celsius (incorporated in Delaware; principal place of business in New Jersey), Voyager Digital (incorporated in Delaware; principal place of business in New York), and Genesis Global Trading (incorporated in Delaware; principal place of business in New York). *Id.* ¶ 16.

e. The Founders, on behalf of the Debtors, structured many of the Debtor's contracts to contain New York venue and choice of law provisions and, thereby, explicitly sought the benefits and protections of U.S. laws. *Id.* ¶ 15.

---

[5] "Largest deals" are categorized by total deal size in USD.
[6] Silvergate Bank is a Federal Reserve member bank based in La Jolla, California.

    f.   The Founders, on behalf of the Debtors, also contracted with U.S. service providers such as BitGo, an auditing service provider located in California. *Id.* ¶ 17.

The subpoenas also have a nexus between the Founders' and Investment Managers' contacts with the United States and the discovery sought. The discovery sought seeks all books, papers, and records in the Founders' and Investment Managers' possession and/or control relating to the Debtor's operation as well as information sufficient to identify the existence of, location of, and method of accessing and controlling the assets of the Debtor, including, without limitation, information related to accounts, digital and fiat assets, derivatives of digital assets, seed phrases, securities, centralized and/or decentralized exchanges, accounts receivable, and any other tangible or intangible assets. Crumpler Decl. Alt. Service ¶ 11.

Moreover, the discovery sought is necessary in the interest of justice to properly preserve the Debtor's assets. This information (e.g., wallet addresses and seed phrases) is solely within the control and possession of the Founders and the Investment Managers, and it cannot be obtained by other means.[7] *Id.* ¶ 22. Accordingly, the Court should find that its exercise of jurisdiction over the Founders and the Investment Managers with respect to the Alternative Service Motion is consistent with fair play and substantial justice.[8]

---

[7] As detailed in Crumpler Decl. Alt. Service ¶¶ 10–35, the Founders and Investment Managers have thwarted the Foreign Representatives' efforts to obtain critical information about the Debtors' assets. This has restricted the Foreign Representatives' ability to provide more detailed information to the Court, as they have been forced to recreate the Debtor's financial books *de novo*.

[8] The subpoenas also do not pose an unreasonable inconvenience for the recipients. *See Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 63 (S.D.N.Y. 1998) ("Compelling the production of documents does not present the inconvenience targeted by Rule 45(c). It is one thing to require document production and another to force the presence of a nonparty witness in a foreign land. As discussed above, the Federal Rules of Civil Procedure provide territorial restrictions for deposition testimony of nonparties only. No such limitation is afforded to nonparties faced with a subpoena requiring document production."); *Probulk Carriers*, 180 F. Supp. 3d at 293 (explaining that the rationale behind geographical restrictions to Rule 45 "is to avoid imposition of unreasonable travel burdens"). The Alternative Service Motion specifically requests the authority

The Southern District of New York has explained that Rule 45 must be read in accordance with the interpretive principle that the rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action." *Cordius Tr. v. Kummerfeld*, 99 CIV. 3200 (DLC), 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000) (quoting Fed. R. Civ. P. 1). "The Federal Rules of Civil Procedure should not be construed as a shield for a witness who is purposefully attempting to evade service." *Id.* The Court is empowered to grant the relief requested herein because it has specific personal jurisdiction over the Founders and the Investment Managers. In this case, the Founders and Investment Managers are actively evading service, and the alternative service of the subpoenas will permit the just, speedy, and less expensive discovery and recovery of Debtors' assets. As a result, the Court should grant the requested relief as it would allow the Foreign Representatives to carry out their duties to the Debtor.

## III.    *Alternatively*, the Requested Relief is Justified because Service is Taking Place within the United States.

Rule 45 permits service within the United States. *See* Fed. R. Civ. P. 45(b)(2) ("A subpoena may be served at any place *within the United States*." (emphasis added). The Bankruptcy Court for the Middle District of Florida relied on Rule 45(b)(2) in determining whether a non-resident alien received sufficient notice of a subpoena when substitute service was delivered to their U.S. counsel. *In re Procom Am.*, 638 B.R. at 644. In reaching this conclusion, the *Procom America* court focused its inquiry on the location of substitute service—not the actual location of the subpoena target. The court explained that "he was served by substitute service inside the United States. When a foreign national is served in the United States, the foreign national is subject to the Court's subpoena power." *Id.* at 645 (citing *Probulk Carriers*, 180 F. Supp. 3d at 292).

---

to command the electronic production of information. Thus, this Alternative Service Motion does not seek to compel the recipients to travel in order to comply with the subpoena.

Here, the Foreign Representatives respectfully request the Court authorize service of the Subpoenas on the Founders' email addresses and on the Founders' Twitter accounts. Because Twitter and the email service providers are U.S.-based companies, substitute service via these accounts would be "in the United States" pursuant to the *In re Procom Am.* analysis.

## **CONCLUSION**

For the reasons stated above, the Foreign Representatives respectfully request that the Court issue an Order (a) authorizing the service of the subpoenas to the Founders' email addresses, Twitter accounts, and attorneys' email addresses; (b) authorizing the service of subpoenas on the Investment Managers via alternative means including, but not limited to: mail, email, delivery to the subpoena recipient's place of business or corporate office, or delivery of a copy of the subpoena to the subpoena recipient's counsel by mail and/or email, *provided* that the Foreign Representatives attempt no less than two of the aforementioned personal service methods; and (c) authorizing the issuance of subpoenas that command the electronic production of documents.

*[Remainder of the page intentionally left blank]*

Dated: December 13, 2022

New York, New York

Respectfully submitted,

*/s/ Warren E. Gluck*
Warren E. Gluck, Esq.
Shardul S. Desai, Esq. (*pro hac vice* pending)
Holland & Knight LLP
31 West 52nd Street, 12th Floor
New York, NY 10019
Tel: 212.513.3200
warren.gluck@hklaw.com
shardul.desai@hklaw.com

*Counsel to the Foreign Representatives of Three
Arrows Capital, Ltd.*