**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | <u>**FOR PUBLICATION**</u> |
| Three Arrows Capital, Ltd., | Chapter 15 |
| Debtor in a Foreign Proceeding. | Case No. 22-10920 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE FOREIGN REPRESENTATIVES' SERVICE MOTION**

*A P P E A R A N C E S :*

LATHAM & WATKINS LLP
*Counsel to the Foreign Representatives*
*of Three Arrows Capital, Ltd.*
1271 Avenue of the Americas
New York, NY 10020
By:     Adam J. Goldberg, Esq.
        Brett M. Neve, Esq.
        Nacif Taousse, Esq.
        Brian S. Rosen, Esq.

LATHAM & WATKINS LLP
*Counsel to the Foreign Representatives*
*of Three Arrows Capital, Ltd.*
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
By:     Daniel Scott Schecter, Esq. (admitted pro hac vice)
        Nima H. Mohebbi, Esq. (admitted pro hac vice)
        Caitlin Campbell, Esq. (admitted pro hac vice)

HOLLAND & KNIGHT LLP
*Counsel to the Foreign Representatives*
*of Three Arrows Capital, Ltd.*
31 West 52nd Street, 12th Floor
New York, NY 10019
By:     Warren E. Gluck, Esq.
        Shardul S. Desai, Esq. (pro hac vice pending)

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

This Opinion address two motions filed by Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized foreign representatives (the "Foreign Representatives") of Three Arrows Capital, Ltd. (the "Debtor"). Those motions are: (1) the Motion for Entry of an Order Authorizing Issuance of Subpoenas and Granting Related Relief ("Subpoena Motion," ECF Doc. # 54); and (2) Motion for Entry of an Order Authorizing Alternative Service of Process ("Service Motion," ECF Doc. # 55).

Both the Subpoena Motion and Service Motion sought relief related to discovery from Debtor's founders, Su Zhu and Kyle Livingstone Davies (the "Founders") and related entities. (*See* Subpoena Motion ¶ 16.) At the hearing on the Subpoena and Service Motions, the Court informed the Foreign Representatives that there were outstanding legal and factual issues preventing the Court from granting the Service Motion. The Court directed the Foreign Representatives to submit supplemental evidence and legal briefing on those issues before rendering a decision on the Service Motion. The Court granted the Subpoena Motion in the interim, in the event that it became possible to serve the proposed subpoenas without the relief sought (or implicating the concomitant issues identified) in the Service Motion. (*See* "Order Granting the Subpoena Motion," ECF Doc. # 71.)

After receiving the Foreign Representatives' supplemental legal briefing ("Supplemental Brief," ECF Doc. # 75) and evidentiary submissions ("Supplemental Crumpler Decl.," ECF Doc. # 74), the Court issues this Opinion and Order on the Service Motion. For the reasons discussed below, the Service Motion is **GRANTED** with respect to Kyle Davies, and **DENIED** with respect to all other parties.

2

## I.  BACKGROUND

### A.  The Debtor's Business

The Debtor is an investment firm incorporated under the laws of the British Virgin Islands ("BVI") with a focus on trading cryptocurrency and other digital assets.  The Debtor was reported to have over $3 billion of assets under management as of April 2022.  (Service Motion ¶ 6 (citing *"Crumpler Decl.,"* ECF Doc. # 3 ¶¶ 8–9; "Carroll Decl.," ECF Doc. # 4 ¶ 11).)  The Debtor was co-founded by the two Founders, Kyle Livingstone Davies and Su Zhu.  (*Id.* ¶ 8.)  Both Founders are the targets of subpoenas contemplated by the Subpoena and Service Motions.  Debtor had three directors: Davies, Zhu, and Mark James Dubois, a BVI resident.  (*Id.*)

The Supplemental Crumpler Declaration sets forth information about very substantial business conducted by Davies and Zhu on behalf of the Debtor in the United States, making the discovery the Foreign Representatives are seeking from Davies and Zhu particularly relevant.  The Supplemental Crumpler Declaration establishes a strong nexus between Davies and Zhu and the Debtor's U.S.-focused business.

Davies and Zhu formed Three Arrows Capital, LLC in Delaware, and registered it to operate in the State of California as Three Arrows Capital Management, LLC.  (Supplemental Crumpler Decl. ¶ 7.)  Davies and Zhu incorporated Three Arrows Capital, Ltd. in the British Virgin Islands.  (*Id.*)  The Founders obtained credit from U.S. financial institutions including JPMorgan Chase, Citibank, and Bank of America.  (*Id.* ¶ 8.)

In a December 3, 2022 interview, Davies stated that he and Zhu ran the firm together and built everything in-house themselves, and personally performed every role at the firm, including trade executions, operations, human resources, and risk assessments.  (*Id.*)  They conducted the Debtor's business via Three Arrows Capital Pte. Ltd. (a Singapore entity and the

3

Debtor's immediate parent) and Three AC Ltd. (a BVI entity) that acted as the Debtor's former and current investment managers, respectively (and collectively referred to as "Investment Managers"). (*Id.* ¶ 11; Service Motion ¶ 21.) Davies and Zhu own 100% equity in Three Arrows Capital Pte. Ltd.; Zhu and Davies' wife own 100% equity in Three AC Ltd. (Supplemental Crumpler Decl. ¶ 11.) Davies and Zhu controlled the Investment Managers, which made investment decisions, managed the Debtor's feeder funds, and generally engaged in day-to-day management activities on behalf of the Debtor. (*Id.*) The Foreign Representatives state that in 2021, Debtor's Investment Manager changed from Three Arrows Capital Pte. Ltd. in Singapore to Three AC Ltd. in the BVI. (*Id.*)

The Foreign Representatives claim that Davies and Zhu executed hundreds of millions of dollars in funding deals in and/or with numerous American cryptocurrency, blockchain, and fintech companies, including Aptos Labs, dYdx, and BlockFi. (*Id.* ¶ 12.) These deals included a syndicate of investors, many of which were based in New York and California, and many of the loan contracts are governed by New York venue and choice of law provisions. (*Id.* ¶ 14.) Davies and Zhu, on behalf of the Debtors, also contracted with U.S. service providers such as BitGo, an auditing service provider located in California. (*Id.* ¶ 15.)

There is no doubt based on this supplemental information that discovery from Davies and Zhu is appropriate in this Chapter 15 case.

### B.    BVI Proceeding

The Debtor's business collapsed in the wake of extreme fluctuations in cryptocurrency markets. (Crumpler Decl. ¶ 17.) On June 27, 2022, the Debtor commenced a liquidation proceeding before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "BVI Court") captioned *In re Three Arrows Capital Limited*,

4

Case No. BVIHCOM2022/0119 (June 27, 2022).  (*Id.* ¶¶ 23–25.)  The BVI Court appointed the

Foreign Representatives as joint liquidators of the Debtor.  (*Id.* ¶ 26).

### C.    The Chapter 15 Case

On July 1, 2022, the Foreign Representatives commenced this Chapter 15 Case.

("Petition," ECF Doc. ## 1, 2.)  Shortly after commencing this case, the Foreign Representatives

filed a motion seeking certain provisional relief on July 8, 2022 ("Provisional Relief Motion"

ECF Doc. # 22) with a focus on controlling and preserving the Debtor's assets.  The Provisional

Relief Motion was granted by order entered on July 12, 2022.  ("Provisional Relief Order," ECF

Doc. # 32.)  Among other relief, the Provisional Relief Order authorized the Foreign

Representatives:

> to issue subpoenas (a) with respect to the Founders, for the production of
> documents and deposition[s] . . . and (b) [upon] any other persons or entities
> that the Foreign Representatives reasonably determine during the course of
> their investigation may have information relevant to the Debtor, its affairs,
> or its assets.

(Subpoena Motion ¶ 8 (quoting Provisional Relief Order ¶ 4).)

On July 28, 2022, the Bankruptcy Court entered the Order Granting Recognition of

Foreign Main Proceeding and Related Relief ("Recognition Order," ECF Doc. # 47), granting the

relief sought by the Petition, including recognition of the BVI Proceeding as a foreign main

proceeding and recognition of the Foreign Representatives as "foreign representatives," as

defined in section 101(24) of the Bankruptcy Code.  ( Recognition Order ¶¶ 2–3.)  The

Recognition Order also extended the relief granted by the Provisional Relief Order, which was

limited to the service of the form of subpoena attached to the Provisional Relief Order.

(Subpoena Motion ¶ 10 (citing Recognition Order ¶ 13).)

### D.    Discovery Efforts to Date

The Subpoena and Service Motions detail the Foreign Representatives' attempts to obtain information in the case thus far to identify and preserve Debtor's assets.  The Foreign Representatives claim they have engaged with numerous parties including banks, cryptocurrency exchanges, brokers, etc., and that they have used formal discovery tools pursuant to the Provisional Relief Order to, *inter alia*, issue eighteen subpoenas to such parties.  (Subpoena Motion ¶¶ 14–15.)  They have also attempted to obtain discovery from the Founders and related entities as discussed below.

### 1.    The Founders

The Foreign Representatives claim that they have been unable to obtain sufficient information from the Founders through informal and formal means.  With respect to formal means, the Foreign Representatives claim that they have been unable to serve subpoenas on the Founders as their whereabouts are unknown.  (*Id.* ¶ 16.)  They also claim that Advocatus Law LLP ("Advocatus"), a law firm that purported to represent the Founders as Singapore counsel in the past, has declined to accept service on their behalf.  (*Id.* ¶ 17.)

The Foreign Representatives also state that informal interactions with the Founders and their counsel leading up to the attempt to serve a subpoena have failed to yield sufficient information.  A summarized timeline of their interactions during the summer of 2022 is provided below:

- <u>Late June</u>:  The Foreign Representatives contacted the Founders' BVI and Singapore counsel requesting an immediate meeting.  (Service Motion ¶ 13.)

- <u>July 6</u>:  Advocatus emailed the Foreign Representatives denying an immediate meeting, but offering an introductory Zoom call.  (*Id.*)

- <u>July 8 (Approximately)</u>:   An introductory Zoom call was held between Foreign Representatives, Advocatus, and Solitaire LLC (Singapore counsel to Founders, "Solitaire"), and presumably the Founders; a "Kyle" and "Su Zhu" were present on the Zoom call, their video was turned off and they were on mute at all times with neither of them speaking despite questions being posed to them directly.  The Foreign Representatives requested immediate access to the Debtor's offices and certain basic information regarding the Debtor's bank accounts and digital wallets and were told that Advocatus would discuss with the Founders and hoped to provide certain information in response at a subsequent meeting, which was later cancelled by the Founders.  (*Id.* ¶ 14.)

- <u>Throughout July (After the July 8 Meeting)</u>: The Foreign Representatives exchanged emails between their counsel and Advocatus requesting specific information regarding the Debtor's assets and for cooperation in obtaining access to them; Advocatus repeatedly represented the Founders' willingness to cooperate.  Specifically, the Founders agreed to cooperate in the turning over of seed phrases  in Kyle Davies's safe deposit box, providing a complete list of assets, and the removal/transfer of two factor authentication critical accounts and documents.  Rather than making good faith efforts to cooperate, the Founders chose to offer excuses for their non-compliance and to repeatedly avoid meetings with the Foreign Representatives to discuss the same.  (*Id.* ¶ 15.)

- <u>Late July</u>: The Founders saw fit to speak "extensively" with Bloomberg regarding the Debtor's collapse and the ongoing liquidation proceeding. (*Id.* ¶ 17.)

- <u>Early August 2022 (Approximately)</u>: The Founders had only provided the Foreign Representatives with an incomplete list of assets and accounts, and the Founders continued to withhold information necessary to take control of the limited assets and accounts that had been disclosed.  (*Id.* ¶ 16.)

- <u>August 11, 2022</u>: The Founders agreed to attend another Zoom meeting with the Foreign Representatives so long as Advocatus could be present.  At this meeting, the Foreign Representatives provided a list of high-priority information requests, and Mr. Zhu indicated he would respond accordingly. (*Id.* ¶ 17.)

- <u>August 26, 2022</u>:  At the Foreign Representatives' request, they had a second meeting with the Founders and Advocatus.  The Foreign Representatives requested the outstanding information; however, Advocatus limited the conversation to transferring electronic access for certain cryptocurrency exchanges and expressed the Founders' reluctance for discussing the outstanding information requests at that time.  (*Id.* ¶ 18.)

In addition to the discussions with the Founders, the Foreign Representatives have been provided with email addresses, which they have been told can be used to send specific inquiries directly to the Founders.  (Subpoena Motion ¶ 20.)  The Foreign Representatives have sent several inquiries to these email addresses, and have yet to receive any response, save for responses through Advocatus on October 7, 2022 to emails sent by the Foreign Representatives regarding recovery passcodes and private keys to access certain digital wallets.  (*Id.*)

Overall, the Foreign Representatives claim that their attempts at communication with the Founders and counsel have not yielded adequate information, and that they have only received an incomplete list of Debtor's assets.  (*Id.* ¶¶ 20–21.)  Likewise, the Founders have refused to cooperate with the Foreign Representatives' efforts to gain access to the Debtor's books and records in their possession.  (*Id.*)  In addition to selective disclosure of the Debtor's assets, the Foreign Representatives also have reason to believe that the Founders have continued to withhold "seed phrases" and other information in their possession that are essential to accessing and controlling certain of the Debtor's digital assets.  (*Id.*)

In sum, since the introductory Zoom call, the Foreign Representatives have communicated with the Founders' counsel via letters, email, and virtual conferences—albeit to no avail.  The Founders continue to conceal their whereabouts and have failed to cooperate with the Foreign Representatives in a sufficient manner, including via the Founders' counsel. (Service Motion ¶ 19.)

2. <u>Investment Managers and Other Parties</u>

Notwithstanding the above, the Foreign Representatives claim that they have been diligently trying to obtain information elsewhere.  (*Id.* ¶ 20.)  To that end, Debtor's request for

8

relief in the instant motions is also directed at the Investment Managers, Three Arrows Capital
Pte. Ltd. (a Singapore entity and the Debtor's immediate parent) and Three AC Ltd. (a BVI
entity).  (*Id.* ¶ 21.)

  The Foreign Representatives claim that the Investment Managers possess critical
information regarding the Debtor's assets and affairs.  (*Id.* ¶ 22.)  Namely, the Foreign
Representatives believe that the Founders control the Investment Managers, which made
investment decisions, managed the Debtor's feeder funds, and generally engaged in day-to-day
management activities on behalf of the Debtor.  (*Id.*)  Consequently, the Foreign Representatives
claim that the Investment Managers have access and means to control the Debtor's accounts with
cryptocurrency exchanges and brokerages and possess valuable discoverable information
regarding the Debtor's assets and affairs.  (*Id.*)  This information bears directly on the location
and viability of the Debtor's assets and the causes of the Debtor's insolvency.  (*Id.*)
Accordingly, obtaining access to such documents and information is critical to marshalling and
preserving the Debtor's assets and furthering the Foreign Representatives' investigation.  (*Id.*)

  The Foreign Representatives have engaged with Solitaire, Singapore counsel purporting
to represent at least one of the Investment Managers and which has in the past represented
itself as counsel to the Founders.  (*Id.* ¶ 23.)  The Foreign Representatives requested information
and documents pertaining to the Debtor in the Investment Managers' possession and control.
(*Id.*)  While they partially complied, the Foreign Representatives believe the Investment
Managers are withholding relevant and valuable information relating to the Debtor.  (*Id.*)

  Finally, the Foreign Representatives note that other attempts to serve third parties have
been similarly unsuccessful.  For instance, the Foreign Representatives requested certain
financial and account information from Troy Trade, a prime broker of the Debtor that advertises

9

itself as specializing in crypto trading and asset management. (*Id.* ¶ 25.) The Foreign

Representatives have only received partial compliance via disclosure of seed phrases for certain

wallets and are unable to ascertain where Troy Trade is based, (other than ostensibly being

located in Beijing, China). (*Id.*)

      **E.**      **Related Foreign Proceedings**

      The Foreign Representatives report that they commenced a proceeding in the High Court

of Singapore (the "Singapore Court") for recognition of the BVI Proceeding as a foreign main

proceeding (the "Singapore Proceeding"). Relevant orders in the Singapore Court have been

entered as follows:

- <u>July 15, 2022</u>: Granting provisional relief, including the power to compel the cooperation of individuals within the jurisdiction of the Singapore Court.

- <u>August 22, 2022</u>: Granting recognition of the BVI Proceeding as a foreign main proceeding in Singapore.

- <u>September 19, 2022</u>: Requiring all persons and entities located in Singapore to cooperate with the Foreign Representatives in respect of the liquidation.

(Subpoena Motion ¶ 11.)

      The Foreign Representatives note that they will be seeking certain discovery from Three

Arrows Capital Pte. Ltd., a Singapore entity and Debtor's former Investment Manager, in that

proceeding. (*Id.*) This discovery ostensibly has some overlap with what is sought from the

Former Investment Manager and related individuals/entities as part of the Subpoena and Service

Motions, as further discussed below. The Foreign Representatives also stated that they have

filed an application for recognition of the BVI Proceeding as a foreign main proceeding in the

Superior Court of Justice in Ontario, Canada, and that they intend to do the same in the Supreme

Court of Seychelles very shortly. (*Id.* ¶ 12.)

F.        **Procedural History of the Service & Subpoena Motions**

The Foreign Representatives filed the Subpoena and Service Motions, along with other

motions for relief not at issue here.  A hearing was held on both motions on December 2, 2022.

(*See generally*, Hr'g Tr., December 2, 2022, ECF Doc. # 77, at 8:3–13.)

The Subpoena Motion was directed at supporting the scope of the Foreign

Representatives' proposed subpoenas, while the Service Motion, as the name implies, sought

authorization to serve the subpoenas via alternative means.  At the hearing, the Court was

satisfied that the scope of the subpoenas and relief sought in the Subpoena Motion was

appropriate under the relevant Bankruptcy Code provisions and Bankruptcy Rules.[1]  The Court

was not satisfied on the record then presented that the Service Motion could be granted.  The

Court said that the Service Motion raised factual questions pertaining to the Founders'

nationalities and residences that implicated whether they could be served pursuant to Federal

Rule of Civil Procedure 45.  (Hr'g Tr., December 2, 2022, 30:11–20.)  Instead of denying the

Service Motion outright, the Court reserved decision and afforded the Foreign Representatives

the opportunity to make supplemental legal and factual submissions (*see id.* 45:1–11), which the

Foreign Representatives filed on December 13, 2022.  (*See* Supplemental Brief; Supplemental

Crumpler Decl.)  In relevant part, the Foreign Representatives' supplemental submissions

included relevant facts pertaining to the Founders' nationalities and residences.

The Foreign Representatives claim that Davies was born in the United States and,

therefore, is a United States citizen by birth.  (Supplemental Crumpler Decl. ¶ 5.)  Additionally,

the Debtor's Register of Directors filed with the BVI Financial Service Commission lists

---

[1]        *See* "Order Granting the Subpoena Motion," ECF Doc. # 71.

11

Davies as being born in the United States and his nationality as American. (*Id.*) The Foreign Representatives do not know whether Davies has formally renounced his U.S. citizenship under U.S. law, but they note that a subsequent listing of Davies in the Register of Directors identifies him as Singaporean and that Davies holds Italian and Singaporean passports that were issued in 2017 and 2021, respectively. (*Id.*)

The Foreign Representatives claim that Zhu was born in China. (*Id.* ¶ 6.) He moved to the United States, attended high school in Massachusetts and college in New York, and lived in San Francisco in 2012. (*Id.*) Therefore, the Foreign Representatives argue, in order to have legally resided in the United States, at a minimum, Zhu had a U.S. Visa. Zhu holds a Singaporean passport, which was issued in 2020. (*Id.*) In addition, the Debtor's Register of Directors filed with the BVI Financial Service Commission lists Zhu as Singaporean. (*Id.*)

## II.   <u>ANALYSIS</u>

The Foreign Representatives' Service Motion implicates issues regarding the scope of Federal Rule of Civil Procedure 45 ("Rule 45"), and alternative service of process under Rule 45. The issues are addressed in turn. In sum, the Foreign Representatives fail to show that Rule 45 supports issuance of subpoenas to Zhu, the Investment Managers, and Troy Trade; the Service Motions are **DENIED** as to those parties. The Foreign Representatives do, however, show that Rule 45 supports issuance of a subpoena against Davies, and the Foreign Representatives also show that their proposed manner of alternative service is warranted here. Therefore, the Service Motion is **GRANTED** with respect to Davies.

12

### A.      Scope of Rule 45

The Foreign Representatives seek to serve all subpoenas pursuant to Rule 45 outside the

United States.  Whether service of the subpoenas would be appropriate pursuant to Rule 45 then

depends in part on facts regarding the intended subpoena recipients' citizenship and residence.

Those facts were unclear from the Foreign Representatives' original submissions on the

Subpoena and Service Motions.  At the hearing on the Foreign Representatives' original

submissions, the Court ordered the Foreign Representatives to make additional submissions

regarding, *inter alia*, these facts, as well as any supplemental legal authority supporting their

Subpoena and Service motion.  With that background established, the Court turns to the relevant

authorities.  Rule 45(b) explicitly authorizes service in one of two ways:

> (2) Service in the United States. A subpoena may be served at any place
> within the United States.
>
> (3) Service in a Foreign Country. 28 U.S.C. §1783 governs issuing and
> serving a subpoena directed to a United States national or resident who is in
> a foreign country.

FED. R. CIV. PROC. 45(b)(2)–(3).

Rule 45 does not explicitly allow for service of persons outside the United States that are

not United States nationals or residents.  Thus, the analysis below is separated between the

intended subpoena recipients that are United States nationals or residents, and those that are not.

#### 1.   Non-United States Nationals and Residents: Investment Managers and Zhu

Here, the Foreign Representatives seek express authorization to serve subpoenas on four

different parties that do not appear to be United States nationals or residents, and are located in

foreign countries: Zhu, the two Investment Managers, and Troy Trade.  The issue is whether the

language of Rule 45(b)(3) allows for service on such parties.

As discussed above, Rule 45(b)(3) only addresses service of a subpoena "directed to a United States national or resident who is in a foreign country." FED. R. CIV. PROC. 45(b)(3). The Foreign Representatives effectively advance two arguments why Rule 45 nevertheless permits service. Both lack merit.

### a. Rule 45 is Not "Silent"

The Foreign Representatives first characterize Rule 45 as "silent" on foreign service of non-nationals and non-residents. The Foreign Representatives claim that analogizing to Federal Rule of Civil Procedure 4, which governs service of summonses and allows for service on foreign parties outside the United States, is appropriate in light of Rule 45's silence. There are multiple problems with this argument.

First, other courts addressing this issue have clearly held that Rule 45 is not just "silent" on foreign service of non-nationals and non-residents, but it provides an explicit limit on such service. *NML Capital Ltd. v. Republic of Arg.*, 2014 WL 3898021, at *9 (D. Nev. Aug. 11, 2014) (stating that "the only people who cannot be served under Rule 45 are foreign nationals residing in a foreign country"). Other cases have reached the same conclusions for foreign entities. *See SiteLock, LLC v. GoDaddy.com, LLC*, 338 F.R.D. 146, 148 (D. Ore. 2021) ("[A] foreign corporation 'is not a United States national or resident and therefore cannot be served with a subpoena under Rule 45.'") (quoting *Viasat, Inc. v. Space Sys./Loral, LLC*, 2014 WL 12577593, at *5 (S.D. Cal. June 30, 2014)). Courts in this district have reached the same conclusion, and disposed of similar arguments that Rule 45(b)(3) somehow implicitly allows for service of non-citizens outside the United States:

> It is unclear what, if any, provision of the Federal Rules [Subpoenaing Party] believes controls the service of subpoenas directed at foreign nationals living abroad. If [Subpoenaing Party] were correct, and 45(b)(3)

14

> was not relevant to the service of subpoenas on foreign nationals living abroad, it strains credulity to believe that this apparent silence in the Rules would result in the unlimited ability of litigants to serve trial subpoenas on any foreign national anywhere in the world, especially considering the more stringent limitations on serving United States nationals living aboard.  In any event, courts faced with similar circumstances have found that foreign nationals living abroad are not subject to subpoena service outside the United States.

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 305 (S.D.N.Y. 2009).

The Foreign Representatives do not cite a single case where a court has found service on a non-national or non-resident outside the United States to be acceptable under Rule 45.

For that reason alone, the Court rejects the Foreign Representatives' argument that the Court should resort to Rule 4 by analogy to address Rule 45's "silence."  If anything, the fact that Rule 4 was drafted to include explicit language providing for service of any "individual . . . at a place not within any judicial district of the United States," FED. R. CIV. P. 4(f), weighs against the Foreign Representatives' arguments that the clearly worded language of Rule 45 does not operate as a geographic limitation.  Moreover, the Foreign Representatives only cite to a single case for the notion that service under Rule 4 informs service of foreign nationals under Rule 45. *See In re Procom Am., LLC*, 638 B.R. 634, 644 (Bankr. M.D. Fla. 2022).  And while *Promcom* did involve service of a subpoena on a non-resident alien residing in another country, that service was made in the United States on the non-resident's lawyer, which is clearly within the purview of Rule 45(b)(2).  *Id.* at 642-43.  Thus, *Promcom* does nothing to address the instant issue here regarding service *outside* the United States under Rule 45(b)(3).

15

*b.  Alternative Service is Not Appropriate*

The Foreign Representatives' second argument is only a slight variation on the first, as it again relies on comparisons of service under Rule 4 to legitimize service under Rule 45. But instead of arguing that Rule 4 informs Rule 45 in light of the latter's "silence," the Foreign Representatives argue that their proposed methods meet standards for "alternative" service under Rule 4, and Rule 45 by analogy.

The Foreign Representatives' argument proposes that because service pursuant to Rule 4 and Rule 45 must both be "reasonably calculated" to provide notice to the intended recipient, *see Procom*, 638 B.R. at 644, that certain alternative methods found to be reasonably calculated to do so in the Rule 4 context are permissible in the Rule 45 context. The Foreign Representatives then point to a significant number of cases allowing for alternative service via email or social media pursuant to Rule 4,[2] and argue that this justifies the same methods of service for a subpoena pursuant to Rule 45.

The Court does not find it to be controversial that Rule 4 cases applying the "reasonably calculated" standard, which is a due process requirement, can be instructive in the Rule 45 context. In fact, the Court finds Rule 4 caselaw persuasive with respect to service on Davies, as discussed *infra*. Nevertheless, this argument still misses the point in addressing the territorial statutory limitations in Rule 45 identified above. Put differently, the Foreign Representatives attempt to show that they are entitled to "alternative" service, without showing that they have a

---

[2]        *See, e.g.*, *Hardin v. Tron Found.*, 20-CV-2804, 2020 WL 5236941, at *1 (S.D.N.Y. Sept. 1, 2020) (allowing service via email and social media); *In re Bibox Group Holdings Limited Securities Litigation*, 2020 WL 4586819, at *3 (S.D.N.Y. Aug. 10, 2020) (allowing service via email and social media); *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112, 2018 WL 4757939, at *13 (S.D.N.Y. Sept. 30, 2018) (allowing service via email); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (allowing service via email).

16

statutory basis for "standard" service under Rule 45 in the first instance. That stands in contrast to any Rule 4 case the Foreign Representatives cite, because the language of Rule 4 explicitly allows for service abroad. *See* FED. R. CIV. P. 4(f). And glaringly, the Foreign Representatives fail to put forth any cases that directly support "alternative" service of a subpoena outside the United States in the manner proposed, whether by analogy to Rule 4 or otherwise.

Ultimately, what the Foreign Representatives seek via "alternative" service is an alternative to Rule 45 itself. But the applicable caselaw permitting "alternative" service involves service via means that provide a comparable alternative to standard methods, where factual circumstances prevent standard service. Here, service on parties outside the United States via email or social media would be completely unlike any standard methods of service available to the Foreign Representatives under Rule 45 because there are none. Allowing the Foreign Representatives to serve in this manner under the guise of "alternative" service would create an exception that would render Rule 45's explicit territorial limits meaningless given the ubiquity of email and social media. Indeed, every litigant that wishes to seek discovery from foreign national nonparties outside the United States would likely appreciate some "alternative," but the Court cannot ignore Rule 45's explicit territorial limitations.

2.      United States Nationals and Residents: Davies

The Foreign Representatives also seek to serve a subpoena on one of the Founders, Kyle Davies, outside the United States. As a factual matter, the Foreign Representatives' submissions establish that Davies was born in the United States, and as a result, the Court presumes that Davies is a United States national. *In re Petrobras Sec. Litig.*, 2016 WL 908644, at *1 (S.D.N.Y. Mar. 4, 2016) (finding that witness born in the United States was a citizen and national in applying Rule 45(b)(3)). Therefore, Rule 45(b)(3) will apply, which states that: "28 U.S.C.

17

§ 1783 governs issuing and serving a subpoena directed to a United States national or resident

who is in a foreign country."

In turn, 28 U.S.C. § 1783 reads:

> A court of the United States may order the issuance of a subpoena requiring
> the appearance as a witness before it, or before a person or body designated
> by it, of a national or resident of the United States who is in a foreign
> country, or requiring the production of a specified document or other thing
> by him, if the court finds that particular testimony or the production of the
> document or other thing by him is necessary in the interest of justice, and,
> in other than a criminal action or proceeding, if the court finds, in addition,
> that it is not possible to obtain his testimony in admissible form without his
> personal appearance or to obtain the production of the document or other
> thing in any other manner.

28 U.S.C. §1783.

Thus, since this is not a criminal action or proceeding, the issues become whether

production of the documents are: (1) necessary in the interests of justice; and (2) not possible to

obtain in any other manner.

First, the Court finds that the discovery sought from Davies is necessary and "in the

interests of justice," such that is satisfies the first requirement of section 1783(a).  Initially, the

Court notes that it faces a unique situation with respect to this necessity prong, as most of the

civil cases applying section 1783 do so in instances where the discovery sought is in connection

with pending causes of action, and the necessity is measured by relation to those causes of

action.  *See Balk v. N.Y. Institute of Tech.*, 974 F. Supp. 2d 147, 156–57 (E.D.N.Y. 2013)

(finding that discovery is necessary under section 1783 where it "bears directly on the key issues

in th[e] case").  Here, however, the Foreign Representatives seek the discovery as part of motion

made pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 2004, which

provides a freestanding mechanism for discovery regarding the Debtor's estate, that need not be

18

brought in connection with any pending causes of action.[3] *See generally* FED. R. BANKR. P. 2004.

Procedural posture aside, the facts here show that the discovery sought is necessary under section 1783. First, Davies played a paramount and "integral role" in the Debtor's organization. *Balk*, 974 F.Supp.2d at 157–58. Based on the Foreign Representatives' submissions, Davies was one of the Debtor's two founders, and since its inception, ran all facets of the business with Zhu. This level of responsibility within the organization that is the focus of the main action clearly shows that Davies has knowledge of information that is necessary for the Foreign Representatives to obtain. *See Petrobras*, 2016 WL 908644, at *1 (granting section 1783 motion seeking discovery from director and audit committee member of company that was at center of alleged bribery and kickback scheme). Moreover, one of the key purposes of Bankruptcy Rule 2004 discovery is to allow those representing or administering a debtor's estate to ascertain the extent of the debtor's liabilities and assets. Davies and Zhu might arguably be the only parties with knowledge regarding the nature, extent, and access to the Debtor's assets, particularly as they are connected to the United States in this Chapter 15 case. The discovery from Davies is undoubtedly necessary in connection with the Bankruptcy Rule 2004 discovery in this Chapter 15 case.[4]

---

[3]    There is no "estate" in a Chapter 15 case. As explained in *In re Berau Capital Resources Pte. Ltd.,* 540 B.R. 80, 83 (Bankr. S.D.N.Y. 2015), "[u]pon an order recognizing a proceeding as a foreign main proceeding, section 1520 makes sections 361 and 362 applicable with respect to the debtor and property of the debtor within the jurisdiction of the United States. The statute refers to 'property of the debtor' to distinguish it from the 'property of the estate' that is created under section 541(a). In a chapter 15 case, there is no 'estate'; nevertheless, section 1520(a) imposes an automatic stay on any action with respect to the debtor's property located in the United States."

[4]    Additionally, the Court may order the production of documents from outside the United States. *See In re Markus*, 607 B.R. 379 (Bankr. S.D.N.Y. 2019), *aff'd in part, vacated in part, remanded sub nom. Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020). As *Markus* explains:

"In assessing the second prong—whether there are potentially alternative methods to obtain testimony—courts analyze whether it is practical to obtain the information sought from the witness." *Balk*, 974 F.Supp.2d at 156. "Sheer impossibility is not required." *Id.* (citation omitted). The Foreign Representatives have shown that the discovery sought is likely not obtainable via other means here.

First, the Foreign Representatives aver that they have taken all reasonable steps to obtain discovery from parties that conducted business with the Debtor in the United States to cobble together as much information as possible about the estate. But the Court agrees with the Foreign Representatives that it is not reasonable to expect that they could obtain all necessary information about the Debtor's estate simply by conducting discovery with Debtor's third-party business counterparts. As previewed under the first requirement of section 1783(a), the necessary information for purposes of the Bankruptcy Rule 2004 discovery in this case is likely only possessed by Davies and Zhu, and the Court has already determined that discovery is not available from Zhu. Thus, Davies is the only source of the necessary information. The remainder of the obtainability issue then becomes whether there are other avenues for reaching

---

Rule 45's subpoena power is not limited to the production of documents located within the United States. *See Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) ("The only geographical limitation provided by Rule 45 concerns the location for the act of production-not the location of the documents or information to be produced."); *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 147–48 (S.D.N.Y. 2011), *aff'd sub nom. Tiffany (NJ) LLC v. Andrew*, No. 10 CIV. 9471 WHP, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011) ("If the party subpoenaed has the practical ability to obtain the documents, the actual physical location of the documents—even if overseas—is immaterial.").

Discovery in chapter 15 cases does not change this result. Where parties have argued that the requested discovery lacks a sufficient nexus to the United States because it does not involve the recovery of property in the United States, courts have held that "[r]equests for discovery in chapter 15 need not concern assets in the U.S. to be permissible under § 1521(a)(4)." *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. at 347.

607 B.R. at 389.

Davies for this discovery. Courts in this district have considered the possibility of obtaining

discovery in proceedings in other jurisdictions as relevant in this analysis. *See Petrobras*, 2016

WL 908644, at *1–2. The Court acknowledges that there are other parallel proceedings in other

jurisdiction that relate to the Debtor and its assets. The Court considers it likely that those

parallel proceedings might also be used to obtain *some* discovery from Davies. That does not

mean, however, that the information sought by the Foreign Representatives *in these proceedings*

will be obtainable via those proceedings. Indeed, counsel for the Foreign Representatives has

been quite clear with the Court that its goals in the Chapter 15 case are to both investigate and

marshal assets that have some connection to the United States:

> But to be clear, we take no position . . . as to where the legal situs of digital
> assets should be, whether in the United States or elsewhere, by virtue of
> them being held by an institution that operates through people in the United
> States. This is a pretty novel issue that could have a wide variety of
> implications. So I think this is kind of in the nature of a kind of
> prophylactic-type motion to ensure that to the extent any assets are deemed
> to be in the United States at a later time, that authority is in place to transfer
> those to the BVI for the purposes of an efficient distribution.

(Hr'g Tr., December 2, 2022, at 8:3–13.) And thus, the Court finds it reasonable, and indeed

likely, that much of the relevant discovery sought is uniquely obtainable—not just from

Davies—but from Davies via the Debtor's connections with the United States.

Finally, the entire discussion above regarding obtainability also assumes that Davies or

Zhu would even comply with subpoenas issued in parallel proceedings, which may appear to be

wishful thinking based on the Foreign Representatives' argument that the Founders have not

cooperated with informal discovery requests. Other courts in this district have considered the

lack of cooperation in informal discovery as relevant to the obtainability prong. *Balk*, 974 F.

Supp. 2d at 159. In conjunction with the fact that the Foreign Representatives argue that the

Founders do not wish to reveal their location for service of process, the Court is comfortable

concluding that the discovery sought by the Foreign Representatives here would not necessarily

be obtainable via other practicable means.

In sum, the Foreign Representatives have shown that Rule 45 and section 1783 allow for

service on Davies outside the United States.

### B.    Alternative Service

Having established that Rule 45 and section 1783 support the service of a subpoena on

Davies in the first instance, the next issue becomes whether the Foreign Representatives are

entitled to serve Davies via their proposed "alternative" means—email and social media.  (*See*

"Proposed Order Granting Service Motion," ECF Doc. # 55-1.)

Federal Rule 45(b) explicitly authorizes service of subpoenas anywhere "within the

United States" and to "United States national[s] or resident[s] who [are] in a foreign country."

FED. R. CIV. P. 45(b).  In either case, Rule 45 requires that a subpoena be served by "delivering a

copy to the named person . . . ."  FED. R. CIV. P. 45(b)(1).  In other words, Rule 45 only

expressly endorses personal service.

District courts in the Second Circuit routinely authorize service via other means besides

personal service, i.e., "alternative" service, under Rule 45.  In doing so, such courts have

recognized that the functional purpose of "requiring delivery 'to the named person' is to 'ensure

receipt, so that notice will be provided to the recipient, and enforcement of the subpoena will be

consistent with the requirements of due process.'"  *Med. Diagnostic Imaging, PLLC v. CareCore*

*Nat.*, LLC, No. 06 CIV. 13516, 2008 WL 3833238, at *2 (S.D.N.Y. Aug. 15, 2008) (quoting 9

MOORE'S FEDERAL PRACTICE § 45.21 (3rd ed. 2008)).

22

Where alternative service is "reasonably calculated" to provide timely actual notice to the subpoenaed non-party, courts in this circuit have found such service to meet the requirements of Rule 45. *See, e.g., First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 255 (S.D.N.Y. 2000) (finding that attaching a subpoena to the door and mailing another copy to counsel of record was sufficient, "especially since, as noted, [subpoenaed party] does not deny that it received timely actual notice of the subpoena"); *Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200, 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000) (holding that because "alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness, the 'delivery' requirement of Rule 45 will be met"); *Cartier v. Geneve Collections, Inc.*, No. CV 2007-0201 (DLI) (MDG), 2008 WL 552855, *1 (E.D.N.Y. Feb. 27, 2008) (stating that "'delivery' under Rule 45 means a manner of service reasonably designed to ensure actual receipt of a subpoena by a witness, rather than personal service").

As a basic proposition, the Court recognizes that service of process via means other than personal service is quite common in this Circuit. The three narrower issues that the Court considers it must address here are: (1) when alternative service is permissible; (2) what types of alternative service have been recognized as permissible under Rule 45, and (3) to the extent that the Foreign Representatives rely on precedent involving alternative service pursuant to rules other than Rule 45, whether there is an adequate basis for applying those precedents in the context of Rule 45.

Turning to the first issue of *when* alternative service is appropriate, the Foreign Representatives face a hurdle in the caselaw in this district requiring a party seeking leave to serve by alternative means "to demonstrate a prior diligent attempt[s] to personally serve" before permitting alternative service under Rule 45. *Kenyon v. Simon & Schuster, Inc.*, No. 16 MISC.

23

327 (P1), 2016 WL 5930265, at *3 (S.D.N.Y. Oct. 11, 2016).  That is because, in the strictest

sense, the Foreign Representatives have not done so here.  However, the caselaw in this district

is not entirely consistent in imposing this requirement, and other cases have found that it is not

necessary to show prior attempts at standard service before seeking court approval.  *See*

*Ultradent Prods., Inc. v. Hayman*, 2002 WL 31119425, at *4 (S.D.N.Y. Sept. 24, 2002) (service

by certified mail was sufficient even when party did not move for an order authorizing substitute

service in advance of service).  The Court considers that whether prior diligent attempts are

required will depend on the circumstances of each case and the reasons why alternative service is

sought.

Here, the absence of any prior attempts to serve by the Foreign Representatives does not

appear to be for lack of effort or diligence.  The Foreign Representatives explain that they would

effectively not know where to begin with a traditional attempt at service, given that the Founders

have moved between various countries, concealed their locations, and do not appear to be

amenable to service via other avenues, like counsel or a registered agent in the United States.[5]

The Court considers that requiring a "diligent prior attempt" at service here would be futile based

on the Foreign Representatives' submissions, and the absence of evidence showing that a futile

attempt was made before the Foreign Representatives filed their Service Motion is not a bar to

the relief they seek here.[6]

---

[5]    The Foreign Representatives do propose to serve counsel for the Founders, Advocatus.  (*See* Service
Motion ¶ 4.)  However, the Foreign Representatives acknowledge that Advocatus is Singapore counsel, and states
nothing alleging that they would be served within the United States.  Thus, service on Advocatus would not comply
with the territorial limitations of Rule 45 as discussed *supra*, and it cannot serve as an "alternative" means for that
reason.

[6]    In any event, the Foreign Representatives' proposed order granting the Service Motion states that the
Foreign Representatives will first attempt personal service on individuals before resorting to email and social media.
(*See* "Proposed Order Granting Service Motion," ECF Doc. # 55-1.)

The second issue for the Foreign Representatives here is showing that the type of alternative service sought —via email and social media—will provide notice in a manner consistent with the other forms of service endorsed in the caselaw.  When condoning alternative forms of service under Rule 45—like service via certified mail—courts in this district have relied on the reasoning that such forms "reasonably insure[] actual receipt." *See Cordius*, 2000 WL 10268 at *2; *see also Ultradent Prods.*, 2002 WL 31119425, at *4.  But functionally, there are legitimate questions as to whether service via email and social media similarly provide evidence of actual receipt, or are effectively so difficult for a party like Davies to ignore that they can be considered to give notice.[7]  Given that concern, it is significant that the Foreign Representatives cite only one case where a party was permissibly served via email, and even then, it was effectively used as a "backup" to more widely endorsed methods, like certified mail.[8]  This Court was only able to locate one additional case where service of a subpoena via email was permitted, and again, it was used as a backup to personal service, in conjunction with overnight mail.  *See Petrobras*, 2016 WL 908644, at *1–2.

This second issue leads to a third—which is whether the Court should consider caselaw for alternative service of process outside the context of Rule 45 instructive here.  Because at

---

[7]     Just as courts have done with other forms of alternative service, even in the context of email or social media, the Court would not reject any factual indicia of actual receipt to the extent it exists following service. *See, e.g., First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 255 (S.D.N.Y. 2000) (finding that attaching a subpoena to the door and mailing another copy to counsel of record was sufficient, "especially since, as noted, [subpoenaed party] does not deny that it received timely actual notice of the subpoena").

[8]     That case also contained much stronger facts showing prior diligent attempts, and the likelihood of receipt by the subpoenaed party. *S.E.C. v. Pence*, 322 F.R.D. 450, 453 (S.D.N.Y. 2017) (concluding that substituted service of subpoena on corporate attorney by e-mail, fax, certified mail, and voicemail message, was appropriate where subpoenaing party had already attempted personal service on attorney 14 times at five locations, and attorney refused to consent to alternative service and registered the telephone number and e-mail address to be used with state bars of which he was a member and had responded to contact by these means in the past).

25

bottom, the Foreign Representatives' only support for the adequacy of alternative service of process via email or social media is in the context of Rule 4 service. And to the Foreign Representatives' credit, they do cite a number of persuasive cases where process was permitted to be served via email or social media in the context of service pursuant to Rule 4.[9] Moreover, many of these cases permitted service via email or social media as the sole methods of service. This is unlike the *Pence* and *Petrobras* cases in the Rule 45 context, where email service was permitted in conjunction with more widely accepted methods of alternative service. *See Pence*, 322 F.R.D. at 453; *Petrobras*, 2016 WL 908644, at *1–2.

The Court is convinced that alternative service via email and Twitter would be warranted and reasonably calculated to provide notice. First, the Court finds it notable that the Foreign Representatives propose to serve via email to the email addresses that the Founders provided to the Foreign Representatives for the purpose of fielding informal discovery questions. (Subpoena Motion ¶ 20.) Additionally, this conclusion is also informed by the fact that the Foreign Representatives included facts showing recent and actual use of both the Twitter and email accounts. (Service Motion ¶¶ 45–46.) Other courts have considered the extent of the subpoena target's use of social media accounts in considering whether service via those accounts would be reasonably calculated to provide adequate notice. *See St. Francis Assisi v. Kuwait Finance House*, 2016 WL 5725002, at *2 (N.D. Cal. Sept. 30, 2016). The Court also notes that the

---

[9]    *See, e.g.*, *Hardin v. Tron Found.*, 20-CV-2804, 2020 WL 5236941, at *1 (S.D.N.Y. Sept. 1, 2020) (allowing service via email and social media); *In re Bibox Group Holdings Limited Securities Litigation*, 2020 WL 4586819, at *3 (S.D.N.Y. Aug. 10, 2020) (allowing service via email and social media); *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112, 2018 WL 4757939, at *13 (S.D.N.Y. Sept. 30, 2018) (allowing service via email); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (allowing service via email).

Twitter use appears to be somewhat public, and the continued use of public Twitter accounts could ostensibly provide probative evidence of actual receipt of the subpoenas.

The Court agrees with the Foreign Representatives that the caselaw regarding Rule 4 is persuasive, if not controlling, here.  First, and unlike the Foreign Representatives' prior attempt to analogize to Rule 4, the Foreign Representatives are no longer requesting the Court to apply Rule 4 precedent to bypass the statutory requirements of Rule 45.  Instead, the Foreign Representatives argue that cases in which service via email or social email was "reasonably calculated" to provide notice in the Rule 4 context are instructive in the Rule 45 context, because the "reasonably calculated" standard derives from the underlying due process requirement applicable under both rules.  *See Procom*, 638 B.R. at 643–44.  The Court agrees.  Where all other statutory prerequisites are met, and all that remains is the due process standard, the Court finds no principled reason for denying the applicability of the Rule 4 alternative service cases to the Rule 45 context.

In addition to the commonality under the due process standard, there is also a statutory basis for applying Rule 4 and its caselaw here.  Because proposed service of Davies implicates Rule 45(b)(3), the Court must also apply section 1783, as discussed above.  And section 1783 states that service "shall be effected in accordance with the provisions of the Federal Rules of Civil Procedure relating to service of process on a person in a foreign country."  28 U.S.C. § 1783.  In applying section 1783, courts in this district have taken this to mean that service must not only comply with Rule 45, but Rule 4, which explicitly speaks to service of parties in foreign countries.  *See Petrobras*, 2016 WL 908644, at \*2.  Specifically, Rule 4(f) lays out three subsections for service outside the United States.  Subsections 4(f)(1) and 4(f)(2) presume that there is knowledge as to the intended recipient's location, and thus the Court considers that they

27

are not applicable here.[10]  Rule 4(f)(3), however, provides a catchall, and states that a party may

be served outside the United States "by other means not prohibited by international agreement,

as the court orders."  FED. R. CIV. P. 4(f)(3).  The Court notes that other courts in this district

have permitted service of Rule 45 and section 1783 subpoenas by email under Rule 4(f)(3), even

when the location of the subpoena recipient was known to the applicant and the court.  *See*

*Petrobras*, 2016 WL 908644, at *2.

　　While the lack of caselaw allowing for Rule 45 service via email or social media is

curious, this does not seem to be an indication that doing so is incorrect.  For one, the Court was

equally unavailing in locating any cases where courts *rejected* applications to serve subpoenas

via email or social media in the context of Rule 45.  Notably, it appears that in the vast majority

of Rule 4 cases where service is permitted via email or social media, the service is made outside

the United States, on foreign persons or entities.[11]  As discussed above, however, Rule 45 only

allows for service outside the United States on United States nationals, which the Court has come

to understand happens very infrequently in comparison.  Thus, the Court considers that it reaches

the correct result, albeit in a factually rare circumstance, in allowing for alternative service of a

Rule 45 subpoena outside the United States via email and social media.

---

[10]　　In particular, the Court notes that Rule 4(f)(1), which references service via the Hague convention is inapplicable given that Davies' location is unknown.  *Prediction Co. LLC v. Rajgarhia*, No. 09-cv-07459 (SAS), 2010 WL 1050307, *2 (S.D.N.Y. Mar. 22, 2010) ("[I]t is worth observing the inapplicability of the Hague Convention . . . because [the defendant's] address is not known to [plaintiff]").  The Court considers the Rule 4(f)(2) is similarly inapplicable by the same reasoning.

[11]　　*See, e.g.*, *In re Bibox Group Holdings Limited Securities Litigation*, 2020 WL 4586819, at *3 (S.D.N.Y. Aug. 10, 2020) (authorizing service over certain Chinese defendants via, among other methods, "their social media accounts," including Twitter, and "corporate and personal email"); *Nowak v. XAPO, Inc.*, No. 20-CV-03643, 2020 WL 5877576, at *4 (N.D. Cal. Oct. 2, 2020) (authorizing service on an Indonesian defendant by email and via social media to its Facebook and Twitter accounts); *St. Francis Assisi v. Kuwait Finance House*, 2016 WL 5725002, at *2 (N.D. Cal. Sept. 30, 2016) (authorizing service of process on a Kuwaiti national by Twitter).

### III.    <u>**CONCLUSION**</u>

For the reasons discussed above, the Service Motion is **GRANTED** with respect to Kyle

Davies, and **DENIED** with respect to all other parties.

**IT IS SO ORDERED.**

Dated:    December 29, 2022
          New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge
