**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Three Arrows Capital, Ltd.,<br><br>　　　Debtor in a Foreign Proceeding. | **FOR PUBLICATION**<br><br>Chapter 15<br><br>Case No. 22-10920 (MG) |

**MEMORANDUM OPINION GRANTING THE FOREIGN REPRESENTATIVES'**
**MOTION TO COMPEL**

*A P P E A R A N C E S:*

LATHAM & WATKINS LLP
*Counsel to the Foreign Representatives*
*of Three Arrows Capital, Ltd.*
1271 Avenue of the Americas
New York, NY 10020
　By:　Adam J. Goldberg, Esq.
　　　Brett M. Neve, Esq.
　　　Nacif Taousse, Esq.
　　　Brian S. Rosen, Esq.

LATHAM & WATKINS LLP
*Counsel to the Foreign Representatives*
*of Three Arrows Capital, Ltd.*
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
　By:　Daniel Scott Schecter, Esq. (admitted pro hac vice)
　　　Nima H. Mohebbi, Esq. (admitted pro hac vice)
　　　Caitlin Campbell, Esq. (admitted pro hac vice)

HOLLAND & KNIGHT LLP
*Counsel to the Foreign Representatives*
*of Three Arrows Capital, Ltd.*
31 West 52nd Street, 12th Floor
New York, NY 10019
　By:　Warren E. Gluck, Esq.
　　　Shardul S. Desai, Esq. (pro hac vice pending)

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

This Opinion addresses the motion ("Motion," ECF Doc. # 81) filed by Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized foreign representatives (the "Foreign Representatives") of Three Arrows Capital, Ltd. (the "Debtor"), for entry of an order directing one of the Debtor's founders, Kyle Livingstone Davies ("Davies"), to comply in full with the subpoena issued by the Foreign Representatives ("Subpoena"). Annexed to the Motion is the declaration of Nima H. Mohebbi in support ("Mohebbi Decl.," ECF Doc. # 84), the declaration of Alex M. Englander in support ("Englander Decl.," ECF Doc. # 83), and the declaration of Russell Crumpler in support ("Crumpler Decl.," ECF Doc. #82).

For the reasons set forth below, the Motion is **GRANTED**.

## I. BACKGROUND

The Motion seeks an order compelling Davies to comply with the Subpoena served on him pursuant to this Court's *Memorandum Opinion and Order Granting in Part and Denying in Part the Foreign Representatives' Service Motion* ("Service Opinion"). *See In re Three Arrows Capital, Ltd.*, 647 B.R. 440 (Bankr. S.D.N.Y. 2022). General familiarity with the chapter 15 case, the conduct of the Debtor's founders, Davies and Su Zhu ("Founders"), and the Foreign Representatives' efforts to obtain discovery in this case are presumed from the Service Opinion.

The Service Opinion addressed two motions made by the Foreign Representatives: (1) the *Motion for Entry of an Order Authorizing Issuance of Subpoenas and Granting Related Relief* ("Subpoena Motion," ECF Doc. # 54); and (2) the *Motion for Entry of an Order Authorizing Alternative Service of Process* ("Service Motion," ECF Doc. # 55). Through the Subpoena

Motion and Service Motion, the Foreign Representatives sought relief related to discovery from Debtor's Founders and related entities.

At the initial hearing on the Subpoena and Service Motions, the Court informed the Foreign Representatives that outstanding legal and factual issues prevented the Court from granting the Service Motion. Specifically, the Foreign Representatives' Service Motion raised concerns regarding the scope of Federal Rule of Civil Procedure 45 ("Rule 45") and alternative service of process under Rule 45. The Court directed the Foreign Representatives to submit additional evidence and a legal brief on those issues before reaching a decision on the Service Motion. In the interim, the Court issued an order granting the Subpoena Motion ("Subpoena Order," ECF Doc. # 71), in the event it became possible to serve the subpoena without the relief sought in the Service Motion. Paragraph 5 of the Subpoena Order provides that "each subpoena recipient shall comply with the subpoenas not later than fourteen (14) days after the service of subpoena." (Motion ¶ 18 (quoting Subpoena Order ¶ 5).)

After receiving the Foreign Representatives' supplemental legal brief and evidentiary submission, the Court issued the Service Opinion on December 29, 2022. The Court concluded that the Foreign Representatives failed to show that Rule 45 supported the issuance of a subpoena against Zhu, Three Arrows Capital Pte. Ltd. and Three AC Ltd. (the "Investment Managers"), and Troy Trade, the Debtor's prime broker. *See Three Arrows Cap.*, 647 B.R. at 448–50. With respect to Mr. Davies, however, the Court held that the Foreign Representatives had shown that Rule 45 and 28 U.S.C. § 1783 allowed for service of a subpoena on Davies outside the United States. *Id.* at 453. Accordingly, the Court granted the Service Motion with respect to Mr. Davies and denied it with respect to Mr. Zhu, the Investment Managers, and Troy Trade. *Id.* at 457.

3

Having established that Rule 45 supported the service of a subpoena on Davies, the Court considered whether the Foreign Representatives were entitled to serve Davies via their proposed "alternative" means—email and social media. The Court concluded that "alternative service via email and Twitter would be warranted and reasonably calculated to provide notice," consistent with due process. *Id.* at 455.

Following the Court's decision in the Service Opinion, the Foreign Representatives, through their counsel, served the Subpoena on Mr. Davies by Twitter and by email on January 5, 2023. (Motion ¶ 20.) Mr. Davies was required to respond by electronic production to counsel for the Foreign Representatives by January 26, 2023. (*Id.* ¶ 23.) The Foreign Representatives report that Mr. Davies failed to produce documents or respond to the Subpoena. (*Id.* ¶ 25.) Counsel for the Foreign Representatives attempted to meet and confer with Mr. Davies before filing this Motion, but Mr. Davies did not respond. (*Id.* ¶ 24.)

Since January 5, 2023, Mr. Davies has been active on social media, having "tweeted" or "retweeted" dozens of times on Twitter. (*Id.* ¶ 21.) The Foreign Representatives claim that Mr. Davies is educated, represented by counsel, and undoubtedly aware of the Subpoena given that there were a large number of replies (41) and retweets (64) regarding the Subpoena following service. (*Id.* ¶ 22.)

## II.  ANALYSIS

This opinion considers two issues. The first is whether the record establishes that service of the Subpoena was, in fact, reasonably calculated to provide notice to Davies. The second is whether the Court must address personal jurisdiction over Davies before compelling compliance with the Subpoena. On those issues, the Court concludes that: (A) service of the Subpoena was

in fact reasonably calculated to provide notice to Davies as served; and (B) it is not necessary to reach the issue of personal jurisdiction before compelling compliance with the Subpoena.

### A.     Service of the Subpoena

In the Service Opinion, the Court concluded *ex ante* that service of the Subpoena could comport with the requirements of Rule 45 and due process. *See Three Arrows Cap.*, 647 B.R. at 453–57. Now that the Foreign Representatives move to compel compliance with the Subpoena, the Court must consider whether service of the Subpoena in fact comported with those authorities. Due process requires that service of a subpoena must be "reasonably measured to insure the actual receipt of the subpoena." *Ultradent Prods., Inc. v. Hayman*, No. M8-85 (RPP), 2002 WL 31119425, at *3 (S.D.N.Y. Sept. 24, 2002). The Court concludes that standard is satisfied here.

Other courts in this district have considered the adequacy of service effected electronically, and the Court finds such cases instructive. For instance, in *Morse v. Levine*, the court assessed whether service to an email address listed on a business's website provided adequate notice, and in doing so, considered relevant whether the "party to be served maintains the website, monitors the email, or would be likely to receive information transmitted to that address." *See* 2019 WL 7494619, at *5 (S.D.N.Y. Dec. 19, 2019), *report and recommendation adopted*, 2020 WL 85410 (S.D.N.Y. Jan. 3, 2020).[1]

Here, the Subpoena was served both via email and to Davies' Twitter account. Even before the Subpoena was served, the Court noted in the Service Opinion that it considered relevant the fact that the email address in question was the same one that had been provided to

---

[1]     The service in question in *Morse* was pursuant to Rule 4. While the Subpoena here was served pursuant to Rule 45, the Court's analysis in the Service Opinion makes clear that Rule 4 precedent regarding adequacy of service is instructive, if not controlling. *See Three Arrows Cap.*, 647 B.R. at 456.

the Foreign Representatives by the Founders for the purpose of fielding informal discovery questions, and that Davies' use of his Twitter account was frequent and recent. *See Three Arrows Cap.*, 647 B.R. at 455–56. These facts support finding that service was adequate.

With respect to service via Twitter, the Foreign Representatives have shown that Davies' use of his Twitter account since the Subpoena was served make it highly likely that he has notice of the Subpoena for three reasons: (1) the Twitter account has posted frequently since service; (2) the posts appear to be from Davies himself based on their content; and (3) there has been additional activity that would have drawn additional attention to the Subpoena for a frequent Twitter user like Davies. While Twitter is a relatively new platform for service of process, these facts bearing on control, frequency of use, and likelihood of receipt that were considered in the email context by the court in *Morse* are similarly relevant here.

In sum, the Court finds that service of the Subpoena was adequate under the Federal Rules and comported with due process.

### B.   Personal Jurisdiction

The Service Opinion concluded that service via certain alternative electronic means was sufficient under Rule 45, Rule 4, and 28 U.S.C. § 1783, and would comport with due process. The analysis above confirms that service was in fact effected consistent with those same authorities. Davies has neither complied with nor appeared to challenge the Subpoena, and now the Foreign Representatives seek an order compelling him to comply.

In seeking an order compelling compliance, the Foreign Representatives inch closer to issues relating to personal jurisdiction. The issue of personal jurisdiction was not ripe at the time of the Service Motion, and the Court concludes for the reasons explained below that it is still unnecessary to address the issue at this juncture.

The Motion to compel compliance with the Subpoena raises an issue regarding the application of the Second Circuit's decision in *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014). There, the Second Circuit held that courts "must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45." *Id.* at 141. The Foreign Representatives have not briefed the issue of personal jurisdiction. They suggest that the Service Opinion already determined that this Court has jurisdiction over Davies. The Court disagrees. The issue of personal jurisdiction was not decided in the Service Opinion. As explained below, the Court concludes that it is not necessary to reach the issue of personal jurisdiction now.

        1.   <u>The Court Did Not Reach the Issue of Personal Jurisdiction in the Service Opinion</u>

The Foreign Representatives claim that the Court's Service Opinion included a "finding that [Davies] is subject to the Court's jurisdiction." (Motion ¶ 31.) The Service Opinion only held that service on Davies would be proper under the Federal Rules of Civil Procedure 45 and 4, as well as 28 U.S.C. § 1783. The Service Opinion also held on the facts of this case that certain means of alternative service would comport with due process. But the adequacy of service and the existence of personal jurisdiction are separate issues. The Service Opinion only dealt with the adequacy of service.

           a.   *The Service Opinion Regarding Rules 4 and 45 Did Not Reach Issue of Personal Jurisdiction*

The Service Opinion found that service of a subpoena on Davies was proper under Federal Rules 4 and 45. But a finding that a party was properly served under the Federal Rules does not necessarily confer personal jurisdiction.

7

The point is clearly illustrated in the context of Rule 4, the rule by which a summons and complaint is served on defendants to initiate an action. A defendant may be properly served with process under Rule 4, but that does not necessarily mean that the defendant will be subject to personal jurisdiction in the court where the suit is pending:

> "Although the questions of personal jurisdiction and service of process are closely interrelated, service of process is merely the means by which a federal court gives notice to the defendant and asserts jurisdiction over him; the actual existence of personal jurisdiction should be challenged by a Rule 12(b)(2) motion."

*Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217–18 (S.D.N.Y. 2021) (quoting 5B Wright & Miller, FED. PRAC. & PROC. CIV. § 1353).

In other words, a party—like a foreign defendant—might properly be served under Rule 4 (and Rule 4(f) in particular), but the defendant may then make a successful motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction based on their lack of connection to the forum.

The same is true under Rule 45. Indeed, the analysis surrounding whether personal jurisdiction existed over the subpoenaed foreign party in *Gucci America, Inc. v. Weixing Li* was premised on a finding that the foreign party had been properly served under Rule 45. 768 F.3d at 141 ("A district court, however, must have personal jurisdiction over a nonparty in order to compel it to comply with *a valid discovery request* under Federal Rule of Civil Procedure 45." (emphasis added)). The Second Circuit identified that the issue of personal jurisdiction was an independent issue that required a separate analysis on remand.

The Court's ruling in the Service Opinion that alternative service would comply with Rules 4 and 45 did not necessarily establish that there was personal jurisdiction over Davies.

> b. *The Service Opinion Regarding Section 1783 Did Not Reach Issues of Personal Jurisdiction*

In the Service Opinion, the Court also found that service was warranted under 28 U.S.C. § 1783. But that did not establish personal jurisdiction either. While satisfying the requirements of section 1783 may be necessary to confer personal jurisdiction over a subpoena recipient in a foreign country, it is not sufficient to establish personal jurisdiction. Personal jurisdiction is ultimately guided by constitutional considerations regarding due process. *See Matter of Marc Rich & Co., A.G.*, 707 F.2d 663, 669 (2d Cir. 1983) ("A federal court's jurisdiction is not determined by its power to issue a subpoena; its power to issue a subpoena is determined by its jurisdiction.").

This principle was illustrated in *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019), where the Second Circuit undertook an independent constitutional analysis of personal jurisdiction, in addition to analyzing whether the subpoenas were permissible under the relevant statutory authorities. *See id.* at 531 (determining that district court lacked personal jurisdiction to enforce subpoenas against parties subpoenaed pursuant to 28 U.S.C. § 1782).[2]

---

[2] At least one decision in this district concluded that a subpoena served pursuant to section 1783 on a U.S. citizen abroad creates personal jurisdiction over the citizen. *See Estate of Ungar v. Palestinian Auth.*, 412 F. Supp. 2d 328, 332 (S.D.N.Y. 2006) ("Pursuant to the Supreme Court's holding in *Blackmer v. United States*, § 1783(a) establishes the requisite personal jurisdiction over a United States citizen living outside of the jurisdiction of the United States to substantiate a valid subpoena for his or her testimony." (citation omitted)). *Ungar* rested its conclusion on *Blackmer v. United States*, 284 U.S. 421, 438 (1932). In *Blackmer*, the Supreme Court concluded that *in personam* jurisdiction was established based on a subpoena issued pursuant to the Walsh Act that was personally served on Blackmer, a U.S. citizen who resided in France, that required him to testify in a criminal trial relating to the infamous Teapot Dome scandal. Blackmer failed to comply and was held in contempt, with sanctions imposed on him under the Walsh Act. The Court explained that the extraterritorial application of U.S. law to its citizens abroad did not violate the Fifth Amendment. Despite moving his residence to France, Blackmer "continued to owe allegiance to the United States. By virtue of the obligations of citizenship, the United States retained its authority over him, and he was bound by its laws made applicable to him in a foreign country." *Id.* at 436. The Walsh Act, then codified at 28 U.S.C. §§ 711–718, satisfied the due process requirements of notice and opportunity to be heard. *See* 284 U.S. at 438. No issue was presented whether Blackmer had sufficient minimum contacts with the United States to compel his testimony at a criminal trial; it is clear that he did.

The Walsh Act was amended multiple times in the following decades and now exists in modern form as section 1783. *See* 9A Wright & Miller, FED. PRAC. & PROC. CIV. § 2462. More recent caselaw recognizes that

2. <u>The Court Need Not Reach the Issue of Personal Jurisdiction Here</u>

For the reasons explained below, the Court concludes it is not required to decide the issue whether the Court has personal jurisdiction over Davies at this juncture. In *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014), the Second Circuit held that a court must have personal jurisdiction over a nonparty to compel compliance with a discovery request. The *Gucci* court only reached that conclusion, however, after the nonparty served with the subpoena appeared to contest personal jurisdiction. *See id.* at 127. In this case, the subpoenaed nonparty, Davies, has failed to appear. The narrower issue here is whether, applying *Gucci*, the Court must make an affirmative finding that personal jurisdiction exists before compelling compliance with the subpoena, where personal jurisdiction has not actually been challenged by the subpoenaed party.

The Court is not aware of any cases in the Second Circuit or elsewhere that address whether a court must undertake a *sua sponte* analysis of personal jurisdiction over a non-appearing subpoena recipient. But courts have addressed whether a trial court must undertake a *sua sponte* analysis of personal jurisdiction before entering a default judgment when a defendant has failed to appear and raise the defense. The Second Circuit has instructed:

> [B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant. We have, however, left open the question whether a district court must investigate its personal

---

"[t]his longstanding principle that citizenship alone is sufficient to satisfy Due Process concerns still has force." *United States v. Clark*, 435 F.3d 1100, 1108 (9th Cir. 2006).

But *Blackmer* predated *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), by thirteen years, and it said nothing about the minimum contacts analysis that *International Shoe* and its progeny require. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ("Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident . . . that has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") (quoting *International Shoe*, 326 U.S. at 316 (internal quotes omitted)). The Court has not found any other cases that conclude that compliance with section 1783 automatically confers personal jurisdiction over the subpoena recipient and it declines to follow *Ungar*.

> jurisdiction over [a] defendant before entering a default judgment . . . Several of our sister circuits appear to impose such a requirement.

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotes and citations omitted); *see also Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).

Caselaw addressing *sua sponte* consideration of personal jurisdiction allows, but does not require, courts to consider the issue at the default judgment stage. The default judgment cases discussed below identify factors a court should consider in deciding whether to address personal jurisdiction before entering a default judgment. Since *Gucci* makes clear that personal jurisdiction is also required to compel discovery, the Court will apply these same factors in deciding whether to resolve the issue of personal jurisdiction over Davies now, before entering an order to compel discovery. The Court concludes that consideration of these factors does not require *sua sponte* analysis of personal jurisdiction to decide the instant Motion. If Davies fails to comply with an order compelling compliance with the Subpoena, and the Foreign Representatives seek to hold Davies in contempt, the Foreign Representatives can introduce evidence and arguments supporting: (1) service of the order compelling compliance; (2) personal jurisdiction over Davies; and (3) the appropriate coercive contempt sanction that the Court should impose. Davies, of course, can appear and contest the Foreign Representatives' showing, or he can fail to appear as he has done so far, and, frankly, take his chances.

In the default judgment cases where courts examine personal jurisdiction *sua sponte*, judicial economy is consistently cited as the reason for doing so. Courts in this Circuit have observed that:

> Since a judgment rendered against a defendant over whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it

11

> "preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment."

*No Limit Auto Enterprises, Inc. v. No Limit Auto Body, Inc.*, No. 21-cv-04755 (AMD) (JMW), 2022 WL 18399477, at *3 (E.D.N.Y. Dec. 12, 2022) (quoting *Foshan Shunde Xinrunlian Textile Co. v. Asia 153 Ltd.*, No. 14-cv-4697 (DLI) (SMG), 2017 WL 696025, at *2 (E.D.N.Y. Jan. 30, 2017)).

But cases have also found that judicial economy does not always favor resolving personal jurisdiction before entering a default judgment. Applying the flexibility permitted by *Mickalis*, 645 F.3d at 133, which declined to impose an affirmative requirement to address the issue in every case when the defendant has failed to appear and contest personal jurisdiction, courts have entered default judgments without fully resolving personal jurisdiction.

Some courts have examined whether a plaintiff's filings "'raise questions' as to whether the court may permissibly exercise personal jurisdiction over a defendant who has never appeared." *Chen v. Best Miyako Sushi Corp.*, No. 16 Civ. 2012 (JGK) (BCM), 2021 WL 707273, at *6 (S.D.N.Y. Feb. 1, 2021), *report and recommendation adopted by* 2021 WL 706412 (S.D.N.Y. Feb. 19, 2021) (citations omitted). *Best Miyako* concluded that "questions" about personal jurisdiction not only create an opportunity, but an obligation, to address the issue. *See* 2021 WL 707273, at *6. (concluding that courts *must* address personal jurisdiction where a plaintiff's filings have "raise[d] questions" about whether the exercise of personal jurisdiction is appropriate).

Other cases require more than just "questions" about personal jurisdiction before analyzing the issue *sua sponte*. For example, in *Kaplan v. Hezbollah*, No. 19-cv-3187, 2022 WL 2207263 (E.D.N.Y. June 21, 2022), the court distinguished between cases where "a plaintiff's

submissions clearly show an absence of personal jurisdiction or . . . show that sustaining personal jurisdiction is highly unlikely," and cases where "the question of personal jurisdiction is close or unsettled." *Id.* at *2. The court in *Kaplan* held that while judicial efficiency was served in the former case, the same is not always true in the latter case. The court explained:

> When the question of personal jurisdiction is close or unsettled, however, as it is here, my view is that courts should hesitate before undertaking an examination of their personal jurisdiction over a defaulting defendant. It is not just that personal jurisdiction is a waivable defense as to which the court, by examining it *sua sponte*, is in some sense acting on behalf of the defaulting defendant. It is that in a case where a defendant appears and challenges personal jurisdiction, the court is positioned to make a much better-informed decision. When a defendant that has appeared seeks to challenge personal jurisdiction (even when it has appeared only for that purpose), the court has a panoply of options with which to refine its decision. It can order the defendant to produce discovery on the issue of personal jurisdiction. It can hold an evidentiary hearing to determine contested facts relating to personal jurisdiction. Or it can consolidate discovery on personal jurisdiction issues with discovery on the merits and defer ruling on the personal jurisdiction issue until trial.
>
> However, when a defendant fails to appear, it deprives the court, and, more importantly, the plaintiff, of any of these options. It handicaps the plaintiff by depriving her of discovery that she would have had if the defendant had not defaulted. It requires the plaintiff to make her case for personal jurisdiction blindfolded. In other words, the defendant's non-appearance results in determination of the personal jurisdiction issue on less – and often far less – than a full record.

*See id.* at *3 (citations omitted).

Other courts have simply considered whether judicial economy would be served by a preemptive personal jurisdiction analysis based on the posture of the case at hand. For instance, in *CKR Law LLP v. Anderson Invs. Int'l, LLC*, 544 F. Supp. 3d 474, 480 (S.D.N.Y. 2021), Judge Rakoff assessed the possibilities for future litigation over jurisdiction in the case and concluded that reaching the issue of jurisdiction *sua sponte* would have likely been an inefficient use of judicial resources. *Id.* at 480. The court explained:

13

> For one thing, the Court is skeptical that addressing personal jurisdiction, in this posture and without the benefit of adversarial briefing, actually preserves judicial resources. Even if the Court were to determine that it possessed jurisdiction over the respondents, the respondents could later attack the default judgment as void either under Rule 60(b)(4) or on direct appeal. A court would then have to re-analyze the personal jurisdiction issue, thereby duplicating work. And if the respondents have no intention of attacking the default judgment -- that is, if they effectively waive their personal jurisdiction arguments -- then the initial analysis will have been unnecessary. By waiting until a party actually contests personal jurisdiction, a court ensures that it will resolve only those issues that are properly presented.

*Id.*

In sum, the default judgment cases show that while judicial economy can be a valid reason to evaluate personal jurisdiction *sua sponte*, whether judicial economy will actually be served by doing so is dependent on the circumstances. The Court considers here that judicial economy would not be served by a *sua sponte* personal jurisdiction analysis on the facts here.

Initially, the Court finds that the submissions here do not even rise to the level of the "rais[ing] questions" standard applied in *Best Miyako*. *See* 2021 WL 707273, at *6. Any analysis of personal jurisdiction over Davies must be framed around his minimum contacts with the United States as a whole. In bankruptcy cases, assuming valid service of process, "the only remaining inquiry for a bankruptcy court is whether exercising personal jurisdiction over the defendant would be consistent with the Due Process Clause of the Fifth Amendment." *Bickerton v. Bozel S.A. (In re Bozel S.A.)*, 434 B.R. 86, 97 (Bankr. S.D.N.Y. 2010) (citing *In re Enron Corp.*, 316 B.R. 434, 440, 444–45 (Bankr. S.D.N.Y. 2004)). Under that analysis, the "forum state" is the United States as a whole, and "a court should consider the defendant's contacts throughout the United States . . . ." *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 527 (S.D.N.Y. 2008); *see also Lehman Bros. Special Fin., Inc. v. Bank of Am. (In*

14

*re Lehman Bros. Holdings Inc.)*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015). "The rationale for this holding is that the sovereign exercising jurisdiction under 28 U.S.C. § 1334 is the U.S., not the particular state in which the federal court is situated." *In re Hellas Telecomm. (Luxembourg) II SCA*, 524 B.R. 488, 506 (Bankr. S.D.N.Y. 2015).[3]

As discussed in the Service Opinion, the Foreign Representatives have made a strong initial showing that despite no longer residing in the United States, Davies had substantial contacts with the United States forum in operating the Debtor's business. Davies and Zhu first formed Three Arrows Capital, LLC in Delaware, and registered it to operate in the State of California as Three Arrows Capital Management, LLC, before incorporating the Debtor entity in the British Virgin Islands. *See Three Arrows Cap.*, 647 B.R. at 442.

In a December 3, 2022 interview, Davies stated that he and Zhu ran the firm together and built everything in-house themselves, and personally performed every role at the firm. *Id.* Those activities included executing hundreds of millions of dollars in funding deals in and/or with numerous American cryptocurrency, blockchain, and fintech companies, including Aptos Labs,

---

[3] In *Owens-Illinois v. Rapid American Corp. (In re Celotex Corp)*, 124 F.3d 619, 630 (4th Cir. 1997), the court explained that in bankruptcy proceedings where jurisdiction is based on section 1334(b), because the sovereign exercising jurisdiction is the United States, not a particular state, minimum contacts with the United States is sufficient to satisfy the Fifth Amendment due process requirement, whether the claims asserted arise under federal, state or foreign law. Similarly, in *Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233, 1244 (7th Cir. 1990), the court in considering state law claims stated that "[s]ince section 1334 provides federal question jurisdiction, the sovereign exercising its authority over the [defendant] is the United States, not the state of Illinois. Hence, whether there exist sufficient minimum contacts between the [defendants] and the state of Illinois has no bearing upon whether the United States may exercise its power over the [defendants] pursuant to its federal question jurisdiction." *See id.*

While cases like *Owens-Illinois*, *Diamond*, and *Hellas* addressed service of process of a complaint under Bankruptcy Rule 7004, the analysis here does not differ because service of the subpoena was made pursuant to Rule 45. The Court is ultimately exercising jurisdiction under the same authorities. Additionally, while the Second Circuit has not explicitly ruled on the issue, it has acknowledged that the nationwide approach has been adopted by other circuits in the Rule 45 context. *See Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 142 n.21 (2d Cir. 2014) ("Several of our sister circuits have endorsed the position that, when a civil case arises under federal law and a federal statute authorizes nationwide service of process, the relevant contacts for determining personal jurisdiction are contacts with the United States as a whole . . . . This court has not yet decided the issue.").

dYdx, and BlockFi. *Id.* at 443. These deals included a syndicate of investors, many of which were based in New York and California, and many of the loan contracts are governed by New York venue and choice of law provisions. *Id.* The Founders obtained credit from U.S. financial institutions including JPMorgan Chase, Citibank, and Bank of America. *Id.* at 442. Davies and Zhu, on behalf of the Debtors, also contracted with U.S. service providers such as BitGo, an auditing service provider located in California. *Id.* at 443.

Since the beginning of this case, the Court has been cognizant of the fact that Davies and Zhu are located outside the United States. Indeed, that is what prompted the Court to require the Foreign Representatives to make additional factual and legal submissions before finding in the Service Opinion that subpoena service on Davies was proper. It is entirely uncontroversial, however, that courts can establish personal jurisdiction over foreign individuals based on their contacts with the United States, and the record in this case does not "raise questions" as to personal jurisdiction simply because Davies may have been located outside the United States for some period of time while operating the Debtor's business.

The Foreign Representatives have made a substantial showing regarding Davies' contacts with the United States; by never appearing, Davies has obviously failed to articulate why these contacts do not render him amenable to discovery orders in the United States. To the extent that the Court does not have a full record on which to decide the jurisdiction issue, that problem is solely a product of Davies' failure to appear. And while the Second Circuit stated that a court "may first assure itself that it has personal jurisdiction" in the default judgment context, *see Mickalis*, 645 F.3d at 133, here that exercise could run the risk of the Court impermissibly asserting hypothetical arguments on Davies' behalf, considering the strength of the current submissions from the Foreign Representatives. *See Greathouse v. JHS Security, Inc.*, 784 F.3d

105, 119 (2d Cir. 2013) ("There is something wrong when a case or controversy, to the extent that it exists, is principally between a plaintiff and the judges deciding the case." (Korman, D. J., concurring in part and dissenting in part)). As noted in *Kaplan*, parties like Davies can appear for the limited purposes of contesting jurisdiction. *See Kaplan*, 2022 WL 2207263, at *3. Davies chose not to do so, and "[t]here is no reason [he] should be better off for not appearing at all." *See id.*

Furthermore, just as Judge Rakoff concluded in *CKR Law*, judicial economy would not be served here by addressing personal jurisdiction now, considering the possibility of a future challenge to the order compelling compliance on jurisdictional grounds. Davies can appear and contest personal jurisdiction if he fails to comply with an order compelling compliance and the Foreign Representatives seeks to hold Davies in contempt. In that scenario, the Court will need to evaluate both parties' evidence and arguments. On the other hand, if Davies continues to ignore the Court's order, the Court will base its ruling on the showing made by the Foreign Representatives.

Finally, concerns regarding judicial economy are further ameliorated in this case because the Foreign Representatives have also represented that they will withdraw the motion if compliance is achieved in other jurisdictions. (*See* Motion ¶ 27.) In other words, the Court might not be required to take further action, providing yet another reason to refrain from addressing the personal jurisdiction issue now. In sum, the factors identified in the default judgment cases do not counsel a *sua sponte* personal jurisdiction analysis here.

### III.   CONCLUSION

This Motion and an Order granting the Motion is not the final stop on enforcement of the subpoena.  A motion seeking to compel compliance with a subpoena without seeking sanctions, as is true here, effectively provides Davies with an additional opportunity to appear, contest jurisdiction, and assert any other available defenses to enforcement of the subpoena.  An Order compelling compliance does not impose liability as would a default judgment.  Any sanctions later imposed for continued failure to comply would be coercive, and thus, within Davies' power to purge.  *See Markus v. Rozhov*, 615 B.R. 679, 713 (S.D.N.Y. 2020) ("[A] sanction 'is considered civil and remedial if it either coerces the defendant into compliance with the court's order, or . . . compensates the complainant for losses sustained.  Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge.'") (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994)).

For the reasons discussed above, the Motion is **GRANTED**.  Within seven (7) days from the date of this Opinion, counsel for the Foreign Representatives shall submit a proposed order granting relief consistent with this Opinion.

Dated:   March 22, 2023
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge