Hearing Date: August 8, 2023 at 11:00 a.m. (ET)
Objection Deadline: August 1, 2023 by 4:00 p.m.  (ET)

Christopher Harris
Adam J. Goldberg
Brett M. Neve
Nacif Taousse
Brian S. Rosen
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  christopher.harris@lw.com
        adam.goldberg@lw.com
        brett.neve@lw.com
        nacif.taousse@lw.com
        brian.rosen@lw.com

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
Emily R. Orman (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
        tiffany.ikeda@lw.com
        emily.orman@lw.com

*Counsel to the Foreign Representatives*
*of Three Arrows Capital, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Three Arrows Capital, Ltd.,<br><br>      Debtor in a Foreign Proceeding | Chapter 15<br><br>Case No. 22-10920 (MG) |

**FOREIGN REPRESENTATIVES OF THREE ARROWS CAPITAL, LTD.'s MOTION FOR AN ORDER (I) HOLDING KYLE LIVINGSTONE DAVIES TO BE IN CIVIL CONTEMPT FOR FAILURE TO COMPLY WITH MARCH 30, 2023 COURT ORDER; AND (II) GRANTING SANCTIONS AGAINST KYLE LIVINGSTONE DAVIES**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................3

    A.    Commencement Of Three Arrows's Insolvency Proceedings.................................3

    B.    The Foreign Representatives' Discovery Efforts....................................................4

    C.    Davies's Extensive U.S. Based Contacts...............................................................5

    D.    The Subpoena And The Foreign Representatives' Motion To Compel. ................6

    E.    Davies's Noncompliance With The Court's Motion To Compel Order.................7

ARGUMENT ............................................................................................................................9

    A.    The Court Has Personal Jurisdiction Over Davies, Who Has Not Rebutted
        The "Substantial Showing" Made By The Foreign Representatives. ...................10

        1.    Davies Has Been Properly Served With The Subpoena And
               Motion To Compel Order. ........................................................................11

        2.    The Court Has A Statutory Basis To Exercise Jurisdiction Over
               Davies Under 28 U.S.C. § 1783, Rule 4, And Rule 45............................12

        3.    Exercising Jurisdiction Over Davies To Enforce The Subpoena Is
               Consistent With The Due Process Clause...................................................13

            i.    Davies Purposefully Availed Himself Of The Benefits Of
                   Doing Business In The United States. ...........................................15

            ii.    The Subpoena Is "Related To" Davies's U.S. Contacts. ..............19

            iii.    Exercising Personal Jurisdiction Over Davies Comports
                  With Fair Play And Substantial Justice. .......................................20

    B.    This Court Should Find Davies In Contempt For His Deliberate
        Noncompliance With Its Orders. ........................................................................23

        1.    Davies Is Aware Of The Unambiguous Motion To Compel Order...........24

        2.    Davies Has Never Even *Attempted* To Comply.......................................25

        3.    Davies Has Demonstrated Clear, Convincing, And *Continued*
               Noncompliance. ........................................................................................25

C.    Sanctions Should Be Awarded For Davies's Contempt. ........................................26

1.    Davies's Willful Contempt Supports Awarding A Daily Fine. .................27

2.    Davies's Willful Contempt Also "Strongly Supports" Awarding
Attorneys' Fees. ........................................................................................28

NOTICE ............................................................................................................................30

NO PRIOR REQUEST .....................................................................................................30

CONCLUSION ..................................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re 1990's Caterers Ltd.*,
    531 B.R. 309 (Bankr. E.D.N.Y. 2015).....................................................................30

*Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*,
    457 F. Supp. 3d 401 (S.D.N.Y. 2020)....................................................................13

*Ametek, Inc. v. N. Shore Int'l, Inc.*,
    2017 WL 3172821 (E.D.N.Y. July 26, 2017).........................................................29

*Appl. to Enforce Admin. Subpoenas Duces Tecum of SEC v. Knowles*,
    87 F.3d 413 (10th Cir. 1996) ..................................................................................18

*In re Avianca Holdings S.A.*,
    648 B.R. 358 (Bankr. S.D.N.Y. 2023)...................................................................30

*Bambu Sales, Inc. v. Ozak Trading Inc.*,
    58 F.3d 849 (2d Cir. 1995).....................................................................................24

*In re Bibox Grp. Holdings Limited Sec. Litig.*,
    2020 WL 4586819 (S.D.N.Y. Aug. 10, 2020).......................................................12

*Biegeleisen v. Ross*,
    1996 WL 531923 (S.D.N.Y. Sept. 18, 1996).........................................................15

*In re Bozel S.A.*,
    434 B.R. 86 (Bankr. S.D.N.Y. 2010)..........................................................12, 16, 19

*Broker Genius Inc. v. Seat Scouts LLC*,
    2019 WL 2462333 (S.D.N.Y. June 13, 2019) .......................................................29

*Broumand v. Joseph*,
    522 F. Supp. 3d 8 (S.D.N.Y. 2021) ..................................................................13, 19

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..........................................................................................15, 20

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
    814 F.3d 91 (2d. Cir. 2016)....................................................................................27

*Chew v. Dietrich*,
    143 F.3d 24 (2d Cir. 1998).....................................................................................13

*Cine 42nd St. Theatre Corp. v. Allied Artists Pictures Corp.*,
  602 F.2d 1062 (2d Cir. 1979) ................................................................27

*Cordius Tr. v. Kummerfeld Assocs., Inc.*,
  658 F. Supp. 2d 512 (S.D.N.Y. 2009) ......................................................26

*In re Corso*,
  328 B.R. 375 (E.D.N.Y. 2005) ................................................................26

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019) ...........................................................19, 20

*Est. of Ungar v. Palestinian Auth.*,
  412 F. Supp. 2d 328 (S.D.N.Y. 2006) ......................................................11

*In re Fairfield Sentry Ltd.*,
  627 B.R. 546 (Bankr. S.D.N.Y. 2021) ......................................................16

*Forum Ins. Co. v. Keller*,
  1992 WL 297580 (S.D.N.Y. Oct. 8, 1992) ................................................27

*GMA Accessories, Inc. v. BOP, LLC*,
  No. 07 CIV. 3219 LTS DF, 2008 WL 4974430 (S.D.N.Y. Nov. 19, 2008) ............11

*GMA Accessories, Inc. v. Solnicki*,
  No. 07 CIV 3219 PKC DF, 2010 WL 3749213 (S.D.N.Y. Sept. 24, 2010) ............11

*In re Grand Jury Subpoena*,
  912 F.3d 623 (D.C. Cir. 2019) ...............................................................27

*Gucci Am., Inc. v. Weixing Li*,
  135 F. Supp. 3d 87 (S.D.N.Y. 2015) ................................................. *passim*

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014) ..................................................................14

*Hardin v. Tron Found.*,
  20-CV-2804, 2020 WL 5236941 (S.D.N.Y. Sept. 1, 2020) ............................12

*In re Hellas Telecommunications (Luxembourg) II SCA*,
  524 B.R. 488 (Bankr. S.D.N.Y.) .....................................................12, 14, 22

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
  326 U.S. 310 (1945) ...........................................................................13

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013) .......................................................13, 17, 18, 20

iv

*M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A.*,
  853 F. App'x 690 (2d Cir. 2021) ...................................................................27, 28

*MacDermid, Inc. v. Deiter*,
  702 F.3d 725 (2d Cir. 2012)...................................................................11, 15, 21

*Markus v. Rozhkov*,
  615 B.R. 679 (S.D.N.Y. 2020)...............................................................................27

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)..............................................................................10, 14

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.
  (In re Motors Liquidation Co.)*,
  56 B.R. 275 (Bankr. S.D.N.Y. Feb. 16, 2017) .......................................................19

*N.Y. State Nat. Org. for Women v. Terry*,
  886 F.2d 1339 (2d Cir. 1989)..........................................................................23, 24, 25

*Nike, Inc. v. Wu*,
  349 F. Supp. 3d 310 (S.D.N.Y. 2018).............................................................. *passim*

*Off'l Comm. of Unsecured Creditors of Arcapita, Bank. B.S.C. v. Bahr. Islamic
  Bank*,
  549 B.R. 56 (S.D.N.Y. 2016)...................................................................................18

*Painewebber, Inc. v. Acstar Ins. Co.*,
  211 F.R.D. 247 (S.D.N.Y. 2002) ............................................................................27

*In re: Petrobras Sec. Litig.*,
  No. 14-CV-9662 (JSR), 2016 WL 908644 (S.D.N.Y. Mar. 4, 2016).....................11

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010)....................................................................................24

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
  22 F.4th 103 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2852 (2022).........................13

*In re Sciaba*,
  334 B.R. 524 (Bankr. D. Mass. 2005) ....................................................................27

*In re Search of Content Stored at Premises Controlled by Google Inc.*,
  2017 WL 4700056 (N.D. Cal. Oct. 19, 2017)........................................................26

*Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Grp. LLC*,
  16-CV-6805 (JSR), 2018 WL 11389637 (S.D.N.Y. Aug. 20, 2018).......................18

*Strauss v. Credit Lyonnais*,
  175 F. Supp. 3d 3 (E.D.N.Y. 2016) ...................................................................18

*Teleglobe USA Inc. v. BCE Inc.*,
  493 F.3d 345 (3d. Cir. 2007)............................................................................30

*In re Tether & Bitfinex Crypto Asset Litig.*,
  576 F. Supp. 3d 55 (S.D.N.Y. 2021)................................................................17

*Thomas v. Countrywide Home Loans*,
  2009 WL 10712217 (N.D. Ga. Aug. 6, 2009) ..................................................15

*United States v. Danenza*,
  528 F.2d 390 (2d Cir. 1975).............................................................................11

*Univ. of Pittsburgh v. Hedrick*,
  No. 06-MC-176 NG KAM, 2006 WL 3370365 (E.D.N.Y. Nov. 20, 2006)...........11

*Weitzman v. Stein*,
  98 F.3d 717 (2d Cir. 1996).................................................................26, 27, 28, 29

*In re Zawawi*,
  644 B.R. 907 (Bankr. M.D. Fla. 2022) .............................................................22

*Zurich Am. Life Ins. Co. v. Nagel*,
  571 F. Supp. 3d 168 (S.D.N.Y. 2021)...............................................................14

## STATUTES

18 U.S.C. § 401 ......................................................................................................23

28 U.S.C.
  § 1334...................................................................................................................14
  § 1783............................................................................................................10, 11, 12
  § 1783(b) ..............................................................................................................11

BVI Business Companies Act, 2004, 20–122....................................................22

## RULES

Fed. R. Bankr. P.
  4(i)...........................................................................................................................11
  2002.........................................................................................................................30
  7004(d)....................................................................................................................12
  7004(f).....................................................................................................................12
  7007-1 .......................................................................................................................1
  9014............................................................................................................................1
  9020............................................................................................................................1

Fed. R. Civ. P.

4......................................................................................................................11, 12
4(f)......................................................................................................................11
4(f)(1)..................................................................................................................11
4(f)(2)..................................................................................................................11
4(f)(3)...........................................................................................................11, 12
37..........................................................................................................................1
37(b)(2)...............................................................................................................26
45................................................................................................................ *passim*
45(b)(2)...............................................................................................................13
45(b)(3)...............................................................................................................11

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. V............................................................................................13

## OTHER AUTHORITIES

David Yaffe-Bellany, *Their Crypto Company Collapsed, They Went to Bali*, New
    York Times (June 9, 2023), *available at*
    https://www.nytimes.com/2023/06/09/technology/three-arrows-cryto-
    bali.html ............................................................................................................2

Luc Olinga, *Luna Crash: Crypto Hedge Fund Three Arrows Seeks a Savior*, The
    Street (June 18, 2022), *available at*
    https://www.thestreet.com/investing/cryptocurrency/luna-crash-crypto-hedge-
    fund-three-arrows-seeks-a-savior ...................................................................17

Our Story, OPNX, *available at* https://opnx.com/about-us (last accessed June 6,
    2023) ...................................................................................................................2

Overview, Advocatus, *available at* https://advocatus.sg/Overview (last accessed
    June 8, 2023)......................................................................................................21

Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized foreign representatives (the "Foreign Representatives") of Three Arrows Capital, Ltd. ("Three Arrows" or the "Debtor"), respectfully move the Court for entry of an order substantially in the form attached hereto as "Exhibit A" holding Kyle Livingstone Davies, one of the Debtor's founders, in contempt of this Court's March 30, 2023 Order Granting Motion to Compel Compliance with Subpoena [Dkt. 94] *and* granting sanctions against Davies.[1]

In support of this motion, the Foreign Representatives rely on (a) the *Declaration of Nima H. Mohebbi* ("Mohebbi Decl."), (b) the *Declaration of Alex M. Englander* ("Englander Decl."), (c) the *Declaration of Tiffany M. Ikeda* ("Ikeda Decl."), and (d) the *Declaration of Russell Crumpler* ("Crumpler Decl."), filed contemporaneously herewith. The Foreign Representatives respectfully allege as follows:

## PRELIMINARY STATEMENT

Since the beginning of this Chapter 15 case, the founders of Three Arrows, Kyle Livingstone Davies and Su Zhu (together, the "Founders"), have repeatedly defied their obligations to the Court and failed to cooperate with the Foreign Representatives' efforts to marshal the assets of the Debtor. In doing so, the Founders have delayed and complicated the Foreign Representatives' efforts to recover assets for creditors. Notwithstanding the Founders' lack of cooperation, the Foreign Representatives diligently continue their efforts to recover assets for the estate. In the United States alone, they have issued dozens of subpoenas. And they have sent a variety of informal requests for information and documents to parties who, upon information and belief, possess information relevant to recovery of the assets.

---

[1] This motion is brought under Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), Rules 37 and 45 of the Federal Rules of Civil Procedure, this Court's Chambers Rules, and Rule 7007-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

Given their involvement in every facet of the Debtor's business, the Founders clearly could provide meaningful assistance to the Foreign Representatives in fulfilling their duties. Instead of complying with subpoenas and information requests, however, the Founders have ignored their obligations, hidden their whereabouts, and instead spent their time creating, amongst other things, a new venture to trade claims in cryptocurrency bankruptcy cases.[2] Most recently, the Founders gave an interview to the New York Times[3] in which they bragged about their wealth and demonstrated a stunning lack of "remorse" for their role in the Debtor's collapse. The Founders' lack of contrition and accountability is clear, and their noncompliance has persisted throughout these proceedings. They have not only thumbed their nose at the Foreign Representatives, this Court, and their creditors, but they now seek to profit from this very bankruptcy (among others).

Owing to the Founders' obfuscation of their whereabouts, the Foreign Representatives obtained leave from this Court to subpoena Davies. Because his location remains unknown, the Court authorized service of that subpoena via the alternative means of Twitter and email. Counsel to the Foreign Representatives issued the subpoena on January 4, 2023 (the "Subpoena").

Hopeful that a validly issued subpoena—with service tailored to ensure adequate notice—would compel him to change tact, the Foreign Representatives attempted to engage with Davies and his attorney before pursuing motion practice. That attempt was unavailing—Davies ignored the Foreign Representatives and bucked the Subpoena deadline. Yet he continues to use Twitter and participate in high-profile interviews, in some cases either openly mocking the Foreign

---

[2] *See* Our Story, OPNX, *available at* https://opnx.com/about-us (last accessed June 6, 2023) (referring to a "$20 billion market" of claimants "desperate" for Founders' new venture, including "our creditors").

[3] David Yaffe-Bellany, *Their Crypto Company Collapsed, They Went to Bali*, New York Times (June 9, 2023), *available at* https://www.nytimes.com/2023/06/09/technology/three-arrows-cryto-bali.html.

Representatives' attempts to obtain information or falsely contending that he has been assisting the Foreign Representatives.

In light of Davies's noncooperation, the Foreign Representatives filed a motion to compel compliance with the Subpoena (the "Motion to Compel").  Unsurprisingly, Davies did not respond to the motion.  Nor did he appear at the hearing.

This Court granted the Foreign Representatives' Motion to Compel and ordered Davies to comply with the Subpoena by April 13, 2023 (the "Motion to Compel Order").  Once again, that deadline has passed, with Davies failing to comply or respond in any way.

Davies's failure to respond is not due to an inability to engage with the Court or any credible qualms with its jurisdiction.  He has had multiple opportunities to object.  He has also retained several lawyers over the years (including lawyers in the United States, who have interacted with the Foreign Representatives).  Davies's refusal to engage does not give him a license to ignore this Court's orders.

Accordingly, the Foreign Representatives seek sanctions.  The issue of personal jurisdiction is now ripe.  And on this record, it cannot be clearer that the Court can—and should— exercise personal jurisdiction over Davies, hold him in willful contempt of court, and impose sanctions.

## BACKGROUND

### A.    Commencement Of Three Arrows's Insolvency Proceedings.

As set forth in prior filings, Three Arrows was an investment firm incorporated in the British Virgin Islands (the "BVI"), with a focus on trading cryptocurrency and other digital assets with billions of dollars in assets under management as of April 2022.  Three Arrows's business collapsed around that time in the wake of extreme fluctuations in the cryptocurrency markets.  On June 27, 2022, it commenced a liquidation proceeding (the "BVI Proceeding") before the Eastern

Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "BVI Court"), and that court issued an order (the "BVI Order"), appointing the Foreign Representatives as joint liquidators of Three Arrows. On July 1, 2022, the Foreign Representatives commenced this Chapter 15 case, and on July 28, 2022, this Court granted recognition of the foreign main proceeding pending in the BVI. [Dkts. 1, 47.]

Under BVI law, the Foreign Representatives are fiduciaries of the Three Arrows estate created by the BVI Proceeding, with an obligation to conduct an orderly, fair liquidation of Three Arrows and to maximize the value of its assets. In furtherance of those duties, the BVI Order and BVI law empower the Foreign Representatives, *inter alia*, with the sole authority to take possession and control of Three Arrows's assets, manage its affairs, and investigate the causes of its insolvency and any potential causes of action the estate may have. [Dkt. 47 at 56.] The Foreign Representatives are granted extremely broad investigatory powers under the BVI statute and the BVI Court's order appointing the Foreign Representatives as joint liquidators. [*Id*. at 6–7.]

### B.    The Foreign Representatives' Discovery Efforts.

Since their appointment, the Foreign Representatives have pursued their investigation diligently and with urgency. They have exercised all formal means of discovery both in the BVI and elsewhere. And while they have been able to locate and isolate significant assets of the estate, that effort has been largely the result of their own diligence. Unfortunately, it has been without the assistance of the Founders.[4]

The Foreign Representatives have engaged with myriad parties, including banks, cryptocurrency exchanges, and brokers, and have used both formal and informal discovery tools

---

[4] The details of the Foreign Representatives' efforts to engage in discovery are set forth in part in the *Declaration of Russell Crumpler In Support of the Foreign Representatives' Motion for an Order to Compel Compliance with Subpoena*. [Dkt. 82.] Those facts are incorporated herein.

to gain access to critical information about the estate. (Crumpler Decl. ¶ 5.) In the United States, the Foreign Representatives have served around 45 subpoenas on relevant entities. (Englander Decl. ¶ 5.) The Foreign Representatives have also attempted to seek discovery from the Founders. (Crumpler Decl. ¶ 7.) Davies has been represented by Advocatus Law LLP ("Advocatus"), a well-known Singaporean law firm specializing in civil and commercial litigation. (*Id*. ¶ 8.) Advocatus refused to accept service of discovery served electronically on Davies's behalf. (*Id*. ¶ 9.) Davies was also represented by U.S. counsel, Dan Tan Law, in connection with a 2022 arbitration where Three Arrows was named as a respondent.

### C.    Davies's Extensive U.S. Based Contacts.

Davies had significant contacts with the United States as a Founder, and engaged with multiple U.S.-based lenders and service organizations in the period leading up to Three Arrows's insolvency. *See infra*, Section A(3)(i). He was born in the United States and had U.S. citizenship. Davies's extensive contacts with the United States—and the relevancy of these contacts to the Debtor's insolvency—provided the basis for the Foreign Representatives' efforts to collect discovery from Davies in this proceeding. Now, Davies appears to be overseas in one of many countries. (Crumpler Decl. ¶ 24.) Upon information and belief, he has been located in Dubai, Indonesia, and Barcelona, and now appears to be traveling feely. (*Id*.)

As just a few examples of his extensive contacts with the United States, Davies formed the entities used to operate Three Arrows's business while residing in California, and has admitted to personally performing *every role involved in operating the business*. (*Id*. ¶¶ 12, 16.) Davies and Zhu initially operated the Debtor using credit from U.S. banks, and after pivoting to cryptocurrency, obtained hundreds of millions of dollars in funding for Three Arrows from U.S.-based financial investors, and significant loans from U.S.-based centralized finance lenders, among others. (*Id*. ¶¶ 17–20.) Leading up to Three Arrows's financial collapse, Zhu and Davies caused

Three Arrows to invest heavily in Luna, Terra's blockchain-native token, which was pegged to the U.S. dollar—the downfall of this token contributed significantly to Three Arrows's insolvency. (*Id.* ¶ 21; Ex. B to Crumpler Decl.)  Davies also knows how to retain U.S. counsel.  Indeed, in 2022, he and Zhu were named as "representatives" of Three Arrows in a U.S.-based arbitration where Three Arrows was represented by a U.S.-based law firm.  (*Id.* ¶ 8.)

**D.      The Subpoena And The Foreign Representatives' Motion To Compel.**

On October 14, 2022, the Foreign Representatives filed motions authorizing service of the Subpoena on Davies via alternative service of process.  [Dkts. 54, 55.]

After the Court's approval, the Foreign Representatives served the Subpoena via Twitter and email on January 5, 2023.  (Ex. A to Englander Decl.)  He was required to respond by January 26, 2023.  [Dkt. 71 ¶ 5.]  He did not.  (Mohebbi Decl. ¶ 9.)  The Foreign Representatives attempted several times to meet and confer with Davies prior to pursuing further proceedings.  (Exs. B–C to Englander Decl.)  Again, Davies never responded.  (Englander Decl. ¶ 17.)

The Foreign Representatives filed the Motion to Compel on February 7, 2023, seeking an order compelling Davies to comply in full with the Subpoena.  [Dkt. 81.]  They also served the Motion to Compel on Davies by Twitter and email on February 8, 2023.  (Ex. E to Crumpler Decl.; Ex. A to Ikeda Decl.)

On February 14, 2023, Eileen Yeo of Advocatus, counsel for Davies, contacted counsel for the Foreign Representatives and stated conclusorily that this Court has "no jurisdiction" over Davies and any orders issued by this Court are "baseless."  (Ex. B to Ikeda Decl.)

Counsel for the Foreign Representatives reminded Ms. Yeo that Davies was obligated to respond to the Subpoena by January 26, 2023, and that the hearing on the Motion to Compel would be held on March 2, 2023.  (*Id.*)  Counsel also reminded Ms. Yeo that the deadline to submit a response or objection was February 23, 2023.  (*Id.*)  Notably, the Foreign Representatives'

February 16, 2023 email also advised Ms. Yeo that should Davies continue to fail to comply with the Subpoena, "the Foreign Representatives intend to pursue sanctions and other relief, including but not limited to, seeking fees and a contempt finding." (*Id*.)  On February 21, 2023, Ms. Yeo replied and stated that Davies's "position remains as stated" in the prior email. (*Id*.)

That would prove to be the last communication received from Advocatus. (Ikeda Decl. ¶ 9.)  Davies did not respond to or object to the Motion to Compel at any time. (Mohebbi Decl. ¶ 12.)  Neither Davies nor his counsel appeared at the hearing, and instead, Davies posted on Twitter in the days and weeks leading up to and following the hearing. (*Id*. ¶ 13.)

For example, on April 6, 2023, seven days after being served with the Motion to Compel Order, Davies used Twitter to invite a random user to "jump on a call" to "answer any/all questions about [Three Arrows]," all while refusing even to acknowledge the Foreign Representatives:



(Ex. H to Crumpler Decl.)

### E.    Davies's Noncompliance With The Court's Motion To Compel Order.

After Davies again failed to comply, the Court issued an opinion granting the Motion to Compel on March 22, 2023 (the "Motion to Compel Opinion"), finding that "service of the Subpoena was in fact reasonably calculated to provide notice to Davies as served." [Dkt. 93 at 5.] On March 30, 2023, the Court issued the Motion to Compel Order, directing Davies to comply with the Subpoena by **April 13, 2023**. [Dkt. 94.]  The Foreign Representatives and their counsel

served the Motion to Compel Opinion and Order on Davies by Twitter and email on March 29 and

30, 2023, respectively.  (Exs. F–G to Crumpler Decl.; Exs. C–D to Ikeda Decl.)

Characteristically, Davies failed to comply.  Far from complying—or making a good-faith

effort to do so—he has not produced any documents or responded to the Subpoena in any manner.

(Mohebbi Decl. ¶¶ 9, 12.)   During the two weeks following service of the order before the

compliance deadline, Davies tweeted or retweeted over sixty times.  (Crumpler Decl. ¶ 43.)

Among other things, Davies retweeted a post promoting "OPNX," his new venture with

Zhu, that is designed, ironically, as a platform to trade bankruptcy claims into crypto:



(Ex. J to Crumpler Decl.)

And the day after Davies was compelled to comply with this Court's order, on April 14,

2023, he retweeted a meme that featured himself and other crypto founders, seemingly poking fun

at his misconduct and the lack of any sanctions yet imposed for his non-compliance with multiple

court orders, with the caption "*Shame on you!  You defrauded lenders/customers/investors and*

*misappropriated funds!"* and the further remark: *"Moving on from this pinned tweet – new brypto [sic] era started / Whoever is left standing (in the pic and beyond) probably has a chance at resurrection and there is nothing we can do about it lol*." (Ex. K to Crumpler Decl.)

Apart from Davies's prolific Twitter use, his recent behavior and very public conduct also confirm his disregard for this Court's orders and his duties to the Debtor's estate. When interviewed by the New York Times in May, after having already neglected his obligation to comply with the Motion to Compel Order, Davies maintained that he "did nothing wrong" and was not "willing to apologize" for Three Arrows's collapse. (Crumpler Decl. ¶ 61; Ex. C to Crumpler Decl. at 2.) When asked whether he felt any remorse for Three Arrows's collapse, Davies responded "Remorse for what?" (*Id*.) Davies also indicated that he is "thriving" and spending time "sightseeing" around the world, having taken "[mu]shrooms with a group of crypto colleagues" at least once. (*Id*. ¶ 62; Ex. C to Crumpler Decl. at 1.)

As this Court noted in the Motion to Compel Order, Davies had the "opportunity to appear, contest jurisdiction, and assert any other available defenses to enforcement of the subpoena." [Dkt. 93 at 18.] He did not. Instead, he has spent his time mocking the process here, in the BVI, and in Singapore, and raising capital for a bankruptcy exchange platform. (Crumpler Decl. ¶ 48.) Davies plainly does not take seriously his obligations to the Court.

## **ARGUMENT**

The Foreign Representatives seek this Court's assistance to secure Davies's compliance with its orders and find him in civil contempt. The Court should grant this motion for several reasons. *First*, the Foreign Representatives amply meet their burden in showing that this Court has a basis to exercise personal jurisdiction over Davies. [Dkt. 93.] *Second*, Davies's behavior easily satisfies the standard for civil contempt. *Third*, to ensure Davies's compliance and deter further obstruction of its orders, the Court should issue sanctions.

A.    **The Court Has Personal Jurisdiction Over Davies, Who Has Not Rebutted The "Substantial Showing" Made By The Foreign Representatives.**

The Court may exercise personal jurisdiction over Davies to enforce the Subpoena for the following reasons:  (1) Davies was "properly served" with the Subpoena and the Motion to Compel Order; (2) there is a "statutory basis" for exercising personal jurisdiction; and (3) exercising personal jurisdiction would not violate "constitutional due process."  *See Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015).  As discussed in more detail below, the Court has already addressed the first two issues at length in published opinions, holding that:  (a) service of the Subpoena on Davies by email and Twitter was proper; and (b) 28 U.S.C. § 1783 and Federal Rules of Civil Procedure 4 and 45 provide a statutory basis for exercising personal jurisdiction over Davies.  [Dkt. 79 at 17–28; Dkt. 93 at 5, 14–16.]

Thus far, the Court has not yet fully resolved the third issue of due process.  However, when the Court issued its Motion to Compel Order, it warned Davies that the Foreign Representatives "have made a *substantial showing* regarding Davies's contacts with the United States" and that, "if Davies continues to ignore the Court's order, *the Court will base its ruling on [that] showing*."    [Dkt. 93 at 16–17 (emphasis added).]  As the Court explained, its order "effectively provide[d] Davies with an additional opportunity" to either comply with the Subpoena, or appear to contest jurisdiction.  [Dkt. 93 at 18.]  But since being served months ago, Davies has failed to take advantage of that opportunity.

The Court now can, and should, accept the Foreign Representatives' "substantial showing" regarding Davies's U.S. contacts, and exercise personal jurisdiction.  The Foreign Representatives have the burden of proof to make a "*prima facie* showing" of personal jurisdiction.  *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  In this posture, the facts

asserted in the pleadings and affidavits "must be taken as true to the extent they are uncontroverted." *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).

### 1.    Davies Has Been Properly Served With The Subpoena And Motion To Compel Order.

Service of the Subpoena on Davies falls under Rule 4 because he is a U.S. national in a foreign county. Rule 45 provides that service under these circumstances is governed by 28 U.S.C. § 1783. Fed. R. Civ. P. 45(b)(3) ("28 U.S.C. § 1783 governs issuing and serving a subpoena directed to a United States national or resident who is in a foreign country."); Fed. R. Bank. P. 9016 ("Rule 45 F.R.Civ.P. applies in cases under the Code."). That statute simply authorizes service "in accordance with the provisions of the Federal Rules of Civil Procedure relating to service of process on a person in a foreign county." 28 U.S.C. § 1783(b). And courts have consistently interpreted this broad language to allow for service of a subpoena under Rule 4(f), which governs the service of a summons in a foreign country.[5]

Because Davies has "moved between various countries" and "concealed [his] location[]," he could not be served by any of the specific methods listed Rule 4(f)(1) or (2), such as service under the Hague Convention, foreign law, personal delivery, or mail. [Dkt. 79 at 24, 28 n.10.] As a result, the Court authorized alternate service under Rule 4(f)(3), which allows for service "by

---

[5] *See United States v. Danenza*, 528 F.2d 390, 392 (2d Cir. 1975) (service pursuant to foreign county's law under prior Rule 4(i)); *Est. of Ungar v. Palestinian Auth.*, 412 F. Supp. 2d 328, 335 (S.D.N.Y. 2006) (service pursuant to Hague Convention under Rule 4(f)(1)); *In re: Petrobras Sec. Litig.*, No. 14-CV-9662 (JSR), 2016 WL 908644, at *2 (S.D.N.Y. Mar. 4, 2016) (alternate service under Rule 4(f)(3)); *GMA Accessories, Inc. v. Solnicki*, No. 07 CIV 3219 PKC DF, 2010 WL 3749213, at *1 (S.D.N.Y. Sept. 24, 2010) (service pursuant to Hague Convention under Rule 4(f)(1)); *GMA Accessories, Inc. v. BOP, LLC*, No. 07 CIV. 3219 LTS DF, 2008 WL 4974430, at *2 (S.D.N.Y. Nov. 19, 2008) (same); *Univ. of Pittsburgh v. Hedrick*, No. 06-MC-176 NG KAM, 2006 WL 3370365, at *1 (E.D.N.Y. Nov. 20, 2006) (same).

other means not prohibited by international agreement, as the court orders." [Dkt. 79 at 28 n.10];

Fed. R. Civ. P. 4(f)(3).[6]

The Court was well within its authority to order alternative service on Davies under the

circumstances. [Dkt. 93 at 6.] Because he has continued his prolific use of Twitter, in particular,

there can be no doubt that the Court's authorized service was adequate and provided Davies with

notice of the Court's order.

### 2.    The Court Has A Statutory Basis To Exercise Jurisdiction Over Davies Under 28 U.S.C. § 1783, Rule 4, And Rule 45.

When the Court issued the Motion to Compel Order, it indicated that service of the

Subpoena on Davies would give the Court statutory authority to exercise personal jurisdiction over

him, leaving only the constitutional issue of whether doing so was consistent with due process

(discussed *infra*). [Dkt. 93 at 14–15.] In this case, Section 1783 and Federal Rules 4 and 45 indeed

provide a "statutory basis" for exercising personal jurisdiction over Davies. *See Gucci*, 135 F.

Supp. 3d 87, 93 (statutory basis may be "[a] federal statute or the law of the state").

In bankruptcy, it is well-established that valid service of a *summons* on a defendant

anywhere in the United States "is sufficient to establish personal jurisdiction" under federal law.

*In re Bozel S.A.*, 434 B.R. 86, 97 (Bankr. S.D.N.Y. 2010) (citing Fed. R. Bankr. P. 7004(d) and

(f)); *accord In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. 488, 504–06 (Bankr.

S.D.N.Y.) (applying Fed. R. Bankr. P. 7004(f) in an adversary proceeding related to a Chapter 15

case). As a result, when a defendant has properly been served with a summons in a bankruptcy

proceeding, "state long-arm statutes are inapplicable, and the only remaining inquiry for a

---

[6] As the Court found, the specific service methods authorized in this case have been recognized as "reasonably
calculated" to provide notice and an opportunity to be heard, as required by the Due Process Clause. *See, e.g.*, *Hardin
v. Tron Found.*, 20-CV-2804, 2020 WL 5236941, at *1 (S.D.N.Y. Sept. 1, 2020)*; In re Bibox Grp. Holdings Limited
Sec. Litig.*, 2020 WL 4586819, at *3 (S.D.N.Y. Aug. 10, 2020).

bankruptcy court is whether exercising personal jurisdiction over the defendant would be consistent with the Due Process Clause of the Fifth Amendment." *Id.*  Courts have reached the same result in other proceedings in which a federal statute permits nationwide service of process. *Broumand v. Joseph*, 522 F. Supp. 3d 8, 18 (S.D.N.Y. 2021) (service of arbitral subpoenas under Federal Arbitration Act); *Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, 457 F. Supp. 3d 401, 407 (S.D.N.Y. 2020) (service of summons under Sherman Act).

Here, federal law similarly provides a statutory basis for exercising personal jurisdiction over Davies.  Just as federal law authorizes nationwide service of process of a summons on a defendant in bankruptcy, Rule 45 generally authorizes nationwide service of subpoenas "at any place within the United States."  Fed. R. Civ. P. 45(b)(2).  But with respect to U.S. nationals like Davies, Rule 45 goes even further and authorizes *worldwide* service of subpoenas.  Because federal law authorizes service of a subpoena on Davies outside of New York, there is no need for the Court to look to New York's long-arm statute for a statutory basis for jurisdiction.

### 3.    Exercising Jurisdiction Over Davies To Enforce The Subpoena Is Consistent With The Due Process Clause.

The facts here also easily satisfy the Due Process Clause requirement of "minimum contacts" between a person and the forum.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

Generally, where a federal statute authorizes nationwide service of process in a case arising under federal law, "the relevant forum for assessment of minimum contacts is *the United States as a whole*."  *See Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 121 (2d Cir. 2021) (emphasis added) (accepting district court's analysis as unchallenged on appeal), *cert. denied*, 142 S. Ct. 2852 (2022); *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998)

(district court could exercise jurisdiction based on either "contacts with either [the forum state] or the United States"). This principle requires bankruptcy courts exercising jurisdiction under 28 U.S.C. § 1334 to consider contacts with the United States, rather than the state in which they sit, when conducting a "minimum contacts" analysis for a defendant served with a summons.  *In re Hellas*, 524 B.R. at 506 (Chapter 15 proceeding).  Because federal law authorizes nationwide (or worldwide) service of subpoenas, as well as summonses, the Court must similarly consider Davies's contacts with the United States to determine if it has personal jurisdiction to enforce the subpoena.  [Dkt. 93 at 15–16]; *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142 (2d Cir. 2014) (district court "may wish" to consider non-party's nationwide contacts and citing other circuits).

Whether exercising personal jurisdiction over Davies is consistent with due process depends on the "quality and nature" of his contacts with the United States.  *See Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 178 (S.D.N.Y. 2021).  Doing so comports with the Due Process Clause if:  (1) Davies "'purposefully availed' [himself] of the [United States];" (2) the Subpoena is "sufficiently related" to Davies's contacts in the United States; and (3) exercising personal jurisdiction would not otherwise violate "fair play and substantial justice."  *See Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 323, 329 (S.D.N.Y. 2018); *Gucci*, 135 F. Supp. 3d at 137.  The Foreign Representatives only have the burden of making a "*prima facie* showing" that the requirements for personal jurisdiction are satisfied.  *See Metro. Life Ins. Co.*, 84 F.3d at 567.

As discussed below, the Foreign Representatives can easily make this showing here, as the Subpoena seeks important discovery related to the Debtor's business, which Davies founded and financed with strong connections to the United States *and* which failed under his watch.  (Crumpler Decl. ¶¶ 12–13, 19.)  The facts put forth by the Foreign Representatives "must be taken as true to

14

the extent they are uncontroverted"—and Davies has not even attempted to dispute them. *See*

*MacDermid*, 702 F.3d at 727.

> ### i.   *Davies Purposefully Availed Himself Of The Benefits Of Doing Business In The United States.*

Purposeful availment need not involve physical presence and may involve entering into

contracts with a "substantial connection" to the forum or communicating with its residents. *See,*

*e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 479–80 (1985).   When such business

activities are "deliberate and recurring," rather than "random, isolated, or fortuitous," they are

sufficient to satisfy due process. *Nike*, 349 F. Supp. 3d at 329, 330.  This includes the solicitation

of business in a forum and "repeated use" of its "banking system." *Id.*

In this case, Davies purposefully availed himself of the "privilege[s]" and "myriad

benefits" of doing business in the United States with respect to the activities of Three Arrows.

*Gucci*, 135 F. Supp. 3d at 97.   His extensive contacts with the United States include the following:

- Davies was born in the United States and the Debtor's Register of Directors filed with the BVI Financial Service Commission lists Davies's nationality as American.[7]  (Crumpler Decl. ¶ 11.)

- Davis and Zhu met while attending high school and college in the United States. (*Id.*)

- Davies and Zhu formed the entities they used to operate the Debtor's business while living in San Francisco, California, in 2012.  (*Id.* ¶ 12.)

- These entities included not only Three Arrows Capital, Inc., which they incorporated in the BVI, but a Delaware limited liability company, Three Arrows

---

[7] While the Foreign Representatives lack knowledge whether Davies formally renounced his United States citizenship under U.S. law, the available information indicates that Davies remains a citizen, or at least was a citizen during the majority of the Debtor's operations.  It is true that a subsequent listing in the Register of Directors lists his nationality as Singaporean.  However, the Foreign Representatives cannot confirm that Davies has fully satisfied Singaporean residency requirements, which include renouncing all other citizenships.  But even if Davies had renounced his U.S. citizenship, courts have nevertheless exercised jurisdiction in similar situations. *See, e.g.*, *Biegeleisen v. Ross*, 1996 WL 531923 at *1 & n.1 (S.D.N.Y. Sept. 18, 1996); *Thomas v. Countrywide Home Loans*, 2009 WL 10712217 (N.D. Ga. Aug. 6, 2009).

Capital, LLC, which they registered to operate in California as Three Arrows
Capital Management, LLC. (*Id*.)

- Davies and Zhu formed a Delaware partnership, Three Arrows Fund, LP, as a
  "feeder fund" to accept investment in Debtor. (*Id*. ¶ 13.) Davies signed a filing
  with the U.S. Securities and Exchange Commission on behalf of Three Arrows
  Fund, LP. In the filing, Davies listed Three Arrows Capital Management, LLC as
  the "[g]eneral partner" of the U.S. feeder fund and Davies and Zhu as the sole
  "[m]anaging member[s]" of Three Arrows Capital Management, LLC. (*Id*. ¶ 14,
  Ex. A to Crumpler Decl.)

- Three Arrows, as respondent, was represented by U.S. counsel in a 2022 U.S.
  arbitration where Davies was named as a "representative" of Three Arrows,
  demonstrating the ability to retain U.S. counsel. (*Id*. ¶ 8.)

By Davies's own admission, he was personally responsible not only for forming the Debtor

and its related entities, but for *all* the Debtor's operations, including its U.S. contacts. (*Id*. ¶ 16.)

Davies has admitted that he and Zhu ran Three Arrows together and that they personally performed

every role involved in operating its business, including trade executions, operations, human

resources, and risk assessments—all of which involved significant U.S. connections. (*Id*.) Thus,

Three Arrows's contacts are Davies's contacts; indeed, it would be "unreasonable for [Davies] to

believe that he could regularly conduct business in the United States and seek the protection of its

laws and courts, and at the same time believe he could escape [their] jurisdictional reach." *Bozel*

*S.A.*, 434 B.R. at 99 (registered agent, director, and managing member of U.S. entities was

subjected to personal jurisdiction based on contacts in "his corporate capacity"); *see also In re*

*Fairfield Sentry Ltd.*, 627 B.R. 546, 567 (Bankr. S.D.N.Y. 2021) ("Canadian citizen who

conducted business for . . . a foreign corporation" could not "escape personal jurisdiction").

And Davies's contacts were far from "random, isolated, or fortuitous." *Nike*, 349 F. Supp.

3d at 330. Instead, he "repeatedly and deliberately" availed himself of the benefits of doing

business in the United States, and particularly the U.S. "banking system" and capital markets. *See*

*id.* at 326, 330.

16

- As discussed above, Davies accepted investment in Debtor through a U.S. "feeder fund," Three Arrows Fund, LP. (Crumpler Decl. ¶ 13.)

- Davies initially operated the Debtor using credit from U.S. banks, such as JPMorgan Chase, Citibank, and Bank of America. (*Id*. ¶ 17.)

- After the Debtor pivoted to cryptocurrency, Davies obtained hundreds of millions of dollars of funding for the Debtor from U.S.-based investors in Silicon Valley and New York, including Aptos Labs, dYdx, Coinbase Ventures, Gemini Frontier Fund, Andreesen Horowitz and PayPal Ventures. (*Id*. ¶ 18.)

- Many of these contracts were governed by U.S. law, including some of the Debtor's largest loan contracts, which contained New York venue and choice of law clauses (*Id*. ¶ 19.)

- Davies obtained loans from U.S. centralized finance lenders, including but not limited to BlockFi (incorporated in Delaware; principal place of business in New Jersey), Celsius (incorporated in Delaware; principal place of business in New Jersey), Voyager Digital (incorporated in Delaware; principal place of business in New York), and Genesis Global Trading (incorporated in Delaware; principal place of business in New York). (*Id*. ¶ 20.) Many of these entities are purported creditors of the Debtor now seeking to recover after its collapse.

- Davies invested heavily in the Luna token, and upon information and belief, provided funds to its sister token Terra, which was pegged to the U.S. dollar. Indeed, it was the downfall of both of these tokens which was reported to precipitate Three Arrows's failure.[8] (*Id*. ¶ 21, Ex. B to Crumpler Decl.)

- Davies contracted with U.S.-based service providers on behalf of the Debtor, such as BitGo, a California-based auditing service provider. (*Id*. ¶ 23.)

These contacts, and the others discussed above, are more than sufficient to establish personal jurisdiction. For example, a significant category of Davies's U.S. contacts involve agreements with *U.S.*-based service providers. Courts in the Southern District of New York have found personal jurisdiction over defendants for the use of even a "*single bank account*" in the forum where that account was "used as an instrument to achieve the very wrong alleged[.]" *See In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 88 (S.D.N.Y. 2021) (citing *Licci,*

---

[8] *See, e.g.*, Luc Olinga, *Luna Crash: Crypto Hedge Fund Three Arrows Seeks a Savior*, The Street (June 18, 2022), *available at* https://www.thestreet.com/investing/cryptocurrency/luna-crash-crypto-hedge-fund-three-arrows-seeks-a-savior.

732 F.3d at 172 (emphasis in original)).  Here, Davies, on behalf of the Debtor, contracted with *several* U.S.-based service providers in furtherance of events that led to the company's liquidation and insolvency.  Davies's use of U.S.-based service providers is like the "use of a forum's banking system as part of an alleged[] . . . course of conduct [which] may expose the user to suits seeking redress in that forum when that use is an integral part of the [] conduct."  *See Licci*, 732 F.3d at 172 n.7.  His contacts with the United States through these agreements are "sufficient to support the exercise of specific personal jurisdiction," as the underlying alleged wrongful conduct directly "concerns these admitted contacts."  *Appl. to Enforce Admin. Subpoenas Duces Tecum of SEC v. Knowles*, 87 F.3d 413, 419 (10th Cir. 1996).[9]

In addition, courts in this circuit have found personal jurisdiction for use of the U.S. banking system, and that transfers from bank accounts are sufficient to establish a connection between the claim and the forum where the accounts were located.  *See, e.g.*, *Off'l Comm. of Unsecured Creditors of Arcapita, Bank. B.S.C. v. Bahr. Islamic Bank*, 549 B.R. 56, 68–70 (S.D.N.Y. 2016) (defendants' use of New York bank accounts met the threshold of minimum contacts necessary to assert personal jurisdiction "so long as the use was purposeful and not coincidental[,]" and that this deliberate choice to use the New York and U.S. banking system generally represents "contacts attributable to [defendants]"); *Strauss v. Credit Lyonnais*, 175 F. Supp. 3d 3, 21 (E.D.N.Y. 2016) (transfers from a bank account sufficient to establish a connection between the claim and the forum because those transfers, although minimal, were "an integral facet

---

[9] Several courts in the Southern District of New York have cited *Knowles* as authority to find personal jurisdiction over individuals by virtue of their activities as employees of companies.  *See, e.g.*, *Nike*, 349 F. Supp. 3d at 318, 320-21 (finding personal jurisdiction and compelling compliance with a Rule 45 subpoena after evaluating foreign nonparty banks' business activities in New York); *Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Grp. LLC*, 16-CV-6805 (JSR), 2018 WL 11389637, at *3 (S.D.N.Y. Aug. 20, 2018) (holding two non-party foreigners in civil contempt and finding personal jurisdiction to enforce its order because they were the controlling agents of the New York corporation subject of the litigation and were the only identified individuals who knew the location of the missing assets); *see also Gucci Am.*, 768 F.3d at 141–42 (citing *Knowles*).

of the conduct that is the basis for all of Plaintiffs' claims"). Again, Davies's use of the U.S. financial system to secure funding and credit for Three Arrows was purposeful, not coincidental, and was an "integral facet" of the conduct underlying Three Arrows's operation and subsequent insolvency.

Courts have also found personal jurisdiction over foreign defendants for investing in U.S.-based assets and loans, as Davies did with U.S.-based centralized finance lenders. *See Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 56 B.R. 275, 288 (Bankr. S.D.N.Y. Feb. 16, 2017) (Austrian bank that purchased a $10 million interest in a syndicated $1.5 billion term loan on the secondary market had established sufficient contacts in the United States as a result of the transaction for the court to assert specific personal jurisdiction over it). All such contacts with the United States are present here.

Thus, because Davies purposefully availed himself of the "benefits and protections" of U.S. law by "regularly conduct[ing] business" on the Debtor's behalf in the United States, it would be "unreasonable" for Davies to believe that he can now "escape the jurisdictional reach the United States courts." *See In re Bozel*, 434 B.R. at 99. With no responsive evidence, the Foreign Representatives have met their burden in demonstrating minimum contacts.

### ii. The Subpoena Is "Related To" Davies's U.S. Contacts.

Second, the Subpoena seeks discovery related to the Debtor, which is "sufficiently related" to Davies's contacts with the United States to allow the Court to exercise personal jurisdiction over him consistent with the Due Process Clause. *See Nike*, 349 F. Supp. 3d at 332.

When a court "seeks to assert personal jurisdiction over a non-party" like Davies to obtain discovery, the Due Process Clause requires that their contacts with the relevant forum "'go to the actual discovery sought.'" *Broumand v. Joseph*, 522 F. Supp. 3d 8, 19 (S.D.N.Y. 2021) (enforcement of arbitral subpoena under Federal Arbitration Act) (quoting *In re del Valle Ruiz*,

19

939 F.3d 520, 530 (2d Cir. 2019) (order for discovery in foreign proceeding under 28 U.S.C. § 1782))). Because Davies has "significant" contacts with the United States, the Foreign Representatives "need demonstrate only that the evidence sought would not be available *but for* [those] contacts." *In re del Valle Ruiz*, 939 F.3d at 530 (emphasis added); *Nike*, 349 F. Supp. 3d at 332 (applying "but for" causation to personal jurisdiction to enforce subpoena).

Of note, the Subpoena seeks documents related to the Debtor's operations and assets, which would not be available *but for* Davies's contacts with the United States. [Dkt. 74 ¶ 11.] If Davies had not founded Three Arrows with Zhu in the United States, or had not obtained the funding necessary to operate its business from U.S. banks and investors, many of the documents sought in the Subpoena would likely not exist. And were it not for Davies's attempts to secure additional loans from creditors such as Genesis Global Trading or BlockFi—and Davies's role in exposing the Debtor to the failed Luna coin—the Debtor's financial position may have been different. As a result, the requirement of a "sufficient nexus" between Davies's contacts with the United States and the Subpoena is easily satisfied. *See Nike*, 349 F. Supp. 3d at 332 (finding "but for" causation for discovery into assets where owner "would not have been able to enjoy the profits made" without their in-forum conduct); *Gucci*, 135 F. Supp. 3d at 99 (same where subpoenas were "premised" on in-forum conduct); *see also Licci*, 732 F.3d at 169 (defendant's use of U.S. banking system was sufficiently "related to" claims involving illegal use of funds).

### iii.    *Exercising Personal Jurisdiction Over Davies Comports With Fair Play And Substantial Justice.*

Finally, exercising personal jurisdiction here would be reasonable and consistent with "fair play and substantial justice." *Burger King*, 471 U.S. at 476. When a person purposefully avails himself of "the benefits and protections" of U.S. law, as Davies has done, exercising personal jurisdiction is presumed to be reasonable absent "a compelling case" that "other factors" make it

unreasonable.  *See id.* at 476–78.  Because Davies is outside the United States, the "other factors" that the Court may consider in this case are:  (1) the "burden" on Davies; (2) the interest of the United States "in adjudicating the case"; and (3) the Foreign Representatives' interest in "obtaining convenient and effective relief"; (4) "the international judicial system's interest in efficiency"; and (5) "the shared interests of the nations in advancing substantive polices."  *See Gucci*, 135 F. Supp. 3d at 99 (italics omitted).

Here, the Court can, and should, accept the Foreign Representatives' "substantial showing" of Davies's U.S. contacts and presume that exercising jurisdiction over Davies is reasonable.  [*See* Dkt. 93 at 11, 17]; *MacDermid*, 702 F.3d at 727 (facts asserted in support of personal jurisdiction "must be taken as true to the extent they are uncontroverted").  The Court previously noted Davies's failure to respond to the Foreign Representatives "substantial showing" on personal jurisdiction and warned that any lack of a "full record" was "solely a product of [Davies's] failure to appear."  [Dkt. 93 at 16.]  Because Davies chose to "take his chances" by continuing to fail to appear, the Court should "base its ruling on the showing made by the Foreign Representatives."  [*See id*. at 11, 17.]  Davies has offered nothing to rebut this presumption and show that any other factor supports allowing him to ignore this Court's orders despite his extensive U.S. contacts.

Indeed, Davies is an educated, sophisticated businessman who has been represented by well-known counsel with experience in commercial litigation and international arbitration.  [Dkt. 82 ¶¶ 20–24]; (Ex. B to Ikeda Decl.; Crumpler Decl. ¶ 8.)[10]  Davies was also represented by U.S. counsel in connection with a 2022 arbitration where Three Arrows was a respondent, and Davies was a named representative.  (Crumpler Decl. ¶ 8.)  Electronically producing the documents

---

[10] Davies counsel has been practicing for nearly a decade and describes herself as "ha[ving] acted and dealt with a variety of matters across various practice areas, including . . . commercial litigation . . . arbitration, and white collar crime."  *See* Overview, Advocatus, *available at* https://advocatus.sg/Overview (last accessed June 8, 2023).

requested in the Subpoena would not be unduly burdensome for Davies. *See Gucci*, 135 F. Supp. at 99 ("the conveniences of modern communication and transportation" eases burden of complying with or contesting a subpoena). Indeed, Davies accepted a fiduciary duty to support the company when he chose to become a director of Three Arrows. *See* BVI Business Companies Act, 2004, 20–122 (setting out a director's statutory fiduciary duties under BVI law). On the other hand, the Foreign Representatives have a considerable interest in obtaining documents from Davies. *See Nike*, 349 F. Supp. 3d at 332–33 (interests of party seeking discovery support reasonableness of jurisdiction).

Moreover, this is not a case in which the Foreign Representatives simply seek to obtain documents from Davies to further their own private interests. Rather, they seek to enforce the Subpoena so they can identify Three Arrows's assets in the United States and carry out their obligations as joint liquidators in the BVI proceeding recognized by this Court. The United States, the BVI, and the international judicial system all have an interest in facilitating coordination with the BVI Proceeding and maximizing the value of the Three Arrows estate. Courts have recognized that exercising personal jurisdiction to carry out the purpose of Chapter 15 is reasonable and consistent with due process. *See, e.g.*, *Hellas*, 524 B.R. at 513 (noting "significant interest" of United States); *In re Zawawi*, 644 B.R. 907, 917 (Bankr. M.D. Fla. 2022) (recognition of foreign main proceeding required granting "comity or cooperation to the Foreign Representatives").

Davies has not, and cannot, offer any factors that can tip the scales against exercising personal jurisdiction to enforce the Subpoena, despite having had ample time and opportunity to do so. The Foreign Representatives have been attempting to obtain information from him for almost a year—since their appointment in June 27, 2022—and he was served with the Subpoena nearly five months ago. [Dkt. 82 ¶¶ 4, 5]; (Ex. A to Englander Decl.) He has been provided notice

of the Court's orders at every step, and the Foreign Representatives have attempted to confer with him and his counsel several times. (Exs. A–D to Ikeda Decl.; Exs. D–G to Crumpler Decl.; Exs. A–C to Englander Decl.) Despite these efforts, his counsel offered only a conclusory denial of the Court's jurisdiction and Davies has failed to otherwise engage, then went dark. (Ikeda Decl. ¶ 16; Ex. B to Ikeda Decl.)

Fair play and substantial justice does not require the Court to wait indefinitely for Davies to appear, or to consider the hypothetical arguments he might raise if he did. It should exercise personal jurisdiction to enforce the Subpoena and Motion to Compel Order.

**B.** **This Court Should Find Davies In Contempt For His Deliberate Noncompliance With Its Orders.**

Because there is personal jurisdiction, and because Davies has received more than adequate notice, this Court may "hold [him] in contempt." Fed. R. Civ. P. 45. This authority is codified in the federal contempt statute, 18 U.S.C. § 401, which provides that a "court of the United States shall have power to punish by fine or imprisonment, at its discretion, [] contempt of its authority . . . as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." Here, Davies has failed to comply with the clear terms of this Court's Motion to Compel Order, which mandated full compliance with the Subpoena by April 13, 2023.

An order of civil contempt is a sanction designed to compel compliance with a court order, or to compensate a party who has been harmed by another's noncompliance. *See N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989). The Foreign Representatives have been unfairly inhibited in gaining access to important documents related to the Debtor's assets due to Davies's conduct. An order of civil contempt is thus appropriate, both to compensate the estate for the harm caused by Davies's noncompliance, and to compel Davies's compliance with the

Motion to Compel Order.  *See Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir. 1995) ("[D]iscovery orders are meant to be followed.").

To hold Davies in contempt, the Court must find that:  (1) the order Davies failed to comply with is clear and unambiguous, (2) Davies has not diligently attempted in a reasonable manner to comply, and (3) the proof of noncompliance is clear and convincing.  *See N.Y. State Nat. Org. for Women*, 886 F.2d at 1351.  All three elements are satisfied here.

### 1.    Davies Is Aware Of The Unambiguous Motion To Compel Order.

First, the Motion to Compel Order is clear and unambiguous, as it "leaves no uncertainty in the minds of those to whom it is addressed."  *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010) (order was "perfectly clear" where it ordered the party to disclose any and all cash, stocks, bonds, bank accounts and investment accounts, real or personal property, and debts owing.  The order clearly spells out that Davies was required to comply with the terms of the Subpoena fully by April 13, 2023.  [Dkt. 94.]  And there is no doubt that Davies is aware of the order, having been served as prescribed by the Court.  [Dkt. 79.]  Indeed, one Twitter user even replied to the tweet serving the order on Davies, noting that Davies was active on his Twitter account *on the day of service* and that Davies had "one last chance to respond otherwise he will likely be sanctioned by the court[.]"  (Ex. I to Crumpler Decl.)  As recently as May 2023, Davies claimed in an interview (falsely) that he has "cooperated" with these proceedings and insists that he has "handed over records" to the creditors, indicating his awareness of obligations to the Court and the Debtor.  (Crumpler Decl. ¶ 63; Ex. C to Crumpler Decl. at 6.)  Of note, Davies has been represented by counsel, who has engaged with the Foreign Representatives, and undoubtedly was aware of the clear terms of the Motion to Compel Order, and the date that Davies was required to comply by.  (Ex. B to Ikeda Decl.; Crumpler Decl. ¶¶ 8–9.)  Thus, the first prong of the contempt test is easily satisfied.

24

### 2.    Davies Has Never Even *Attempted* To Comply.

Where "no attempt" at compliance has been shown, proof of non-compliance is established by clear and convincing evidence.  *See, e.g.*, *N.Y. State Nat. Org. for Women*, 883 F.2d at 1352. Far from "diligently" attempting to comply with the Court's orders and the terms of the Subpoena, Davies has not even attempted to produce a single document requested, nor has he submitted any objections or responses.  (Mohebbi Decl. ¶¶ 9, 16.)  Davies has thwarted each of the Foreign Representatives' attempts to meet and confer with him to engage in the discovery process. (Englander Decl. ¶ 17.)  Again, he is represented by counsel, who steadfastly fail to acknowledge this Court's authority—but who have never sought to raise that objection *to the Court*, despite the Court's invitation to do so.  (Ikeda Decl. ¶ 11); [Dkt. 93 at 18.]  Moreover, he has not asserted any reason why he cannot comply with the Court's Motion to Compel Order or produce documents under the terms of the Subpoena; he has simply chosen not to do so.

### 3.    Davies Has Demonstrated Clear, Convincing, And *Continued* Noncompliance.

From his failure even to engage, it follows that Davies's noncompliance could not be clearer.  He has not produced any of the requested documents sought by the Subpoena as ordered by the Court, and has refused to engage with the Foreign Representatives on any meaningful level throughout the discovery process.  He is well aware of the means to engage with the Foreign Representatives, should he want to raise objections or attempt to comply.  Nevertheless, he has demonstrated clear and convincing evidence of noncompliance at every phase—he did not respond to the initial Subpoena or the Motion to Compel, and he failed to appear at the related hearings. (Mohebbi Decl. ¶¶ 9, 12–13.)[11]

---

[11] While Davies's noncompliance is unsurprising, it extends beyond this Court.  Recently, he defied a BVI court order to produce documents and was directed by the BVI Court to attend an examination via Zoom on April 27, 2023.  (Ex.

Meanwhile, Davies has remained active on Twitter in the days preceding and following the issuance of the Court's Motion to Compel Order, having tweeted or retweeted dozens of times since March 30, 2023. (Crumpler Decl. ¶¶ 43–53.) As noted, he has also used Twitter to regularly promote his new enterprise, OPNX, co-founded with Zhu. (Crumpler Decl. ¶¶ 48–49, 64; Ex. J to Crumpler Decl.) Davies has even encouraged Three Arrows's creditors to trade their bankruptcy claims on OPNX, demonstrating callous disregard for the collapse of the Debtor. (Crumpler Decl. ¶ 65; Ex. C to Crumpler Decl. at 7.) And he has continued to flaunt his wealth and brag to reporters about his world travels, drug use, and new hobbies, including meditating and painting. (Crumpler Decl. ¶ 62; Ex. C to Crumpler Decl. at 1.) Davies's noncompliance—and mockery of the Court's orders—is clear, and supports a finding of contempt.

### C.  Sanctions Should Be Awarded For Davies's Contempt.

Under Federal Rule 37(b)(2), this Court has broad discretion to sanction Davies for his failure to comply with the Motion to Compel Order. Courts in the Second Circuit have held that sanctions should issue where "there [i]s a service of a subpoena with clear and unambiguous provisions and absolutely no effort by [its recipient] to comply." *See In re Corso*, 328 B.R. 375, 385 (E.D.N.Y. 2005). The civil sanctions the Court may impose on Davies for his contempt include an award of attorneys' fees and a daily fine until compliance. *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996); *see also Cordius Tr. v. Kummerfeld Assocs., Inc.*, 658 F. Supp. 2d 512, 526 (S.D.N.Y. 2009) (awarding attorney's fees); *In re Search of Content Stored at Premises Controlled by Google Inc.*, 2017 WL 4700056, at *1 (N.D. Cal. Oct. 19, 2017) (holding a company in civil contempt for noncompliance with a court order and imposing a $10,000 per day sanction to ensure compliance). In fact, a finding of willful contempt "strongly supports" an award, such

---

L to Crumpler Decl.) The BVI court order was served on Davies via his active Twitter account. (Ex. M to Crumpler Decl.) However, Davies failed to appear or produce documents. (Crumpler Decl. ¶¶ 55–59.)

that "persuasive grounds" are required to *deny* fees. *Weitzman*, 98 F.3d at 719. Willfulness "merely requires a specific intent to consciously disregard an order," which is demonstrated when a person does "absolutely nothing to comply" with the order. *M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A.*, 853 F. App'x 690, 693 (2d Cir. 2021). Here, Davies has demonstrated a conscious disregard for the Court's order by doing nothing to attempt to comply.

### 1.   Davies's Willful Contempt Supports Awarding A Daily Fine.

Courts in this circuit and others have properly exercised their discretion to order a daily fee until the subpoena target complies with the court's order. *See Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020) (affirming bankruptcy court's award of monetary sanctions of $1,000 per day until compliance with discovery orders); *see also In re Sciaba*, 334 B.R. 524, 526 (Bankr. D. Mass. 2005) (granting sanctions in the form of a daily fee and legal fees for failure to comply); *Painewebber, Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002) (fine imposed for failure to comply with subpoenas); *Forum Ins. Co. v. Keller*, 1992 WL 297580, at *3 (S.D.N.Y. Oct. 8, 1992) (fine imposed for failure to comply with document subpoena).[12] Here, this Court may find it appropriate to issue a daily fee to ensure that Davies comply with the motion to compel order, particularly in light of Davies's demonstrated history of noncompliance.

Specifically, in *CBS Broad. Inc. v. FilmOn.com, Inc.*, the court held defendants in contempt for violating an injunction, and issued a $10,000 per day fine for "any further failure" to comply with the injunction. 814 F.3d 91, 96 (2d. Cir. 2016). And in *In re Grand Jury Subpoena*, the court affirmed the district court's imposition of $50,000 per day fine until the corporation complied with a grand jury subpoena. 912 F.3d 623 (D.C. Cir. 2019). Here, Davies has demonstrated a

---

[12] In determining appropriate sanctions to impose, this Court should consider whether the sanctions will: (1) ensure that a party will not benefit from its failure to comply; (2) obtain compliance with the Court's orders; and (3) deter noncompliance, in the particular case and in litigation generally. *See Cine 42nd St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).

continuing, blatant disregard for the Court's orders, and has demonstrated no attempt to comply. Issuing a $10,000 per day fine against Davies until he complies in full with the subpoena will provide a strong incentive against Davies's further noncompliance.  On information and belief, Davies reaped considerable profits from his management of a company with billions in assets.  In the recent New York Times article, Davies indicated that he and Zhu had "saved enough over the years that they didn't need to work again."  (Crumpler Decl. ¶ 65, Ex. C to Crumpler Decl. at 2.) He also took the time to brag about investing in a superyacht and considering buying "some islands."  (*Id*.)  Thus, a fine of $10,000 per day is fair and likely meaningful in persuading Davies to respond.

### 2.      Davies's Willful Contempt Also "Strongly Supports" Awarding Attorneys' Fees.

In addition, the Court should award reasonable attorneys' fees to the Foreign Representatives as further civil sanctions for Davies's willful contempt.  Again, he has had almost two months to comply with the Court's order since it was served on him, and nearly five months to comply with the Subpoena.  Yet he has the audacity to claim publicly that he and Zhu have "cooperated with the legal process," and "handed over records to the [Debtor's] new management," which, while provably false, indicates that he is clearly aware of his obligations. (*See* Crumpler Decl. ¶ 63; Ex. C to Crumpler Decl. at 4.)  He was also aware that the Foreign Representatives intended to seek sanctions.  (*See* Ikeda Decl. ¶ 13; Ex. B to Ikeda Decl.)  However, Davies chose to ignore the order and instead promote his new business, OPNX, all while secretly galivanting across the world.   Davies's blatant, willful, and deliberate contempt "strongly supports" an award of attorney's fees.  *See Weitzman*, 98 F.3d at 719; *M. Harvey Rephen & Assocs*, 853 F. App'x at 693.

Once there is a finding of willful contempt, a party opposing attorney's fees has the burden of "articulating persuasive grounds for [the] denial of compensation." *Weitzman*, 98 F.3d at 719. Davies has not only failed to make any effort to comply, but has not even attempted to offer a justification for his contempt, let alone one that would constitute "persuasive grounds" for forcing the Foreign Representatives to bear the cost of his intransigence. Thus, Davies has not met his burden of showing that the Court should not award the Foreign Representatives' attorneys' fees, at a minimum, as a sanction for his willful contempt.

Courts in the Second Circuit have routinely awarded attorneys' fees and costs where parties violate court orders. For example, in *Broker Genius Inc. v. Seat Scouts LLC*, the court awarded civil contempt sanctions in the amount of costs and fees the propounding party incurred in prosecuting sanctions, where the defendant violated a preliminary injunction. 2019 WL 2462333 (S.D.N.Y. June 13, 2019). And in *Ametek, Inc. v. N. Shore Int'l, Inc.*, the court held a party in civil contempt for failure to respond to a subpoena and noncompliance with a motion to compel order, and issued sanctions in the form of reasonable fees and expenses caused by his failure to comply. 2017 WL 3172821 (E.D.N.Y. July 26, 2017). Here, like in *Broker Genius Inc.* and *Ametek, Inc.*, Davies has failed to comply with a court order in connection with a subpoena, such that attorneys' fees and costs are appropriate sanctions.

Issuing sanctions in the form of attorneys' fees, a daily fine, and reasonable costs as this Court sees fit respectfully will give Davies a strong incentive to comply with the Court's orders, and ensures that he will not continue to benefit from his flagrant disobedience. Upon the entry of

an order issuing sanctions, the Foreign Representatives will submit detailed evidence of their attorneys' fees and costs to the Court as the Court may require.[13]

## NOTICE

Pursuant to the Court's Order Scheduling Hearing on Chapter 15 Petition and Related Relief and Specifying Form and Manner of Service of Notice (the "Notice Order"), the Foreign Representatives will provide notice by email and first class mail upon (a) the Office of the United States Trustee for the Southern District of New York; (b) the Securities and Exchange Commission; (c) the Founders; (d) the members of the committee of unsecured creditors appointed in connection with the BVI Proceeding; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 of which the Foreign Representatives are aware. [Dkt. 18 ¶¶ 6–10.] Additionally, the Foreign Representatives will provide notice of the motion to Davies by email and Twitter, following the same manner of service by which the Subpoena, Motion to Compel, and Motion to Compel Opinion and Order were issued, as the Court has deemed proper in the service order. [Dkt. 79.] In light of the relief requested, the Foreign Representatives submit that no further notice is necessary.

## NO PRIOR REQUEST

No prior request for the relief sought in this Motion has been made to this or any other court.

---

[13] While the Foreign Representatives believe that a daily fine and attorneys' fees are an appropriate award of sanctions, this Court has broad discretion to award sanctions in many different forms. *See, e.g.*, *Teleglobe USA Inc. v. BCE Inc.*, 493 F.3d 345, 386 (3d. Cir. 2007) (issuing evidentiary sanctions); *In re Avianca Holdings S.A.*, 648 B.R. 358 (Bankr. S.D.N.Y. 2023) (issuing conditional disallowance of proofs of claims as contempt sanction); *In re 1990's Caterers Ltd.*, 531 B.R. 309 (Bankr. E.D.N.Y. 2015) (affirming issuance of coercive sanction of incarceration for failure to comply with court orders).

## **<u>CONCLUSION</u>**

**WHEREFORE**, the Foreign Representatives respectfully request entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, (1) holding Davies in contempt for refusing to comply with the Motion to Compel Order; (2) awarding a daily fine and attorneys' fees for the costs and expenses associated with compelling Davies's compliance with the Subpoena; and (3) granting such other and further relief as this Court deems just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: June 14, 2023
Los Angeles, California

Respectfully submitted,

*/s/ Nima H. Mohebbi*

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
Emily R. Orman (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
        tiffany.ikeda@lw.com
        emily.orman@lw.com

– and –

Adam J. Goldberg
Christopher Harris
Brett M. Neve
Nacif Taousse
Brian S. Rosen
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  adam.goldberg@lw.com
        christopher.harris@lw.com
        brett.neve@lw.com
        nacif.taousse@lw.com
        brian.rosen@lw.com