Hearing Date: August 8, 2023 at 11:00 a.m. (ET)

| | |
|---|---|
| Christopher Harris | Nima H. Mohebbi (admitted *pro hac vice*) |
| Adam J. Goldberg | Tiffany M. Ikeda (admitted *pro hac vice*) |
| Brett M. Neve | Emily R. Orman (admitted *pro hac vice*) |
| Nacif Taousse | **LATHAM & WATKINS LLP** |
| **LATHAM & WATKINS LLP** | 355 South Grand Avenue, Suite 100 |
| 1271 Avenue of the Americas | Los Angeles, CA 90071 |
| New York, NY 10020 | Telephone: (213) 485-1234 |
| Telephone: (212) 906-1200 | Facsimile: (213) 891-8763 |
| Facsimile: (212) 751-4864 | Email:  nima.mohebbi@lw.com |
| Email:  christopher.harris@lw.com |          tiffany.ikeda@lw.com |
|          adam.goldberg@lw.com |          emily.orman@lw.com |
|          brett.neve@lw.com | |
|          nacif.taousse@lw.com | |

*Counsel to the Foreign Representatives
of Three Arrows Capital, Ltd.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>Three Arrows Capital, Ltd.,<br>     Debtor in a Foreign Proceeding | Chapter 15<br><br>Case No. 22-10920 (MG) |

**FOREIGN REPRESENTATIVES OF THREE ARROWS CAPITAL, LTD.'S REPLY
AND OPPOSITION TO NON-PARTY KYLE DAVIES': (I) OPPOSITION TO MOTION
FOR CONTEMPT; AND (II) CROSS-MOTION TO VACATE ORDERS**

## **TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................................................1

ARGUMENT......................................................................................................................................3

    A.    The Court Has Personal Jurisdiction To Enforce Its Orders Against Davies. ...................................................................................................................3

        1.    Davies Has Waived The Right To Object To Service. ...............................3

        2.    Exercising Personal Jurisdiction Is Consistent With Due Process. .............6

    B.    Davies's Cross-Motion To Vacate The Court's Prior Orders Is Improper..............8

        1.    Davies Fails To Meet His Burden Under Rule 60(b). ................................8

        2.    Davies's Willfulness Merits Denying His Cross-Motion. ........................12

CONCLUSION.................................................................................................................................13

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Belizaire v. RAV Investigative & Sec. Servs., Ltd.*,
    310 F.R.D. 100 (S.D.N.Y. 2015) ...................................................................................12

*In re Blutrich Herman & Miller*,
    227 B.R. 53 (Bankr. S.D.N.Y. 1998) ........................................................................10, 11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..........................................................................................................7

*Burns v. Kelly Enters. of Staten Island, LLC*,
    2019 WL 3304883 (E.D.N.Y. Jul. 23, 2019).................................................................12

*Canouse v. Protext Mobility, Inc.*,
    2023 WL 3490915 (2d Cir 2023)....................................................................................11

*Cent. Vt. Pub. Serv. Corp. v. Herbert*,
    341 F.3d 186 (2d Cir. 2003)............................................................................................10

*De Curtis v. Ferrandina*,
    529 Fed.Appx. 85 (2d Cir. 2013)...............................................................................11, 12

*E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*,
    2005 WL 3710352 (E.D. Cal. Aug. 15, 2005), *aff'd sub nom E. & J. Gallo
    Winery v. Gibson, Dunn & Crutcher LLP*, 432 F. App'x 657 (9th Cir. 2011) ............5

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
    197 F.R.D. 250 (S.D.N.Y. 2000), *aff'd*, 281 F.3d 48 (2d Cir. 2002)..........................6

*First City Texas-Houston, N.A. v. Rafidain Bank*,
    281 F.3d 48 (2d Cir. 2002)...............................................................................................3

*Harris v. United States*,
    367 F.3d 74 (2d Cir. 2004).............................................................................................11

*Johnson v. Askin Cap. Mgmt., L.P.*,
    202 F.R.D. 112 (S.D.N.Y. 2001) .....................................................................................9

*Kass v. City of N.Y.*,
    2015 WL 8479748 (S.D.N.Y. Dec. 2, 2015) ................................................................12

*Kotlicky v. U.S. Fid. & Guar. Co.*,
    817 F.2d 6 (2d Cir. 1987)...........................................................................................8, 10

*LPD N.Y., LLC v. Adidas Am., Inc.*,
  2021 WL 5139252 (E.D.N.Y. Nov. 4, 2021)..................................................................3

*Meilleur v. Strong*,
  682 F.3d 56 (2d Cir. 2012).............................................................................................9

*Nike, Inc. v. Wu*,
  349 F. Supp. 3d 310 (S.D.N.Y. 2018)...........................................................................7

*In re Oi Brasil Holdings Cooperatief U.A.*,
  578 B.R. 169 (Bankr. S.D.N.Y. 2017)...........................................................................8

*PRC Harris, Inc. v. Boeing Co.*,
  700 F.2d 894 (2d Cir. 1983).........................................................................................11

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
  878 F.2d 875 (5th Cir. 1989) .........................................................................................5

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*,
  374 F.3d 158 (2d Cir. 2004).........................................................................................12

## RULES

Fed. R. Civ. P.
  60(b)...................................................................................................................8, 11, 12
  60(b)(1) ......................................................................................................................8, 9
  60(b)(1)-(6) ...................................................................................................................8
  60(b)(2) .........................................................................................................................9
  60(b)(3) .........................................................................................................................9
  60(b)(4) .......................................................................................................................10
  60(b)(5) .......................................................................................................................11
  60(b)(6) .......................................................................................................................11

## OTHER AUTHORITIES

Our Story, OPNX, *available at* https://opnx.com/en/about-us (last accessed
  August 3, 2023)..............................................................................................................3

Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized foreign representatives (the "Foreign Representatives") of Three Arrows Capital, Ltd. ("Three Arrows" or the "Debtor"), respectfully submit this reply and opposition to *Non-Party Kyle Davies': (I) Opposition to Motion for Contempt; and (II) Cross-Motion to Vacate Orders* ("Opposition and Cross-Motion to Vacate"). In support, the Foreign Representatives rely on the *Declaration of Tiffany M. Ikeda* ("Ikeda Decl.") and allege as follows:

**INTRODUCTION**

Over nine months have passed since the Foreign Representatives first sought leave from the Court to serve Kyle Davies, and over seven have passed since entry of this Court's Service Order.[1] During this time, Davies has thumbed his nose at this Court's orders time and again. Despite having counsel, he said nothing when this Court issued its Service Order. He dodged the Subpoena. He ignored the Motion to Compel. Only now, when faced the threat of personal sanctions for his blatant disregard of this Court's orders, has he chosen to respond.

Davies's Opposition and Cross-Motion to Vacate focus entirely on his purported renunciation of his U.S. citizenship as grounds for inadequate service. But the issue of service has been decided, and Davies does not even attempt to claim that he lacked actual notice of the Service Order or Subpoena—indeed, pursuant to this Court's orders, they were both served on Davies's Twitter account, which he uses constantly. As the case law makes clear, Davies has thus waived any objection to the propriety of service, and the only issue left before this Court is whether it has personal jurisdiction over him—*it does*. Davies offers no evidence or argument rebutting the other elements of the Foreign Representatives' "substantial showing" that the Court may exercise personal jurisdiction. As just one example, Davies has not rebutted *his own statement* that he

---

[1] Capitalized terms not defined herein shall have the meanings defined in the Motion for Contempt.

1

personally ran and oversaw all of Three Arrows's operations, including contracts with U.S.-based companies, extensive fundraising from U.S.-based financial institutions, or the many other contacts between Three Arrows and the United States. Nor has he attempted to rebut the Foreign Representatives' evidence regarding his other extensive U.S. contacts.

Davies's disregard for this Court's orders and the Foreign Representatives' time and resources is staggering. To provide just a few examples, the Foreign Representatives have recently discovered that thousands of Davies's emails are suspiciously missing from Three Arrows's email accounts, electronic devices have seemingly been removed from Three Arrows's primary offices, and Davies has refused to engage in meaningful substantive discussion with the Foreign Representatives at any time during the liquidation. Without a full recovery of the accounts, the Foreign Representatives are missing communications between the Founders and third parties during a critical period of time leading up to Three Arrows's insolvency. Davies's failure to provide information and documents has thus made it significantly more difficult for the Foreign Representatives to investigate the Debtor's affairs and the causes of its insolvency, and has forced the Foreign Representatives to seek extraordinary relief from this Court to gain access to these critical documents.

As further detailed in the Foreign Representatives' recently filed Supplemental Filing [Dkt. 109], Davies has spent much of his time advertising his new venture, OPNX, improperly using Three Arrows's name and branding in an attempt to enrich himself by trading bankruptcy claims while simultaneously refusing to respond to—let alone assist the liquidation of—the very company he co-founded. Throughout these proceedings, Davies has continued his prolific use of Twitter, eliminating any doubt that he is well aware of this Court's orders and the Foreign Representatives'

motions. To quote Davies's own venture, "actions speak louder than tweets."[2] It is time for Davies to comply with his obligations to this Court and the Debtor's estate. For the reasons set forth below, Davies's Opposition and Cross-Motion to Vacate should be set aside, and the Foreign Representatives' Motion for Contempt should be granted.

## ARGUMENT

### A. The Court Has Personal Jurisdiction To Enforce Its Orders Against Davies.

#### 1. Davies Has Waived The Right To Object To Service.

As a threshold issue—and the only issue he really discusses in his filings—Davies waived any argument that service was improper when he failed to object to the Foreign Representatives' Service Motion, the Subpoena, or the Motion to Compel. He had ample opportunity to speak— and had retained counsel who demanded that the Foreign Representatives relay messages to the Court—*but he never attempted to challenge the Court's presumption that he is a U.S. national*. It is "well settled" by courts in the Second Circuit that an objection to service, "like any personal jurisdiction defense, 'is a privileged defense that can be waived "by failure to assert it seasonably[.]"'" *LPD N.Y., LLC v. Adidas Am., Inc.*, 2021 WL 5139252, at *2 (E.D.N.Y. Nov. 4, 2021). Davies cannot raise this objection now—nine months after the Foreign Representatives sought leave to serve him, and over seven months after the Court's Service Order—while simultaneously failing to raise any claim of lack of notice or opportunity to be heard during the preceding months.

The Second Circuit has addressed a remarkably similar situation. *See First City Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 55 (2d Cir. 2002) ("*Rafidain Bank*"). In *Rafidain Bank*, the Second Circuit held that a non-party waived any objection to the manner of service

---

[2] *See* Our Story, OPNX, *available at* https://opnx.com/en/about-us (last accessed August 3, 2023).

3

because it did not "claim lack of actual notice, yet it failed to appear or challenge the contempt order or service of the subpoena" until nearly one year after the contempt order was entered, and many months after the subpoena had been served. So too here, for all his bluster, Davies does not pretend he lacked actual notice of the Service Order, Subpoena, Motion to Compel, Motion to Compel Order, *or* Motion for Contempt. Nor could he, as he received notice—and ample opportunity to meet and confer—at every turn over the past seven months:

- On January 5, 2023, the Foreign Representatives served the Subpoena on Davies via Twitter and email, as authorized by the Court. [Dkt. 100, Ex. A.]

- On February 2, 2023, the Foreign Representatives' counsel emailed Davies's counsel seeking to confer prior to filing the Motion to Compel. [*Id*., Ex. B.]

- On February 8, 2023, the Foreign Representatives served the Motion to Compel on Davies via Twitter and email. [Dkt. 102, Ex. E; Dkt. 101, Ex. A.]

- On February 14, 2023, the Foreign Representatives' counsel reminded Davies's counsel of the deadline to submit a response or objection to the Motion to Compel and of the hearing date. [Dkt. 101, Ex B.]

- On June 7, 2023, the Foreign Representatives' counsel once again emailed Davies's counsel seeking to meet and confer prior to filing the Motion for Contempt. [Dkt. 100, Ex. C.]

- On June 15, 2023, the Foreign Representatives served the Motion for Contempt on Davies via Twitter and email. (Exs. A-B to Ikeda Decl.)

Despite using Twitter (and presumably email) regularly during the entire time period, Davies did nothing. He never replied to the Foreign Representatives' efforts to meet and confer, and he did not submit a response or objection to the Subpoena or Motion to Compel or appear at the hearing. The only response that the Foreign Representatives received—on February 14, 2023—was from Davies's counsel, claiming that this Court lacked jurisdiction over Davies and that he is not a U.S. citizen, and demanding that the Foreign Representatives relay this message to the Court. [Dkt. 101, Ex. B.] The Foreign Representatives informed the Court of Davies's position, and Davies provides no support for the notion that he—being represented at the time—

4

could deputize his legal arguments to the Foreign Representatives. And on top of that, as Davies concedes [Dkt. 106 at 9], the Foreign Representatives attached his counsel's email to the Ikeda Declaration in support of the Motion for Contempt, filed with this Court. [Dkt. 101, Ex. B.]

It is undisputed that Davies not only had actual notice of the Subpoena at the time it was served, but raised his first objection *over seven months later*. In *Adidas Spoerschuhfabriken Adi Dassler Stiftung & Co., K.G. v. Cheung*, the court denied the defendants' motion to vacate default judgments for insufficient service of process, because the defendants had "actual notice of [the] litigation." 1990 WL 48063, at *6 (S.D.N.Y. Apr. 10, 1990). The court further noted that the litigation had been "underway for a year and one-half" and that plaintiffs had "expended significant time and money in the pursuit of a recovery"—and that the court had "devoted substantial time and effort to [] adjudication." *Id*. As in *Adidas*, Davies has put forth no argument that he lacked actual notice of the Subpoena and related discovery orders. Because he had actual notice, he could have argued from the outset that it was necessary for the Foreign Representatives to effect service in a different way, such as through the Hague Convention. T.I.A.S. No. 6638, 20 U.S.T. 361 (1965). Instead, he waited until the last possible day to object *to a contempt motion*. Too little, too late. Davies would have the Foreign Representatives restart their discovery efforts to chase him around the world and would expend creditors' limited assets through the Hague, further wasting the valuable time and resources of the Debtor's estate.[3]

---

[3] Courts outside of this circuit have likewise held that objections to service are waived where a non-party has actual notice of the subpoena. *See, e.g.*, *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) (reversing trial court's decision to quash administrative agency's subpoena where non-party had "actual notice of the subpoena" and "knew of the subpoena in time to challenge it" but filed a motion to quash three days late); *see also E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, 2005 WL 3710352, at *4 (E.D. Cal. Aug. 15, 2005) (counsel was "provided with actual timely notice of the deposition and waived any right to service of notice by any other means by failing to make timely objection"), *aff'd sub nom E. & J. Gallo Winery v. Gibson, Dunn & Crutcher LLP*, 432 F. App'x 657 (9th Cir. 2011).

5

Davies otherwise argues that his Opposition and Cross-Motion to Vacate is timely because it is his "first contact" with the Court, and the Court invited him to "appear and contest personal jurisdiction if he fails to comply with an order compelling compliance and the Foreign Representatives seek to hold Davies in contempt." [Dkt. 106 at 9, 13 (citing Dkt. 93 at 17).] Davies's interpretation of this Court's Motion to Compel Order leaves out crucial context—in the same order, the Court noted that "[t]he adequacy of service and the existence of personal jurisdiction are separate issues" because "a finding that a party was properly served . . . does not necessarily confer personal jurisdiction. [Dkt. 93 at 7.] In essence, when this Court noted that Davies can still contest "personal jurisdiction," it was allowing Davies to appear and offer evidence about his contacts with the United States, *not* relitigate the sufficiency of service. That this is Davies's "first-contact" with the Court does not cut against the fact that he has had **nine months of notice** of the Foreign Representatives' effort to serve him and seven months' notice of this Court's Service Order—all of which gave him the opportunity to make contact with the Court to object to the adequacy of service. He never even tried, until now. Thus, because Davies has not claimed lack of actual notice, and failed to appear or challenge service for over seven months following issuance of the Court's Service Order, he waived any objection to the adequacy of service. *See First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 254 (S.D.N.Y. 2000), *aff'd*, 281 F.3d 48 (2d Cir. 2002) (emphasizing non-complying party's "repeated opportunities" to "appear and challenge the subpoena before being held in contempt").

2.    **Exercising Personal Jurisdiction Is Consistent With Due Process.**

While Davies disputes the adequacy of service—an issue the Court decided seven months ago in the Service Order—he does not address the actual issue the Court left open in its prior orders: whether personal jurisdiction is consistent with the Due Process Clause. [*See* Dkt. 93 at 13-14.] Thus, he fails to contest the substantial evidence offered to meet the Foreign

6

Representatives' burden that jurisdiction is appropriate here. Assuming, *arguendo*, that Davies renounced his U.S. citizenship in December 2020, Davies's extensive contacts with the United States plainly merit a finding of personal jurisdiction. As set forth in the Motion for Contempt, purposeful availment need not involve Davies's physical presence in the U.S. or even his citizenship, and may be satisfied by entering into contracts with a "substantial connection" to the U.S. or targeting U.S. residents. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 479–80 (1985).

Notably, Davies has not rebutted any of the other facts cited in the Motion for Contempt—facts which demonstrate his extensive U.S. contacts. [*See* Dkt. 98 at 23-25.] He does not dispute that he formed the entities used to operate Three Arrows while residing in the United States and operated Three Arrows using substantial funding from U.S.-based banks, investors, and lenders. [Dkt. 98 at 13-14, 23-24.] Nor does he dispute that he precipitated Three Arrows's collapse by, among other things, causing it to invest heavily in a token pegged to the U.S. dollar, and borrowing significant loans from U.S.-based centralized finance lenders, such as BlockFi, Voyager Digital, and Genesis Global Trading. [Dkt. 98 at 25.] Indeed, even as Davies maintains that this Court cannot enforce its orders against him, his new venture, OPNX, is trading in U.S. bankruptcy claims against U.S.-based entities such as FTX and Celsius, and availing itself of the benefits of the U.S. law and courts by filing a defamation action. [Dkt. 109 at 2-5, 7.] The Foreign Representatives have easily met their *prima facie* burden by showing Davies has "deliberate and recurring" contacts in the United States, which are closely related to the documents sought in the Subpoena. *See Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 323, 329, 330, 332 (S.D.N.Y. 2018). He cannot overcome this showing merely by asserting that he is no longer a U.S. citizen.

Davies's substantial contacts with the U.S. support a finding of personal jurisdiction, regardless of the status of his U.S. citizenship. And Davies makes no other argument that sanctions of $10,000 days per day and reasonable attorneys' fees and costs are inappropriate—and as set forth in the Motion for Contempt (and undisputed by Davies), they are appropriate.

**B.     Davies's Cross-Motion To Vacate The Court's Prior Orders Is Improper.**

Not only does Davies fail to meaningfully challenge the Court's personal jurisdiction, but he cannot meet his burden to vacate the Court's prior orders under Federal Rule of Civil Procedure 60(b). Rule 60(b) governs a request for relief from a final judgment, order, or proceeding upon a showing under six categories of circumstances: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party, (4) the judgment is void, (5) the judgment has been satisfied, released, or discharged, or (6) any other reason that justifies relief. *See In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. 169, 203 (Bankr. S.D.N.Y. 2017); Fed. R. Civ. P. 60(b)(1)-(6). Davies fails to meet his burden as movant to show that *any* of these categories apply. *See Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987). Nor does Rule 60(b) provide relief for litigants like Davies, who willfully disregard courts orders.

**1.     Davies Fails To Meet His Burden Under Rule 60(b).**

Davies fails to demonstrate how he meets the standard for a Rule 60(b) motion, or even point to which of the six specific categories under that rule apply here. Nonetheless, it is clear Davies has not satisfied his burden.

*First*, there was no "mistake or surprise" under Rule 60(b)(1)—Davies knew that he allegedly renounced his U.S. citizenship as of December 2020. In essence, this information was not a "surprise" to him; and Davies puts forth no argument that it was inadvertently withheld from the Court or that there was a mistake or excusable neglect in his withholding it for nine months.

8

Thus, it is no ground for relief under Rule 60(b)(1). *See, e.g.*, *Meilleur v. Strong,* 682 F.3d 56, 64 (2d Cir. 2012) (court did not abuse its discretion in finding there was no "mistake, inadvertence, surprise, or excusable neglect" that would justify Rule 60(b)(1) relief, where party "offered no explanation . . . for the multi-month lag between service and her motion to reopen").

**Second**, the evidence that Davies allegedly renounced his U.S. citizenship was not "newly discovered" as required under Rule 60(b)(2)—Davies has had possession of the documents attached as exhibits to his declaration since December 2020, and could have introduced them at any time. "Evidence is not 'newly discovered' if it was in the moving party's possession prior to the entry of judgment." *Johnson v. Askin Cap. Mgmt., L.P.*, 202 F.R.D. 112, 114 (S.D.N.Y. 2001) (denying motion to vacate where evidence was in movant's attorney's possession).

**Third**, there was no "fraud" or "misrepresentation" at play, as required under Rule 60(b)(3)—the Foreign Representatives readily admitted in the Motion for Contempt that it was unknown whether Davies was still a U.S. citizen, and that they were aware that he had claimed to be a Singaporean citizen. [Dkt. 98 at 23, n. 7.] Davies argues that the Foreign Representatives "knew he was a Singapore citizen" and should have "advise[d] the Court of the fact that Davies is not a U.S. citizen" following correspondence with Ms. Yeo. [Dkt. 106 at 13.] Davies has never been deposed, and never engaged in discussions with the Foreign Representatives or this Court regarding his citizenship before filing his August 1, 2023 Opposition and Cross-Motion to Vacate. Davies cites no law that would somehow require the Foreign Representatives to blindly accept an unsupported assertion in an email—an email that the Foreign Representatives submitted to this Court—and to presume that Davies is a Singaporean citizen; instead, the Foreign Representatives correctly identified to the Court that it was unknown whether he was still a U.S. citizen. Davies could have—and should have—objected at the hearing. He did not.

9

***Fourth***, Davies has not shown that the Court's judgment is "void" under Rule 60(b)(4), which requires "highly convincing . . . evidence in support of vacatur," "good cause for the failure to act sooner," and "no undue hardship . . . on other parties." *Kotlicky*, 817 F.2d at 9. He has not introduced any cause (much less good cause) for his failure to act sooner in only raising this objection now, and it is clear that undue hardship will be imposed upon the Foreign Representatives should they be required to restart the discovery process and undergo these efforts several times over. Further, a judgment "may be declared void for want of jurisdiction only when . . . 'there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction.'" *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 190 (2d Cir. 2003) (internal citation omitted). In *Gater Assets Ltd. v. AO Moldovagaz*, the Second Circuit held that the respondent failed to meet its burden to show that vacatur was warranted under this exacting standard, given that it did not argue it lacked actual notice of the original action that led to the default judgment. 2 F.4th 42 (2d Cir. 2021). Here too, Davies does not argue that he lacked actual notice of the Service Order (which led to the Subpoena), or the Motion to Compel (which led to the Motion to Compel Order). And he has not met his burden to establish that there is a "total want of jurisdiction" and "no arguable basis" for finding the same. *Id*. at 53. That is because, even if Davies allegedly renounced his U.S. citizenship, he has not rebutted the other facts set forth in the Motion for Contempt underlying his extensive U.S. contacts.

Davies cites *In re Blutrich Herman & Miller*, 227 B.R. 53 (Bankr. S.D.N.Y. 1998), in arguing to the contrary. But *Blutrich* involved "extraordinary circumstances": one partner of a law firm "tricked" his three partners by filing a Chapter 7 petition "[w]ithout obtaining their consent" and failed even to attempt service on any of them. *Id*. at 55. The petitioning partner tried to discontinue the proceeding, but was "whisked into the obscurity of the Federal Witness

10

Protection Program" for unspecified reasons. *Id*. at 59. Under these "extraordinary circumstances," in which the partners "had no idea of what had befallen then," the bankruptcy court vacated its order of relief. *Id*. Even then, the court held that the nonpetitioning partners could have "waive[d] the jurisdiction defect" and emphasized that a partner had raised insufficient service "[a]t every opportunity," including by raising it as an affirmative defense in his answer. *Id*. at 60-61. Davies's conduct could not be more different that of the innocent partners in *Blutrich*: even though he received the Subpoena, he strategically delayed raising a purported technical defect in the manner of service for nearly ten months, until the eve of his contempt hearing.

*Fifth*, the judgment has not been "satisfied, released, or discharged" under Rule 60(b)(5), as Davies is actively challenging it. And *sixth* and finally, Davies otherwise fails to meet the standard for Rule 60(b)(6), a catch-all category that provides a high bar for relief. The Second Circuit has stated that a "'proper case for Rule 60(b)(6) relief is only one of extraordinary circumstances, or extreme hardship.'" *De Curtis v. Ferrandina*, 529 Fed.Appx. 85, 86 (2d Cir. 2013) (quoting *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004)). Davies has not presented any argument or evidence supporting a showing of extraordinary circumstances or extreme hardship. Further, in considering a motion under Rule 60(b)(6), courts "'must scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay.'" *Canouse v. Protext Mobility, Inc.*, 2023 WL 3490915 (2d Cir 2023) (quoting *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983)). Finality favors upholding the Service Order and Motion to Compel Order, and Davies has presented no good reason for the delay—nor any reason at all—in his Opposition and Cross-Motion to Vacate. Thus, he fails to meet the burden for any of categories for a motion to vacate under Rule 60(b).

11

### 2.     Davies's Willfulness Merits Denying His Cross-Motion.

Even if Davies could show that his Cross-Motion to Vacate fell under one of the six categories for relief enumerated above, it would still fail. When a movant raises grounds to vacate a judgment pursuant to Rule 60(b), a court must also consider three principal factors before granting the motion: (1) the movant's willfulness, (2) any meritorious defense, and (3) prejudice to the non-moving party. *See State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166–67 (2d Cir. 2004). Of these three factors, "willfulness carries the most weight." *De Curtis*, 529 F. App'x at 86. District courts in this circuit have routinely denied motions to vacate default judgments solely on the basis of the defaulting party's willfulness. *See, e.g., Burns v. Kelly Enters. of Staten Island, LLC*, 2019 WL 3304883, at *4 (E.D.N.Y. Jul. 23, 2019) ("Defendants' defenses and prejudice to the non-defaulting party . . . do not outweigh Defendants' willful default").[4]

Davies's willfulness is glaring—as set forth in the Motion for Contempt, he has a demonstrated history of noncompliance and disregard for this Court's orders and the Chapter 15 proceedings generally. While Davies has publicly claimed that he has "cooperated with the legal process," this Court's orders tell a different story. [Dkt. 102, Ex. C; Dkts. 79, 93.] Further, Davies failed to comply with the Foreign Representatives' informal discovery requests and his counsel refused to accept service on his behalf, leading the Foreign Representatives to seek permission from this Court to serve him via alterative means. And, as recently discovered by the Foreign Representatives, thousands of Davies's emails are suspiciously missing from Three Arrows's email accounts, which evidences an intentional deletion of company emails and underscores the

---

[4] *See also Kass v. City of N.Y.*, 2015 WL 8479748, at *4 (S.D.N.Y. Dec. 2, 2015) (denying motion to vacate, on the basis of finding of willfulness without considering the other two factors); *Belizaire v. RAV Investigative & Sec. Servs., Ltd.*, 310 F.R.D. 100, 106 (S.D.N.Y. 2015) (denying motion to vacate based on finding that "a potentially meritorious defense and the absence of prejudice" did not outweigh finding of willfulness).

need for meaningful discovery from Davies directly. Davies has set forth no meritorious defense for any of this behavior, and the prejudice to the Foreign Representatives would be significant if its motion is denied. Davies's obfuscation has already cost the Foreign Representatives months of time, effort, and expense. When considering Davies's demonstrated willfulness and the substantial prejudice resulting from vacating the Service Order and Motion to Compel Order, this Court should find that both factors are fatal to Davies's motion.[5]

## CONCLUSION

Davies's Opposition and Cross-Motion to Vacate are self-serving, eleventh hour attempts to stonewall the Foreign Representatives' discovery efforts. For the reasons set out above, they should be denied. Davies's willful, continued noncompliance and interference with discovery warrants granting sanctions and other relief substantially in the form of the Order attached to the Motion for Contempt.

[*Remainder of Page Intentionally Left Blank*]

---

[5] As Davies submitted a declaration in support of his Opposition and Cross-Motion to Vacate, the Foreign Representatives and this Court must have the opportunity to cross-examine him on the issues contained in his declaration. The Foreign Representatives intend to do so at the hearing if the Court is inclined.

13

| | |
|---|---|
| Dated: August 4, 2023<br>Los Angeles, California | Respectfully submitted,<br><br>*/s/ Nima H. Mohebbi*<br>Nima H. Mohebbi (admitted *pro hac vice*)<br>Tiffany M. Ikeda (admitted *pro hac vice*)<br>Emily R. Orman (admitted *pro hac vice*)<br>**LATHAM & WATKINS LLP**<br>355 South Grand Avenue, Suite 100<br>Los Angeles, CA 90071<br>Telephone: (213) 485-1234<br>Facsimile: (213) 891-8763<br>Email:  nima.mohebbi@lw.com<br>          tiffany.ikeda@lw.com<br>          emily.orman@lw.com<br><br>– and –<br>Adam J. Goldberg<br>Christopher Harris<br>Brett M. Neve<br>Nacif Taousse<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email:  adam.goldberg@lw.com<br>          christopher.harris@lw.com<br>          brett.neve@lw.com<br>          nacif.taousse@lw.com |

14

**CERTIFICATE OF SERVICE**

I hereby certified that, pursuant to the Court's Order Scheduling Hearing on Chapter 15 Petition and Related Relief and Specifying Form and Manner of Service of Notice (the "Notice Order") (ECF No. 18), on August 3, 2023, the Foreign Representatives provided service for the foregoing via the Court's CM/ECF system on all registered users.  Additionally, on August 3, 2023, the Foreign Representatives provided service of the foregoing, by email and first class mail, upon (a) the Office of the United States Trustee for the Southern District of New York; (b) the Securities and Exchange Commission; (c) the Founders; (d) the members of the committee of unsecured creditors appointed in connection with the BVI Proceeding; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 of which the Foreign Representatives are aware.  [Dkt. 18 ¶¶ 6–10.]  Additionally, the Foreign Representatives will provide notice of the Reply to Davies by email and Twitter, following the same manner of service by which the Subpoena, Motion to Compel, Motion to Compel Opinion and Order, and Motion for Contempt were issued, as the Court has deemed proper in the service order.  [Dkt. 79.]  The Foreign Representatives submit that no further notice is necessary.


Dated: August 4, 2023                                         */s/ Christopher M. Tarrant*
      New York, NY                                         Christopher M. Tarrant